SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Robert L. Lakind
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
800 Third Ave. 11th Floor
New York, NY 10022
By: Moshe Maimon
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorney For Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY individually and on behalf of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by Transamerica Life Insurance Company, and the participants and beneficiaries of all such ERISA covered employee benefit plans; KAREN POLEY, as an investor in the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt, individually and on behalf of any person that is a party to any contract with Transamerica Life Insurance Company, where Transamerica Life Insurance Company, pursuant to such contracts, acted as an investment adviser; BARBARA POLEY, as an investor in the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, individually and on behalf of any person that is a party to a contract with | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Transamerica Life Insurance Company, and pursuant to such contracts, acted as an investment adviser; in the alternative, KAREN POLEY, for the use and benefit of the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt; and also in the alternative, BARBARA POLEY, for the use and benefit of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt,

     Plaintiffs,

vs.

Transamerica Life Insurance Company, Transamerica Investment Management, LLC, and Transamerica Asset Management, Inc.,

     Defendants.

Plaintiff, JACLYN SANTOMENNO ("Santomenno"), whose street address is 0-40 Fair Lawn Parkway, Fair Lawn, New Jersey, 07410, Plaintiff KAREN POLEY ("K. Poley"), whose street address is 114 East Revere Avenue, Northfield, NJ 08244, and Plaintiff BARBARA POLEY ("B. Poley") whose street address is 114 W. Poplar Avenue, Linwood, New Jersey, 08221, individually and on behalf of those Employee Retirement Income Security Act of 1974, as amended ("ERISA"), covered employee benefit plans that held, or continue to hold, group annuity contracts issued/sold by Transamerica Life Insurance Company and the participants and beneficiaries of all such ERISA covered employee benefit plans; KAREN POLEY, as an investor in the Loomis Sayles Investment Grade Bond Ret Opt and First American Mid Cap Growth Opportunities Inv Opt, individually and on behalf of any person that is a party to any contract

with Transamerica Life Insurance Company, where Transamerica Life Insurance Company,

pursuant to such contracts, acted as an investment adviser in violation of the Investment Advisers

Act of 1940 ("IAA"); BARBARA POLEY, as an investor in the Vanguard Target Retirement

2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, individually and on behalf of

any person that is a party to a contract with Transamerica Life Insurance Company, and pursuant

to such contracts, acted as an investment adviser in violation of the IAA; KAREN POLEY, for

the use and benefit of the Loomis Sayles Investment Grade Bond Ret Opt and the First American

Mid Cap Growth Opportunities Inv Opt, against Transamerica Life Insurance Company, for

acting as an investment adviser to such entities in violation of the IAA; BARBARA POLEY, for

the use and benefit of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total

Stock Market Index Ret Opt against Transamerica Life Insurance Company, for acting as an

investment adviser to such entities in violation of the IAA; by way of Complaint against,

Defendants, Transamerica Life Insurance Company (whose principal place of business is

believed to be 4333 Edgewood Road NE Cedar Rapids, Iowa, 52499), Transamerica Investment

Management, LLC, (whose principal place of business is believed to be 11111 Santa Monica

Boulevard, Suite 820, Los Angeles, California, 90025), and Transamerica Asset Management,

Inc. (whose principal place of business is believed to be 570 Carillon Parkway, St. Petersburg,

Florida, 33716), says that:

## I.     NATURE AND SUMMARY OF CLAIMS

### A.     Overview-ERISA Claims

1.     The underlying ERISA claims derive from Defendants' sale and operation of group annuity contracts to the sponsors of 401(k) plans, the management of assets in those plans, and the investments which Defendants made of the plans' assets, which, as a consequence of Defendants' misconduct, caused Plaintiffs to pay unreasonable, impermissible and excessive fees in connection with the investment of their retirement savings.

2.     The Plaintiff ERISA covered employee benefit plans (hereafter "the Plaintiff Plans") are employer-sponsored defined contribution retirement plans (i.e., 401(k) plans) subject to ERISA, 29 U.S.C. §1001, et seq.

3.     The Plaintiff Participants are or were participants and beneficiaries of the aforesaid Plaintiff Plans ("Plaintiff Participants").  Collectively, the Plaintiff Plans and Plaintiff Participants are occasionally hereinafter referred to as the "Plaintiffs."

4.     Plaintiffs K.Poley and B. Poley are participants of the QualCare Alliance Networks, Inc. Retirement Plan (formerly known as the Scibal Associates, Inc. 401(k) Plan) (the "QualCare Plan"), a Plaintiff Plan.

5.     Plaintiff Santomenno, until December of 2010, was a participant of the Gain Capital Group, LLC 401(k) Plan (the "Gain Plan"), a Plaintiff Plan.

6.     Defendant TransAmerica Life Insurance Company ("TLIC") manages ERISA covered employee benefit plans and, in connection therewith, provided and provides the Plaintiff Plans with investment options through a product known as a group annuity contract.

7.     TLIC has developed a scheme in which it markets its product, which

contains a package of investment options, to unsophisticated small to mid-size 401(k) plans.

8.     As of December 31, 2010, TLIC was operating approximately 15,500 401(k) plans through its group annuity product and was managing approximately $19.5 billion in assets through this product.

9.     TLIC constructs the investment option menu available to each of the Plaintiff Plans from its collection of investment options.

10.     On information and belief investment by the Plaintiffs in all, or most of the investment options, that TLIC provides as investment options to the Plaintiff Plans results in the payment of fees to TLIC or its affiliates.

11.     The method by which TLIC constructs the investment menu for all of the Plaintiff Plans is, on information and belief, a two step process.

12.     In the first step, TLIC composes a menu from its collection of investment options.

13.     In the second step, TLIC implements the menu it constructed in the first step as the investment menu for the Plaintiff Plan, or, from this menu created by TLIC, the Plaintiff Plan, or its sponsor, then selects some or all of the investment options, selected by TLIC in the first step, as the investment options for the Plaintiff Plan.

14.     TLIC limits the investment options that may be offered to a particular Plaintiff Plan to a maximum of either 50 or 80 investment options, depending on the plan.

15.     After TLIC has composed the menu for a Plaintiff Plan, its involvement with the composition of the investment menu continues because TLIC retains the authority, at its discretion, to add and delete investment options from the Plaintiff Plans investment menus.

16.     The QualCare Plan, a Plaintiff Plan, in which Plaintiffs B. and K. Poley are

participants, contains 36 investment options.

17.     The Gain Plan, a Plaintiff Plan in which Plaintiff Santomenno, until December of 2010, was a participant, contains 46 investment options.

18.     To demonstrate TLIC's impermissible fee practices on the investments options it provides to the Plaintiff Plans, Plaintiffs rely on the investment menu/options that are contained on the Gain and Qualcare Plans.  On information and belief, the impermissible fee practices described herein, apply to all, or most, of the investment options that TLIC provides to the Plaintiff Plans.

19.     TLIC refers to each of the investment options as a "separate account."

20.     Each investment option has its own separate account.

21.     For most of the investment options, the ultimate investment is for a mutual fund.  Therefore, TLIC, with respect to these investment options, first passes Plaintiffs' investment through the overlying separate account, and then deposits their investment in the underlying mutual fund.

22.     TLIC is a fiduciary under ERISA.

23.     With respect to all or most of the investment options, TLIC charged Plaintiffs excessive fees on the investments of their retirement monies into each of these investment options and such fees were in violation of ERISA.

24.     Plaintiffs Santomenno, K. Poley and B. Poley, file the ERISA claims, seeking restitution for the full value of their, and all other Plaintiff Participants', retirement benefits, which they were denied, because TLIC violated ERISA by: (a) failing to act prudently towards the Plaintiff Plans for which it is a fiduciary, (b) failing to take steps to defray reasonable costs

when managing the Plaintiff Plans' assets, and (c) committing prohibited transactions.

25.    Plaintiffs Santomenno, K. Poley and B. Poley also file the ERISA claims individually and on behalf of the Plaintiff Plans that held, or continue to hold, group annuity contracts issued/sold by TLIC for the ERISA violations described above.

### B.    Overview-Investment Advisers Act of 1940 Direct Claims

26.    The Investment Advisers Act of 1940 (IAA) provides that any entity or person that is an investment adviser must be registered with the SEC.

27.    An investment adviser means any company that, "for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities..." IAA 202(a)(11), 15 U.S.C § 80b-2(a)(11).

28.    The IAA provides that any contract that violates any provision of the IAA is void. IAA §215(b), 15 U.S.C. §80b-15(b).

29.    The IAA provides that any person or entity that renders investment advice must be registered.  IAA §203, 15 U.S.C. §80b-3.

30.    As of February 3, 2011, TLIC was not registered with the Securities and Exchange Commission ("SEC") as an investment adviser, as required by the IAA.

31.    On information and belief, TLIC  was not registered with the SEC as an investment adviser, as required by the IAA, at any time prior to February 2, 2011 .

32.    TLIC rendered investment advice and acted as an investment adviser for some of the investment options that individual participants of the Plaintiff Plans invested their retirement

savings in.  These individuals, for purposes of Plaintiffs IAA claims, are hereinafter referred to as the Plaintiff Purchasers Class.  The Plaintiff Purchasers Class includes Plaintiffs B. Poley and K. Poley.

33.     Plaintiff K. Poley is a member of the Plaintiff Purchasers Class because sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010) she invested in the following TLIC investment options (the names used herein are the names TLIC has given to such investment options): the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.

34.     Plaintiff K. Poley's investments in the TLIC investment options set forth in the previous paragraph resulted in a contract between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager.

35.     Plaintiff B. Poley is a member of the Plaintiff Purchasers Class because she invested in the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010).

36.     Plaintiff B. Poley's investments in the above listed TLIC investment options resulted in a contract between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager.

37.     Pursuant to the respective contracts listed in paragraphs 33 through 36, Plaintiffs K. Poley and B. Poley paid to TLIC investment management fees for investment advice it

rendered.

38.     At the time TLIC rendered the investment advice and received compensation from the Plaintiff Purchasers for this investment advice, TLIC was not registered with the SEC and therefore violated IAA §203, 15 U.S.C. §80b-3.

39.     In addition to the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, TLIC rendered investment advice and acted as an investment adviser to some of the other  investment options in which the individual participants of the Plaintiff Plans invested their retirement savings and, on account of such investments, similar to Plaintiffs K. Poley and B. Poley,  these individuals entered into contracts with TLIC which resulted in their payment of investment management fees to TLIC for its services as an investment adviser.

40.     The amount of investment management fees TLIC received from members of the Plaintiff Purchasers Class was excessive, impermissible and unreasonable.

41.     On information and belief, TLIC has entered into other contracts with other individuals and entities, besides those that arise on account of individual participants, of the Plaintiff Plans, investing their retirement savings in certain TLIC investment options, where TLIC, pursuant to such contracts, acted as an investment adviser and received compensation from these other individuals and entities for its investment advice/management services.  These other individuals and entities are also included as members of the Plaintiff Purchasers Class.

42.     As a consequence of the performance of these void contracts by the Plaintiff Purchasers Class, TLIC was unjustly enriched  on account of TLIC's failure to register with the

SEC.

43.     Members of the Plaintiff Purchasers Class (which includes Plaintiffs B. Poley and

K. Poley) seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), rescission of the portions of all

contracts (including the associated fees) between the members of such class and TLIC that

resulted in TLIC acting as an investment adviser, in violation of IAA §203, 15 U.S.C. §80b-3,

and/or restitution of such fees pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

### C.     Overview-Investment Advisory Act Derivative Claims

44.     According to TLIC, the Loomis Sayles Investment Grade Bond Ret Opt, the First

American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret

Opt and the Vanguard Total Stock Market Index Ret Opt, investment options, are structured as

unregistered separate accounts.

45.     As such investment options are structured as unregistered separate accounts,

Plaintiffs B. Poley and K. Poley may make direct claims on their, and any other individual or

entity's behalf, in the form of a class action, for rescission and/or restitution of fees in connection

with contracts entered into with TLIC that resulted in TLIC acting as an investment adviser and

receiving compensation for its investment advice/management services.

46.     However, as an alternative to their direct claims described above, Plaintiffs B.

Poley and K. Poley also plead their IAA claims, which arise on account of TLIC failing to

register with the SEC and acting as an investment adviser for compensation, derivatively.

47.     Plaintiff K. Poley, as a security holder in the Loomis Sayles Investment Grade

Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt, has standing to

bring suit on behalf of such investment options for the actual damages resulting from TLIC's

actions. Specifically, she has standing to bring suit on these investment options' behalf for the compensation they paid to TLIC for acting as their investment adviser.

48.     Similarly, B. Poley, as a security holder of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt has standing to bring suit on behalf of such investment options for the actual damages resulting from TLIC's actions. Specifically, she has standing to bring suit on these investment options behalf for the compensation they paid to TLIC for acting as their investment adviser.

49.     The investment management fees paid by the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt to TLIC, in connection with a contract for investment advice/management services were in violation of IAA 203, 15 U.S.C. 80b-3, because TLIC was not registered with the SEC as an investment adviser.

50.     As the investment options listed in paragraph 49 are unregistered separate accounts, they do not have a board of directors. Thus, any demand on their non-existent board of directors would be futile.

51.     As an alternative to her direct claim, Plaintiff K. Poley files this action as a derivative action on behalf of the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.

52.     As an alternative to her direct claim, Plaintiff B. Poley files this action as a derivative action on behalf of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt.

53.     Plaintiffs B. Poley and K. Poley seek, pursuant to IAA §215(b), 15 U.S.C. §80b-

15(b), rescission of the portions of the contracts (including the associated fees) the investment options listed in paragraphs 51 through 52 paid to TLIC in violation of IAA §203, 15 U.S.C. §80b-3, and/or restitution of such fees pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

## II.     THE PARTIES

### A.     Plaintiffs

54.     The Plaintiff Plans are defined contribution plans (401(k) plans), subject to ERISA, to whom TLIC provided investment management services through one if its group annuity contracts.

55.     The Plaintiff Participants are participants, as defined in ERISA §3(7), 29 U.S.C. §1002(7), and or beneficiaries, as defined in ERISA §3(8), 29 U.S.C. §1002(8), of the Plaintiff Plans to whom TLIC provided investment management services through one of its group annuity contracts.  The Plaintiff Participants include, among others, Plaintiffs Santomenno, K. Poley and B. Poley.

56.     Plaintiffs K. Poley and B. Poley are participants of the QualCare Plan, a Plaintiff Plan.

57.     Plaintiff Santomenno, until December of 2010, was a participant of the Gain Plan, a Plaintiff Plan.

58.     The Plaintiff Participants file this action as a derivative action on behalf of the Plaintiff Plans pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), to recover assets of such plans which Defendants improperly took in violation of ERISA.

59.     The Plaintiff Participants file this action to recover the full value of their retirement benefits, of which they were deprived by Defendants' actions, pursuant to ERISA

§§502(a)(2) and (3), 29 U.S.C. §§1132(a)(2) and (3).

60.     The Plaintiff Purchasers Class (which includes Plaintiffs B. Poley and K. Poley)
are parties to contracts with TLIC in which it acted as an investment adviser/manager in violation
of IAA §203, 15 U.S.C. §80b-3, and seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b),
rescission of such contracts and/or restitution of fees paid in connection with such contracts,
including for the  investment advise/management fees TLIC received through such contracts.

61.     Plaintiffs B. Poley and K. Poley, as an alternative to their direct class action claim
on behalf of members of the Plaintiff Purchasers Class, file derivative claims on behalf of the
Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth
Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total
Stock Market Index Ret Opt, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), for the rescission
of the portions of the contracts (including the associated fees) these investment options paid to
TLIC in violation of IAA §203, 15 U.S.C. §80b-3, and/or restitution of such fees pursuant to IAA
§215(b), 15 U.S.C. §80b-15(b).

### B.     Defendants

62.     Defendant TLIC is an Iowa corporation engaged in the business of issuing and
operating group annuity contracts to sponsors of defined contribution (401(k)) plans in all states,
with the exception of the State of New York.  These contracts are targeted to small to mid-size
employers. The principal place of business of TLIC is believed to be 4333 Edgewood Road NE
Cedar Rapids, Iowa, 52499.  Defendant TLIC, as part of its business also acts as an investment
adviser.

63.     Defendant Transamerica Investment Management, LLC, ("TIML") is a Delaware

corporation in the business of providing investment advice to certain of the investment options available to Plaintiffs.  The principal place of business of TIML is believed to be 11111 Santa Monica Boulevard, Suite 820, Los Angeles, California, 90025.

64.     Defendant Transamerica Asset Management, Inc., ("TAMI") is a Florida corporation in the business of providing investment advice to certain of the investment options available to Plaintiffs.  TAMI's principal place of business is believed to be 570 Carillon Parkway, St. Petersburg, Florida, 33716).

### III.  JURISDICTION AND VENUE

65.     This Court has jurisdiction over the claims that arise under ERISA pursuant to 28 U.S.C. §1331 and ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

66.     This Court has jurisdiction over the claims that arise under the IAA pursuant to 28 U.S.C. §1331 and IAA §214, 15 U.S.C. §80b-14,

67.     Venue is proper in the District of New Jersey pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### IV.    THE LAW

#### A.     ERISA

68.     ERISA, codified at 29 U.S.C. §1001, et seq., was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA §2(a), 29 U.S.C. §1001(a).

69.     A 401(k) plan is a defined contribution plan.

70.     Defined contribution plans are governed by ERISA.  ERISA §3(34), 29 U.S.C. §1002(34).

71.     Because TLIC uses its group annuity contracts in connection with services provided to defined contribution plans, such plans are subject to ERISA.

72.     ERISA §3(21), 29 U.S.C. §1002(21) defines a fiduciary as any entity that:

(a) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or

(c) has any discretionary authority or discretionary responsibility in the administration of such plan.

73.     When managing the assets of a plan subject to ERISA, a fiduciary must act solely in the interest of plan participants and to defray reasonable plan expenses.  ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

74.     When managing the assets of a plan subject to ERISA, a fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

75.     The fees that are charged to participants on account of the investment of ERISA plan assets are relevant to assessing whether a fiduciary has made a prudent investment of plan assets.

76.     The historical performance of an investment option into which ERISA plan assets are placed is relevant to assessing whether a fiduciary has made a prudent investment of plan assets.

