NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SANTOMENNO, et al. | : |
|  | : |
|  | : CIVIL ACTION NO. 11-736 (ES) |
| Plaintiffs, | : |
| v. | : |
|  | : |
| TRANSAMERICA LIFE INSURANCE CO., et al. | : OPINION |
|  | : |
|  | : |
| Defendants. | : |

**SALAS, District Judge**

**I.    Introduction**

Pending before this Court is Transamerica Life Insurance Company, Transamerica Investment Management, LLC, and Transamerica Asset Management's (collectively, "TLIC" or "Defendants") Motion for Transfer of Venue. (D.E. 33).  The Court has considered the papers submitted in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's Motion for Transfer of Venue is GRANTED.

**II.   Background**

**A.  Parties & Claims**

Plaintiffs Jaclyn Santomenno, Karen Poley, and Barbara Poley are New Jersey residents. (Complaint ("Compl."), D.E. 1 at 2-3).[1]  The Defendants in this action are Transamerica Life Insurance Company ("TLIC"), Transamerica Investment Management ("TIM"), and

---

[1] Plaintiffs employ a confusing page and paragraph numbering system in their Complaint.  Plaintiffs do not begin numbering their paragraphs until page four of the Complaint.  Further, they restart numbering the paragraphs of each Count at the end of the Complaint.  To avoid any confusion, the Court cites to the page and paragraph number it references.

1

Transamerica Asset Management ("TAM").  (*Id.* at 3).

TLIC (collectively) manages ERISA-covered employee benefit plans and offers investment options to those plans.  (*Id.* at 4 ¶ 6).  Employers, who enter into TLIC service agreements, are referred to as "plan sponsors."  The employees who enroll in the plans are referred to as "plan participants."  (*Id.* at 12 ¶ 55).  The Defendants' products and services are sold nationally.  (*Id.* at 13 ¶ 62).  As part of their products and services, the Defendants offer, among other things, a 401(k) plan that enables participants to select from a broad array of investment options, transfer amounts in their plan between investment options, and receive information regarding their investments.  (*Id.* at 35 ¶ 187).  TLIC also makes available a range of investment options from which plan sponsors can select the investment line up to be offered to participants in their particular plan through a group annuity contract, which TLIC issues to the plan.  (*Id.* at 4-5 ¶¶ 6-13).  Under the terms of the group annuity contract, each investment option selected by the plan sponsor is structured as a "separate account."  (*Id.* at 23-24 ¶¶ 124-134).  The separate accounts contain different types of underlying investments, including mutual funds, collective trusts, and directly-advised accounts.  (*Id.*).

Plaintiffs bring claims against the Defendants under the Employment Retirement Income Security Act of 1974 (ERISA) and the Investment Advisers Act of 1940 (IAA).  (*Id.* at 81-107 ¶¶ 1-9) (Counts I-IX).  Plaintiffs generally allege that the Defendants violated ERISA by imposing impermissible fees from group annuity contracts in connection with employee-sponsored 401(k) retirement plans.  (*See id.* at 81-101 ¶¶ 1-8) (ERISA claims).  Plaintiffs allege that TLIC gave investment advice while unregistered with the Securities and Exchange Commission.  (*See id.* at 102-107 ¶¶ 1-9) (IAA claims).

Plaintiffs appear here individually and on behalf of a proposed class of ERISA-covered

employee benefit plans that held or hold group annuity contracts issued or sold by TLIC, as well as the participants and beneficiaries of all such ERISA covered employee benefit plans. (*Id.* at 2). Karen Poley and Barbara Poley appear individually and on behalf of any person who is a party to any contract with TLIC, where TLIC, pursuant to such contracts, acted as an investment adviser in violation of the IAA. (*Id.* at 2-3). The Plaintiffs act individually and on behalf of members of other proposed classes in this suit as well. (*Id.* at 3). The Poleys are participants of the Qualcare Alliance Network Retirement Plan (*id.* at 4 ¶ 4), and Santomenno was a member of Gain Capital Group 401(k) Plan until December 2010. (*Id.* 4 ¶ 5).

