BRIAN BOYLE (S.B. #126576)
bboyle@omm.com
SHANNON BARRETT (Pro Hac Vice)
sbarrett@omm.com
THERESA GEE (S.B. #136241)
tgee@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:   (202) 383-5300
Facsimile:    (202) 383-5414

AMY J. LONGO (S.B. #198304)
alongo@omm.com
CHRISTOPHER B. CRAIG (S.B. #257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants Transamerica Life
Insurance Company, Transamerica Investment
Management, LLC and Transamerica Asset
Management, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC., <br><br> Defendant. | Case No. 2:12-cv-02782-DDP-MAN <br><br> Hon. Dean D. Pregerson <br><br> **NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT** <br><br> **HEARING: OCTOBER 1, 2012** <br> **TIME: 10:00 AM** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

BACKGROUND .................................................................. 3

    I.    TLIC'S RETIREMENT PLAN PRODUCT ..................... 3

    II.   PLAINTIFFS ........................................................... 4

    III.  Terms of TLIC's Retention ..................................... 5

          A.    Plan Services ................................................ 5

          B.    Fees ............................................................. 6

ARGUMENT .................................................................... 7

    I.    STANDARD OF REVIEW ....................................... 7

    II.   PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED ............ 9

          A.    Counts I And II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation ...... 12

          B.    Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments ............................................. 15

          C.    Counts IV And VII Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To The Selection Of Affiliates Who Advise Its Separate Account Products ............ 16

          D.    Count V Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Select The Cheapest Share Class Available In The Mutual Funds In The Separate Account Investment Options ............................................... 18

          E.    Count VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Negotiate Lower Sub-Advisory Fees For The Plan Investments In Collective Trusts And Separate Accounts ................................................. 19

    III.  COUNTS VIII AND IX SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE VALID CLAIMS UNDER THE INVESTMENT ADVISERS ACT ....................................... 19

          A.    Plaintiffs Have Failed To Adequately Allege The Existence Of An Investment Advisory Contract Between TLIC And Them ............................................... 20

          B.    Count IX Fails For The Additional Reason That Plaintiffs Do Not State A Proper Derivative Claim ..................... 21

CONCLUSION ................................................................. 23

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aguayo v. U.S. Bank*,
   653 F.3d 912 (9th Cir. 2011) ............................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678,173 L. Ed. 868, 129 S. Ct. 1937 (2009) ................................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 167 L. Ed. 929, 127 S. Ct. 1955 (2007) ........................................ 8

*Chaganti v. Ceridian Benefits Servs. Inc.*,
   208 F. App'x 541 (9th Cir. 2006) ........................................................ 18

*Clark v. Nevis Capital Mgmt., LLC*,
   2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ........................................ 20

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*,
   No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) ................ 14

*Ellis v. Rycenga Homes, Inc.*,
   484 F. Supp. 2d 694 (W.D. Mich. 2007) ............................................ 17

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ........................................ 11, 13, 14, 16

*IT Corp. v. Gen. Am. Life Ins. Co.*,
   107 F.3d 1415 (9th Cir. 1997) .......................................... 14, 15

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
   982 F.2d 1031 (6th Cir. 1993) ............................................ 18

*Marks v. Independence Blue Cross*,
   71 F. Supp. 2d 432 (E.D. Pa. 1999) .................................... 10, 13, 16

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ........................................ 8, 9

*Paul S. Mullin & Assoc., Inc. v. Bassett*,
   632 F. Supp. 532 (D. Del. 1986) ...................................... 20

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION TO
DISMISS CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES
### (continued)

Page

*Pegram v. Herdrich*,
    530 U.S. 211, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000) ................................ 10

*Putnam Family P'ship v. City of Yucaipa*,
    673 F.3d 920 (9th Cir. 2012) ........................................................................ 8

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) .................................................................. 12, 13

*Schulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) .......................................................... 11, 13, 16

*Tibble v. Edison Int'l*,
    639 F. Supp. 2d 1122 (C.D. Cal. 2009), *appeal docketed*, No. 10-56406
    (9th Cir. Sept. 8, 2010) .............................................................................. 16

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11, 62 L. Ed. 2d 146, 100 S. Ct. 242 (1979) ................................. 20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................... 8, 9

*Varity Corp. v. Howe*,
    516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996) ........................... 18

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ......................................................................... 8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2009) ....................................................................... 8

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ..................................................................... 16

*Zang v. Paychex Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) ....................................................... 18

**STATUTES**

15 U.S.C. § 80b, et seq. ..................................................................................... 1

29 U.S.C. § 1002(21)(A)(iii) ........................................................................... 18

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES
### (continued)

**Page**

ERISA § 3(17), 29 U.S.C. § 1002(17) ................................................................. 4, 22

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ...................................... 9, 13, 17, 18

ERISA § 3(34), 29 U.S.C. § 1002(34) ....................................................................... 5

ERISA § 406, 29 U.S.C. § 1106 ........................................................................ 16, 17

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................................... 9

ERISA § 502(d), 29 U.S.C. § 1132(d) .................................................................... 23

ERISA § 1002(21)(A)(i) ............................................................................................ 18

ERISA § 3(21)(A)(ii) ................................................................................................. 11

ERISA § 406(a) ........................................................................................................... 17

ERISA §§ 404(a) and 406(b) ...................................................................................... 9

Iowa Code § 508A.1(5) ............................................................................................. 23

## RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................................passim

Fed R. Civ. P. 23.1 ............................................................................................. 21, 22

## REGULATIONS

29 C.F.R. § 2509.96-1(d)(3) .................................................................................... 11

29 C.F.R. § 2510.3-101(h)(1) (2012) ................................................................... 22

29 C.F.R. § 2550.408b-2(c)(2) ............................................................................... 17

42 Fed. Reg. 32390 (June 24, 1977)...................................................................... 17

51 Fed. Reg. 41280 (Nov. 13, 1986) ..................................................................... 22

61 Fed. Reg. 29588 (June 11, 1996)...................................................................... 11

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

DOL Advisory Op. 97-15A, 1997 ............................................................................ 16

Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No.
    93-1280, 93d ........................................................................................... 22

## INTRODUCTION

Plaintiffs' employers decided to purchase a package of retirement plan services from Transamerica Life Insurance Company ("TLIC").  The Complaint challenges those decisions, alleging the fees charged for these services are "excessive."  But rather than seeking to hold their employers accountable for their decisions, Plaintiffs instead level a 111-page, multi-count class action complaint against TLIC.[1]  If Plaintiffs, as beneficiaries of those plan services, wish to second guess the merits of the vendor selection choices, they should take up those disputes with their employers, who are the plans' sponsors, and not with TLIC.  As a matter of law, the allegations in the Complaint fail to state a claim under Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., or the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b, et seq.