77.    ERISA forbids self dealing by fiduciaries.

78.    Self dealing transactions are among the "prohibited transactions" described in ERISA §406(b), 29 U.S.C. §1106(b).

79.    ERISA §406(b), 29 U.S.C. §1106(b) provides, in pertinent part, as follows:

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2)  in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

80.    Pursuant to ERISA §409, 29 U.S.C. §1109, any fiduciary that violates either ERISA §§404 and 406, 29 U.S.C. §§1104 and 1106, with respect to an ERISA plan, is liable to "make good" for

any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

81.    Pursuant to ERISA §502(a)(2), 29 U.S.C. §1332(a)(2), a participant or beneficiary has standing to bring a complaint for any relief under ERISA §409, 29 U.S.C. §1109.

82.    Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), a participant or beneficiary has standing to bring a claim to (A) enjoin any practice that violates ERISA or (B) to obtain other equitable relief (i) to redress a violation of ERISA or (ii) to enforce any provision of ERISA.

83.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), a civil action may be maintained against a non-fiduciary that participates in a fiduciary's violations of ERISA.

84.     Pursuant to ERISA §502(g), 29 U.S.C. §1132(g), a court, in its discretion, may allow for payment of reasonable attorney's fees and costs associated with an action arising under ERISA.

85.     Plaintiffs bring this action pursuant to ERISA §§409(a) and 502(a)(2), (3) and (g), 29 U.S.C. §§1109(a), and 1132(a)(2), (3) and (g) for, among other relief, the following:

a.     A declaratory judgment holding that the acts of Defendants described herein are illegal as violations of ERISA.

b.     A permanent injunction against the Defendants from engaging in the prohibited practices described herein.

c.     Disgorgement/restitution of the excessive and impermissible fees received by Defendants on account of investments made in Defendant TLIC's products.

d.     Disgorgement/restitution of the impermissible revenue sharing payments that were received by TLIC on account of the Plaintiff Participants' investment of their retirement monies.

e.     Disgorgement of excessive fees charged by underlying, unaffiliated funds, that represent the difference between the unsuitable investment classes TLIC selected for Plaintiffs' assets and the lowest cost alternative.

f.     Recovery of reasonable costs and attorneys fees.

**B.     IAA**

86.     The IAA, codified at 15 U.S.C. §80b-1, et seq., was enacted for the protection of investors.

87.     The IAA provides that any entity or person that is an investment adviser must be registered with the SEC. IAA §203,  15 U.S.C. §80b-3.

88.     An investment adviser means any company that "for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities..." IAA §202(a)(11), 15 U.S.C § 80b-2(a)(11).

89.     The IAA provides that any contract that violates any provision of the IAA is void. IAA §215, 15 U.S.C. §80b-15(b).

90.     If a contract is void under IAA §215(b), 15 U.S.C. §80b-15(b), "the customary legal incidents of voideness...follow, including the availability of a suit for recession...and for restitution." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 at 19 (1979).

91.     Members of the Plaintiff Purchasers Class, pursuant to its contracts with TLIC, paid fees for TLIC's investment advice, which was unauthorized under the law since TLIC was not registered with the SEC.

92.     Members of the Plaintiff Purchasers Class seek rescission of all contracts to which TLIC was a party and /or restitution of fees which resulted in the rendering of investment advice to members of the Plaintiff Purchasers Class, including the return to members of the Plaintiff Purchasers Class of all such impermissible fees that TLIC received through such contracts.

93.     As an alternative to filing direct claims on behalf of all members of the Plaintiff Purchasers Class, Plaintiffs B. Poley and K. Poley file derivative claims on behalf of the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index

Ret Opt, for the rescission of the portions of the contracts (including the associated fees) these investment options paid to TLIC in violation of the IAA and/or restitution of fees as set forth above.

### III.   GENERAL OVERVIEW OF TLIC'S 401(k) BUSINESS AND THE ASSOCIATED TLIC INVESTMENT OPTIONS

#### A.   General Description of TLIC's 401(k) Business

94.   According to TLIC, it "designs customized retirement plan solutions to meet the unique needs of small- to mid-sized business."

95.   According to TLIC, it "prides itself in being a champion for the small- to mid-sized retirement plan sponsor offering the most valuable products and services our clients need to advance their businesses..."

96.   According to TLIC, "[o]ur expertise enables you to focus on your business...."

97.   According to TLIC, it provides "comprehensive retirement solutions that exceed expectations."

98.   According to TLIC, if a plan sponsor is "[l]ooking for a flexible retirement plan solution built with your unique goals in mind? Well, look no further than Transamerica Retirement Services." (Transamerica Retirement Services is the marketing unit of TLIC).

99.   According to TLIC's marketing materials directed to its sales force, it "provides a range of tools to help satisfy the investment portion of your fiduciary responsibility, which can give peace of mind to your clients' plan fiduciaries."

100.   TLIC has drafted a solicitation letter which states:

> Would you like someone to help you handle the fiduciary requirements concerning your 401(k) plan?

\*     \*     \*     \*

> If you're confused about your fiduciary responsibilities, don't worry. Transamerica Retirement Services("Transamerica")--- a top plan provider  with more than 70 years of experience in the retirement services business---can help provide you with the support you need to satisfy those responsibilities

101.     TLIC states that it is "is solely focused on helping you achieve your retirement goals."

102.     According to TLIC: "Transamerica Retirement Services is a well-known and respected provider with more than 70 years in the retirement services industry."

103.     According to TLIC, as of December 31, 2008, "Transamerica is a provider with more than 15,000 plans throughout the U.S., serving more than 675,000 individual participants. With over $13.2 billion in plan assets under management...."

104.     TLIC encourages plan sponsors to have "401(k) Days":

> Transamerica supports your 401(k) Day campaign with tools such as posters, flyers, and statement stuffers. On this special day, encourage your employees to: PROMOTE PARTICIPATION in your company sponsored plan!!
>
> \*     \*     \*     \*
>
> INCREASE employee salary deferral.  Even a 1% increase can add up! ANALYZE employee asset allocation strategy.  Does it still meet your goals? EDUCATE your employees!  Help them learn about the world of investing AND expand their financial awareness.

105.     TLIC promises that its Plus15$^{sm}$  feature "will increase your plan's participation by 15% guaranteed."  The greater participation in a TLIC group annuity contract, the greater amount of fees TLIC receives.

106.     TLIC publishes the "Worth A Look" newsletter that provides Plaintiff Participants with advice on their retirement savings.  A Spring of 2010 edition of this newsletter included an article entitled, "Ramp It Up," encouraging the Plaintiff Participants to increase their retirement contributions.

107.    TLIC admits that "[i]n general, the lower the expense ratio [i.e., fees] the better."

108.    TLIC was discussed in the Wall Street Journal Article, dated August 3, 2009, "Small 401(k) Plans Often Pay Big Fees," because the plan sponsor believed that the plan only paid $3,600 in annual fees when in fact it paid $16,300 in annual fees.

109.    TLIC warrants that its "Transamerica Investment Monitor (TIM) is our comprehensive due diligence process for selecting and monitoring investment options for your retirement plan."

110.    The investment vehicles that compose the investment options that TLIC offers to the Plaintiff Plans are in the form of: mutual funds, collective investment trusts and separate accounts.  Even where the investment option is for a mutual fund or a collective investment trust, TLIC first passes Plaintiffs' investment through a TLIC separate account.

111.    TLIC receives fees on all of Plaintiffs investments.

**B.    Mutual Funds**

112.    A mutual fund is a type of investment company under the Investment Company Act ("ICA"), 15 U.S.C. §80a-1 et seq., and is registered with the SEC and is subject to the ICA, the Securities Act of 1933, and SEC regulations.

113.    A mutual fund is commonly referred to as a registered investment company, since it is registered under the ICA.

114.    A mutual fund is composed of a diversified pool of securities.  It is a pooled investment vehicle that invests in a range of securities.  Each mutual fund has a specific investment strategy.

115.    Mutual funds have investment advisors that are responsible for the management

of the pool of securities and these advisors are also registered with the SEC.

116.   Mutual funds typically have more than one share class (i.e, Class A, Class B, Class C, Investor Class, Class I shares, etc.).  Each share class of a particular mutual fund invests in the same pool of securities; however, each share class varies the amount of fees charged to the investors.

117.   Class A, B and C shares of a mutual fund are typically referred to as the retail share class while Class I shares are typically referred to as the institutional share class (the letter designation for the institutional share class of a mutual fund tends to vary by mutual fund company).

118.   Typically, the retail share class of a mutual fund charges higher fees than the institutional share class.

### C.   Collective Investment Trusts

119.   A collective investment trust is also a pooled investment vehicle and similar to a mutual fund, the securities that compose this trust are also professionally managed and each collective trust has a defined investment strategy.

120.   Collective investment trusts are not registered with the SEC and therefore are generally not subject to any of the disclosure requirements promulgated by the Securities Act of 1933, the ICA and the SEC's regulations that accompany such statutes.

121.   Collective investment trusts are overseen by the Office of the Comptroller of Currency.

122.   Collective investment trusts, in most cases, charge lower fees than comparable mutual funds.

123.    Recently, collective investment trusts have grown in popularity as an investment vehicle to use with defined contribution plans (i.e., 401(k) plans).

**D.    Separate Accounts**

124.    A separate account is another type of investment option that may be offered as an investment option to a 401(k) plan.

125.    A separate account can be maintained by an insurance company.  A separate account is generally also similar to a mutual fund in that it pools the resources of multiple investors to invest in individual securities that represent the investment strategy of the separate account.

126.    However, unlike a mutual fund, separate accounts that are offered as investment options by an insurance company in connection with group variable annuity contracts issued/sold to defined contribution plans are generally not registered under the ICA and are generally exempt from disclosure requirements.

127.    Similar to collective investment trusts, separate account investment vehicles generally charge lower fees than a mutual fund.

128.    In addition to investing in a pool of securities to effectuate a specific investment strategy, TLIC also establishes separate accounts to invest in mutual funds and collective investment trusts.

129.    When TLIC offers a mutual fund or a collective investment trust as an investment option to a Plaintiff,  TLIC establishes an unregistered separate account that corresponds to and overlays that mutual fund or collective investment trust, and first deposits Plaintiffs' retirement monies in the TLIC separate account and then deposits the money into the underlying mutual

fund or collective investment trust.

130.    Thus, for all of the mutual funds (which make up the majority of the investment options that TLIC offers to the Plaintiff Plans) and collective investment trusts that TLIC provides as investment options to the Plaintiff Plans, TLIC classifies these investment options as separate account investment options due to the overlaying TLIC separate account.

131.    TLIC alleges that it provides investment management/advice services to many  of the separate accounts, including those that have a mutual fund as the underlying investment.  TLIC also provides investment advice to Plaintiffs on the selection of investment options and on the allocation of the assets of Plaintiffs among such investment options.

132.    Each of the separate accounts that corresponds to each of the investment options has its own investment strategy.  For those separate accounts that simply overlay a mutual fund or collective investment trust, the investment strategy is that of the mutual fund or trust.

133.    Each of the separate accounts receives investments from many different 401(k) plans operated by TLIC and therefore TLIC is pooling assets together from the multiple different 401(k) plans operated by TLIC.

134.    Thus, a participant in a Plaintiff Plan who seeks to invest in the separate account associated with the investment titled by TLIC as the "American Funds Fundamental Investors Inv Opt," will have his or her investment pooled with a Plaintiff in another Plaintiff Plan who also seeks to invest in that investment option.

### E.    Single General Account Investment Option

135.    All of the investment options offered to the Plaintiff Plans are in the form of

separate account investment options (either in the form of a separate account investing in a

mutual fund, collective investment trust, or where the separate account itself contains the

securities and effectuates an investment strategy), with the exception of a single investment

option referred to by TLIC as the Transamerica Stable Value Option.

136.    The assets, and Plaintiffs investments, in the Transamerica Stable Value

Advantage Option, rather than being held in one of TLIC's separate accounts, are held in its

general account.

137.    TLIC descirbes this investment option as a "Cash Equivalent investment

choice...."

## IV.    GENERAL OVERVIEW OF PLAINTIFFS' ERISA CLAIMS

138.    In a traditional 401(k), a participant's investment would be directly invested into

what TLIC uses as the underlying investment vehicle.  In other words, the participants'

investments would be directly invested in a mutual fund or collective investment trust.

Additionally, if the plan offered as an investment option a separate account, it would not be used

as a vehicle to simply overlay either a mutual fund or collective investment trust, but rather

would be used in its traditional form as an investment that actually contains a pool of securities

with a defined investment strategy that receives participants' retirement monies to invest in that

pool of securities, rather than as just a pass through device.

139.    The substance of the Plaintiffs' ERISA claims is that TLIC's group annuity

contracts issued/sold to the Plaintiff Plans, or their sponsors, resulted in Plaintiffs being charged

unreasonable and excessive fees on their retirement investments for products and services that

were not materially different from an investment by a standard 401(k) plan directly into a mutual

fund or collective investment trust.

140.    TLIC sells what is essentially an investment in a fund within a wrapper of an annuity or insurance contract which, upon information and belief, does not provide any features that would not be available if Plaintiff Participants investments were made directly into the underlying fund.[1]

141.    TLIC has failed to fulfill its duties under ERISA as a fiduciary to the Plaintiff Plans by charging excessive unwarranted fees on the investment options it offered to Plaintiffs.

142.    TLIC uses the separate account associated with each of the investment options offered to Plaintiffs to extract excessive fees

143.    TLIC also failed to use its stature as a large investor to negotiate the lowest fees for each investment option it offers to the Plaintiffs.

144.    Defendants, by virtue of charging excessive fees, have appropriated significant assets from the Plaintiff Participants' retirement accounts on a continual basis.

145.    Defendants fees charged to the Plaintiffs exceed what would be a reasonable fee negotiated in an arm's length transaction for such services.

---

[1] The only investment option that provides any sort of a guarantee, for an additional fee, is the Transamerica Stable Value Advantage Option. In general a stable value investment invests in a portfolio of bonds and other low-risk investments. A guarantee is provided because if the low-risk portfolio of assets composing this investment option falls below the rate of return set by the insurance company, the insurer pays the difference, keeping the fund stable. Stable value funds are offered as investment options for traditional 401(k) plans, in addition to those operated through a group annuity contract. While for all of the other investment options TLIC offers to the Plaintiff Plans, the assets, and Plaintiffs' investments are held in TLIC separate accounts and thus insulated from TLIC's creditors, Plaintiffs' investments and assets in the Transamerica Stable Value Advantage Option are held in TLIC's general account and thus are not insulated from TLIC's creditors. Furthermore, with respect to the interest rate promised on this investment option, TLIC can change that interest rate on a monthly basis.

146.    Excessive fees are charged to Plaintiff Participants' accounts, on their investments, both individually and in the aggregate by TLIC.

147.    These excessive fees include: so called "Investment Management and Administrative Charges", fund distribution and service fees (i.e., 12b-1 fees), high expense structures in the underlying investments which do not take advantage of the Defendants' negotiating leverage to obtain the most favorable fee structure, and improper revenue sharing arrangements which inure to the benefit of TLIC instead of being returned to the Plaintiff Plans.

## V.    TLIC'S FIDUCIARY STATUS UNDER ERISA

148.    TLIC is a fiduciary to the Plaintiff Plans pursuant to ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

### A.    TLIC Is An ERISA Fiduciary to the Plaintiff Plans Pursuant To ERISA §401(c)(5)(B), 29 U.S.C. §1101(c)(5)(B), And 29 C.F.R. 2550.401c-1(d)(2)(c)

149.    ERISA §401(c)(5)(B), 29 U.S.C. §1101(c)(5)(B), provides:

No person shall be subject to liability under [ERISA]...on the basis of a claim that assets of an insurer (other than plan assets held in a separate account) constitute assets of the plan, except-...as otherwise provided by the Secretary in regulations intended to prevent avoidance of the regulations issued under paragraph (1)....

150.    Similarly, 29 C.F.R. 2550.401c-1(d)(2)(c) provides as follows:

In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account (other than a separate account registered under the Investment Company Act of 1940) to the extent that the investment performance of such assets is passed directly through to the plan policyholders. ERISA requires insurers, in administering separate account assets, to act solely in the interest of the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and requires insurers to adhere to a prudent standard of care.

151.    TLIC holds all of Plaintiffs' investments (with the exception of Plaintiffs investments into the Transamerica Stable Value Advantage Option) in its separate accounts (on

information and belief all of TLIC's separate accounts are unregistered) and therefore TLIC is a

fiduciary pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), and 401(c)(5)(B), 29 U.S.C.

§§1002(A)(i) and (iii) and 1101(c)(5)(B), as well as under Department of Labor ("DOL")

regulation of 29 C.F.R. 2550.401c-1(d)(2)(c).

>           **B.      TLIC's Authority To, At Its Discretion, Change/Substitute The**
>                     **Investment Options That Are Offered To The Plaintiff Plans**
>                     **Renders It An ERISA Fiduciary To The Plaintiff Plans**

152.    Once TLIC establishes the menu of investment options available to the Plaintiff

Plans, TLIC retains the authority to unilaterally add and delete investment options at its

discretion.

153.  In addition to unilaterally adding and deleting investment options, if the underlying

investment is a mutual fund, TLIC may unilaterally change the share class, of the mutual fund, in

which Plaintiffs' assets are invested.   The changing of the share class of a mutual fund in which

Plaintiffs assets are invested changes the investment option for the Plaintiffs because such

changes affect the fees Plaintiffs are charged and therefore the performance they experience.

154.    Because TLIC retains the authority to unilaterally add and delete the investment

options that are available to Plaintiffs, TLIC is a fiduciary to the Plaintiff Plans pursuant to

ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

>           **C.      Through the Transamerica Fiduciary Warranty TLIC Is An ERISA**
>                     **Fiduciary To The Plaintiffs Plans**

155.    TLIC provides to the Plaintiff Plans the "Transamerica Fiduciary Warranty."

156.    According to TLIC:

> By selecting investments that have been evaluated by the proprietary
> Transamerica Investment Monitor (TIM) investment selection and monitoring
> process and adhering to the minimum investment categories needed, the fiduciary

warranty is designed to help protect plan fiduciaries in the event there is a legal judgment resulting in damages attributable to a breach in the warranty.