On February 8, 2011, Plaintiffs filed a complaint in the District Court against TLIC, TIM, and TAM alleging violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). On July 29, 2011 Defendants filed this motion, asking the Court to transfer this putative class action to the Central District of California. (TLIC Moving Br. at 2). The parties have submitted their respective briefs, and the Defendants' motion is now ripe for this Court's adjudication.

### III. Legal Standard

A court "may transfer any civil action to any other district where it might have been brought" if transfer serves the "the convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternative forum is more convenient than the present forum." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010). Accordingly, in a § 1404(a) motion to transfer, a court must determine: "(1) whether the proposed forum is one in which Plaintiff could have originally brought suit, and (2) whether transfer would be in the interest of justice and for the convenience of parties and witnesses." *Id.*

(citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Making this determination requires analysis of all relevant private and public factors, respectively. *Id.* at 606 (citing *Jumara*, 55 F.3d at 879). The private interests may include: (1) plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F.3d at 879 (citations omitted). The public interests may include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at 879–80 (citations omitted). Courts have broad discretion in determining a § 1404(a) motion to transfer, and are directed to consider "convenience and fairness on a case-by-case basis." *Santi*, 722 F. Supp. 2d at 606.

**IV.   Analysis**

   **A. Whether Transfer Would Be in the Interest of Justice and for the Convenience of the Parties and Witnesses:[2]**

      **i.   Private Factors**

         **a.  Convenience of the Witnesses**

Defendants argue that convenience of the witnesses favors transfer because the witnesses in this case, TLIC's current and former employees, reside in Los Angeles. (TLIC Moving Br., D.E. 33-1, at 15). Specifically, Defendants contend that because the heart of Plaintiffs' Complaint concerns allegedly excessive fees for investment options and alleged violations of the

---

[2] Based on its review of Plaintiffs' Opposition Brief, Plaintiffs do not appear to dispute that the Central District of California is a forum in which Plaintiff could have originally brought suit. (*See* Pl. Opp. Br. at 6). Thus, it appears that Plaintiffs concede this argument. Therefore, the Court will not address the first prong in this Opinion.

4

Investment Advisers Act, members, managers, and employees in TLIC's Investment Committee, TLIC's Product Development Group, Retirement Product Pricing Department, and Marketing Department, will serve as central witnesses because they had direct knowledge of the construction and pricing of TLIC's products and services, "selected the investment options to be included in TLIC's product platforms, and/or priced, marketed, and managed TLIC's retirement plan services." (*Id.* at 16).

By contrast, Plaintiffs contend that TLIC's employees could be compelled to appear by TLIC and thus it would not require judicial compulsion to bring these individuals to this forum. (Pl. Opp. Br., D.E. 40, at 22-23). As for individuals who are no longer employees, Plaintiffs ask the court not to presume that they will be unable to come to the forum. (*Id.* at 23). Further, Plaintiffs contend that Defendants offer no insight as to specific knowledge possessed by these individuals and its relevance to the claims, and therefore the court should not presume that their presence will be necessary. (*Id.* at 24-25). More importantly, Plaintiff's argue that many key witnesses are in the New Jersey area and are subject to this Court's, but not California's, compulsory process. (*Id.* at 25). Witnesses include employees of GAIN Capital Group, LLC and QualCare Alliance Networks, Inc. "who dealt with TLIC or TLIC's representatives" in the "establishment of the 401(k) plan, or concerning the terms and conditions of the group annuity contract." (*Id.* at 25-26). It is unclear whether these witnesses would be able to go to California, as they would have some incentive not to appear. (*Id.* at 26). Another group of crucial witnesses are those representatives from various investment management companies and investment advisors that managed and advised the mutual funds underlying the investment option offered by TLIC. (*Id.* at 26). For example, one of the allegations in the Complaint is that TLIC required mutual funds to make contributions to TLIC in order to be included in their options list. (*Id.*).

Plaintiffs claim that they intend to elicit testimony from these witnesses about the consideration paid for inclusion on the list. (*Id.* at 27). According to Plaintiffs, four of these mutual funds are located in New Jersey, fourteen are in New York, five are in Boston and one is in Pennsylvania. (*Id.*).