The Complaint alleges that TLIC breached fiduciary duties under ERISA by charging "excessive" fees on the separate account investment products in Plaintiffs' plans.  The Complaint further alleges that TLIC's retirement plan product runs afoul of the Investment Advisers Act because TLIC acts as an unregistered investment adviser.  At their core, these claims challenge TLIC's ability to design and offer a bundled retirement benefits product in the marketplace for a fee.  As developed below, none of those claims has merit.

As a threshold matter, the allegations fail to establish that TLIC had relevant ERISA fiduciary status with respect to the conduct alleged.  The heart of Plaintiffs' ERISA attack is that the group annuity contract through which TLIC offers plan sponsors a menu of investment options generates excessive fees regardless of the actual investment options selected by plan sponsors or participants.  That theory is

---

[1] The Complaint also names Transamerica Asset Management, Inc. ("TAM") and Transamerica Investment Management, LLC ("TIM") as defendants with respect to Counts IV and VII.  TAM and TIM have filed a separate motion to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6).

fatally deficient because it is the more than 15,000 plan sponsors who have elected to retain TLIC's services and it is those 15,000 plan sponsors who selected their plans' structures and investment options at the fees disclosed by TLIC.[2] Those plan sponsors have many choices in the market and they frequently use financial advisors to assist them in their selections. TLIC fully discloses the total expense ratios of the investment options to the plan sponsors at the time of contracting, and it is well-settled that plan service providers like TLIC are not fiduciaries for purposes of negotiating the terms of their own retention.

Although Plaintiffs contend that TLIC had fiduciary authority to control its own compensation through unilateral modifications to the group annuity contract or the revenue sharing rates associated with the underlying investments, the Complaint does not allege that TLIC actually exercised such authority. There are likewise no allegations that TLIC caused the plans to engage in any particular "transactions" in violation of ERISA's "prohibited transaction" provision, § 406(b)(3). The lack of any allegations identifying conduct by TLIC with respect to the specific retirement plans at issue in this case only underscores that Plaintiffs' attack is targeted at TLIC's retirement product as a whole, rather than at any particular investment option offered to the plans.

Plaintiffs' claims under the IAA are similarly defective. The IAA authorizes only one private cause of action—a limited right by parties to an improper investment advisory contract to seek to rescind the contract. Plaintiffs have failed to state a valid claim for rescission because they have not adequately pled, and cannot plead, that they were parties to any investment advisory contracts with

---

[2] Although not the focus of this Motion, Plaintiffs' attempt to challenge the decisions by thousands of different plan sponsors through an broad-brush attack on TLIC runs headlong into the reality that the various plan sponsors made different decisions as to how to design their respective plans for differing reasons. The prudence of those various plans' structures and related fees thus cannot feasibly be analyzed in a single inquiry.

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

TLIC.  The investment of their participant accounts, and the accounts of other plan participants, in TLIC investment products was instead authorized by group annuity contracts between TLIC and their plans' trustees.  Since there were no separate contracts between TLIC and Plaintiffs or other participants, there is nothing to rescind.  Plaintiffs' effort to assert a derivative claim on behalf of the insurance accounts at issue is misplaced, both because those accounts are neither corporations nor associations whose rights can be asserted derivatively under Federal Rule 23.1, and because Plaintiffs themselves were not security holders in those accounts.

Accordingly, for the reasons discussed below, the Court should grant TLIC's motion to dismiss, under Fed. R. Civ. P. 12(b)(6).[3]

## BACKGROUND

## I.   TLIC'S RETIREMENT PLAN PRODUCT

TLIC sells a 401(k) plan product consisting of a bundle of administrative services and investment options.  The product is sold by TLIC through independent brokers or financial advisors to small and medium sized employers who wish to offer retirement plan benefits to their employees.  Compl. ¶ 62.[4]  TLIC's 401(k) plan product enables participants to select from a menu of investment options, transfer amounts in their plan accounts between investment options, and receive periodic reporting on their investments.

Because the product is offered by an insurance company, the contractual relationships among the plan sponsor, the plan and TLIC are governed by a group annuity contract and services agreement.  The plan sponsor retains TLIC to provide administrative services to the plan pursuant to the terms of an initial application and

---

[3] This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 19, 2012.
[4] *See also* QualCare Plan Commission Disclosure (attached at Declaration of Darcy Hatton ("Hatton Decl.") Ex. F); Gain Plan Commission Disclosures (attached at Hatton Decl. Ex. G).

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

agreement.[5]  The plan sponsor also selects a lineup of investment options to be offered to plan participants from a wider range of investment options made available by TLIC through a group annuity contract between TLIC and the plan. Compl. ¶¶ 12-13.[6]  Under the terms of the group annuity contract, each investment option selected by the plan sponsor is structured as a "separate account."[7]  Compl. ¶¶ 19-20.  The separate accounts contain different types of underlying investments, including mutual funds, collective trusts and directly-advised accounts.  *Id*. ¶¶ 214-17.

## II.   PLAINTIFFS

Plaintiffs Jaclyn Santomenno, Karen Poley and Barbara Poley are or were participants in employer-sponsored retirement plans to which TLIC provided services and investment options through an administrative services agreement and group annuity contract.  Compl. ¶¶ 54-57.  Until December 2010, Santomenno was a participant in the Gain Capital Group, LLC 401(k) Plan (the "Gain Plan," a "Plaintiff Plan").  *Id*. ¶ 5.  The Poleys are participants in the QualCare Alliance Networks, Inc. Retirement Plan, formerly known as the Scibal Associates, Inc.