157.   According to TLIC:

Transamerica's Fiduciary Warranty provides extra protection for your client's plan fiduciaries. Our Fiduciary Warranty provides specific assurances that your client's investment line-up will:

-Satisfy the "broad range of investments" requirement as set forth by the DOL under 404c of ERISA

-Meet or exceed ERISA's "prudent man" standards set forth by section 404(a)(1)(B)

-Offer investment choices that are suitable for long-term investors

In order for the indemnification to apply, the Investment Fiduciaries must select from Transamerica's models or, if the Investment Fiduciaries select a customized line-up of investment choices, the investment choices offered for the plan participants must at a minimum and at all times include at least one investment choice  from each of the following investment categories:....

158.   According to TLIC, "[o]ur Fiduciary Warranty provides specific covenants that your investment line-up will...[m]eet the prudence requirement of section 404(a)(1)(B) of ERISA...[b]e appropriate for long-term investing."

159.   According to TLIC, "[i]n the event a claim is asserted...Transamerica will: 1. Indemnify and make the plan whole for any loss resulting from breach of Transamerica's representations, warranties, and covenants as set forth above...; and 2. Bear the reasonable costs, including attorneys' fees...."

160.   The second page of the Transamerica Fiduciary Warranty states "[n]or does this Indemnification extend to claims that any expenses paid directly or indirectly by the plan are reasonable."

161.   Plaintiffs' claims are generally based on their allegations that TLIC charged

577467.1                                                29

unreasonable fees on its investment options.

162.    On information and belief, TLIC charges a fee, directly or indirectly, for the Transamerica Fiduciary Warranty.

163.    Through the Transamerica Fiduciary Warranty, TLIC has/had the Plaintiff Plans and/or their sponsors "rubber-stamp" TLIC's investment recommendations and also through the warranty, TLIC is rendering investment advice for a fee, and therefore, for the foregoing reasons, TLIC is a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

### D.    TLIC's Discretionary Authority Over The Investment Options Renders It A Fiduciary

164.    According to TLIC "[i]nvestment options ending with 'Ret Opt' (short for 'Retirement Option') correspond to investment choices for which Transamerica retains investment discretion over the assets."

165.    Many of the investment options TLIC offers to the Plaintiff Plans have, at the end of their name, the designation of "Ret Opt," including many of the investment options TLIC provides to the Gain and Qualcare Plaintiff Plans.

166.    For example, TLIC offers to both Plaintiff Plans, as an investment option, the Loomis Sayles Investment Grade Bond **Ret Opt** (emphasis added).

167.    According to TLIC, all of the investment choices/options are "separate account investment choices."

168.    By retaining discretion over all of the assets of all of the investment options ending with the designation of "Ret Opt" that are offered to the Plaintiff Plans, all of which are separate account investment choices/options, TLIC is a fiduciary, pursuant to ERISA

§§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii), to the Plaitniff Plans with

respect to those investment options.

### E.   TLIC, As An Insurance Company, Is An ERISA Fiduciary To The Plaintiff Plans

169.    TLIC, an insurance company, is a fiduciary under ERISA because through its

group annuity contracts that it uses to operate the Plaintiff Plans it can affect

the amount of Plaintiffs retirement benefits by (A) unilaterally changing the fees it charges

Plaintiffs on the investment of their retirement monies and (B) unilaterally changing the share

class of a mutual fund that is offers as an investment option, or replacing the mutual fund with a

similar type investment vehicle that has the same general investment strategy as the mutual fund

but charges different fees.

170.    Thus, for these reasons TLIC is a fiduciary pursuant to  ERISA §3(21)(A)(i) and

(iii), 29 U.S.C. §1002(21)(A) (i) and (iii).

### F.   TLIC Is a Fiduciary By Rendering Investment Advice and Investment Management Services For An Investment Management Fee To The Separate Account Investment Options

171.    With respect to 18 of the investment options TLIC offers to the QualCare Plan,

TLIC alleges that it provides direct investment management services to each of these investment

options and charges "Investment Management" fees to Plaintiff Participants that invest in these

investment options.

172.    With respect to 17 of the investment options TLIC offers to the Gain Plan

TLIC alleges that it provides direct investment management services to each of these  investment

options and charges  "Investment Management" fees to Plaintiff Participants that invest in these

investment options.

173.    With respect to 98 of the investment options contained in the Partners III menu,

which is, on information and belief, is a menu that serves as a bank of investment options that

TLIC uses as investment options for the Plaintiff Plans,  TLIC alleges that it provides direct

investment management services to each of these  investment options and charges "Investment

Management" fees to Plaintiff Participants that invest in these investment options.

174.    Each of the investment options offered the Plaintiff Plans are unregistered

separate accounts.

175.    Even where the underlying investment is for a registered investment company

(i.e., a mutual fund), Plaintiffs are investing in an overlaying unregistered separate account and

then their investment is deposited into the underlying mutual fund.

176.    The Plaintiffs' investments in these unregistered separate account investments

options are investments of plan assets.

177.    By being the investment manager to certain investment options, which are

unregistered separate accounts and contain plan assets (i.e., Plaintiffs investments), TLIC is a

fiduciary to the Plaintiff Plans that offers those investment options and/or the assets of such

Plaintiff Plans that are invested in the investment options, pursuant to  ERISA §§3(21)(A)(i), (ii)

and (iii), 29 U.S.C. §§1002(21)(A) (i), (ii) and (iii).

### G.    By Negotiating For Revenue Sharing Payments Derived From Plaintiffs' Investments TLIC Is An ERISA Fiduciary To The Plaintiff Plans

178.    By negotiating and/or extracting revenue sharing payments, which are derived

from Plaintiffs investments, from advisors to certain mutual funds that underlie certain separate

account investment options, TLIC is a fiduciary pursuant to ERISA §§3(21)(A)(i) and (iii), 29 U.S.C. §§1002(21)(A)(i) and (iii).

179.    On information and belief, with respect to many of the mutual funds that served as the underlying investment, that were independent of Defendants, TLIC would offer that fund as an investment option to the Plaintiff Plans only if the advisor the independent fund agreed to make revenue sharing payments to TLIC.

> **H.    TLIC, By Taking The Fiduciary Role Of Selecting and Monitoring the Plaintiff Plans Investment Options Is An ERISA Fiduciary To The Plaintiff Plans**

180.    Both the selection and monitoring of an ERISA plan's investment options is a fiduciary function.

181.    According to Defendant TLIC:

> The Transamerica Investment Monitor (TIM) is our proprietary, comprehensive due diligence process for selecting and monitoring the investment choices offered for your retirement plan. The Transamerica Investment Monitor assists you in helping you to fulfilling your fiduciary duty to select investment choices for your plan that have a reasonable expectation to perform well over the long term.

> Key Features of TIM:

> We seek to identify managers and organizations that have the resources, processes and potential to deliver consistent performance over time.

> We maintain the highest standards in selecting and continually monitoring the investment choices offered for your retirement plan line-up.

> We present analysis in a simple and easy-to-understand scorecard format.

> We look for investment choices that have lower than average management expenses.

> **Investment Choice Review and Selection Process**

Transamerica considers reviewing performance a critical component of the selection and monitoring process; however, Transamerica's Investment Committee does not chase performance when reviewing potential investment choices. TIM's strategy also considers investment choices that are consistent within their asset class and have lower than average management expenses. TIM examines six different criteria to determine if an investment choice is appropriate for our investment line-up:

- Performance Measurement

- Style Consistency

- Fees & Expenses

- Investment Process & Portfolio Composition

- Management Tenure

- Organization

TIM's due diligence process seeks to identify managers and organizations that have the resources, processes and disciplines in place to deliver consistent performance over time.

182.    In the event that an investment option offered to the Plaintiff Plans (a) fails to meet TLIC's stringent, proprietary criteria or (b) in TLIC's judgment, experiences a change in its investment process or investment manager, then TLIC may subject such investment option to increased monitoring and then remove such investment option so that it is no longer available to Plaintiffs.  Furthermore, the removed investment option may be replaced by TLIC with what it deems to be a more competitive investment option.

183.    This monitoring process by TLIC, that can result in the removal of investment options offered to the Plaintiff Plans, is generally done on a quarterly basis.

184.    Since TLIC monitors, removes and replaces investment options available to Plaintiffs,  it is a fiduciary pursuant to  ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C.

§§1002(21)(A)(i), (ii) and (iii).

I. **TLIC, By Rendering Investment Advice Through Its "AdviceSolutions Online Retirement Advice" Renders Investment Advice With Respect To Assets of the Plaintiff Plans And Therefore Is An ERISA Fiduciary To The Plaintiff Plans**

185.    TLIC maintains for the Plaintiff Participants, on its website, online accounts for the Plaintiff Participants.

186.    Plaintiff Participants must enter their "log-in" on TLIC's website to gain access to their online accounts.

187.    Once logged-in to their online accounts, on TLIC's  website, Plaintiff Participants can access information about, among other things, the investment of the assets of the retirement account of their Plaintiff Plan.

188.    Once logged-in to their specific online accounts, Plaintiff Participants can access TLIC's copyrighted computer program of  "AdviceSoluctions Online Retirement Advice" ("AdviceSolutions."). They access this program by selecting a link entitled "Retirement Planners" and then by selecting the link entitled AdviceSolutions.

189.    Through AdviceSolutions, Defendant TLIC, as the name implies, renders investment advice to assets/monies of the Plaintiff Plans for a fee.

190.    According to TLIC, AdviceSolutions provides "Instant and Personalized Assistance."

191.    Upon accessing AdviceSolutions a Plaintiff Participant is directed to input various pieces of information that are specific to that Plaintiff Participant.  For example, among other things, the Plaintiff Participants using this program, are required to enter their date of birth; disclose whether they are a smoker; their expected retirement age; current salary; expenses;

savings; and whether they are an aggressive, moderate or conservative investor (these listed

examples of some of the information a Plaintiff Participant enters in using AdviceSoltuions, as

well as the other pieces of information that a Plaintiff Participant must provide, are hereinafter

referred to as the "Input Variables").

192.    Besides entering the Input Variables, a Plaintiff Participant also designates on the

AdviceSolutions program whether they are an advance, intermediate or beginner investor.

193.    After a Plaintiff Participant has entered his or her Input Variables, Defendant

TLIC's AdviceSolutions program processes the data.  The program specifically informs the

Plaintiff Participants that it is processing their data.

194.    After the processing of the Plaintiff Participant's data, TLIC generates a

chart that contains four columns.

195.    The first column of the chart, which is on the far left, lists several investment

options that are available for investment under the Plaintiff Participant's Plaintiff Plan.  This

column is entitled by TLIC as "Fund."

196.     The second column of the chart is entitled "Current Allocation" and lists the

percentage of the Plaintiff Participant's account in the Plaintiff Plan (i.e., plan assets),  that are

currently invested in each of the "Funds" listed in column one.

197.     The third column of the chart is entitled "AdviceSolutions Recommendations."  It

is in this column where TLIC renders investment advice with respect to the assets/monies of the

Plaintiff Plans.  In this column TLIC advises the Plaintiff Participant on how the full value of the

Plaintiff Participant's account in the Plaintiff Plan, should be invested among the Funds listed in

column one.  For each of the Funds listed in column one in which TLIC believes the Plaintiff

Participant should invest, the corresponding section of column three contains a positive percentage. The percentages associated with all of the Funds in which TLIC is advising for investment (i.e., column 3) totals to 100% of the value of the Plaintiff Participant's account in his or her Plaintiff Plan. With respect to the Funds listed on column one for which TLIC believes that no portion of the Plaintiff Participant's account in the Plaintiff Plan should be invested, the corresponding section of column three reflects "0.00%."

198. The fourth and final column of the chart produced by TLIC is entitled "Difference." This column represents, also in percentage terms, the difference in value between the percentage of the Plaintiff Participant's account in the Plaintiff Plan that is currently invested in a specific fund listed in column one and the amount by which TLIC believes/advises that the Plaintiff Participant's account in the Plaintiff Plan should be invested in that Fund.

199. AdviceSolutions is offered to the Plaintiff Participants in the Gain and Qualcare Plaintiff Plans.

200. On information and belief, AdviceSolutions is offered to all, or most of, the Plaintiff Participants of all of the Plaintiff Plans and it is a primary basis for investment decisions by those who utilize it.

201. TLIC receives, on information and belief, fees, for the investment advice it renders through AdviceSolutions.

202. Since TLIC, through AdviceSolutions, is rendering investment advice for a fee or other compensation, directly or indirectly, with respect to monies/assets of the Plaintiff Plans, or has the authority or responsibility to do so, it is a fiduciary pursuant to ERISA §3(21)(A)(ii) and 29 U.S.C. §1002(21)(A)(ii).

### J.    TLIC Admits Its Fiduciary Status

203.    In addition to all of the above reasons as to why TLIC is a fiduciary to the

Plaintiff Plans under ERISA, TLIC has admitted its fiduciary status.

204.    TLIC stated the following:

Fiduciary Monitoring of Every New Investment Choice

For every new investment choice we are offering in 2009, Transamerica
Life Insurance Company is a fiduciary as to the monitoring and
management of its investments underlying each investment choice. As a
fiduciary, in this capacity Transamerica Life Insurance Company can hire,
fire, or retain the investment managers based on its expert, ongoing
review and analysis, or change the underlying investments or investment
objectives to better tailor them to the needs of retirement plan
participants.

205.    Thus, in addition to all of the above reasons set forth above as to why TLIC is a

fiduciary under ERISA, TLIC, by its own admission is a fiduciary under ERISA §§3(21)(A)(i),

(ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

## VI.    PLAINTIFFS' ERISA CLAIMS

### A.    Investment Options TLIC Provides to the Gain And Qualcare Plaintiff Plans.  (These investment options, among others, are used to demonstrate the impermissible fee practices and ERISA violations in which TLIC engages with respect to all of the Plaintiff Plans)

206.  Both the Gain and Qualcare Plaintiff Plans contain the following investment options

(titles are those used by TLIC): American Funds Fundamental Investors Inv Opt, American

Funds Growth Fund of America Inv Opt, American Funds New Perspective Inv Opt, Columbia

Marisco Century Inv Opt, JP Morgan Government Securities Ret Opt, Loomis Sayles Investment

Grade Bond Ret Opt, Neuberger Berman Partners Inv Opt, Transamerica Partners Mid Value Ret

Opt, Transamerica Stable Value Advantage Option[2], Vanguard Total Stock Market Index Ret

Opt, Vanguard Target Retirement 2050 Ret Opt, Vanguard Target Retirement 2045 Ret Opt,

Vanguard Target Retirement 2040 Ret Opt, Vanguard Target Retirement 2035 Ret Opt,

Vanguard Target Retirement 2030 Ret Opt, Vanguard Target Retirement 2025 Ret Opt,

Vanguard Target Retirement 2020 Ret Opt, Vanguard Target Retirement 2015 Ret Opt,

Vanguard Target Retirement 2010 Ret Opt and the Vanguard Target Retirement 2005 Ret Opt.

207. In addition to the investment options listed in paragraph 206 the Qualcare Plan

contains the following investment options: AllianceBernstein International Value Inv Opt,

American Century Large Company Value Inv Opt, American Century Small Cap Value Inv Opt,

Columbia Intermediate Bond Inv Opt, Columbia Mid Cap Value Inv Opt, First American Mid

Cap Growth Opportunities Ret Opt, First American Real Estate Securities Ret Opt, Fidelity

Advisor Small Cap Inv Opt, Loomis Sayles Bond Ret Opt, SSgA International Alpha Select Ret

Opt, SSgA Mid-Cap Index Ret Opt,  SSgA Small-Cap Index Ret Opt, Transamerica Aggressive

Growth Ret Opt, Transamerica Balanced Ret Opt, Transamerica Partners High Yield Bond Ret

Opt, and the   Vanguard Small-Cap Index Ret Opt.

208. In addition to the investment options listed in paragraph 206, the Gain Plan includes

the following investment options: American Funds Balanced Inv Opt, Blackrock Global

Financial Services Inv Opt, Columbia High Income Inv Opt, Evergreen Precious Metals Inv Opt,

Franklin Biotechnology Discovery Inv Opt, Fidelity Advisor Leveraged Company Stock Inv Opt,

First American Small Cap Select Ret Opt, Ivy Science & Technology Inv Opt, Jennison Natural

Resources Inv Opt, Janus Adviser International Growth Ret Opt, Mutual Shares Inv Opt,

---

[2]Titled as the Transamerica Stable Value Option on the Qualcare Plan.

Oppenheimer Main Street Small Cap Ret Opt, Oppenheimer International Growth Ret Opt,

SSgA Russel 1000 Value Index Ret Opt, SSgA MSCI Emerging Markets Index Ret Opt,

American Funds AMCAP Inv Opt, Transamerica Asset Allocation-Moderate Growth Portfolio

Ret Opt, Transamerica Asset Allocation-Moderate Portfolio Ret Opt, Thornburg Core Growth

Ret Opt, Transamerica Small/Mid Cap Value Ret Opt, Transamerica Core Equity Ret Opt,

Transamerica Asset Allocation-Conservative Portfolio Ret Opt, Transamerica Equity Ret Opt,

Transamerica Asset Allocation-Growth Portfolio Ret Opt, and the Transamerica Partners Total

Return Bond Ret Opt.

209.    On information and belief, the investment options that TLIC provides to the Gain

and Qualcare Plans are also used with other Plaintiff Plans.

210.    On information and belief, the impermissible fee practices associated

with the investment options TLIC offers, that are the basis of Plaintiffs ERISA claims, apply to

all, or most, of the investment options that TLIC offers to all of the Plaintiff Plans.  This includes

those TLIC investment options that are not offered to the Gain and Qualcare Plans.

**B.    Investment Options In Which Plaintiffs K. Poley and B. Poley Are
Currently Invested And Investment Options In Which Plaintiff
Santomenno Was Invested**

211.    As of February 4, 2011, Plaintiff K. Poley, a Plaintiff Participant of the Qualcare

Plan, was invested in the following investment options, the: Loomis Sayles Investment Grade

Bond Ret Opt, Transamerica Partners High Yield Bond Ret Opt, American Funds Fundamental

Inv Opt, American Funds Growth Fund of America Inv Opt, First American Mid Cap Growth

Opportunities Ret Opt, Fidelity Advisor Small Cap Inv Opt, and the American Funds New

Perspective Inv Opt.