The Court finds that Defendants have the better of this argument for the following reasons.[3] First, Plaintiffs claim that they will elicit testimony from employees of the underlying mutual funds for their pay-to-play claim. However, this suit does not concern the actions of the mutual funds as much as it concerns the alleged actions of the TLIC Defendants. While employees of the mutual funds may be knowledgeable about what was required of the funds in order to be listed as options, the designers of the scheme and creators of the agreements were undoubtedly employees of TLIC. Indeed, the pay-to-play claims have to do with what TLIC demanded from the funds in return for being listed on the investment options list. Thus, Plaintiffs will likely solicit relevant testimony from TLIC's employees, including one of the nineteen TLIC employees identified as potential witnesses who are located in Los Angeles. (TLIC Moving Br. at 16) (citation omitted). Notably, this pay-to-play or kickback scheme is only one of the several claims listed in the Complaint. (*See generally* Compl. at 81-107 ¶¶ 1-9).

Second, Plaintiffs' contention that Defendants "offer no insight as to specific knowledge possessed by these individuals and its relevance to the claims," is misplaced. (Pl. Opp. Br. at 24-25). The Third Circuit has provided examples of appropriate documents to support this factor "would be a list of the names and addresses of witnesses whom the moving party plans to call

---

[3] The Court notes that convenience of the witnesses matters to the extent that the witnesses may actually be unavailable for trial in one of the fora. *Jumara*, 55 F.3d at 879. Here, neither party has alleged that witnesses would be unavailable for trial in either fora. The parties also have not identified any witnesses who would be unwilling to come voluntarily to either District. *See Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 558 (D.N.J. 2008). Further, both parties point to witnesses who may not geographically be within the court's subpoena power. (Pl. Opp. Br at 25; TLIC Moving Br. at 17).

and affidavits showing the materiality of the matter to which these witnesses will testify . . . ." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 n.2 (3d Cir. 1973). Here, Defendants have offered, through declarations by Darcy Hatton and Mark Fisher, and through their Moving and Reply Briefs, the names of specific individuals who likely possess knowledge about the design and marketing of retirement or investment products, where they are located, for whom they work, and a brief statement of their relevance to the claims at issue. (*See* TLIC Reply Br., D.E. 44, at 8-9) (citing to the declarations and the moving brief to support this contention). It appears that this evidence is of the type that the Third Circuit expects Defendants to proffer. *Plum Tree, Inc.*, 488 F.2d at 757 n.2.

The Court notes that Plaintiffs do not argue that these potential witnesses would be unhelpful in the analysis of the claims. By contrast, Plaintiffs speak generally (for the most part) when referring to "key" or "crucial non-party witnesses" and what knowledge they might possess. (*See* Pl. Opp. Br. at 25-26) ("Specifically, crucial non-party witnesses include *any individuals employed* by GAIN Capital Group, LLC and QualCare Alliance Network, Inc. who dealt with TLIC or TLIC's representatives, for instance, in the establishment of the 401(k) plan, or concerning the terms and condition of the group annuity contract. . . . [and] *representatives from the various investment management companies and investment advisors* that managed and advised the mutual funds underlying the separate account investment options offered on TLIC's menus of investment options available to participants in TLIC group annuity contracts sold through employer-sponsored 401(k) plans.") (emphasis added).

Accordingly, the Court finds that the convenience of the witnesses weighs in favor of transfer.

### b. Convenience of the Parties

Defendants in this action are TLIC, TIM, and TAM. (TLIC Moving Brief at 19). TLIC's retirement business is housed in Los Angeles, and TIM was based in Los Angeles.[4] TAM is located in Florida. (*Id.*). Defendants argue that their respective locations warrant transfer to the Central District of California. (*Id.*).

Conversely, Plaintiffs argue that the Third Circuit has held that a plaintiff's choice of venue is a paramount consideration that "should not be lightly disturbed" on a motion for transfer, particular where a plaintiff has chosen to bring the case in his home forum. (Pl. Opp. Br at 8). Plaintiffs further argue that ERISA's special venue provision counsels high deference for Plaintiff's choice of forum. (*Id.* at 8-12, 13 n.3) (quoting 29 U.S.C. § 1132(e)(2)). Finally, Plaintiffs argue that New Jersey would be the more appropriate forum because they reside here. (*Id.* at 12).