---

[5] *See*, *e.g.*, Application and Agreement for Services between TLIC and Gain Capital Group, LLC (dated April 14, 2009) ("Gain Plan 2009 Services Agmt.") §§ 1.1, 1.7(attached at Hatton Decl. Ex. A); Application and Agreement for Services between TLIC and Gain Capital Group, LLC (dated Dec. 24, 2007) ("Gain Plan 2007 Services Agmt.") (attached at Hatton Decl. Ex. B) § 1.1; (collectively, the "Gain Plan Services Agmts."); Application for Administrative Services (dated Dec. 6, 2004) and Application and Agreement for Services between TLIC and QualCare Alliance Networks, Inc. (dated Sept. 27, 2011) ("QualCare Plan Services Agmt.") (attached at Hatton Decl. Ex. C) (collectively, the "Services Agmts.") § 1.1.

[6] *See* Application and Group Annuity Contract No. 999535 (attached at Hatton Decl. Ex. D.1); Application and Group Annuity Contract No. 999534 (attached at Hatton Decl. Ex. D.2); Application and Group Annuity Contract No. 996375 ("QualCare Plan Contract") (collectively, the "Group Annuity Contracts") (attached at Hatton Decl. Ex. E).

[7] A "separate account" is defined under ERISA § 3(17), 29 U.S.C. § 1002(17) as "an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company."

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

401(k) Plan (the "QualCare Plan," a "Plaintiff Plan"). *Id.* ¶ 4. The Plaintiff Plans are "defined contribution" plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). *Id.* ¶¶ 2, 70. Gain Capital Group, LLC, a foreign exchange and asset management company, is the sponsor and administrator of the Gain Plan.[8] QualCare Alliance Networks, Inc., New Jersey's largest provider-sponsored, managed care company, is the sponsor and administrator of the QualCare Plan.[9]

## III.   TERMS OF TLIC'S RETENTION
### A.   Plan Services

In order to make 401(k) plans available for their employees, plan sponsors must make arrangements for recordkeeping and a variety of other plan services. Along with more than 15,000 other plan sponsors, the sponsors of the Plaintiff Plans chose to retain those services through TLIC pursuant to the terms of the Services Agreements. *See* Comp. ¶ 103; Gain Plan 2007 Services Agmt.; Gain Plan 2009 Services Agmt.; QualCare Plan Services Agmt. In addition to these core services, the Gain Plan Agreement lists a number of optional services available to a plan and plan sponsor including, *inter alia*, the offering of AdviceSolutions, "an interactive online retirement and investment planning tool provided by an outside vendor." Gain Plan 2009 Services Agmt. § 1.7.F. The stated fees for TLIC's services were guaranteed for one year from the effective date of the Services Agreements, after which time TLIC reserved the right to change fees upon 30 days' written notice to the plan administrator. Gain Plan 2009 Services Agmt. at 1; QualCare Plan Services Agmt. at 1. The Services Agreements terminate upon termination of the Group Annuity Contracts or upon 30-days written notice by either party. Gain Plan Services Agmts. § 1.5; QualCare Plan Services Agmt. § 1.5.

---

[8] *See* Gain Plan Services Agmts. at 1; *see also* https://www.gaincapital.com (last visited May 10, 2011).
[9] *See* QualCare Plan Services Agmt. at 1; see also https://www.qualcareinc.com (last visited May 10, 2011).

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Under the terms of the Group Annuity Contracts, the Plan sponsors selected the investments to offer Plan participants from a menu of investment options provided by TLIC.  Compl. ¶¶ 12-13.  The Group Annuity Contracts were sold to the Gain Capital and QualCare Plans through financial advisors who were paid a commission in connection with the sale, following disclosure to and acceptance by the plan sponsors.[10]  Approximately 170 investment options were made available by TLIC for Plaintiffs' plan sponsors which, as noted above, are an asset management firm and a large managed healthcare company.  *Id.* ¶ 241.  As the Complaint reflects, many of those investment options invest in underlying funds or trusts that are unaffiliated with TLIC.  *Id.* ¶¶ 245, 320 (listing investment options invested in funds offered by Vanguard, Columbia, Oppenheimer, State Street and other unaffiliated companies).  The Gain Plan selected 46 investment options, and the QualCare Plan selected 36 investment options.  *Id.* ¶¶ 16-17, 206-08.

**B.     Fees**

The total fees charged in connection with the separate account investment options offered to plan sponsors vary depending on the nature of the underlying investment option.  As the Complaint alleges, for separate account investment options invested in mutual funds, the Administrative and Investment Management fees total approximately 75 basis points, or 0.75% of Plan assets invested in those options.  *Id.* ¶ 271.  These fees, along with the expense ratio on the underlying mutual fund, comprise the maximum fees charged in connection with separate account investment options invested in mutual funds.  *Id.* ¶¶ 275-76.  However, for certain separate account investment options, TLIC receives fee reimbursements or revenue sharing from the underlying mutual funds.  *Id.* ¶¶ 281-84.  Plaintiffs admit that these revenue sharing payments were used to reduce the total fees under the

---

[10] *See* Gain Plan Commission Disclosures (attached at Hatton Decl. Ex. G); QualCare Plan Commission Disclosure (attached at Hatton Decl. Ex. F).

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

Group Annuity Contracts, including Administrative and Investment Management fees. *Id.* ¶ 288.[11]  For each separate account investment option invested in collective trusts or "traditional" separate accounts, TLIC charges a comprehensive fee ranging from 79 basis points to 150 basis points. *Id.* ¶¶ 331, 333-34.  TLIC reserved the right to change the Administrative or Investment Management fees upon 30 days' advance written notice to the Plan sponsor.[12]

In addition to the fees disclosed in the Services Agreements and Group Annuity Contracts, plan sponsors receive Investment Fact Sheets which include information regarding the investment strategy, expense ratios, share class, and performance (including performance against benchmarks) of the investments held in the approximately 170 separate account investment options offered to plan sponsors.  Compl. ¶¶ 227-44.[13]  Where applicable, the Investment Fact Sheets also disclose that revenue sharing payments made by the underlying fund company will be used to reduce the Investment and Administrative Charges under the Group Annuity Contract.[14]

## ARGUMENT

## I.    STANDARD OF REVIEW

Dismissal is proper under Rule 12(b)(6) when, "even if all material factual

---

[11] *See* Gain Plan Contract, Schedule of Separate Accounts, Investment Management Charges and Administrative Charges ("For some Separate Accounts, we receive fee reimbursements from the underlying investment. The fees reimbursed to us are applied to adjust the Contract Asset Charges, and/or the Investment Management Charge and/or the Administrative Charge."); QualCare Plan Contract (same).