212.     As of February 4, 2011 Plaintiff B. Poley, a Plaintiff Participant in the Qualcare Plan was invested in the following investment options, the: Transamerica Balanced Ret Opt, Vanguard Target Retirement 2010 Ret Opt, American Funds Fundamental Inv Opt, and the Vanguard Total Stock Market Index Ret Opt.

213.     Through December of 2010 Plaintiff Santomenno was a participant in the Gain Plan, and thus is a Plaintiff Participant.  Prior to leaving the employ of Gain Capital Group, LLC, she was invested in the following investment options, the: Transamerica Stable Value Advantage Option, Transamerica Core Equity Ret Opt, Vanguard Total Stock Market Ret Opt, American Funds AMCAP Inv Opt, American Funds Growth Fund of America Inv Opt, Transamerica Equity Ret Opt, Thornburg Core Growth Ret Opt, First American Small Cap Select Ret Opt, Janus Adviser International Growth Ret Opt, and the Blackrock Global Financial Services Inv Opt.

### C.     Structure of the Investment Options TLIC Provided To the Gain and Qaulcare Plans

214.     Of the investment options listed in paragraphs 206 through 208, the following are structured by TLIC by having the overlaying separate account invest in an underlying mutual fund (following the name of the investment option is the share class of the underlying mutual fund in which the investment option invests) the:  American Funds Fundamental Investors Inv Opt (Class R-3), American Funds Growth Fund of America Inv Opt (Class R-3), American Funds New Perspective Inv Opt (Class R-3), Columbia Marisco 21st Century Inv Opt (Class A), Loomis Sayles Investment Grade Bond Ret Opt (Class Y),  Neuberger Berman Partners Inv Opt (Advisor Class Shares), Vanguard Total Stock Market Index Ret Opt (Investor Class), Vanguard Target Retirement 2050 Ret Opt (Investor Class), Vanguard Target Retirement 2045 Ret Opt

(Investor Class), Vanguard Target Retirement 2040 Ret Opt (Investor Class), Vanguard Target

Retirement 2035 Ret Opt (Investor Class), Vanguard Target Retirement 2030 Ret Opt (Investor

Class), Vanguard Target Retirement 2025 Ret Opt (Investor Class), Vanguard Target Retirement

2020 Ret Opt (Investor Class), Vanguard Target Retirement 2015 Ret Opt (Investor Class),

Vanguard Target Retirement 2010 Ret Opt (Investor Class),  Vanguard Target Retirement 2005

Ret Opt (Investor Class), American Funds Balanced Inv Opt (Class R-3), Blackrock Global

Financial Services Inv Opt (Class A), Columbia High Income Inv Opt (Class A), Evergreen

Precious Metals Inv Opt (Class A), Franklin Biotechnology Discovery Inv Opt (Class A), Fidelity

Advisor Leveraged Company Stock Inv Opt (Class T), First American Small Cap Select Ret Opt

(Class Y), Ivy Science & Technology Inv Opt (Class Y), Jennison Natural Resources Inv Opt

(Class A), Janus Adviser International Growth Ret Opt (Class I),  Mutual Sales Inv Opt (Class

R), Oppenheimer Main Street Small Cap Ret Opt (Class Y), American Funds AMCAP Inv Opt

(Class R-3), Transamerica Asset Allocation-Moderate Growth Portfolio Ret Opt (Class A),

Transamerica Asset Allocation-Moderate Portfolio Ret Opt (Class A), Thornburg Core Growth

Ret Opt (Class R1), Transamerica Small/Mid Cap Value Ret Opt (Class A), Transamerica Asset

Allocation-Conservative Portfolio Ret Opt (Class A), Transamerica Asset Allocation-Growth

Portfolio (Class A), Transamerica Partners Total Return Bond Ret Opt (Investor Class),

AllianceBernstein International Value Inv Opt (Class A), American Century Large Company

Value Inv Opt (Advisor Class), American Century Small Cap Value Inv Opt (Class A), Columbia

Intermediate Bond Inv Opt (Class A), Columbia Mid Cap Value Inv Opt (Class A), First

American Mid Cap Growth Opportunities Ret Opt (Class Y), First American Real Estate

Securities Ret Opt (Class Y), Fidelity Advisor Small Cap Inv Opt (Class T), Loomis Sayles Bond

Ret Opt (Institutional Class) and the Vanguard Small-Cap Index Ret Opt (Investor Class).

215.    Of the investment options listed in paragraphs 206 through 208 the following are structured by TLIC by having the overlaying separate account invest in an underlying collective investment trust, the:  Transamerica Partners Mid Value Ret Opt, Transamerica Partners Mid Value Ret Opt, Oppenheimer International Growth Ret Opt, SSgA Russell 1000 Value Index Ret Opt, SSgA MSCI Emerging Markets Index Ret Opt, SSgA International Alpha Select Ret Opt, SSgA Mid Cap Index Ret Opt, SSgA Small-Cap Index Ret Opt, and the Transamerica Partners High Yield Bond Ret Opt.

216.    Of the investment options listed in paragraphs 206 through 208 the following are structured by TLIC by having no investment vehicle underlying the separate account (meaning the separate account implemented the investment strategy itself) the:  Transamerica Core Equity Ret Opt, Transamerica Equity Ret Opt, Loomis Sayles Bond Ret Opt, Transamerica Aggressive Growth Ret Opt, Transamerica Balanced Ret Opt, and the JPMorgan Government Securities Ret Opt.

217.    Finally, as noted above, the Transamerica Stable Value Advantage Option differs from all investment options because it does not have its own corresponding TLIC separate account, but rather the assets that compose this investment option, and Plaintiffs' investments into it, are held in TLIC's general account.

218.    Through their investments, Plaintiffs B. Poley, K. Poley and Santomenno were invested in investments that represented each of the four different investment structures constructed by TLIC.

219.    Plaintiff B. Poley was invested in the following separate account investment

options where the underlying investment was for a mutual fund the: Vanguard Target Retirement 2010 Ret Opt, American Funds Fundamental Investment Inv Opt, and the Vanguard Total Stock Market Index Ret Opt.

220.    Plaintiff B. Poley was invested in the following separate account investment options where the separate account was the ultimate investment (meaning that the separate account implemented the investment strategy itself): Transamerica Balanced Ret Opt.

221.    Plaintiff K. Poley was invested in the following separate account investment options where the underlying investment was for a mutual fund the: American Funds Fundamental Investors Inv Opt, America Funds Growth Funds of America Inv Opt, First American Mid Cap Growth Opportunities Ret Opt, Fidelity Advisor Small Cap Inv Opt and the American Funds New Perspective Inv Opt

222.    Plaintiff K.Poley was invested in the following separate account investment options where the underlying investment was for a collective investment trust the: Transamerica Partners High Yield Bond Ret Opt.

223.    Plaintiff K. Poley was invested in the following separate account investment options where the separate account was the ultimate investment (meaning that the separate account implemented the investment strategy itself) the: Loomis Sayles Investment Grade Bond Ret Opt.

224.    Plaintiff Santomenno was invested in the following separate account investment options where the underlying investment was for a mutual fund the: Vanguard Total Stock Market Index Ret Opt, American Funds AMCAP Inv Opt and the American Funds Growth Fund of America Inv Opt.

225.    Plaintiff Santomenno was invested in the following separate account investment options where the separate account was the ultimate investment (meaning that the separate account implemented the investment strategy itself) the: Transamerica Core Equity Ret Opt, Transamerica Equity Ret Opt, Thornburg Core Growth Ret Opt, First American Small Cap Select Ret Opt, Janus Adviser International Growth Ret Opt, and the Blackrock Global Financial Services Inv Opt.

226.    Plaintiff Santomenno was invested in the Transamerica Stable Value Advantage Option, which is the only TLIC investment option that was operated through TLIC's general account.

### D.    TLIC Investment Fact Sheets For The Investment Options

227.    TLIC describes each of the investment options to the Plaintiffs on its Investment Fact Sheets.

228.    Among other things, the Investment Fact Sheets explain the structure of the investment (i.e., if it is a separate account that invests in a mutual fund, or a collective investment trust, or if it is a separate account without an underlying investment vehicle), the historical performance of the investment option, and the fees charged by the investment option.

229.    The fees charged by the investment option are expressed by TLIC as the investment option's "Expense Ratio."

230.    The Expense Ratio is expressed as a percentage of each participant's investment in that investment option. The expenses are charged annually. The annual expenses of a mutual fund are commonly expressed as basis points ("bps"). One basis point is equal to 1/100th of a percentage point. For example, a mutual fund that has total annual expenses equal to .78%,

would be expressed as 78bps.  The American Funds Fundamental Investors Inv Opt has an

Expense Ratio equal to .99%. The Expense Ratio of the American Funds Fundamental Investors

Inv Opt, when expressed in bps, equals 99bps (which equals .99%)  Plaintiffs, herein, when

discussing the Expense Ratio of any of the TLIC investment options, or underlying mutual funds,

employ the bps terminology rather than percentages.

     231.    On a page that is separate from the page where the description of the material

facts related to the investment option are disclosed, TLIC also disclosed that, in addition to the

annual Expense Ratio fees charged on Plaintiffs' investments, there may also be contract asset

charges, service fees and contract termination charges.

     232.    Plaintiffs may also be charged redemption fees on their investments.

     233.    With respect to all of the investment options where the ultimate investment is for

a mutual fund (i.e., the separate account invests in a mutual fund) the Investment Fact Sheet also

discloses the name of the underlying mutual fund and the share class of that mutual fund in

which TLIC invests a participant's retirement monies.  TLIC does not provide the underlying

mutual fund's "ticker symbol."

     234.    With respect to those investment options in which the separate account invests in

a mutual fund (which make up the majority of the investment options), the SEC requires

disclosures with respect to those underlying mutual funds including, among other things the

mutual fund's annual prospectus filing (which discloses fees, performance, etc.), quarterly and

annual reports.

     235.    While this is valuable disclosure to investors, its utility to Plaintiffs is limited

since the fees and performance listed in the prospectus of the underlying mutual fund do not

correspond to the fees and performance listed in the Investment Fact Sheets or experienced by Plaintiffs. This difference generally exists because, in most cases, TLIC charges Plaintiffs on their investments, where the ultimate investment is for a mutual fund, fees that are in addition to those fees charged by the underlying mutual fund.

236.    While through their investment Plaintiffs pay the costs incurred for producing these SEC disclosures, the benefits to them are non-existent since the material information in these documents is not applicable to their investments.

237.    Each Investment Fact Sheet also has a "Release Date," which presumably represents the date they were published.

238.    The Investment Fact Sheets associated with the Gain Plan, and relied upon herein by Plaintiffs in explaining their fee based claims, has a "Release Date: 3-31-2010."

239.    The Investment Fact Sheets associated with the Qualcare Plan, and relied upon herein by Plaintiffs in explaining their fee based claims has a "Release Date: 9-30-2010."

240.    Defendants also publish Investment Fact Sheets for its Partner Series III menu.

241.    The Investment Fact Sheets reveal that TLIC's impermissible fee practices are widespread among all of the Plaintiff Plans. This menu contains 170 investment options, and contains many of the investment options that were offered to the Qualcare and Gain Plaintiff Plans.

242.    The Partner Series III menu is not an actual menu of investment options that is available to a Plaintiff Plan, since TLIC limits the investment options that a Plaintiff Plan may invest in to 50 or 80 investment options, but rather, on information and belief, is one of the bank of investment options that TLIC relies on when constructing an investment menu for a Plaintiff

Plan.

243.    On information and belief, most, or all, of the Plaintiff Plans contain

investment options that are derived from the Partner Series III menu.

244.    The Investment Fact Sheet for the Partner Series III menu, and relied upon by

Plaintiffs herein, has a "Release Date 3-31-2010.

      E.    **Excessive Fees Charged to Plaintiffs By TLIC On Their Investments Into Separate Account Investment Options That Invested In A Mutual Fund**

245.    For the following TLIC investment options, offered to the Qualcare and Gain

Plaintiff Plans, where the separate account invests in a mutual fund (meaning the investment is

simply passed through the separate account), the separate account fees for these investments are

in excess of those fees charged by the underlying mutual fund (following the name of the

investment option is the share class of the underlying mutual fund in which the investment option

invests): American Funds Fundamental Investors Inv Opt (Class R-3) , Columbia Marisco 21st

Century Inv Opt (Class A) , Loomis Sayles Investment Grade Bond Ret Opt (Class Y),

Neuberger Berman Partners Inv Opt (Advisor Class Shares), Vanguard Total Stock Market Index

Ret Opt (Investor Class), Vanguard Target Retirement 2050 Ret Opt (Investor Class), Vanguard

Target Retirement 2045 Ret Opt (Investor Class), Vanguard Target Retirement 2040 Ret Opt

(Investor Class), Vanguard Target Retirement 2035 Ret Opt (Investor Class), Vanguard Target

Retirement 2030 Ret Opt (Investor Class), Vanguard Target Retirement 2025 Ret Opt (Investor

Class), Vanguard Target Retirement 2020 Ret Opt (Investor Class), Vanguard Target Retirement

2015 Ret Opt (Investor Class), Vanguard Target Retirement 2010 Ret Opt (Investor Class),

Vanguard Target Retirement 2005 Ret Opt (Investor Class), American Funds Balanced Inv Opt

(Class R-3), Blackrock Global Financial Services Inv Opt (Class A), Evergreen Precious Metals
Inv Opt (Class A), Fidelity Advisor Leveraged Company Stock Inv Opt (Class T), Jennison
Natural Resources Inv Opt (Class A), Janus Adviser International Growth Ret Opt (Class I),
Oppenheimer Main Street Small Cap Ret Opt (Class Y), Transamerica Asset
Allocation-Moderate Portfolio Ret Opt (Class A), Transamerica Partners Total Return Bond Ret
Opt (Investor Class), American Century Large Company Value Inv Opt (Advisor Class),
Columbia Intermediate Bond Inv Opt (Class A), Columbia Mid Cap Value Inv Opt (Class A),
Loomis Sayles Bond Ret Opt (Institutional Class), Vanguard Small-Cap Index Ret Opt (Investor
Class).

246.    In many cases the fees of the separate account greatly exceeded that of the
underlying fund.  For example, for the Vanguard Total Stock Market Index Ret Opt (Investor
Class), which Plaintiffs Santomenno and B. Poley invested in, the separate account fees charged
to Plaintiff Participants in both the Qualcare and Gain Plans are 93bps, while the underlying
mutual fund only charges fees equal to 18bps.

247.    On the Investment Fact Sheets, TLIC does not disclose to Plaintiffs the fees
charged by the underlying mutual fund, rather it only provides Plaintiffs the fees that it sets as the
Expense Ratio for investing in the overlaying separate account.

248.    On information and belief, TLIC's practice of charging fees that are in excess of
the amount an investor would pay if he or she invested directly in the mutual fund that underlies
the separate account are widespread and applicable to all, or most of, the Plaintiff Plans.

249.    This belief is based on the fact that for 103 of the investment options contained on
the Partner Series III menu, the separate account fees were in excess of the fees charged by the

underlying mutual fund.

250.   The disclosure in the "Investment Information" section for all of the Investment Fact Sheets for the TLIC investment options where the separate account invests in a mutual fund indicates that the Plaintiffs' investment in the overlying separate account resulted only in the purchase of shares of the underlying mutual fund.

251.   For example, the disclosure in the Investment Information section of the Investment Fact Sheet for the Blackrock Global Financial Services Inv, which is typical of all of the TLIC investment options where the ultimate investment is for a mutual fund, states:

> The Blackrock Global Financial Services Inv Opt, a TLIC Separate Account, invests exclusively in the Blackrock Financial Services Fund (Class A Shares), a mutual fund (Fund)

252.   As another example, the disclosure in the Investment Information section of the Investment Fact Sheet for the Loomis Sayles Investment Grade Bond Ret Opt (Class Y) states:

> The Loomis Sayles Investment Grade Bond Ret Opt, a TLIC Separate Account, invests in the Loomis Sayles Investment Grade Bond Fund (Class Y Shares) a mutual fund.

253.   TLIC further describes Plaintiffs' investment as follows:

> The separate account...invest[s] in another underlying fund to make up your investment.  Therefore, the units of the separate account function and perform in the same way shares would in a mutual fund.

254.   Thus, the Plaintiff Participants are paying fees in excess of those charged by the underlying mutual fund to TLIC for an investment that simply results in the purchase of shares of a mutual fund.

255.   All of the underlying mutual funds are sold in the open market and most of the individual fees that compose the total expense ratio of the underlying mutual fund are approved

by the mutual fund's board of directors acting in a fiduciary capacity.

256.    On information and belief the Expense Ratio of the separate account, which exceeds that of the underlying mutual fund, is not approved, by an independent board of directors.

257.    The excessive fees of the separate account were unjustified because they do not result in any additional benefits for the Plaintiffs, other than an investment in a mutual fund. Therefore the Expense Ratio with respect to all of the TLIC separate account investment options that invested in a mutual fund should have been equal to the fees charged by the underlying mutual fund.

258.    The SEC has opined that the separate account fees should not exceed that of the underlying mutual fund:

> In many respects the variable annuity separate account operates much like a mutual fund during the contract's pay-in phase.  As a result the Division and other entities have questioned whether variable annuity issuers should be permitted to deduct asset based charges. . .on a basis that is different from that required of mutual funds. (May 1992 Report from SEC Division of Investment Management, Chapter 10, Variable Insurance, p. 401).