Again, Defendants have the better of this argument. While the Third Circuit has stated that the plaintiff's choice of forum is a "paramount consideration," and its choice should not be lightly disturbed, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), it has also warned that the plaintiff's choice of forum is not dispositive. *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295-96 (3d Cir. 2010) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.23 (1981)). Indeed, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum," *id*, and "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993). "Nevertheless, the 1404(a) factors are still balanced by the court in making a transfer determination, and the balance must tip strongly in favor of transfer before disturbing the

---

[4] According to Defendants, "[o]n June 30, 2011, Defendant TIM closed its operations and no longer conducts business." (TLIC Moving Br. at 4 n.5).

plaintiff's choice." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996). The Court finds, however, that there are reasons here to afford Plaintiffs less deference.

As a preliminary matter, Plaintiffs are suing on behalf of a putative class. To that end, courts have afforded less deference to a Plaintiff's choice of forum for two reasons. First, in such actions "the participation of the class representative is generally minimal." *Job Haines*, 936 F. Supp. at 228, 231. Second, a plaintiff's choice of forum is accorded less deference because the potential members of the class will likely be scattered across the United States. *See Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (determining in a derivative class action that "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"); *Job Haines*, 936 F. Supp. at 228, 231 (citing cases for the proposition announced in *Koster*); *Johnson v. Nextel Commc'ns, Inc.*, No. 06-5547, 2007 WL 2814649, at *4 (D.N.J. Sept. 21, 2007) ("Lastly, this is a putative class action and 'where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight.'") (citation omitted). Potential members of this putative class action will likely be scattered throughout the United States and its territories. (*See* Compl. at 12-13 ¶¶ 54-61) (describing the individual and proposed Plaintiffs, including plans and plan participants to whom TLIC provided investment advice). By contrast, TIM's employees and TLIC are located in California and TAM is located in Florida. While TAM will be inconvenienced regardless of the forum, TLIC and TIM will be more inconvenienced than the potential Plaintiffs who will be scattered across the nation. For example, according to a declaration by Darcy Hatton, Senior Vice President of TLIC, approximately 1,364 plan sponsors are based in California, 537 are based in Illinois, and 469 are based in New Jersey. (Darcy

Hatton Decl., D.E. 33-2, ¶¶ 1, 8). The remainder of plan sponsors, according to Hatton, are scattered across the United States and its territories. (*Id.*); *Job Haines*, 936 F. Supp. at 231 ("Therefore, the balance is between one nominal class representative located in New Jersey, and twelve defendants located in California. On the record before this Court, it is clearly more inconvenient for the defendants to travel to New Jersey than it is for the named plaintiff to go to California."); *Johnson*, 2007 WL 2814649, at *4 ("Lastly, this is a putative class action and 'where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight.' Here, Plaintiffs constitute only six of the 587 persons represented by LM & B. For these reasons, Plaintiffs' choice of forum deserves less deference.") (citation omitted); 1 McLaughlin on Class Actions § 2:45 (8th ed.) ("In the class action context, if the members of the *proposed class* reside in numerous states, the deference accorded plaintiff's forum selection ordinarily is greatly diminished. A minority view holds that the general rule of deference continues to apply where no class has yet been certified.") (citing to District Court decisions within the Third Circuit and the Southern District of New York affording less deference to Plaintiff's choice of forum) (citations omitted and emphasis added).

Next, as to Plaintiffs' argument that ERISA's "special venue provision" creates heightened deference, the Court does not read the plain language of that provision to be creating such heightened or special deference. *See* 29 U.S.C. § 1452(d). *But see* 1 McLaughlin on Class Actions § 2:45 (8th ed.) ("Because ERISA's venue provision expressly allows plaintiffs to lay venue 'where the plan is administered, where the breach took place, or where a defendant resides or may be found,' ERISA class actions have been carved out of the exception, so that plaintiffs' choice of forum in ERISA class actions generally is accorded substantial deference.") (citations omitted) (citing to District Court decisions in the Southern District of Ohio and Southern District