[12] *See, e.g.*, Gain Plan Contract ¶ B.08 ("We reserve the right to change the Investment Management Charge or the Administrative Charge upon advance written notice to the Contractholder of at least 30 days."); QualCare Plan Contract ¶ B.08 (same).

[13] *See* Investment Fact Sheets (attached at Hatton Decl. Ex. H).

[14] *See, e.g.*, Investment Fact Sheet, First American Mid Cap Growth Opportunities Ret Opt. ("The Investment Management and Administrative Charges (IM and Admin Charges) are 0.75%, reduced by the 0.25% fee income received from the underlying mutual fund company."); Investment Fact Sheet, Loomis Sayles Investment Grade Bond Ret Opt ("The IM and Admin Charges are 0.75%, reduced by the 0.15% net income received from the underlying fund company.").

allegations in the complaint are taken as true, plaintiffs 'can prove no set of facts in support of the claim that would entitle [them] to relief.'" *Putnam Family P'ship v. City of Yucaipa*, 673 F.3d 920, 925 (9th Cir. 2012) (quoting *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011)). The Supreme Court has held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 167 L. Ed. 929, 940, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). To withstand a motion to dismiss after *Twombly*, "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See*, *e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678,173 L. Ed. 868, 884, 129 S. Ct. 1937, 1949 (2009)).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint and documents attached to the complaint or incorporated by reference. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 & n.4 (9th Cir. 1998) (noting that, "[b]ecause Parrino's claims rest on his membership in FHP's plan and on the terms of the plan, documents governing plan membership, coverage, and administration are essential to his complaint. The FHP Group Application Plan includes key terms regarding the plan covering Parrino, and its authenticity was not disputed by the parties. Accordingly, it was proper for the district court to consider that document in ruling on the defendants' motions to dismiss.") A document is

- 8 -

incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.  This rule "[p]revent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based . . . ." *Parrino*, 146 F.3d at 706.

## II.     PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED.

Counts I-VII assert that TLIC breached fiduciary duties under ERISA §§ 404(a) and 406(b) by causing the Plaintiffs and Plaintiff Plans to incur excessive costs for administrative services and investment options.[15]  These counts lack merit because, although TLIC has certain fiduciary responsibilities with respect to the Plans, it does not act as a fiduciary with respect to the conduct alleged—it is the Plans' sponsors, not TLIC, who caused the Plans to purchase TLIC's services.

ERISA provides that a person is a plan fiduciary:

*to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A) (emphasis added); 29 U.S.C. § 1002(21)(A).

A plan fiduciary as to one function is not necessarily a fiduciary with respect to other functions, as ERISA makes a person a fiduciary only "to the extent" that

---

[15] All of Plaintiffs' claims against TLIC are based on TLIC's alleged fiduciary status.  To the extent Plaintiffs purport to assert claims against TLIC as a non-fiduciary under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), those claims fail for the same reasons as they fail against non-fiduciary co-defendants TIM and TAM as addressed in a separate motion to dismiss filed by those defendants.

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

the person performs fiduciary functions. *See Pegram v. Herdrich*, 530 U.S. 211, 225-26, 147 L. Ed. 2d 164, 179-80, 120 S. Ct. 2143, 2152-53 (2000). Accordingly, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226. Thus, to hold TLIC liable as a fiduciary, the Court would have to conclude—which it cannot—that TLIC was acting as a fiduciary to the plan in undertaking the conduct at issue in the Complaint. *See id.*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Marks v. Independence Blue Cross,* 71 F. Supp. 2d 432, 436 (E.D. Pa. 1999) ("Even assuming that IBC exercised discretion over certain of the plan's administrative functions, it does not become liable as an ERISA fiduciary unless there is a nexus between the alleged breach and the discretionary authority exercised.").

Although Plaintiffs seek to establish TLIC's fiduciary status for purposes of this action under several different theories (see Compl. V.A.-J. ¶¶ 148-205), those arguments are either facially erroneous or have nothing to do with any of Plaintiffs' actual theories of liability. For example, a number of Plaintiffs' fiduciary status arguments attempt to establish that TLIC controlled or influenced (1) how plan sponsors selected a plan's investment options from among the range of TLIC separate accounts; or (2) how participants invested their accounts among the TLIC separate accounts offered through their respective plans.[16] *See* Compl. § V.C, H, I,

---

[16] Although not relevant to any specific claim, Plaintiffs allege that TLIC is a fiduciary because it rendered investment advice through "AdviceSolutions." Compl. ¶¶ 185-202. But the Complaint does not identify any actual investment advice that TLIC provided to the Plaintiffs. Moreover, the alleged functionality of "AdviceSolutions" (*id.* ¶¶ 195-97) comports with the Department of Labor's 1996 Interpretive Bulletin Pertaining to Participant Investment Education. *See* 61 Fed. Reg. 29588 (June 11, 1996) (codified at 29 C.F.R. § 2509.96-1(d)(3) (2012))

- 10 -

¶¶ 155-63, 180-84, 185-202.  Such theories that TLIC could steer plans or individual plan participants into particular TLIC investment options have no relevance where, as here, Plaintiffs not only assert that the *entire* range of investment options on TLIC's platform is imprudent but also seek to certify a multiple-plan class on that basis.  *See*, *e.g*., Compl. ¶¶ 8, 10, 23, 142, 374.[17]

Under this broad-based attack, Plaintiffs do not assert that they were harmed through the selection of any particular investment option over another for inclusion in their Plan investment lineup.  Rather, Plaintiffs' core contention is that it was improper for the Plans to use the TLIC platform *at all*.  But the threshold decision to select TLIC to provide administrative services and investment options to the Plaintiff Plans was squarely and solely in the hands of the relevant plan sponsors, and not within the scope of TLIC's fiduciary obligations.  It is well-settled that a party does not act as an ERISA fiduciary in setting the terms of its own retention, even if it is being retained to serve in a fiduciary capacity.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (party "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms"); *accord Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324-25 (3d Cir. 2011) ("Plaintiffs allege Unisys selected investment options with excessive fees caused by a fee structure negotiated between Unisys and

(explaining that certain investment-related information and materials provided to plan participants including, *inter alia*, asset allocation models, do not constitute "investment advice" under ERISA § 3(21)(A)(ii)).