259.    The fact that these fees were unjustified or inflated is further demonstrated by the fact that for the following investment options, where the separate account invested in a mutual fund, the fees charged by TLIC were either less than, or equal to, the fees charged by the share class of the underlying mutual fund that TLIC invested Plaintiffs' assets in: American Funds Growth Funds of America Inv Opt (Class R-3; separate account fees are equal to the fees of the underlying mutual), American Funds New Perspective Inv Opt (Class R-3; separate account fees are equal to the fees of underlying mutual fund), Columbia High Income Inv Opt (Class A;

separate account fees are equal to the fees of the underlying mutual fund), Franklin Biotechnology Discovery Inv Opt (Class A, separate account fees are equal to the fees of the underlying mutual fund), First American Small Cap Select Ret Opt (Class Y, separate account fees are equal to the fees of the underlying mutual fund), Ivy Science & Technology Inv Opt (Class Y, separate account fees are equal to the fees of the underlying mutual fund), Mutual Sales Inv Opt (Class R, separate account fees are less than the fees of the underlying mutual fund), American Funds AMCAP Inv Opt (Class R-3, separate account fees are less than the fees of the underlying mutual fund), Transaermica Asset Allocation-Moderate Growth Portfolio Ret Opt (Class A, separate account fees are less than the fees of the underlying mutual fund), Thornburg Core Growth Ret Opt (Class R1, separate account fees are equal to the fees of the underlying mutual fund), Transamerica Small/Mid Cap Value Ret Opt (Class A, separate account fees are less than the fees of the underlying mutual fund), Transamerica Asset Allocation-Conservative Portfolio Ret Opt (Class A, separate account fees are less than the fees of the underlying mutual fund), Transamerica Asset Allocation-Growth Portfolio (Class A, separate account fees are less than the fees of the underlying mutual fund), Alliance Bernstein International Value Inv Opt (Class A, separate account fees are equal to the fees of the underlying mutual fund), American Century Small Cap Value Inv Opt (Class A, separate account fees are equal to the fees of the underlying mutual fund), First American Mid Cap Growth Opportunities Ret Opt (Class Y, separate account fees equal to the fees of the underlying mutual fund), First American Real Estate Securities Ret Opt (Class Y, separate account fees are equal to the fees of the underlying mutual fund), and the Fidelity Advisor Small Cap Inv Opt (Class T, separate account fees are equal to the fees of the underlying mutual fund).

260.     Since an investment into a separate account that had a mutual fund underlying it, only provided Plaintiffs, the benefits of an investment into the underlying mutual fund, and no other benefits and/or services, any fees that TLIC charged Plaintiffs on these investments, that exceeded the fees charged by the underlying mutual fund, were excessive and unnecessary.

261.     By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404, 29 U.S.C. §1104, and committed prohibited transactions pursuant to ERISA §406, 29 U.S.C. §1106.

262.     The damages the Plaintiffs suffered on account of being charged fees that exceed that of the underlying mutual fund on separate account investment options that  invested in mutual funds is greater than just the amount of these fees.

263.     As the Department of Labor stated in its publication entitled "A Look at 401(k) Plan Fees" "fees and expenses...may substantially reduce the growth of your [401(k)] account."

264.     Similarly, the Center for Retirement Research at Boston College in a report funded by the United States Social Security Administration, stated: "[o]ver a 30-year career, for example, an annual fee of .7 percent [70bps] reduces the purchasing power of a participant's balance at the time of retirement by more than one-eighth."

265.     Therefore, the Plaintiffs not only suffered damages on account of these excessive fees, but also damages in the form of the inferior returns they experienced on account of these excessive fees.

**F.     Investment Management Fees Charged By TLIC to Plaintiffs On Their Investments Into Certain Separate Account Investment Options That Invested In A Mutual Fund**

266.    For the following investment options listed in paragraph 245, TLIC discloses that the fee differential between the overlaying separate account and underlying mutual fund are in whole, or part, due to TLIC's "Investment Management and Administrative Charges" (TLIC abbreviates these charges as "IM" and "Admin") the: Loomis Sayles Investment Grade Ret Opt (Class Y), Vanguard Total Stock Market Index Ret Opt (Investor Class), Vanguard Target Retirement 2050 Ret Opt (Investor Class),  Vanguard Target Retirement 2045 Ret Opt (Investor Class), Vanguard Target Retirement 2040 Ret Opt (Investor Class), Vanguard Target Retirement 2035 Ret Opt (Investor Class), Vanguard Target Retirement 2030 Ret Opt (Investor Class), Vanguard Target Retirement 2025 Ret Opt (Investor Class), Vanguard Target Retirement 2020 Ret Opt (Investor Class), Vanguard Target Retirement 2015 Ret Opt (Investor Class),Vanguard Target Retirement 2010 Ret Opt (Investor Class),  Vanguard Target Retirement 2005 Ret Opt (Investor Class), Oppenheimer Main Street Small Cap Ret Opt (Class Y) and the Vanguard Small-Cap Index Ret Opt (Investor Class).

267.    Investment Management and Administrative Charges are also charged by TLIC on the following investment options where the separate account fees are equal to the share class of the underlying mutual fund selected by TLIC, the: First American Mid Cap Growth Opportunities Ret Opt (Class Y) and the First American Real Estate Securities Ret Opt (Class Y).

268.    TLIC is not registered as an investment adviser with the SEC.

269.    All of the investment advisers to the mutual funds that underlie the investment options listed in paragraphs 266 and 267, are registered with the SEC.

270.    The Investment Fact Sheets, published by TLIC, state that the fees for Investment

Management and Administrative Charges total 75bps: Loomis Sayles Investment Grade Bond Ret Opt (Class Y), Oppenheimer Main Street Small Cap Ret Opt, First American Mid Cap Growth Opportunities Ret Opt (Class Y) and the First American Real Estate Securities Ret Opt.

271.   For the remainder of the investment options listed in paragraph 266, TLIC does not disclose the amount of the Investment Management and Administrative Charges, but, on information and belief, these fees also total approximately 75bps.

272.   TLIC does not disclose how the approximately 75bps in fees are allocated between the Investment Management Charge and the Administrative Charge.  However, for the reasons set forth below, the portion of this 75bps fee, or approximate 75bps fee, that TLIC allocates to the Investment Management Charge are impermissible.

273.   TLIC does not disclose the investment management or administrative services it provides for the Investment Management or Administrative Charges.

274.   All of the mutual funds that underlie the investment options where TLIC charges an Investment Management fee are sold in the open market and the mutual fund's investment management fee, which is approved by the board of each of the mutual fund's in a fiduciary capacity, is sufficient to cover all of the fees needed for rendering investment management/advisory services to the fund, and, on information and belief, is also sufficient to generate a profit for the sponsors of those mutual funds.

275.   In addition to paying the Investment Management Charge levied by TLIC on Plaintiffs' investments into certain separate account investment options that invest in mutual funds, Plaintiffs also pay the underlying mutual fund's investment management fees.

276.   Therefore, as (a) the underlying mutual fund's investment management fee

supported the provision of all of the necessary investment management/advisory services needed for the mutual fund, (b) the overlaying separate account, that charged an investment management fee, only resulted in an investment in the underlying mutual fund, the Investment Management Charges that were paid by the Plaintiffs on their investment into these investment options were excessive and unnecessary, because either the alleged investment management services performed by TLIC were unnecessary or simply not performed.

277.    As further evidence that the Investment Management Charges that Plaintiffs paid were excessive and unnecessary, many of the other investment options offered by TLIC, where the separate account simply invested in a mutual fund, did not charge a separate Investment Management Charge.

278.    On information and belief, TLIC's practice of charging an Investment Management Charge to Plaintiffs on their investments into separate account investment options that invest in mutual funds is widespread with respect to the investment options TLIC offers to all of the Plaintiff Plans.

279.    This belief is based on the fact that 98 of the investment options contained on the Partner Series III menu (many of these investment options are used by TLIC with the Gain and Qualcare Plaintiff Plans), where the separate account serves to invest Plaintiffs' assets in the underlying mutual fund, also charged an Investment Management fee.

280.    As stated above, TLIC does not disclose how much of the  75bps, or approximate 75bps, fees are allocated between the Investment Management Charge and  the Administrative Charge.  However, for the reasons set forth above, the portion of this 75bps fee, or approximate 75bps fee, that TLIC allocates to the Investment Management charge on any of its investment

options, where the overlaying separate account invests in an underlying mutual fund, is

excessive. TLIC by charging Plaintiffs an Investment Management fee on their investments into

separate account investment options that invested in a mutual fund, breached its fiduciary duties

pursuant to ERISA §404, 29 U.S.C. §1104, and committed prohibited transactions pursuant to

ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3).

> **G.      Payment of Impermissible Revenue Sharing Payments,
> Derived From Plaintiffs' Investments, To TLIC From Advisers
> To Certain Mutual Funds That Underlie The Separate
> Account Investment Options That Invest In Mutual Funds**

281.    With respect to four of the separate account investment options, that invest in

mutual funds and that were offered to the Gain and/or Qualcare Plaintiff Plans, and for which

TLIC charged Plaintiffs Investment Management and Administrative Charges, TLIC disclosed

that it received "fee income," derived from Plaintiffs' investments, from the advisors to the

mutual funds that underlie those investment options. This "fee income" is hereinafter referred to

as "Revenue Sharing Payments."

282.    The four investment options, where the advisor to the underlying mutual fund

paid Revenue Sharing Payments to TLIC, on account of Plaintiffs' investments, are the:

Loomis Sayles Investment Grade Bond Ret Opt (Class Y), Oppenheimer Main Street

Small Cap Ret Opt (Class Y), First American Mid Cap Growth Opportunities Ret Opt

(Class Y) and the First American Real Estate Securities Ret Opt (Class Y).

283.    The amount of Revenue Sharing Payments on these investment options ranged

from 15 to 25 bps.

284.    The Revenue Sharing Payments were derived from Plaintiffs' investments

because when their retirement monies were deposited into the underlying mutual fund, the

advisor to the underlying mutual fund remitted a portion of Plaintiffs' investment to TLIC.

285.   On information and belief, TLIC required payment of these Revenue Sharing
Payments from the advisors to the underlying mutual funds, in order for TLIC to include the
mutual fund as an investment option that TLIC offered to the Plaintiff Plans.

286.   On information and belief, TLIC's practice of requiring/receiving Revenue
Sharing Payments which are derived from Plaintiffs' investments is widespread with respect to
the Plaintiff Plans.

287.   This belief is based on the fact that for 74 of the investment options on the Partner
Series III menu (many of these investment options are used by TLIC with the Gain and Qualcare
Plaintiff Plans), the advisers to the underlying mutual funds paid Revenue Sharing Payments to
TLIC that were derived from Plaintiffs' investments.  These Revenue Sharing payments ranged
from between 5 to 60bps.

288.   TLIC claims that the Revenue Sharing Payments were used to reduce the
Investment Management and Administrative Charges.

289.   TLIC does not disclose how its 75bps Investment Management and
Administrative Charges, that were charged in excess of the underlying mutual fund's fees, were
specifically allocated between the Investment Management and Administrate Charges.

290.   As alleged above in section IV. F, the Investment Management Charges were
impermissible.

291.   The Administrative Charges were also impermissible, because these charges were
also in excess of the fees charged by the underlying mutual funds.  In addition to paying the
Administrative Charges that were levied by TLIC on separate account investment options that

invest in mutual funds, Plaintiffs paid fees to the underlying mutual fund for its administrative services.

292.    Many of the TLIC separate account investment options that invest in a mutual fund do not charge Plaintiffs any Administrative Charges.

293.    The charging of any fees by TLIC to Plaintiffs that are in excess of the fees charged by each of the mutual funds that underlie the overlaying separate account is impermissible.

294.    Thus, the Investment Management and Administrative Charges are a fiction created by TLIC so that it appears to Plaintiffs as if they are receiving a benefit on account of TLIC's receipt of the Revenue Sharing Payments.

295.    TLIC, by receiving the Revenue Sharing Payments, derived from Plaintiffs' investments into certain separate account investment options that invested in mutual funds, breached its fiduciary duties pursuant to ERISA §404, 29 U.S.C. §1104, and committed prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3).

### H.    Commission of Prohibited Transactions By TLIC For Payment of Investment Management/Advisory Fees To Its Affiliates That Advise/Subadvise Mutual Funds

296.    TAMI is the advisor to the mutual funds that underlie the following TLIC separate account investment options: Transamerica Asset Allocation-Moderate Growth Portfolio Ret Opt (Class A), Transamerica Asset Allocation-Moderate Portfolio Ret Opt (Class A), Transamerica Small/Mid Cap Value Ret Opt (Class A), Transamerica Asset Allocation-Conservative Portfolio Ret Opt (Class A), Transamerica Asset Allocation-Growth Portfolio (Class A), and the Transamerica Partners Total Return Bond Ret Opt (Investor Class).

297.   TIML is the subadvisor to the mutual fund that underlies the Transamerica Small/Mid Cap Value Ret Opt (Class A).

298.   TAMI and TIML are affiliates of TLIC.

299.   TAMI received investment management, investment advisory or similar fees from Plaintiffs' investments into the investment options listed in paragraph 296.

300.   TIML received investment management, investment advisory or similar fees from Plaintiffs' investments into the Transamerica Small/Mid Cap Value Ret Opt (Class A).

301.   TAMI's and TIML's receipt of investment management, investment advisory or similar fees on account of Plaintiffs' investments into the investment options listed in paragraph 296, constituted prohibited transactions under ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3).

I.   **TLIC's Failure to Invest Plaintiffs' Investments In Separate Accounts That Invested In Mutual Funds In the Least Expensive Share Class Of the Mutual Fund**

302.   Mutual funds have several different share classes.

303.   TLIC states, "[e]ach share class invests in the same diversified pool of securities; however, each share class will vary by the amount of annual fees and expenses paid by the shareholder."

304.   TLIC has acknowledged that with respect to investing, "[i]n general, the lower the expense ratio the better."

305.   Since the different share classes of a mutual fund all invest in the same diversified pool of securities, the share class with the lowest amount of fees will provide the highest investment returns.

306.    Higher fees reduce investment returns.

307.    Larger pools of money generally have access to the "institutional share class" of a mutual fund.

308.    Smaller investors generally only have access to the "retail share class" of a mutual fund.

309.    Institutional share classes may have investment minimums that a 401(k), or in this case 401(k)s, must meet to gain access, or may simply waive the investment minimum requirements for 401(k)'(s).

310.    Institutional share classes of a mutual fund are generally less expensive than the retail share class of a mutual fund because the institutional share class generally does not charge a 12b-1 fee.

311.    If the lowest priced institutional share class of a mutual fund has an investment minimum, this minimum need not be met by a single investor, but can be met by an institution that pools investors' funds.

312.    With respect to the following investment options that TLIC provided to the Gain and/or Qualcare Plans, where the separate account invested in a mutual fund, the underlying mutual fund had a share class that was less expensive than the share class selected by TLIC (the share class listed after the investment option corresponds to the share class selected by TLIC, not to the lowest priced share class of the underlying mutual fund): American Funds Fundamental Investors Inv Opt (Class R-3), American Funds Growth Fund of America Inv Opt (Class R-3), American Funds New Perspective Inv Opt (Class R-3), Columbia Marisco 21st Century Inv Opt (Class A), Neuberger Berman Partners Inv Opt (Advisor Class Shares), Vanguard Total Stock

Market Index Ret Opt (Investor Class), American Funds Balanced Inv Opt (Class R-3),

Columbia High Income Inv Opt (Class A), Evergreen Precious Metals Inv Opt (Class A),

Franklin Biotechnology Discovery Inv Opt (Class A), Fidelity Advisor Leveraged Company

Stock Inv Opt (Class T), Ivy Science & Technology Inv Opt (Class Y), Jennison Natural

Resources Inv Opt (Class A), Mutual Sales Inv Opt (Class R), American Funds AMCAP Inv Opt

(Class R-3), Transamerica Asset Allocation-Moderate Portfolio Ret Opt (Class A), Thornburg

Core Growth Ret Opt (Class R1), Transamerica Small/Mid Cap Value Ret Opt (Class A),

Transamerica Asset Allocation-Conservative Portfolio Ret Opt (Class A), Transamerica Asset

Allocation-Growth Portfolio (Class A), Transamerica Partners Total Return Bond Ret Opt

(Investor Class), AllianceBernstein International Value Inv Opt (Class A), American Century

Large Company Value Inv Opt (Advisor Class), American Century Small Cap Value Inv Opt

(Class A), Columbia Intermediate Bond Inv Opt (Class A), Columbia Mid Cap Value Inv Opt

(Class A), First American Mid Cap Growth Opportunities Ret Opt (Class Y), First American

Real Estate Securities Ret Opt (Class Y), Fidelity Advisor Small Cap Inv Opt (Class T), and the

Vanguard Small-Cap Index Ret Opt (Investor Class).

 313. The difference in fees in the share class of the underlying mutual fund selected by

TLIC and the least expensive share class is significant in some cases.

 314. Furthermore, even when the underlying mutual fund is affiliated with TLIC, it

failed to negotiate, on Plaintiffs' behalf, that their investments be invested into the least

expensive share class of the underlying mutual fund.  The TLIC affiliated mutual funds

underlying the following TLIC investment options all offer a lower priced share class than the

share class selected by TLIC:  Transamerica Asset Allocation-Moderate Portfolio Ret Opt (Class

A), Transamerica Small/Mid Cap Value Ret Opt (Class A), Transamerica Asset Allocation-Conservative Portfolio Ret Opt (Class A), Transamerica Asset Allocation-Growth Portfolio (Class A), and the Transamerica Partners Total Return Bond Ret Opt (Investor Class).

315.    With respect to the investment options listed in paragraph 312, TLIC was either investing Plaintiffs retirement monies in the retail share class or a higher priced institutional share class, when, in both cases, a lower priced institutional share class of the mutual fund was available to receive Plaintiffs' investments.  In many cases the difference in fees was due to the fact that the share class in which TLIC invested Plaintiffs' retirement monies charged 12b-1 fees.

316.    On information and belief, TLIC's practice, with respect to separate accounts that invest in mutual funds, of failing to invest in the least expensive share class of the underlying mutual fund, is widespread.

317.    This belief is based on the fact that, with respect to many of the investment options on the Partners Series III menu, TLIC failed to invest in the least expensive share class of the underlying mutual fund.