of Illinois). That provision appears to only expand the number of forums in which plaintiff's may file their action and serve process on defendants. *See* 29 U.S.C. § 1132(e)(2). Indeed, this Court's review of the District of New Jersey cases citing to ERISA's venue provision revealed no discussion about the amount of deference afforded to Plaintiff's choice of forum under ERISA. But assuming, *arguendo*, that the provision does create a heightened deference, neither the statute nor the Congressional history on which Plaintiffs rely do away with the need for a balanced analysis, or prohibit the Court from transferring the matter when convenience and justice strongly favor transfer. Indeed, even the cases on which Plaintiffs' rely did not afford as much deference to Plaintiffs' choice of forum as they would so suggest. *See, e.g.*, *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 n.13 (E.D. Va. 1988) ("But contrary to plaintiffs' suggestion here, ERISA's special venue provisions do not operate to preclude transfer. This suggestion . . . is without support in ERISA's language or legislative history. . . . Absent an express statement of Congressional purpose to achieve this result, this Court will not imply preclusion of Section 1404(a) from the mere existence of a special venue provision.); *accord Job Haines*, 936 F. Supp. at 231 (applying the same reasoning to plaintiff's argument that the 1934 Securities Exchange Act's special venue provision heightened the deference given to plaintiff's choice of forum).

      Finally, Plaintiffs argue that their relative financial and physical condition tips the scale in favor of remaining in this Court. (Pl. Opp. Br. at 18). They argue that Defendants will not be inconvenienced because they can afford to travel to New Jersey, have agreements with a travel service, and have access to a corporate plane. (*Id.* at 19). Further, they argue that Defendants' contention that if multiple managers were required to travel to New Jersey, it would be disruptive to TLIC's Retirement Service business is speculative as it is too early to tell who might be called

11

to appear at trial. (*Id.* at 20). Indeed, TLIC's employees could work from New Jersey via laptop and phone if called to appear here. (*Id.*). On the other hand, if this matter were transferred to California, "Plaintiffs will need to attend the entire trial, and would be out of work, and away from their homes for this entire time." (*Id.* at 21). In essence, Plaintiffs' argument is that Defendants would not be inconvenienced were this matter to remain in New Jersey because Defendants have substantial resources. It is true that TLIC is a large corporation with significantly more resources than the three individual Plaintiffs. However, as Plaintiffs acknowledge, "[t]he fact that Defendant has substantially more resources than Plaintiffs should not be the sole reason for refusing a transfer[.]" *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 338 (D.N.J. 2003).

The Court notes that Plaintiffs, as representatives of a putative class, will likely play a minimal role in the litigation. *Job Haines*, 936 F. Supp. at 228, 231. Even if the class were not certified, it is unclear whether Plaintiffs would be required to be present for most of the trial. At most, this factor favors neither party because neither Plaintiffs nor Defendants have advanced a particularly persuasive argument for having the matter remain in this venue or transferred to another.

Accordingly, the Court finds this factor to be neutral.

### c. Whether the Claims Arise in the Central District of California

"The third private factor . . . may be best understood as a consideration of which forum constitutes the 'center of gravity' of the dispute, its events, and transactions." *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11-1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011) (citing *Park Int'l, LLC v. Mody Enters.*, 105 F. Supp. 2d 370, 377–78 (D.N.J. 2000). Some courts in this District have considered this factor to be the "most critical to the Court's

12

analysis." *Id.*; *Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. 09-2275, 2010 WL 1540926, at *6 (D.N.J. April 14, 2010). "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred." *Id.* "When the central facts of the lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." *LG Elecs., Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001) (citation omitted).

Defendants argue that because "Plaintiffs assert ERISA and IAA violations based on the construction and delivery of TLIC's retirement plan products and services," the Central District of California is the more appropriate venue because "all of the work involved in developing, pricing, marketing and managing these products and services, including the investment platforms, which lie at the center of this case, occurred in Los Angeles." (TLIC Moving Br. at 21) (citation omitted).

Conversely, Plaintiffs argue that this factor should be afforded less weight because there is no need to inspect a physical location in California or anywhere else. (Pl. Opp. Br. at 15). They contend that the location of a contract breach or a harmful decision is only relevant as an indication of where witnesses or documents will be found.[5] (*Id.*). Plaintiffs concede, however, that important facts arose in California. (*Id.* at 17). But they point out that Transamerica Retirement Services is operated in Los Angeles, New York, and Iowa, and they sell their retirement products in every state. (*Id.*). Moreover, they contend that the Court will have access to the factual knowledge of witnesses in documents and knowledge about the facts giving rise to the claims will not be geographically inaccessible in this District. (*Id.* at 18). Further, Plaintiffs argue that New Jersey has specific connections to this lawsuit because the Plaintiffs' employer-sponsored retirement plans are based in New Jersey; the Plans contracted with TLIC in New

---

[5] Plaintiffs do not cite to any case law to support this contention.