[17] Any effort by Plaintiffs to change course now by arguing that only a subset of TLIC's investment products were imprudent  or that certain TLIC investment products were inferior to others, and that TLIC steered Plaintiffs or their respective Plans into the inferior products would be antithetical to class treatment.  Different plans included varying lineups of TLIC investment products, and different participants selected varying investment options from the investment menus offered through their plans—as reflected by Plaintiffs' own allegations. Compl. ¶¶ 16-17; 219-25.  Thus, participants in different plans, or even within the same plan, would have highly divergent interests as to which TLIC investments are characterized as less favorable than others.

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Fidelity for included mutual funds.  Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys.").

To be clear, TLIC does have limited fiduciary responsibilities for monitoring the investment performance within its separate account investment products.[18]  But for the reasons stated above, Plaintiffs' broad scale attack on TLIC's retirement service product does not target those responsibilities.  The flaws in Plaintiffs' remaining fiduciary status arguments become evident in reviewing their individual claims, as described below.

### A.   Counts I And II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation.

Plaintiffs allege in Counts I and II that TLIC engaged in prohibited transactions or otherwise breached fiduciary duties by charging Administrative and Investment Management fees in connection with Transamerica separate accounts containing underlying mutual fund investments.  Consistent with the central premise of the Complaint that the plans paid too much for the product provided by TLIC, Plaintiffs contend that *any* fee charged by TLIC in addition to the expense ratios of the underlying investments in the separate accounts is inherently excessive.  *See*, *e.g*., Compl. ¶¶ 140-41, 147, 257, 260.  Counts I and II must be dismissed for the straightforward reason that TLIC was not a fiduciary with respect to the Administrative and Investment Management fees it set when offering the separate account investment options to Plan sponsors.

_____

[18] Plaintiffs allege that TLIC is a fiduciary by virtue of the "Fiduciary Warranty" it offers to plan sponsors.  *See* Compl. § V.C ¶¶ 155-63.  This "warranty" is not an admission of fiduciary status but merely represents an indemnification of the plan sponsor fiduciaries by TLIC in the event that claims are asserted against the fiduciaries in connection with certain aspects of the selection or performance of plan investment options.  *See* Hatton Decl. Ex. I.  Moreover, consistent with TLIC's narrow fiduciary responsibilities, the "warranty" pertains only to certain criteria relating to investment performance; it expressly excludes claims, such as those asserted here, challenging whether the "fees paid directly or indirectly by the plan are reasonable."  *Id.*

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

As a threshold matter, Plaintiffs' argument entirely ignores the myriad services that TLIC provides to the Plans, including recordkeeping and administrative services.[19]  In its contracts with the sponsors of the Plaintiff Plans, TLIC disclosed that the revenues received from the investment options (including Administrative and Investment Management Fees) would effectively defray TLIC's costs of providing those services to the Plans, and that the services contract would terminate with the termination or discontinuance of the Group Annuity Contracts.[20]  Yet even if TLIC's Administrative and Investment Management fees could be deemed "excessive," TLIC was not the fiduciary responsible for the Plans' decision to pay those fees.  Those fees were fully disclosed to Plan sponsors,[21] and the Plan sponsors thus made the fiduciary decision to cause their Plans to incur such fees when they selected the investment options to be included in their Plan investment lineups.  *See Renfro*, 671 F.3d at 323; *Hecker*, 556 F.3d at 583; *Marks*, 71 F. Supp. 2d at 436; *Schulist*, 717 F.2d at 1132.

Plaintiffs nonetheless attempt to establish that TLIC has relevant fiduciary status by alleging that TLIC has the ability to "unilaterally" remove investment options from the range of options available to the plans and to alter its fees.  Compl. §§ V.B, E ¶¶ 152-54, 169-70.  This is a red herring.  Plaintiffs do not allege that TLIC ever **exercised** its authority to alter its Investment Management or Administrative Charges, or to alter the investment options in the Plans.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Moreover, the contract documents have provided that TLIC can only remove investment options from its menu or adjust its Investment Management or Administrative charges upon advance notice to the plan

---

[19] Gain Plan Services Agmts. § 1.1; QualCare Plan Services Agmt. § 1.1.
[20] Gain Plan 2009 Services Agmt. § 1.5; QualCare Plan Services Agmt. § 1.5.
[21] *See* Gain Plan Contract, Schedule of Separate Accounts, Investment Management Charges and Administrative Charges; QualCare Plan Contract (same).

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

sponsor.[22]  If the plan sponsor refuses to consent to such changes, the plan sponsor remains free to terminate its relationship with TLIC and place the plan's assets with a different service provider.  Thus, the Plans each had a meaningful opportunity to avoid any announced change in the investment menu by terminating TLIC's appointment.[23]  Accordingly, as in *Hecker*, the plan sponsor, not TLIC, had "final authority" over any changes to the plans' investment lineup.  *Hecker*, 556 F.3d at 584; *Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, No. 07-11344-GAO, 2008 WL 4457861, at *2-5 (D. Mass. Sept. 30, 2008) (granting motion to dismiss in favor of service provider to ERISA plan where plan sponsor claimed that provider breached fiduciary duty and committed prohibited transactions by receiving revenue sharing payments from affiliate's mutual funds offered as investment options in plan).  TLIC therefore was not a fiduciary with respect to the selection of investment options.  *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) ("'Persons who have no power to make any decisions as to plan policy, interpretation, practices or procedures are not fiduciaries.").

Finally, Plaintiffs' assertions that TLIC is a fiduciary for purposes of managing the underlying investments in the separate accounts (Compl. §§ V.A, D, F, J ¶¶ ) are immaterial to these counts, as Plaintiffs do not, and cannot, allege that

---

[22] *See*, *e.g*., Gain Plan Contract ¶ 2.02 ("We may establish new Contract Account(s) from time to time, which may be added to this Contract at the election of the Contractholder. With at least a 6-month notification period, we reserve the right to delete any Contract Account maintained under this Contract."), ¶ B.08 ("We reserve the right to change the Investment Management Charge or the Administrative Charge upon advance written notice to the Contractholder of at least 30 days."); QualCare Plan Contract ¶ 2.02,¶ B.08 (containing same provisions). The contracts have authorized TLIC to provide shorter notice before removing an investment option where changes in an investment product's underlying investments—such as the termination of a mutual fund that constitutes a TLIC separate account's sole investment—make continued operation of the investment product "impossible or impracticable." *See, e.g.,* Gain Plan Contract, Amendment to Contract.
[23] *See*, *e.g*., Gain Plan Contract ¶ 8.04 ("By giving us written notice, the Contractholder may affect either a total discontinuance or a partial discontinuance of the Contract."); QualCare Plan Contract ¶ 8.04 (same).