318.    With respect to all separate accounts that TLIC offered as investment options to the Plaintiff Plans that invest in mutual funds, on information and belief, TLIC possessed the economic leverage/negotiating power/stature, as a large investor, to negotiate, on the Plaintiffs' behalf, that their retirement monies be invested in the lowest priced share class of all of the mutual funds because: (a) TLIC was able to force independent advisors to many of the mutual funds that underlie the separate accounts to pay TLIC "fee income," (b) as of December 31, 2010, TLIC, through its group annuity contracts, was managing $19.5 billion in assets, (c) TLIC pools retirement investments from multiple different Plaintiff Plans into each of the

separate accounts associated with each of the investment options prior to investing in the underlying mutual fund, and (d) with respect to two of the investment options TLIC offered to the Qualcare and/or Gain Plaintiff Plans, where the mutual fund underlying the separate account is independent of TLIC, the separate account fees were less than those charged by the share class of the mutual fund selected by TLIC and (e) TLIC possessed sufficient stature to gain access to independent advisors collective investment trusts and separate accounts.

319.     By failing to invest Plaintiffs' retirement monies in the lowest priced share class of the underlying mutual fund, where applicable, TLIC breached its fiduciary duties pursuant to ERISA 404, 29 U.S.C. 1104.

### J.     Excessive Fees Associated with Separate Account Investment Options that (i) Invested in a Collective Investment Trust and (ii) that Had no Underlying Investment Vehicle

320.     The following investment options offered to the Qualcare and/or Gain Plans are structured such that the separate account invests in a collective investment trust:  Transamerica Partners Mid Value Ret Opt, Transamerica Partners Mid Value Ret Opt, Oppenheimer International Growth Ret Opt, SSgA Russell 1000 Value Index Ret Opt, SSgA MSCI Emerging Markets Index Ret Opt, SSgA International Alpha Select Ret Opt, SSgA Mid Cap Index Ret Opt, SSgA Small-Cap Index Ret Opt, and the Transamerica Partners High Yield Bond Ret Opt.

321.     Plaintiffs' investment in a separate account that invests in a collective investment trust is similar to that of a Plaintiff's investment in a separate account that invests in a mutual fund in that their investments are passed through the separate account and then into the collective investment trust.

322.     For the following separate account investment options offered to the Qualcare

and/or Gain Plans, the separate account itself is the ultimate investment (meaning that the separate account is not a pass through vehicle, but rather it implements the investment strategy): Transamerica Core Equity Ret Opt, Transamerica Equity Ret Opt, Loomis Sayles Bond Ret Opt, Transamerica Aggressive Growth Ret Opt, Transamerica Balanced Ret Opt, and the JPMorgan Government Securities Ret Opt.

323.   Separate account investment options, such as those listed in the preceding paragraph, that are not used by TLIC as pass through vehicles to invest in an underlying mutual fund or collective investment trust, are hereinafter referred to as the "Traditional Separate Accounts."

324.   A Traditional Separate Account, with respect to the aspect of having a defined investment strategy and an advisor to effectuate that strategy, is no different than a mutual fund.

325.   However, unlike mutual funds, collective investment trusts and Traditional Separate Accounts are not subject to the SEC's disclosure requirements.

326.   Both Traditional Separate Accounts and collective investment trusts, generally, charge lower fees than the institutional share class of a comparable mutual fund that is undertaking the same, or a very similar, investment strategy.

327.   Collective trusts have grown in popularity as an investment vehicle to use with a defined contribution plan.

328.   While collective investment trusts and Traditional Separate Accounts generally charge less in fees than the institutional share class of a comparable mutual fund that has the same investment strategy, the fees TLIC charged on Plaintiffs' investments into its Traditional

Separate Accounts and collective investment trust investment options, on information and belief, were in excess of the fees charged by an institutional share class of a comparable mutual fund or a comparable collective investment trust or Traditional Separate Account.

329.    Traditional Separate Accounts and collective investment trusts are not subject to the SEC's disclosure requirements.  Therefore, at this time, the only information Plaintiffs' have regarding these investment options is the information provided by TLIC on the Investment Fact Sheets.

330.    With respect to one of the separate account investment options that invests in a collective investment trust that is offered with the Qualcare Plaintiff Plan (the SsgA International Alpha Select Ret Opt) and one of the Traditional Separate Account investment options that is offered on the Partner Series III menu, Plaintiffs have identified what they believe to be comparable mutual funds for purposes of illustrating the excessive fees associated with TLIC's collective investment trusts and Traditional Separate Accounts.

331.    According to the Investment Fact Sheet for the Franklin Small-Mid Cap Growth Ret Opt, a Traditional Separate Account, its Expense Ratio is equal to 127bps.

332.    According to the Investment Fact Sheet, prior to January 14, 2005, this investment option was structured as a separate account that invests in a mutual fund.  The mutual fund which it invested in was the Franklin Small-Mid Cap Growth Fund (Class A Shares).  Currently, Class A, the retail share class of that mutual fund (ticker: FRSGX), charges annual fees equal to 105bps, while the institutional share class of that mutual fund (ticker: FSGAX) charges 80bps.

333.    With respect to the SSgA International Alpha Select Ret Opt, on that Traditional Separate Account investment, TLIC charges Plaintiffs an annual Expense Ratio of 135bps.  State

Street Global Advisors Ltd. is the investment manager to that separate account. An affiliate of State Street Global Advisors Ltd. advises the SSgA International Stock Selection Fund (Ticker Symbol: SSAIX). The fees charged for investing in that fund are 100bps.

334.    The other collective investment trust and Traditional Separate Account investment options that TLIC offers to the Plaintiff Plans, as reflected on the Investment Fact Sheets, charge fees that are comparable to the Franklin Small-Mid Cap Growth Ret Opt and the SSgA International Alpha Select Ret Opt. Those fees are listed below:

| Name of TLIC Separate Account Investment Option that Invests in a Collective Investment Trust or Traditional Separate Account Investment Option | Fees Charged By TLIC |
| --- | --- |
| SSgA MSCI Emerging Index Ret Opt | 99bps |
| Templeton Foreign Ret Opt | 140bps |
| SSgA International Stock Index Ret Opt | 95bps |
| SsgA International Alpha Select Ret Opt | 135bps |
| Oppenheimer International Growth Ret Opt | 150bps |
| AIM International Growth Ret Opt | 145bps |
| Oppenheimer Global Ret Opt | 123bps |
| American Century Global Growth Ret Opt | 120bps |
| SsgA Dow Jones Small Cap Growth Index Ret Opt | 83bps |
| Artisan Small-Cap Growth Ret Opt | 138bps |
| SsgA Small-Cap Index Ret Opt | 84bps |
| Federated MDT Small Cap Index Blend Ret Opt | 145bps |
| SsgA Dow Jones Small Cap Value Index Ret Opt | 85bps |

| Name of TLIC Separate Account Investment Option that Invests in a Collective Investment Trust or Traditional Separate Account Investment Option | Fees Charged By TLIC |
|---|---|
| Janus Small Cap Value Ret Opt | 145bps |
| Transamerica Growth Opportunities Ret Opt | 110bps |
| Goldman Sachs Mid-Cap Opportunities Ret Opt | 130bps |
| Franklin Small-Mid Cap Growth Ret Opt | 127bps |
| Transamerica Equity Ret Opt | 110bps |
| Transamerica Aggressive Growth Ret Opt | 110bps |
| SsgA Russell 1000 Growth Index Ret Opt | 83bps |
| Janus Capital Appreciation Ret Opt | 117bps |
| SsgA Mid-Cap Index Ret Opt | 79bps |
| Transamerica Core Equity Ret Opt | 105bps |
| Ssga Russell 1000 Value Index Ret Opt | 83bps |
| Goldman Sachs Strategic Value Ret Opt | 129bps |
| Transamerica Balanced Blend Ret Opt | 105bps |
| Transamerica Bond Ret Opt | 97bps |
| JPMorgan Government Securities Ret Opt | 109bps |
| Loomis Sayles Bond Ret Opt | 125bps |
| SsgA Bond Index Ret Opt | 85bps |
| AIM Capital Appreciation Ret Opt | 125bps |

335.    Based on the data Plaintiffs obtained with respect to the Franklin Small-Mid Cap

Growth Ret Opt and the SSgA International Alpha Select Ret Opt, and the above table, on

information and belief, TLIC either (a) did not use its stature as a large investor to negotiate the

traditional lower fees that are associated with collective investment trusts and Traditional

Separate Accounts or (b) TLIC did use its stature, with respect to these investment options, to negotiate the traditional lower fees that are associated with them, but retained such fee savings rather than passing them along to Plaintiffs.

336.    In the event TLIC failed to use its stature as a large investor to negotiate on the Plaintiffs' behalf, for the lower fees typical of collective investment trusts and Traditional Separate Accounts, TLIC breached its fiduciary duties pursuant to ERISA §404, 29 U.S.C. §1104.

337.    In the event that TLIC did use its stature as a large investor to negotiate for the lower fees that are typical of collective investment trusts and Traditional Separate Accounts, but retained those savings, rather than passing them along to Plaintiffs, TLIC breached its fiduciary duties pursuant to ERISA §406, 29 U.S.C. §1106.

> **K.    Commission of Prohibited Transactions By TLIC For Payment of Investment Management/Advisory Fees To Its Affiliates That Advise/Subadvise Collective Investment Trusts or Traditional Separate Accounts**

338.    TAMI is the investment manager to the collective investment trusts underlying the following investment options, that TLIC uses with the Gain and/or Qualcare Plaintiff Plans, the: Transamerica Partners Mid Value Ret Opt and the Transamerica Partners High Yield Bond Ret Opt.

339.    TIML is the subadvisor to the following Traditional Separate Account investment options, that TLIC uses with the Gain and/or Qualcare Plaintiff Plans, the: Transamerica Balanced Ret Opt, Transamerica Core Equity Ret Opt, Transamerica Equity Ret Opt, and the Transamerica Aggressive Growth Ret Opt.

340.    Both TAMI and TIML are affiliates of TLIC.

341.    In connection with serving as either the investment manager or subadvisor to the investment options listed in paragraphs 338 and 339, TAMI and TIML received, on information and belief, investment management, investment advisory, or similar fees from Plaintiffs investments into these investment options.

342.    TAMI and/or TIML's receipt of investment management, investment advisory, or similar fees from Plaintiffs investments into any separate account investment options that TLIC offers to the Plaintiff Plans that are either in the form of a separate account that invests in a collective investment trust or a Traditional Separate Account, constituted prohibited transactions, on the part of TLIC pursuant to ERISA §406, 29 U.S.C. §1106.

## VII.    PLAINTIFFS' IAA CLAIMS

343.    The IAA provides that any entity or person that is an investment adviser must be registered with the SEC.

344.    An investment adviser means any company that, "for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities..." IAA §202(a)(11), 15 U.S.C §80b-2(a)(11).

345.    The IAA provides that any contract that violates any provision of the IAA is void. IAA §215(b), 15 U.S.C. §80b-15(b).

346.    The IAA provides that any person or entity that renders investment advice must be registered.  IAA §203, 15 U.S.C. §80b-3.

347.    As of February 3, 2011, TLIC was not registered with the Securities and Exchange

Commission ("SEC") as an investment adviser, as required by the IAA.

348.   On information and belief, TLIC  was not registered with the SEC as an investment adviser, as required by the IAA, at any time prior to February 2, 2011 .

349.   TLIC rendered investment advice and acted as an investment adviser for some of the investment options that individual participants of the Plaintiff Plans invested their retirement savings in.  These individuals, as described above, for purposes of Plaintiffs IAA claims, are hereinafter referred to as the Plaintiff Purchasers Class.  The Plaintiff Purchasers Class includes Plaintiffs B. Poley and K. Poley.

350.   Plaintiff K. Poley is a member of the Plaintiff Purchasers Class because sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010) she invested in the following TLIC investment options: the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.

351.   Plaintiff K. Poley's investments in the TLIC investment options set forth in the previous paragraph resulted in the formation of contracts between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager. Plaintiff K. Poley was charged an "Investment Management Charge" by TLIC, pursuant to both contracts, for these services.  These charges were separate and in addition to any investment management fees charged by the registered investment advisors (which are independent of TLIC) to the mutual funds underlying the above listed investment options.

352.   Plaintiff B. Poley is a member of the Plaintiff Purchasers Class because she invested in the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market

Index Ret Opt, sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010).

353.    Plaintiff B. Poley's investments in the TLIC investment options set forth in the previous paragraph resulted in the formation of contracts between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager. Plaintiff K. Poley was charged an "Investment Management Charge" by TLIC, pursuant to both contracts, for these services.  These charges were separate and in addition to any investment management fees charged by the registered investment advisers (which are independent of TLIC) to the mutual funds underlying the above listed investment options.

354.    At the time TLIC rendered the investment advice and received compensation from the Plaintiff Purchasers for this investment advice, TLIC was not registered with the SEC and therefore violated IAA §203, 15 U.S.C. §80b-3.

355.    In addition to the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, TLIC rendered investment advice and acted as an investment adviser to some of the other  investment options in which the individual participants of the Plaintiff Plans invested their retirement savings and, on account of such investments, similar to Plaintiffs K. Poley and B. Poley,  these individuals entered into contracts with TLIC which resulted in their payment of investment management fees to TLIC for its services as an investment adviser.

356.    The amount of investment management fees TLIC received from members of the

Plaintiff Purchasers Class was excessive, impermissible and unreasonable.

357.    On information and belief, TLIC has entered into other contracts with other

individuals and entities, besides those that arise on account of individual participants, of the

Plaintiff Plans, investing their retirement savings in certain TLIC investment options, where

TLIC, pursuant to such contracts, acted as an investment adviser and received compensation

from these other individuals and entities for its investment advice/management services.  These

other individuals and entities are also included as members of the Plaintiff Purchasers Class.

358.    As a consequence of the performance of these void contracts by the Plaintiff

Purchasers Class, TLIC was unjustly enriched  on account of TLIC's failure to register with the

SEC.

359.    Members of the Plaintiff Purchasers Class (which includes Plaintiffs B. Poley and

K. Poley) seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), rescission of the portions of all

contracts (including the associated fees) between the members of such class and TLIC that

resulted in TLIC acting as an investment adviser, in violation of IAA §203, 15 U.S.C. §80b-3,

and/or restitution of such fees pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

360.    According to TLIC, the Loomis Sayles Investment Grade Bond Ret Opt, the First

American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret

Opt and the Vanguard Total Stock Market Index Ret Opt, investment options, are structured as

unregistered separate accounts.

361.    As such investment options are structured as unregistered separate accounts,

Plaintiffs B. Poley and K. Poley may make direct claims on their, and any other individual or

entity's behalf, in the form of a class action, for rescission and/or restitution of fees in connection

with contracts entered into with TLIC that resulted in TLIC acting as an investment adviser and receiving compensation for its investment advice/management services.

362.   However, as an alternative to their direct claims described above, Plaintiffs B. Poley and K. Poley also plead their IAA claims, which arise on account of TLIC failing to register with the SEC and acting as an investment adviser for compensation, derivatively.

363.   Plaintiff K. Poley, as a security holder in the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt, has standing to bring suit on behalf of such investment options for the actual damages resulting from TLIC's actions.  Specifically, she has standing to bring suit on these investment options behalf for the compensation they paid to TLIC for acting as their investment adviser.

364.   Similarly, B. Poley, as a security holder of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt has standing to bring suit on behalf of such investment options for the actual damages resulting in TLIC's actions. Specifically, she has standing to bring suit on these investment options behalf for the compensation they paid to TLIC for acting as their investment adviser.

365.   The investment management fees paid by the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt to TLIC, in connection with a contract for investment advice/management services were in violation of IAA §203, 15 U.S.C. §80b-3, because TLIC was not registered with the SEC as an investment adviser.

366.   As the investment options listed in the preceding paragraph are unregistered separate accounts, they do not have a board of directors.  Thus, any demand on their non-existent

board of directors would be futile.

367.     As an alternative to her direct claim, Plaintiff K. Poley files this action as a derivative action on behalf of the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.

368.     As an alternative to her direct claim, Plaintiff B. Poley files this action as a derivative action on behalf of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt.

369.     Plaintiffs B. Poley and K. Poley seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), rescission of the portions of the contracts (including the associated fees) the investment options listed in paragraphs 367 through 368 paid to TLIC in violation of IAA §203, 15 U.S.C. §80b-3, and/or restitution of such fees pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

## VIII.   CLASS ALLEGATIONS FOR CLAIMS ARISING UNDER (A) ERISA AND (B) THE IAA

370.     Plaintiffs Santomenno, K. Poley and B. Poley brings this action individually and on behalf of ERISA covered employee benefit plans, the Plaintiff Plans, that held, or continue to hold, group annuity contracts with TLIC and on behalf of the participants and beneficiaries of all such ERISA covered employee benefit plans (i.e., the Plaintiff Participants). The Class period for each ERISA claim begins on the earliest date on which each such claim would be timely.

371.     Plaintiffs K. Poley and B. Poley also bring this action individually and on behalf of any person or entity that entered into a contract with TLIC that resulted in TLIC acting as an investment adviser pursuant to such contract (i.e., the Plaintiff Purchasers Class), in violation of the IAA. While this Class may include some of the members of the Class described in the

preceding paragraph, it is separate from that Class.  The Class period for each these claims begin

on the earliest date on which each such claim would be timely.

372.    Excluded from the Classes are Defendants, any entity in which Defendants have a

controlling interest, and Defendants' officers, directors, affiliates, legal representatives, co-

conspirators, successors, subsidiaries, and assigns.  Also excluded from the Classes are any

judge, justice or judicial officer presiding over this matter and the members of their judicial staff.

373.    Based upon TLIC's advertising, it is believed that the proposed Classes are so

numerous that individual joinder of all of their members would be impracticable.  The total

number of Class members, of each Class, is believed to be at least 200 individuals.