Jersey; plan contributions were made in New Jersey; Plaintiffs received Plan communications and advice from Defendants in New Jersey; Plaintiffs received reports on their investments in New Jersey; and Plaintiffs, New Jersey residents, made investments and were injured in New Jersey. (*Id.* at 16).

The Court finds that this factor weighs in favor of transfer for the following three reasons. First, the location of the alleged injury is not considered when determining the "center of gravity" or where the claim arose in matters where no physical injury has occurred. *See, e.g., NPR, Inc. v. Am. Intern. Ins. Co. of Puerto Rico*, No. 00-0242, 2001 WL 294077, at *4 (D.N.J. Mar. 28, 2001) ("While Plaintiff undoubtedly felt the impact of lowered profitability as a result of [Defendant] in New Jersey, this is merely the underlying factual basis which led to Plaintiff's insurance claim. It is the breach of the Policy, not the underlying damages allegedly suffered, which must be considered in determining where the center of gravity of this litigation is. The wrong allegedly committed by Defendant, namely the breach of contract, occurred at Defendant's San Juan office, when Defendant allegedly refused to live up to its contractual obligations."). Moreover, because Plaintiffs are acting on behalf of a putative class, it is important to recognize that members of the proposed class will have suffered injury throughout the United States and its territories. (Darcy Hatton Decl., D.E. 33-2, ¶¶ 1, 8). Second, Plaintiffs' contention that this factor should not be considered or should be given less weight when there is no physical scene to inspect is unsupported in law. *NPR*, 2001 WL 294077, at *4; *Days Inns*, 2010 WL 1540926, at *6; *Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.*, No. 03-4550, 2004 WL 1630488, at *4 (D.N.J. June 30, 2004). Third, this case will likely revolve around verbal testimony and documents. The location of those documents and its importance to the Court's

14

analysis is discussed as a separate factor below.[6]

Plaintiffs concede that important facts to this case arose in California. Importantly, according to Defendants, it appears that 342 employees of the retirement business are located in Los Angeles, including the vast majority of that business's managers and executives. (TLIC Moving Br. at 6) (citations to declarations and depositions omitted). Because Plaintiffs' claims concern alleged schemes orchestrated by TLIC in connection with the retirement investment services, logically it appears that these schemes were designed and decided upon by individuals specifically working in the Retirement Services group in Los Angeles, even though the schemes may have been implemented nationwide. *See NPR*, 2001 WL 294077, at *4.

Further, while Plaintiffs contend that the Court will have access to the factual knowledge of witnesses and that knowledge about the facts giving rise to the claims will not be geographically inaccessible in this District, that is only true to the extent that those witnesses are subject to this Court's subpoena power. As stated earlier in this Opinion, the crucial witnesses, who are knowledgeable about the products, agreements with mutual funds, and those in charge of advice strategy, will mostly be found in California, not in New Jersey or the surrounding States. *See supra IV.i.a.*.

Finally, Plaintiffs' argument that their retirement plans are based in New Jersey; the Plans contracted with TLIC in New Jersey; plan contributions were made in New Jersey; Plaintiffs received Plan communications and advices from Defendants in New Jersey; and Plaintiffs received reports on their investments in New Jersey, is persuasive but fails to tip the scale in favor of keeping the case in this District because, as articulated above, Plaintiffs are acting as representatives of a putative nationwide class made up of potential Plaintiffs who will have

---

[6] The Court refers to factor six—"the location of books and records." *Jumara*, 55 F.3d at 879 (citations omitted). The Court discusses this factor under the heading "location of relevant documentary evidence."

similar connections to their home District.

For these reasons, the Court finds that, on the whole, this factor weighs in favor of transfer.