- 14 -

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

TLIC controlled the rates of its Administrative and Investment Management fees through the manner in which it managed the underlying investments.[24]  Stated differently, the Complaint alleges that the Administrative and Investment Management fees are set by contract, and there is no allegation that these fees are determined by TLIC's selection of a particular mutual fund within a particular separate account.  *Id.* ¶ 275.

### B.   Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments.

In Count III, plaintiffs allege that TLIC committed prohibited transactions and otherwise breached fiduciary duties by receiving revenue sharing payments from mutual funds contained in the plan's separate account investment options. Compl. § V.G, ¶¶ 178-79.  Yet Plaintiffs do not dispute that any revenue sharing payments TLIC receives are used to reduce the amounts of TLIC's Administrative and Investment Management charges.[25]  Compl. ¶¶ 288, 295.  Rather, Plaintiffs contend that the reduction of those charges benefitted TLIC, and not the plans, because the charges themselves were illegitimate.  Compl., Count III, ¶¶ 3-4.

That logic merely renders Count III a crude recasting of Plaintiffs' first two counts, which attack the Administrative and Investment Management charges as excessive.  The fiduciary decisions to commit the Plaintiff Plans to TLIC's Investment Management and Administrative charges were made by the Plans'

---

[24] Plaintiffs also allege that TLIC has relevant fiduciary status because it can unilaterally change the share class of the mutual fund investments held in the separate accounts.  Compl. ¶¶ 152-54; 169-70.  But here too, the ability to change the share class on investments held by the separate accounts is irrelevant to TLIC's ability to set or collect its own fees from the plans, which were fully disclosed to and agreed up by the relevant plan sponsors.  *See* Section I. A, *supra*.

[25] *See* Gain Plan Contract, Schedule of Separate Accounts, Investment Management Charges and Administrative Charges at 4 ("For some Separate Accounts, we receive fee reimbursements from the underlying investment.  The fees reimbursed to us are applied to adjust the Contract Asset Charges, and/or the Investment Management Charge and/or the Administrative Charge."); QualCare Plan Contract (same); Investment Fact Sheets at First American Mid Cap Growth Opportunities Ret Opt. and Loomis Sayles Investment Grade Bond Ret Opt.

1   sponsors.  *See Hecker*, 556 F.3d at 583; *Marks*, 71 F. Supp. 2d at 436; *Schulist*, 717

2   F.2d at 1132.  As the Complaint alleges, once those sponsors made their decisions,

3   TLIC used revenue sharing payments to offset the Investment Management and

4   Administrative charges.  Compl. ¶ 288.  Those payments redounded to the benefit

5   of the Plans, and did not increase TLIC's own compensation.  *Cf.* DOL Advisory

6   Op. 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997) (concluding that a trustee's

7   receipt of fees from one or more mutual funds in connection with an ERISA plan's

8   investment in such funds did not violate ERISA Section 406(b)(3) where the funds

9   were used to reduce the plan's obligation to the trustee).

10
11
   **C.    Counts IV And VII Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To The Selection Of Affiliates Who Advise Its Separate Account Products.**

12          Counts IV and VII allege that, by allowing the Plans to invest in, and pay

13   investment management and other fees to, TLIC-affiliated funds, TLIC "caused"

14   the Plans to engage in prohibited transactions in violation of ERISA § 406, 29

15   U.S.C. § 1106.  Those claims fail for two independent reasons.  As a threshold

16   matter, any prohibited transaction claim against TLIC must fail because the

17   Complaint does not identify any specific "transaction" that would trigger liability

18   under ERISA § 406.  Courts routinely have dismissed prohibited transaction claims

19   where, as here, the complaint fails to identify any specific "transaction" by the

20   alleged fiduciary for its own account and involving plan assets.  *See*, *e.g.*, *Wright v.*

21   *Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (affirming dismissal

22   of prohibited transactions claim where the plaintiffs failed to identify any

23   "transaction" within § 1106); *see also Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122,

24   1127 (C.D. Cal. 2009), *appeal docketed*, No. 10-56406 (9th Cir. Sept. 8, 2010)

25   (dismissing prohibited transaction claims where plaintiff failed to allege any

26   conduct by the defendants "dealing with" plan assets for defendant's own interest).

27          Indeed, the only "transaction" involving Plan assets identified in the

28   Complaint is the selection of the original Plan investment lineup.  Compl. ¶¶ 12-13.

- 16 -

But TLIC played no fiduciary role in the selection of the investment lineup and therefore cannot be said to have "caused" the selection of particular Plan investments that may have resulted in the payment of fees to TLIC affiliates.  *See* Section I.A., *supra*.  Although TLIC offered separate accounts containing TAM and TIM-advised funds or trusts, it was the plan sponsors – not TLIC – who chose to include those options in their respective plans.  To accept Plaintiffs' theory, then, the Court would have to hold that TLIC "caused" the Plans to engage in transactions even though it played no role in allocating the Plans' assets to TLIC-affiliated funds.  This interpretation of ERISA § 406 cannot be squared with judicial authorities or Department of Labor regulations.  *See*, *e.g.*, *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 711-12 (W.D. Mich. 2007) (holding that defendant could not be liable under ERISA § 406(a) because defendant did not actively participate in challenged transactions but merely failed to prevent them); 42 Fed. Reg. 32390 (June 24, 1977) (codified as amended at 29 C.F.R. § 2550.408b-2(c)(2) (2012)) (2011) ("A fiduciary does not engage in an act described in section 406(b)(1) of the Act if the fiduciary does not use any of the authority, control or responsibility which makes such person a fiduciary to cause a plan to pay additional fees for a service furnished by such fiduciary . . . .").