374.    There are questions of law and fact common to the Class described in paragraph

370, among them the following:

a.    Was TLIC a fiduciary to the Plaintiff Plans under ERISA 401(c)(5)(B), 29

U.S.C. 1101(c)(5)(B);

b.    Was TLIC a fiduciary to the Plaintiff Plans under ERISA pursuant to 29

C.F.R. 2550.401c-1(d)(2)(c);

c.    Was TLIC a fiduciary under ERISA to the Plaintiff Plans by virtue of its

right to change the Investment Options;

d.    Was TLIC a fiduciary to the Plaintiff Plans through its Fiduciary

Warranty;

e.    Was TLIC a fiduciary to the Plaintiff Plans by virtue of its discretionary

control over the assets invested in the investment options;

f.    Was Defendant TLIC a fiduciary under ERISA by virtue of its rendering of

investment advice;

g.      Was TLIC a fiduciary under ERISA because it has control over group insurance contracts purchased by employee benefit plans;

h.      Was TLIC a fiduciary under ERISA by negotiating/extracting revenue sharing payments that are derived from Plaintiffs investments;

i.      Was TLIC a fiduciary under ERISA by taking the role of selecting, monitoring and replacing the Plaintiff Plans investment options;

j.      Whether Defendant TLIC violated its fiduciary duties pursuant to ERISA §404(a)(1)(A) and (B), 29 U.S.C. §§1104(a)(1)(A) and (B), by subjecting Plaintiffs to multiple different excessive fees;

k.      Whether Defendant TLIC engaged in prohibited transactions as prescribed by ERISA §406, 29 U.S.C. §1106; and

l.      Whether Defendants, TAMI and TIML, are also liable to Plaintiffs on account of prohibited transactions on the part of TLIC.

375.    There are questions of law and fact common to the Class described in paragraph 371, among them the following:

a.      Whether TLIC registered as an investment adviser; and

b.      Whether TLIC violated IAA by acting as an investment adviser within the meaning of §IAA 202(a)(11), 15 U.S.C §80b-2(a)(11); and

c.      Whether TLIC received compensation for its investment advisory services.

376.    The claims and defenses of the representative parties are typical of the claims and defenses of each of the Classes.  The representative parties have no interests that are antagonistic

529471.1                                    77

to the claims of the Classes, and understands that this matter cannot be settled without the Court's approval.

377.   The representative parties will fairly and adequately protect the interests of the Classes, and are committed to a vigorous prosecution of this case.

378.   The prosecution of separate actions by individual members of each Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants.

379.   The parties opposing the Classes have acted on grounds generally applicable to each Class thereby making appropriate final injunctive relief or corresponding declaratory relief.

380.   The questions of law or fact common to the members of each of the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

381.   The Defendants were obligated to treat the members of each Class similarly under ERISA and the IAA respectively.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.

382.   Since the damages suffered by each member of the Classes may be relatively small, the expense and burden of individual litigation makes it impractical for class members to separately seek redress.

383.   The Classes suffered, and will continue to suffer, harm as a result of Defendants' conduct.

384.   A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of each of the Classes

is impractical.

385.    Even if the individual members of each Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigations would proceed.

386.    Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.

387.    The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all claims of the members of each Class.

388.    Conducting this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the individual members of each Class.  For many, if not most, of the members of each Class, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

389.    Each Class may be certified under Fed. R. Civ. P. 23(b).

## IX.    DERIVATIVE ALLEGATIONS FOR CLAIMS ARISING UNDER IAA §215(b) 15. U.S.C. §80b-15(b) FOR TLIC'S VIOLATION OF IAA §203, 15 U.S.C. §80b-3

390.    Plaintiff K. Poley brings this action derivatively, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), on behalf of the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt, to rescind the contracts these investment options entered into with TLIC, whereby TLIC acted as an investment adviser in violation of IAA §203, 15 U.S.C. §80b-3.

391.    Plaintiff B. Poley brings this action derivatively, pursuant to IAA §215(b), 15

U.S.C. §80b-15(b), on behalf of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard

Total Stock Market Index Ret Opt, to rescind the contracts these investment options entered into

with TLIC, whereby TLIC acted as an investment adviser in violation of IAA §203, 15 U.S.C.

§80b-3.

392.    According to TLIC, the Loomis Sayles Investment Grade Bond Ret Opt, the

First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010

Ret Opt and the Vanguard Total Stock Market Index Ret Opt are unregistered separate accounts.

As they are unregistered separate accounts they do not have a board of directors and thus any

demand on non-existent boards of directors would be futile.

## COUNT I

**Breach of fiduciary duties by TLIC pursuant to ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), for charging the Plaintiff Plans and Plaintiff Participants fees that exceeded that of the underlying mutual fund on any separate account investment option that invested in a mutual fund**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.      As set forth in Section VI of this Complaint, TLIC charged the Plaintiff Plans and Plaintiff Participants excessive fees on the investment of their retirement assets by charging, on any separate account investment option that invested in a mutual fund, fees that exceed that of the underlying mutual fund.  Such fees were excessive because an investment into a separate account that invested in a mutual fund only provided Plaintiffs, in return for their investment, an investment into the underlying mutual fund.

4.      By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of providing benefits to the Plaintiffs, because such fees only benefitted TLIC and did not result in benefits and/or services to the Plaintiffs.

5.      By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which

requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of defraying reasonable expenses in administering the Plaintiff Plans, because as such fees did not result in benefits and/or services to the Plaintiff Plans, these fees were unreasonable and therefore TLIC failed to defray reasonable expenses in administering the Plaintiff Plans.

6.      By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), which requires that TLIC, as a fiduciary, discharge it duties with care, skill, prudence and diligence, because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that Plaintiffs only paid, for investing in the separate account investment options that invest in mutual funds, the fee charged by such mutual fund.

7.      By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC committed prohibited transactions under ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits TLIC from dealing with assets of the Plaintiff Plans for its own interest, because (a) such fees were assets of the Plaintiff Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay these fees, and (c) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

8.      By charging Plaintiffs fees that exceed that of the underlying mutual fund on any separate account investment option that invested in a mutual fund, TLIC committed prohibited transactions under ERISA §406(b)(3), 29 U.S.C. §1106(b)(3), which prohibits TLIC from receiving any consideration for its own account from any party in connection with a

transaction involving assets of the Plaintiff Plans because (a) such fees were assets of the

Plaintiff Plans, (b) such fees were levied by TLIC on Plaintiffs through unregistered separate

accounts (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay it these

fees, and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

9.      The damage to Plaintiffs on account of these excessive fees, includes both the fees

as well as the inferior returns Plaintiffs experienced on their investments on account of such

excessive fees.

10.     As a direct and proximate result of TLIC's breach of fiduciary duties pursuant to

the ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and

its commission of prohibited transactions pursuant to ERISA §406(b)(1) and (3), 29 U.S.C.

§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

11.     Pursuant to ERISA §§409 ad 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2)

and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for both the excessive

fees they were charged on account of their investments into separate account investment options

that invested in mutual funds and the inferior returns they suffered on account of such excessive

fees.

## COUNT II

**Breach of fiduciary duties by TLIC pursuant to ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), for charging the Plaintiff Plans and Plaintiff Participants an Investment Management Charge on any separate account investment option that invested in a mutual fund**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.      As set forth in Section VI of this Complaint, TLIC charged the Plaintiff Plans and Plaintiff Participants an excessive and impermissible Investment Management Charge on certain separate account investment options that invested in mutual funds.  This Investment Management Charge, as set forth in detail in Section VI of the Complaint, was improper because as the advisors to the underlying mutual funds rendered investment management services to the fund (for a fee charged to Plaintiffs), the additional Investment Management Charge levied by TLIC on Plaintiffs investment on the overlaying separate account was excessive.

4.      By charging Plaintiffs an Investment Management Charge on any separate account investment option that invested in a mutual fund , TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of providing benefits to the Plaintiffs, because such fees only benefitted TLIC and did not result in benefits and/or services to the Plaintiffs.

5.      By charging Plaintiffs an Investment Management Charge on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to

ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of defraying reasonable expenses in administering the Plaintiff Plans,  because as such fees did not result in benefits and/or services to the Plaintiff Plans or because the services incurred for such fees were unnecessary, these fees were unreasonable, and therefore TLIC failed to defray reasonable expenses in administering the Plaintiff Plans.

6.     By charging Plaintiffs an Investment Management Charge on any separate account investment option that invested in a mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), which requires that TLIC, as a fiduciary, discharge its duties with care, skill, prudence and diligence,  because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that Plaintiffs only paid, for investing in any separate account investment options that invest in a mutual fund, the appropriate investment management fee charged by such mutual fund, and no additional investment management/advisory fees.

7.     By charging Plaintiffs an Investment Management Charge on any separate account investment option that invested in a mutual fund, TLIC committed prohibited transactions under ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits TLIC from dealing with assets of the Plaintiff Plans for its own interest, because (a) such fees were assets of the Plaintiff Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay these fees, and (c) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

8.     By charging Plaintiffs an Investment Management Charge on any separate account investment option that invested in a mutual fund, TLIC committed

prohibited transactions under ERISA §406(b)(3), 29 U.S.C. §1106(b)(3), which prohibits TLIC from receiving any consideration for its own account from any party in connection with a transaction involving assets of the Plaintiff Plans because (a) such fees were assets of the Plaintiff Plans, (b) such fees were levied by TLIC on Plaintiffs through unregistered separate accounts (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay it these fees, and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

9.    The damage to Plaintiffs on account of paying the excessive Investment Management Charges includes both the fees themselves as well as the inferior return Plaintiffs experienced on their investments on account of such excessive fees.

10.    As a direct and proximate result of TLIC's breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and its commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

11.    Pursuant to ERISA §§409 and 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for both the excessive Investment Management Charges it charged them on account of their investments into separate account investment options that invested in mutual funds and the inferior returns they suffered on account of such excessive fees.

## COUNT III

**Breach of fiduciary duties by TLIC pursuant to ERISA §§ 404(a)(1)(A)(i) And (ii) And (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and the commission of prohibited transactions pursuant to ERISA §§406(b)(1) And (3), 29 U.S.C. §§1106(b)(1) And (3), for TLIC's receipt of Revenue Sharing Payments from Plaintiffs' investments into certain mutual funds that underlie the separate account investment options that invest in mutual funds**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.      As set forth in Section VI of this Complaint, TLIC received Revenue Sharing Payments, which were derived from Plaintiffs' investments, into certain separate account investment options that invest in mutual funds.  Specifically, when Plaintiffs' retirement monies were deposited in the underlying mutual fund, the advisor to the underlying mutual fund remitted a portion of Plaintiffs' investment to TLIC.  TLIC claimed that these Revenue Sharing Payments were used to offset Investment Management and Administrative Charges that would otherwise be paid by Plaintiffs on their investments.  However, as the Investment Management and Administrative Charges were fictions created by TLIC, Plaintiffs received no benefit and/or services on account of TLIC's receipt of the Revenue Sharing Payments.

4.      By receiving Revenue Sharing Payments which were derived from Plaintiffs' investments,  TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that TLIC, as a fiduciary, discharge its duties with the exclusive purpose of providing benefits to the Plaintiffs, because rather than accepting the Revenue Sharing Payments, TLIC should have negotiated with those who paid these payments

for the reduction in the amount of fees Plaintiffs were charged by an amount equal to the Revenue Sharing Payments.

5. By receiving Revenue Sharing Payments which were derived from Plaintiffs' investments, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of defraying reasonable expenses in administering the Plaintiff Plans, because by accepting the Revenue Sharing Payments, rather than negotiating with the payers of such fees a reduction in the amount of fees Plaintiffs were charged, TLIC failed to defray the expenses to the Plaintiff Plans.

6. By receiving Revenue Sharing Payments which were derived from Plaintiffs' investments, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), which requires that TLIC, as a fiduciary, discharge it duties with care, skill, prudence and diligence, because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that Plaintiffs were not subject to the fees on their investments that generated the Revenue Sharing Payments.

7. By receiving Revenue Sharing Payments which were derived from Plaintiffs' investments, TLIC committed prohibited transactions under ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits TLIC from dealing with assets of the Plaintiff Plans for its own interest, because (a) such fees are, and/or were derived from, assets of the Plaintiff Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans to pay it these fees, and (c) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

8. By receiving Revenue Sharing Payments which were derived from Plaintiffs'

investments, TLIC committed prohibited transactions under ERISA §406(b)(3), 29 U.S.C. §1106(b)(3), which prohibits TLIC from receiving any consideration for its own account from any party in connection with a transaction involving assets of the Plaintiff Plans because the Revenue Sharing Payments (a) are, and/or derived from, assets of the Plaintiff Plans, (b) such fees were received from mutual funds (or their advisors) that underlie unregistered separate account investment options, (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans to pay it these fees, and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

9.    The damages to Plaintiffs on account of TLIC's receipt of the Revenue Sharing Payments include both the fees they paid to fund these payments as well as the inferior returns they suffered on their investments on account of these fees not being available for investment.

10.    As a direct and proximate result of TLIC's breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), and its commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

11.    Pursuant to ERISA §§409 ad 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for both the fees they paid to fund the Revenue Sharing Payments and the inferior returns they experienced on account of the fees funding these payments not being available for investment.

## COUNT IV

**Commission of prohibited transactions by TLIC pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), for allowing Plaintiffs to be charged any investment management, investment advisory or similar fees, by its affiliates, TAMI and TIML, on account of Plaintiffs' investments into TAMI or TIML advised mutual funds underlying separate account investment options; liability of TAMI and TIML pursuant To ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), for knowingly participating in the fiduciary violations of TLIC**

1.     Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.     At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.     As set forth in Section VI of this Complaint, TAMI and TIML are affiliates of TLIC and they received investment management, investment advisory or similar fees, on account of Plaintiffs' investments into certain separate account investment options that invested in mutual funds that were advised or subadvised by TAMI or TIML.

4.     The payment of investment management, investment advisory or similar fees to TAMI and/or TIML, on account of Plaintiffs' investments into any separate account investment options that invested in any mutual fund that was advised or subadvised by TAMI or TIML, constituted prohibited transactions on the part of TLIC under ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits TLIC from dealing with assets of the Plaintiff Plans for its own interest, because (a) TAMI and TIML are affiliates of TLIC, (b) such fees are and/or were derived from assets of the Plaintiff Plans, (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay its affiliates these fees and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

529471.1                                                        90

5.     The payment of investment management, investment advisory or similar fees by TAMI and/or TIML, on account of Plaintiffs investments into any separate account investment options that invested in any mutual fund that was advised or subadvised by TAMI or TIML, constituted prohibited transactions on the part of TLIC under ERISA §406(b)(3), 29 U.S.C. §1106(b)(3), which prohibits TLIC from receiving any consideration for its own account from any party in connection with a transaction involving assets of the Plaintiff Plans because (a) TAMI and TIML are affiliates of TLIC, (b) such fees are and/or derived from assets of the Plaintiff Plans, (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay it affiliates these fees and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

6.     As a direct and proximate result of TLIC's commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

7.     Pursuant to ERISA §§409 and 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for the fees they paid to TAMI and/or TIML for any investment management, investment advisory or similar fees, on account of their investments into any separate account investment options where the underling mutual fund was advised or subadvised by TAMI or TIML.

8.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), TAMI and TIML are liable to the Plaintiff Plans and the Plaintiff Participants for the fees described herein that they received by knowingly participating in the ERISA violations described herein of TLIC.

## COUNT V

**Breach of fiduciary duties by TLIC pursuant to ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), for failing to invest in the lowest priced share class of the mutual funds that underlie the separate account investment options that invest in mutual funds**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.      As set forth in Section VI of this Complaint, with respect to those separate account investment options that invested in mutual funds, in many cases TLIC failed to invest in the lowest priced share class of the underlying mutual fund.  As each share class of a mutual fund invests in the same diversified pool of securities, the lowest priced share class will produce the largest returns.  On information and belief TLIC possessed the necessary economic leverage/negotiating power/stature, as a large investor, to negotiate on the Plaintiffs' behalf that their retirement monies be invested in the lowest priced share class of all of the mutual funds that underlie the separate accounts, but in many cases failed to do so.

4.      With respect to any separate account investment option that invested in a mutual fund and for which TLIC failed to negotiate on Plaintiffs' behalf, that their retirement monies be invested in the lowest priced share class of such mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of providing benefits to the Plaintiffs, because the higher fee share class of the mutual fund did not offer any additional benefits over the lowest priced share class of the mutual fund.

5.      With respect to any separate account investment option that invested in a mutual fund and for which TLIC failed to negotiate on Plaintiffs' behalf, that their retirement monies be invested in the lowest priced share class of such mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of defraying reasonable expenses in administering the Plaintiff Plans, because as the higher fee share class of the mutual fund did not offer any additional benefits over the lowest priced share class of the mutual fund, the difference in fees between these share classes were unreasonable and TLIC should have taken actions to avoid them.

6.      With respect to any separate account investment option that invested in a mutual fund and for which TLIC failed to negotiate on Plaintiffs' behalf, that their retirement monies be invested in the lowest priced share class of such mutual fund, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), which requires that TLIC, as a fiduciary, discharge it duties with care, skill, prudence and diligence, because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that, since the higher fee share class of the mutual fund offered no additional benefits over investment in the lowest priced share class of the mutual fund,  that Plaintiffs' retirement assets were invested in the lowest priced share class of the mutual fund.

7.      The damages to Plaintiffs on account of  TLIC's failure to invest in the lowest priced share class of the underlying mutual fund includes both the difference in fees they paid between the higher priced share class and the lowest priced share class  as well as the inferior returns they suffered on their investments on account of these fee differentials.

8.     As a direct and proximate result of TLIC's breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), Plaintiffs were denied the full value of their retirement benefits.

9.     Pursuant to ERISA §§409 ad 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for both the difference in fees between the higher priced share class and the lowest priced share class as well as the as the inferior returns Plaintiffs suffered on their investments on account of these fee differentials.

### COUNT VI

**Breach of fiduciary duties by TLIC pursuant to ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), for failing to negotiate on Plaintiffs' behalf the traditional lower fees that are associated with collective trusts and Traditional Separate Accounts; or, commission of prohibited transactions by TLIC pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), for negotiating the traditional lower fees that are associated with these investment options but retaining them rather than passing the savings along to Plaintiffs.**

1.     Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.     At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.     As set forth in Section VI of this Complaint, with respect to those separate account investment options that invested in collective investment trust options or were Traditional Separate Account investment options, generally, the fees associated with such investment options, that were charged to Plaintiffs, were excessive. Therefore, TLIC either failed to use its stature to negotiate for the arm's length level of fees that are typical of these types of investment options, or, in the alternative, negotiated for the arm-length  level of fees that are typical of these investment options, but continued to charge Plaintiffs' the excessive fees and retained the portion of such fees that were excessive.