### d. The Location of Relevant Documentary Evidence

Defendants argue that "the ease of access to documentary evidence" favors transfer to the Central District of California. (TLIC Moving Br. at 22). They explain that "[d]ocuments relating to the design and pricing of TLIC's investment product platforms and retirement plan services, and the plan sponsors' purchase of such products" are created and stored in Los Angeles. (*Id.*). Additionally, "plan pricing records, documents pertaining separate account charges and fees, plan documents, summary plan descriptions, group annuity contracts, and Investment Committee meeting minutes and agendas, are created and stored at TLIC's Los Angeles office." (*Id.*) (citing Hatton Decl., D.E. 33-2). According to Defendants, documents pertaining to TIM's operations are located in Los Angeles but may soon be moved to Iowa. (*Id.*). Plaintiffs, in opposition, argue that that the parties will not be inconvenienced by having to produce documents in New Jersey because those documents are electronically available. (Pl. Opp. Br. at 28).

The Court finds that this factor weighs slightly in favor of Plaintiffs. Certainly, the analysis of Plaintiffs' claims will require review of Defendants' internal documents pertaining to pricing decisions, investment advice, and agreements with funds. Defendants are in possession of these records. Plaintiffs, on the other hand, presumably will not be presenting very much documentary evidence of their own except, perhaps, for Plan communications and advice they received from Defendants. However, as Plaintiffs point out, it appears that the group annuity contracts, service agreements, some marketing materials, and maybe the fiduciary warranties are

16

stored electronically. (*See* Hatton Dep., D.E. 40-1, Exhibit A, Tr. 134:23-136:1). Neither party has discussed whether additional documents will be needed and whether those documents are stored electronically. In any event, the Court affords this factor little weight because it is likely that most of the documents to which Defendants refer are stored electronically and therefore accessible from anywhere. *Jumara*, 55 F.3d at 879 (factor concerning the location of books and records is "limited to the extent that the files could not be produced in the alternative forum").

### ii. Public Factors

As stated earlier, the public interest factors that a court should consider in a transfer motion include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-880 (citations omitted).

The parties agree that the public interest factors do not heavily weigh in favor of granting or denying transfer. Therefore, the Court summarily addresses each of these factors.

The first public factor— the enforceability of the judgment—should not be a concern as both courts are federal courts and Plaintiffs' claims all arise under federal statutes, making judgment enforceable by either Court. As to the second public factor—practical considerations—neither the Court nor the parties can identify why the cost of litigation would be significantly higher in one fora over another. As to the third factor, "although courts may consider calendar congestion in ruling upon a § 1404(a) motion, relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion." *Clark*, 255 F. Supp. 2d at 339. Nevertheless, the Court notes that Defendants offer statistics from the federal

17

courts website indicating that, as of June 30, 2010, the two forums were equally congested but that the "median time to trial" was considerably faster in the Central District of California (18.4 months) than in the District of New Jersey (33.6 months).[7] (*See* TLIC Moving Br. at 23-24) (citation omitted). While this factor is "not a factor of great importance," the Court finds that this factor slightly tips in favor of transfer. As to the fourth factor—the interest in deciding local controversies at home—the claims at issue are not entirely local. While the three Plaintiffs are residents of New Jersey, the putative class will likely be scattered throughout the nation and the Defendants are located in California, Florida, or the Midwest. Neither party addresses the fifth factor about the public policy of either fora, and so the Court declines to do so sua sponte.[8] Finally, the sixth factor—familiarity of the trial judge with the applicable state law—is of no concern because Plaintiffs' do not bring state law claims.

Accordingly, the Court finds that all but one of the public interest factors—time to trial—are neutral.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for transfer of venue is GRANTED.[9] An accompanying Order will follow.

**Dated: March 30, 2012**                                                                 *s/Esther Salas*
                                                                                                 **United States District Judge**

---

[7] It also appears that as of June 30, 2011, the medial time to trial was 35.7 in the District of New Jersey and 19.9 in the Central District of California. *See* U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2011, http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/2011/C05Jun11.pdf

[8] Plaintiffs do argue, however, that the public policy behind ERISA's special venue provision counsels that this Court should give high deference to Plaintiff's choice of venue. (Pl. Opp. Br. at 30). This Court has already addressed this particular argument earlier in this Opinion and declines to address it once again.

[9] In light of the Court's determination that transfer is proper, the Court will not address the motions to dismiss—(D.E.s 34 and 35).