Moreover, there are no allegations that TLIC ever exercised discretion to change the underlying investments in the separate accounts from non-affiliated to affiliated funds.  Under ERISA § 3(21)(A), an entity is a fiduciary if it exercises "discretionary authority or discretionary control respecting ***management of such plan or . . . disposition of its assets***," *id*. § 1002(21)(A)(i) (emphasis added), or if it possesses "discretionary authority or discretionary responsibility in the ***administration*** of such plan."  *Id*. § 1002(21)(A)(iii) (emphasis added). In other words, mere ***possession*** of discretionary authority over plan ***administration*** suffices for fiduciary status.  But for plan ***asset management or disposition***, the actual exercise of control must be shown.  And investment selection plainly involves

- 17 -

management and disposition of plan assets.  *See Zang v. Paychex Inc.*, 728 F. Supp.
2d 261, 269 (W.D.N.Y. 2010) (granting service provider's motion to dismiss breach
of fiduciary duty claims for lack of fiduciary status on grounds that, under ERISA
§ 1002(21)(A)(i), an individual must exercise "authority or control respecting
management or disposition" of plan assets to be classified as a fiduciary, rather than
merely having authority or control over the plan).[26]  Accordingly, because Plaintiffs
do not allege that TLIC ever ***exercised*** any discretion over the selection of Plan
investment options, TLIC did not function as a fiduciary as to investment
selections.

　　Because the Complaint fails to identify any "transaction" by TLIC involving
Plan assets, the prohibited transaction claims in Counts IV and VII must fail.

**D.    Count V Should Be Dismissed Because TLIC Has No Fiduciary
Obligation To Select The Cheapest Share Class Available In The
Mutual Funds In The Separate Account Investment Options.**

　　In Count V Plaintiffs allege that TLIC breached fiduciary duties by not
selecting the cheapest share class available for the mutual funds included in its
separate account investment options.  But the expenses associated with the share
class of any particular mutual fund included within one of TLIC's separate accounts
are merely a component of the total disclosed expense ratio for that separate
account.  Compl. ¶¶ 227-33; *see also* Investment Fact Sheets.  It is the plan sponsor,
not TLIC, who makes the fiduciary decision to then offer the separate account as a

---

[26] In contrast, Courts have construed the administrative power under subsection (iii)
to encompass day-to-day operational issues such as participant communications,
construction of plan documents, and claims determinations.  *See, e.g., Varity Corp.
v. Howe*, 516 U.S. 489, 502, 134 L. Ed. 2d 130, 142-43, 116 S. Ct. 1065, 1072-73
(1996) (fiduciaries exercise "administrative responsibilities" in answering
participant questions regarding plan terms); *Chaganti v. Ceridian Benefits Servs.
Inc.*, 208 F. App'x 541, 547 (9th Cir. 2006) ("[T]o qualify as a fiduciary, a plan
administrator must have the discretion to interpret provisions of the plan document
and to make final decisions, even in the face of dispute, as to eligibility and
benefits."); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982
F.2d 1031, 1035 (6th Cir. 1993) ("When an insurance company administers claims
for an employee welfare benefit plan and has authority to grant or deny the claims,
the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii).").

1   plan investment option, subject to the total disclosed expense ratio on that

2   investment option.  As discussed, the decision to retain TLIC and to include

3   particular separate accounts in the Plan investment lineup is made by plan sponsors

4   with the assistance of their financial advisors.  TLIC had no fiduciary status or

5   obligation with respect to that decision.  *See* Section I.A, *supra*.

6         **E.**     **Count VI Should Be Dismissed Because TLIC Has No Fiduciary
7               Obligation To Negotiate Lower Sub-Advisory Fees For The Plan
Investments In Collective Trusts And Separate Accounts.**

8   In Count VI, Plaintiffs allege that TLIC breached fiduciary duties by failing

9   to use its size to negotiate lower expenses for collective trusts and "traditional

10  separate accounts."  For reasons previously discussed, that claim must fail because

11  it challenges the retention of TLIC at rates that were fully disclosed to the plan

12  sponsor.  The Complaint itself alleges that the expenses for the underlying

13  collective trusts and separate accounts held in certain separate account investment

14  options were included in the total expense ratios that TLIC disclosed to plan

15  sponsors.  Compl. ¶¶ 330-34.  And it was the plan sponsors who made the fiduciary

16  decisions to include the separate accounts in their plans at those disclosed rates.

17  *See* Section I.A, *supra*.

18  **III.**    **COUNTS VIII AND IX SHOULD BE DISMISSED BECAUSE THEY
19          FAIL TO STATE VALID CLAIMS UNDER THE INVESTMENT
ADVISERS ACT.**

20  Counts VIII and IX assert largely identical claims under Section 215(b) of

21  the IAA.  Count VIII alleges that TLIC violated the IAA by providing investment

22  advice, without having registered as an investment adviser, to the separate account

23  products to which Plaintiffs Barbara and Karen Poley allocated their QualCare Plan

24  accounts.  *See, e.g.*, Compl. ¶¶ 13, 104, 349-52.[27]  Count IX recasts Count VIII as a

25  derivative claim on behalf of the various separate accounts, of which Plaintiffs

26

27  _____

[27] Plaintiffs do not purport to assert their IAA claims on behalf of Plaintiffs
Santomenno or in connection with the Gain Plan.

28

NOT. & MEM. ISO DEF. TRANSAMERICA
LIFE INSURANCE COMPANY'S MOTION
TO DISMISS CLASS ACTION COMPLAINT

claim to be "security holders."   Plaintiffs have failed to allege a viable claim under either count.

### A.    Plaintiffs Have Failed To Adequately Allege The Existence Of An Investment Advisory Contract Between TLIC And Them.

Plaintiffs' Count VIII fails because Plaintiffs have not adequately pled that TLIC ever entered into an agreement with Plaintiffs to provide them investment advice.  This dooms Plaintiffs' direct action claim because the IAA authorizes only one private cause of action—a limited private right to void an improper investment advisory contract and recoup fees paid under that contract (net of investment profits).  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 62 L. Ed. 2d 146, 157-58, 100 S. Ct. 242, 249 (1979).  To seek rescission, a private plaintiff must identify an investment advisory contract to which he or she is a party.  *See Clark v. Nevis Capital Mgmt., LLC*, 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005) (collecting cases); *Paul S. Mullin & Assoc., Inc. v. Bassett*, 632 F. Supp. 532, 537 (D. Del. 1986) ("Obviously, only the parties to a contract can avail themselves of the remedy of rescission.").