4.     In the event TLIC failed to use its stature as a large investor to negotiate on Plaintiffs behalf, the elimination of the excessive fees associated with the separate account investment options that invested in collective investment trusts and the Traditional Separate Account investment options, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(i), 29 U.S.C. §1104(a)(1)(A)(i), which requires that TLIC, as a fiduciary,

discharge it duties with the exclusive purpose of providing benefits to the Plaintiffs, because the excessive fees charged on Plaintiffs investment into these investment options did not provide them with any additional benefits.

5.      In the event TLIC failed to use its stature as a large investor to negotiate, on Plaintiffs behalf, the elimination of the excessive fees associated with the separate account investment options that invested in collective investment trusts and the Traditional Separate Account investment options, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(A)(ii), 29 U.S.C. §1104(a)(1)(A)(ii), which requires that TLIC, as a fiduciary, discharge it duties with the exclusive purpose of defraying reasonable expenses in administering the Plaintiff Plans, because as the amount of excessive fees offered no additional benefits to the Plaintiffs, TLIC should have taken actions to avoid them and therefore failed to defray the expenses of the Plaintiff Plans.

6.      In the event TLIC failed to use its stature as a large investor to negotiate, on Plaintiffs behalf, the elimination of the excessive fees associated with the separate account investment options that invested in collective investment trusts and the Traditional Separate Account investment options, TLIC breached its fiduciary duties pursuant to ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), which requires that TLIC, as a fiduciary, discharge it duties with care, skill, prudence and diligence, because a prudent fiduciary acting in a like capacity and familiar with such matters would have negotiated for the elimination of such excessive fees.

7.      In the event that TLIC used its stature as a large investor to negotiate, for the lower fees typical of collective investment trusts and Traditional Separate Accounts, for

all of the separate account investment options that it offers to the Plaintiff Plans that are either in

the form of a separate account that invests in a collective investment trust or a Traditional

Separate Account, and retained such fee savings, rather than returning them to the Plaintiffs,

TLIC committed prohibited transactions pursuant to ERISA §406(b)(1), 29 U.S.C. §1106(b)(1),

because the excess fees it retained from Plaintiffs' investments (a) were assets of the Plaintiff

Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans to pay it these

fees, and (c) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

8.      In the event that TLIC used its stature as a large investor to negotiate,

for the lower fees typical of collective investment trusts and Traditional Separate Accounts, for

all of the separate account investment options that it offers to the Plaintiff Plans that are either in

the form of a separate account that invests in a collective investment trust or a Traditional

Separate Account, and retained such fee savings rather than returning them to the Plaintiffs,

TLIC committed prohibited transactions pursuant to ERISA §406(b)(3), 29 U.S.C. §1106(b)(3),

because the excess fees it retained from Plaintiffs' investments (a) were assets of the Plaintiff

Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans to pay it these

fees, (c) such fees were levied by TLIC on Plaintiffs through unregistered separate accounts and

and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

9.      The damages to Plaintiffs on account of  TLIC's failure to negotiate the removal

of (or TLIC's retention of) the excess fees associated with the separate account investment

options that invest in collective investment trusts and Traditional Separate accounts, includes

both the excessive fees they paid as well as the inferior returns they suffered on their investments

on account of these fees not being available for investment.

10.    As a direct and proximate result of TLIC's breach of fiduciary duties pursuant to the ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§1104(a)(1)(A)(i) and (ii) and (B), or its commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

11.    Pursuant to ERISA §§409 and 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for both the excessive fees they paid on their investments in separate accounts that invested in collective investment trusts and Traditional Separate Accounts and the inferior returns they suffered on account of these fees not being available for investment.

## COUNT VII

**Commission of prohibited transactions by TLIC pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), for allowing Plaintiffs to be charged any investment management, investment advisory or similar fees, by its affiliates, TAMI and TIML, on account of Plaintiffs investments into TAMI or TIML advised collective investment trusts or Traditional Separate Accounts; liability of TAMI and TIML pursuant To ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), for knowingly participating in the fiduciary violations of TLIC**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      At all relevant times TLIC was a fiduciary to the Plaintiff Plans pursuant to ERISA §§3(21)(A)(i), (ii) and (iii), 29 U.S.C. §§1002(21)(A)(i), (ii) and (iii).

3.      As set forth in Section VI of this Complaint, TAMI and TIML are affiliates of TLIC.  TAMI acted as the investment manager to the collective trusts that underlie certain of the separate account investment options and in such capacity received investment management, investment advisory or similar fees, on account of Plaintiffs' investments into these separate account investment options. TIML acted as the subadvisor to certain Traditional Separate Account investment options and in such capacity received investment management, investment advisory or similar fees, on account of Plaintiffs' investments into these Traditional Separate Account investment options.

4.      The payment of investment management, investment advisory or similar fees to TAMI and TIML, on account of Plaintiffs' investments into either a separate account that invested in a collective investment trust or Traditional Separate Account investment option, constituted prohibited transactions on the part of TLIC under ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), which prohibits TLIC from dealing with assets of the Plaintiff Plans for its own

interest, because (a) TAMI and TIML are affiliates of TLIC, (b) such fees are and/or were derived from assets of the Plaintiff Plans, (b) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay its affiliates these fees and (c) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

5.      The payment of investment management, investment advisory or similar fees to TAMI and TIML, on account of Plaintiffs' investments into either a separate account that invested in a collective investment trust or Traditional Separate Account investment option, constituted prohibited transactions on the part of TLIC under ERISA §406(b)(3), 29 U.S.C. §1106(b)(3), which prohibits TLIC from receiving any consideration for its own account from any party in connection with a transaction involving assets of the Plaintiff Plans because (a) TAMI and TIML are affiliates of TLIC, (b) such fees are, and/or derived from, assets of the Plaintiff Plans, (c) TLIC's exercise of authority and/or control caused the Plaintiff Plans' to pay its affiliates these fees and (d) such fees were not returned to the Plaintiff Plans and/or the Plaintiff Participants.

6.      As a direct and proximate result of TLIC's commission of prohibited transactions pursuant to ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3), Plaintiffs were denied the full value of their retirement benefits.

7.      Pursuant to ERISA §§409 and 502(a)(2) and (3), 29 U.S.C. §§1109 and 1132(a)(2) and (3), TLIC is liable to the Plaintiff Plans and the Plaintiff Participants for the fees they paid to TAMI and/or TIML for any investment management, investment advisory or similar fees, on account of their investments into any separate account investment option that invested in a collective investment trust advised by TAMI and any Traditional Separate Account subadvised

by TIML.

8.      Pursuant to ERISA §502(a)(3), 29 <u>U.S.C.</u> §1132(a)(3), TAMI and TIML are liable

to the Plaintiff Plans and the Plaintiff Participants for the fees described herein that they received

by knowingly participating in the ERISA violations described herein of TLIC.

## COUNT VIII

**Rescission and restitution under IAA §215(b), 15 U.S.C. §80b-15(b) on behalf of members the Plaintiff Purchasers Class of contracts they entered into with TLIC where TLIC acted as an investment adviser in violation of IAA §203, 15 U.S.C. §80b**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      The IAA provides that any entity or person that is an investment adviser must be registered with the SEC.

3.      An investment adviser means any company that, "for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities..." IAA §202(a)(11), 15 U.S.C. §80b-2(a)(11).

4.      The IAA provides that any contract that violates any provision of the IAA is void. IAA §215(b), 15 U.S.C. §80b-15(b).

5.      The IAA provides that any person or entity that renders investment advice must be registered.  IAA §203, 15 U.S.C. §80b-3.

6.      As of February 3, 2011, TLIC was not registered with the Securities and Exchange Commission ("SEC") as an investment adviser, as required by the IAA.

7.      On information and belief, TLIC  was not registered with the SEC as an investment adviser, as required by the IAA, at any time prior to February 2, 2011 .

8.      TLIC rendered investment advice and acted as an investment adviser for some of the investment options that individual participants of the Plaintiff Plans invested their retirement

savings in.  These individuals, as described above, for purposes of Plaintiffs IAA claims, are hereinafter referred to as the Plaintiff Purchasers Class.  The Plaintiff Purchasers Class includes Plaintiffs B. Poley and K. Poley.

9.     Plaintiff K. Poley is a member of the Plaintiff Purchasers Class because sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010) she invested in the following TLIC investment options: the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.

10.     Plaintiff K. Poley's investments in the TLIC investment options set forth in the previous paragraph resulted in the formation of contracts between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager. Plaintiff K. Poley was charged an "Investment Management Charge" by TLIC, pursuant to both contracts, for these services.  These charges were separate and in addition to any investment management fees charged by the registered investment advisors (which are independent of TLIC) to the mutual funds underlying the above listed investment options.

11.     Plaintiff B. Poley is a member of the Plaintiff Purchasers Class because she invested in the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, sometime on or after February 19, 2010 (on information and belief the exact date is believed to be April 28, 2010).

12.     Plaintiff B. Poley's investments in the TLIC investment options set forth in the previous paragraph resulted in the formation of contracts between her and TLIC, formed, on information and belief, on April 28, 2010, pursuant to which TLIC rendered investment advice

and acted as an investment adviser/manager. Plaintiff K. Poley was charged an "Investment Management Charge" by TLIC, pursuant to both contracts, for these services.  These charges were separate and in addition to any investment management fees charged by the registered investment advisers (which are independent of TLIC) to the mutual funds underlying the above listed investment options.

13.     At the time TLIC rendered the investment advice and received compensation from the Plaintiff Purchasers for this investment advice, TLIC was not registered with the SEC and therefore violated IAA §203, 15 U.S.C. §80b-3.

14.     In addition to the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, TLIC rendered investment advice and acted as an investment adviser to some of the other  investment options in which the individual participants of the Plaintiff Plans invested their retirement savings and, on account of such investments, similar to Plaintiffs K. Poley and B. Poley,  these individuals entered into contracts with TLIC which resulted in their payment of investment management fees to TLIC for its services as an investment adviser.

15.     The amount of investment management fees TLIC received from members of the Plaintiff Purchasers Class was excessive, impermissible and unreasonable.

16.     On information and belief, TLIC has entered into other contracts with other individuals and entities, besides those that arise on account of individual participants, of the Plaintiff Plans, investing their retirement savings in certain TLIC investment options, where TLIC, pursuant to such contracts, acted as an investment adviser and received compensation

from these other individuals and entities for its investment advice/management services.  These

other individuals and entities are also included as members of the Plaintiff Purchasers Class.

     17.    As a consequence of the performance of these void contracts by the Plaintiff

Purchasers Class, TLIC was unjustly enriched  on account of TLIC's failure to register with the

SEC.

     18.    Members of the Plaintiff Purchasers Class (which includes Plaintiffs B. Poley and

K. Poley) seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), rescission of the portions of all

contracts (including the associated fees) between the members of such class and TLIC that

resulted in TLIC acting as an investment adviser, in violation of IAA §203, 15 U.S.C. §80b-3,

and/or restitution of such fees pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

## COUNT IX

**Rescission and restitution under IAA §215(b), 15 U.S.C. §80b-15(b) on behalf of the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt for investment advisory contracts they entered into with TLIC where TLIC acted as an investment adviser in violation of IAA §203, 15 U.S.C. §80b**

1.      Plaintiffs incorporate by reference all allegations in the previous paragraphs of this Complaint.

2.      Plaintiff K. Poley is a security holder of the following unregistered separate accounts: the Loomis Sayles Investment Grade Bond Ret Opt and the First American Mid Cap Growth Opportunities Inv Opt.  Therefore she has standing to bring suit on their behalf for the compensation they paid to TLIC for acting as their investment adviser in violation of the IAA.

3.      Plaintiff B. Poley is a security holder of the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt.  Therefore, she has standing to bring suit on their behalf for the compensation they paid to TLIC for acting as their investment adviser in violation of the IAA.

4.      According to TLIC, the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, are structured as unregistered separate accounts.  Thus, as these investment options are structured as unregistered separate accounts they do not have a board of directors.  Thus, any demand on their non-existent board of directors would be futile.

5.      As of February 3, 2011, TLIC was not registered with the SEC as an investment adviser, as required by the IAA.

6.     On information and belief, TLIC was not registered with the SEC as an investment adviser, as required by the IAA, at any time prior to February 3, 2011 .

7.     TLIC acted, and continues to act, as the investment adviser to the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt

8.     Thus, the investment management fees paid by the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt to TLIC, in connection with they contracts they entered into with TLIC for investment advice/management services, are/were in violation of IAA §203, 15 U.S.C. §80b-3, because TLIC is not registered with the SEC as an investment adviser.

9.     Plaintiffs B. Poley and K. Poley seek, pursuant to IAA §215(b), 15 U.S.C. §80b-15(b), rescission of the investment advisory contracts (including the associated fees), that TLIC entered into with the the Loomis Sayles Investment Grade Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target Retirement 2010 Ret Opt and the Vanguard Total Stock Market Index Ret Opt, in violation of IAA §203, 15 U.S.C. §80b-3, and/or restitution of such fees paid pursuant to such contracts pursuant to IAA §215(b), 15 U.S.C. §80b-15(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.      Certify this action as a class action pursuant to <u>Federal Rules of Civil Procedure</u> 23(b)(1), 23(b)(2) and/or 23(b)(3);

B.      Declare, with respect to ERISA,:

1.      That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B) and 406(b)(1) and (3), 29 <u>U.S.C.</u> §§1104(a)(1)(A)(i) and (ii) and (B) and 1106(b)(1) and (3), by charging Plaintiffs, on their investments into separate accounts that invested in mutual funds, fees in excess of those charged by the mutual fund;

2.      That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B) and 406(b)(1) and (3), 29 <u>U.S.C.</u> §§1104(a)(1)(A)(i) and (ii) and (B) and 1106(b)(1) and (3), by charging Plaintiffs, on their investments into separate accounts that invested in mutual funds, Investment Management fees, that were in addition to the investment management fees charged by the underlying mutual fund;

3.      That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B) and 406(b)(1) and (3), 29 <u>U.S.C.</u> §§1104(a)(1)(A)(i) and (ii) and (B) and 1106(b)(1) and (3), by charging Plaintiffs, on their investments into separate accounts that invested in mutual funds, Investment Management fees, that were in addition to the investment management fees charged by the underlying mutual fund;

4.      That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B) and 406(b)(1) and (3), 29 <u>U.S.C.</u> §§1104(a)(1)(A)(i) and (ii) and (B) and 1106(b)(1) and (3), for its receipt of the

Revenue Sharing Payments;

5.     That TLIC violated ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3),

for allowing Plaintiffs to be charged investment management, investment advisory or similar

fees, on their investments into certain separate accounts that invested in mutual funds that were

advised by TAMI and TIML, and that TAMI and TIML pursuant to, ERISA §§502(a)(3), 29

U.S.C. §§1132(a)((3), are liable to Plaintiffs for knowingly participating in these prohibited

transactions;

6.     That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C.

§§1104(a)(1)(A)(i) and (ii) and (B), by, with respect to Plaintiffs' investments into separate

accounts that invested in mutual funds, failing to invest Plaintiffs' assets in the lowest priced

share class of the mutual funds;

7.     That TLIC violated ERISA §§404(a)(1)(A)(i) and (ii) and (B), by failing to

negotiate on Plaintiffs behalf the removal of excessive fees that were charged on Plaintiffs'

investments into separate accounts that invest in collective investment trusts and Traditional

Separate Accounts, or, that TLIC violated ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1)

and (3), by negotiating for its behalf the lower fees that are typically associated with collective

investment trusts and Traditional Separate Accounts, but still charging Plaintiffs' and retaining

the excessive fees mentioned above;

8.     That TLIC violated ERISA §§406(b)(1) and (3), 29 U.S.C. §§1106(b)(1) and (3),

for allowing Plaintiffs to be charged investment management, investment advisory or similar

fees, on their investments into certain separate accounts that invested in collective investment

trusts and Traditional Separate Accounts that were advised by TAMI and TIML, and that TAMI

and TIML pursuant to, ERISA §§502(a)(3), 29 U.S.C. §§1132(a)((3), are liable to Plaintiffs for

knowingly participating in these prohibited transactions;

       9.     That, pursuant to ERISA §§502(a)(2) and (3), 29 U.S.C. §§1132(a)(2) and (3), all

Defendants and any subsidiaries of the Defendants that received monies from the Plaintiffs,

disgorge all such monies, and any earnings thereon, and refund such monies to the Plaintiffs;

       10.    That, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), TLIC abstain from

contracting or investing, on behalf of any Plaintiff, with any of its affiliates or subsidiaries; and

       11.    That, pursuant to ERISA §502(g), 29 U.S.C. §1132(g), that Plaintiffs be paid

reasonable costs and attorneys fees.

       C.     Declare, with respect to the IAA,:

       1.     That TLIC acted as an investment adviser to the Plaintiff Purchasers Class in

violation of IAA §203, 15 U.S.C. §80b-3 and that the Plaintiff Purchasers Class is entitled to

rescission and/or restitution (include the associated fees) of any contracts it entered with TLIC

that resulted in TLIC acting as an investment adviser; or

       2.     That TLIC acted as an investment adviser to the Loomis Sayles Investment Grade

Bond Ret Opt, the First American Mid Cap Growth Opportunities Inv Opt, the Vanguard Target

Retirement 2010 Ret Opt and the Vanguard Total Stock Market Ret Opt, Class in violation of

IAA §203, 15 U.S.C. §80b-3 and that TLIC must rescind and/or provide restitution (include the

associated fees) of any fees it received pursuant to such contracts.

       D.     Order Defendants to make disgorgement of all fees, equitable restitution and

other appropriate equitable monetary relief as the Court deems just.

       E.     Order the Defendants to pay damages to Plaintiffs in an amount sufficient to

restore them to the position they would have been in had the wrongs alleged herein not been committed.

      F.     Award interest, costs, attorney fees and such other relief as it deems just.

## JURY DEMAND

All Plaintiffs demand a trial by jury on all claims so triable.

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.

Dated: February 8, 2011       s/ Robert L.  Lakind
                              Robert L. Lakind


Levy, Phillips & Konigsberg


Dated: February 8, 2011       s/Moshe Maimon
                              Moshe Maimon