Plaintiffs apparently attempt to meet this requirement by asserting, in wholly conclusory terms, that their "investments in the TLIC investment options" "resulted in the formation of contracts between [them] and TLIC."  Compl., Count VIII, ¶¶ 10, 12.  But the assertion is wrong as a matter of law.  As the Complaint makes clear, the investments to which Plaintiffs refer are investments made through the Plans.  Compl. ¶ 32; Count VIII, ¶¶ 8, 10.  TLIC's obligation to provide investment options for the Plan arose from the QualCare Plan Contract, an agreement between TLIC and the QualCare Plan's trustee that was in force years before Plaintiffs supposedly entered into contracts with TLIC.[28]  Plaintiffs were not parties to the

---

[28] *Compare* QualCare Plan Contract (dated January 1, 2005) *with* Compl., Count VIII ¶¶ 10,12 (asserting Plaintiffs formed contracts with TLIC in 2010).

QualCare Plan Contract, and their subsequent decisions to allocate their participant accounts among the investment options that TLIC was already contractually required under the QualCare Plan Contract to provide through the QualCare Plan did not create separate contracts between Plaintiffs and TLIC.  Moreover, even if such separate contracts could be said to have existed, rescission of them would be meaningless because the QualCare Plan Contract—which Plaintiffs cannot rescind—independently authorized both the QualCare Plan's investment in the investment options and TLIC's receipt of compensation in connection with those investments.  QualCare Plan Contract §§ 2.01, B.05-07.  Any separate contracts between TLIC and Plaintiffs would have been superfluous, and Plaintiffs' effort to establish the existence of such contracts only to nullify them is thus as pointless as it is inadequate.  Count VIII should therefore be dismissed.

> ## B.   Count IX Fails For The Additional Reason That Plaintiffs Do Not State A Proper Derivative Claim.

In Count IX, Plaintiffs attempt to restyle their IAA allegations as derivative claims on behalf of the investment options in which they invested.  *See*, *e.g*., Compl. ¶¶ 363-64.[29]  Fed R. Civ. P. 23.1 does not permit such suits.

Corporate shareholders or members of unincorporated associations may bring derivative suits to enforce the legal rights of a corporation or association, provided certain conditions are met.  Fed. R. Civ. P. 23.1.  But the insurance "separate accounts" at issue here are not legal entities with personal rights that Plaintiffs can assert under Rule 23.1.  Rather, in the retirement plan context, a "separate account" simply denotes "an account established or maintained by an insurance company"

---

[29] Plaintiffs allege that except the Transamerica Stable Value Option, all of the investment options in the plans are separate accounts.  Compl. ¶ 135.  The Complaint alleges that TLIC provided advice to specific investment options in which the named plaintiffs invested, and to "some of the other investment options" in which other participants may have invested (*see*, *e.g*., *id*. at Count VIII ¶14), but does not reference the Transamerica Stable Value Option.

that is increased or decreased based on the performance of specific assets, not the performance of the insurance company itself.  ERISA § 3(17), 29 U.S.C. § 1002(17).  Indeed, Plaintiffs have ***expressly conceded*** that the separate accounts are not legal entities and, for that reason, did not oppose TLIC's previous motion to dismiss Count IX.  *See* Pls.' Am. Brief in Opp'n to Defs.' Mot. to Dismiss [Dkt. # 43] at 45 ("Since TLIC confirmed that the separate accounts are not registered . . . and are not legal entities, Plaintiffs do not oppose Defendants' motion to dismiss Count IX.").[30]

Moreover, even if the separate accounts were legal entities with enforceable rights, Plaintiffs have not adequately alleged that they have an "ownership" interest in those accounts.  Rather, where, as here, a retirement plan invests in insurance company separate accounts, assets in the separate accounts are assets of ***the plan***.  *See* 51 Fed. Reg. 41280 (Nov. 13, 1986) (codified as amended at 29 C.F.R. § 2510.3-101(h)(1) (2012)) (1986) (providing that, when a plan acquires an interest in a separate account, the plan's assets include an undivided interest in the assets of that account); Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No. 93-1280, 93d Cong., 2d Sess. 296 (1974) (explaining that assets in separate accounts "are to be considered as plan assets.").  And ERISA expressly provides that, similar to corporations, benefit plans are distinct legal entities, separate from their participants and beneficiaries.  ERISA § 502(d), 29 U.S.C. § 1132(d).  In sum, it is ***plans***, not participants, who are "security holder[s]" in those separate accounts.  *See, e.g.*, Compl. ¶¶ 362-63.[31]

---

[30] Defendants' previous motions to dismiss were terminated in light of the transfer of this case from the District of New Jersey to this Court.  *See* Mar. 30, 2012 Order [Dkt. # 57].

[31] The result would be the same under insurance law, which dictates that the insurance company, not policy holders or, in this case, plan participants, has ownership of the assets in separate accounts.  *See* Iowa Code § 508A.1(5).  Neither ERISA nor insurance law provides that the individual participants have "security holder" rights to bring a derivative suit for violations of the IAA.

NOT. & MEM. ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

1   Count IX should therefore be dismissed.

2   **CONCLUSION**

3   For the foregoing reasons, TLIC respectfully requests that the Class Action

4   Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

5

6   Dated:  May 29, 2012                    s/ AMY J. LONGO
                                            BRIAN BOYLE
7                                           bboyle@omm.com
                                            SHANNON BARRETT
8                                           sbarrett@omm.com
                                            THERESA GEE
9                                           tgee@omm.com
                                            O'MELVENY & MYERS LLP
10                                          1625 Eye Street, NW
                                            Washington, D.C. 20006-4001
11                                          Telephone:  (202) 383-5300
                                            Facsimile:   (202) 383-5414
12
                                            AMY J. LONGO
13                                          alongo@omm.com
                                            CHRISTOPHER B. CRAIG
14                                          christophercraig@omm.com
                                            O'MELVENY & MYERS LLP
15                                          400 South Hope Street
                                            Los Angeles, CA 90071-2899
16                                          Telephone:  (213) 430-6000
                                            Facsimile:   (213) 430-6407
17
                                            Attorneys for Defendants
18                                          Transamerica Life Insurance Company,
                                            Transamerica Investment Management,
19                                          LLC, and Transamerica Asset
                                            Management, Inc.
20

21

22

23

24

25

26

27

28

NOT. & MEM. ISO DEF. TRANSAMERICA
                                            LIFE INSURANCE COMPANY'S MOTION
                                            TO DISMISS CLASS ACTION COMPLAINT