1   ROBERT ECCLES (Pro Hac Vice)
    beccles@omm.com
2   BRIAN BOYLE (S.B. #126576)
    bboyle@omm.com
3   SHANNON BARRETT (Pro Hac Vice)
    sbarrett@omm.com
4   THERESA GEE (S.B. #136241)
    tgee@omm.com
5   O'MELVENY & MYERS LLP
    1625 Eye Street, NW
6   Washington, D.C. 20006-4001
    Telephone:   (202) 383-5300
7   Facsimile:   (202) 383-5414

8   AMY J. LONGO (S.B. #198304)
    alongo@omm.com
9   CHRISTOPHER B. CRAIG (S.B. #257108)
    christophercraig@omm.com
10  O'MELVENY & MYERS LLP
    400 South Hope Street
11  Los Angeles, CA  90071-2899
    Telephone:   (213) 430-6000
12  Facsimile:   (213) 430-6407

13  Attorneys for Defendants Transamerica Life
    Insurance Company, Transamerica Investment
14  Management, LLC and Transamerica Asset
    Management, Inc.

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19  JACLYN SANTOMENNO, KAREN         Case No. 2:12-cv-02782-DDP-MAN
    POLEY, and BARBARA POLEY, et al.,
20                                    Hon. Dean D. Pregerson
                 Plaintiffs,
21                                    **REPLY IN SUPPORT OF**
         v.                           **DEFENDANT TRANSAMERICA**
22                                    **LIFE INSURANCE COMPANY'S**
    TRANSAMERICA LIFE INSURANCE       **MOTION TO DISMISS CLASS**
23  COMPANY, TRANSAMERICA            **ACTION COMPLAINT**
    INVESTMENT MANAGEMENT,
24  LLC, and TRANSAMERICA ASSET       **HEARING: OCTOBER 1, 2012**
    MANAGEMENT, INC.,                 **TIME: 10:00 AM**
25
                 Defendant.
26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.     PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED ...................... 2

    A.   Whether Plaintiffs Have Adequately Alleged A Breach Of
        Fiduciary Duty Can Be Assessed On The Pleadings ........................... 4

    B.   Counts I-II Fail As A Matter Of Law Because TLIC Is Not A
        Fiduciary With Respect To Its Own Compensation ........................... 5

        1.   Collecting negotiated fees is not a fiduciary act ....................... 7

        2.   TLIC did not have "unilateral discretion" to change its
              fees, and even if it did, such discretion has no relation to
              Plaintiffs' claims ........................................................................ 8

    C.   Count III Fails As A Matter of Law Because TLIC Is Not A
        Fiduciary With Respect To Its Own Compensation ......................... 12

    D.   Counts IV and VII Fail As A Matter Of Law Because TLIC Is
        Not A Fiduciary As To The Selection of Affiliates Who Advise
        Its Separate Account Products ........................................................... 13

    E.   Counts V And VI Should Be Dismissed Because TLIC Has No
        Fiduciary Obligation To Obtain Lower Fees For The Underlying
        Investments Within The Separate Account Investment Options ........ 16

II.    PLAINTIFFS' INVESTMENT ADVISERS ACT CLAIMS SHOULD
     BE DISMISSED ........................................................................................ 17

CONCLUSION ................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Acosta v. Pac. Enters.*,
  950 F.2d 611 (9th Cir. 1991) ......................................................................... 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................................................... 9

*Charters v. John Hancock Life Ins. Co.*,
  583 F. Supp. 2d 189 (D. Mass. 2008) .............................................................. 8, 10

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
  474 F.3d 463 (7th Cir. 2007) ................................................................................. 6

*Coleman v. Nationwide Life Ins. Co.*,
  969 F.2d 54 (4th Cir. 1992) ................................................................................... 3

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*,
  2008 WL 4457861 (D. Mass. Sept. 30, 2008) ...................................................... 4

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) .............................................................................. 5, 9

*Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*,
  805 F.2d 732 (7th Cir. 1986) ............................................................................ 7, 11

*Ellis v. Rycenga Homes, Inc.*,
  484 F. Supp. 2d 694 (W.D. Mich. 2007) ............................................................. 16

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1259 (3d Cir 2011) ................................................................................. 7

*Gila River Indian Community v. Waddell*,
  967 F.2d 1404 (9th Cir. 1992) ............................................................................. 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Goldenberg v. Indel, Inc.,*
   741 F. Supp. 2d 618 (D.N.J. 2010)....................................................... 15

*Harris v. Amgem, Inc.,*
   573 F.3d 728 (9th Cir. 2009) ................................................................. 3

*Hecker v. Deere & Co.,*
   556 F.3d 575 (7th Cir. 2009) ..........................................................passim

*In re Regions Morgan Keegan ERISA Litig.,*
   692 F. Supp. 2d 944 (W.D.Tenn. 2010) ............................................... 15

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
   552 U.S. 248 .......................................................................................... 19

*Leimkuehler v. Am. United Life Ins. Co.,*
   2012 WL 28606 (S.D. Ind. Jan. 5, 2012) ............................................. 17

*Marks v. Independence Blue Cross,*
   71 F. Supp. 2d 432 (E.D. Pa. 1999)....................................................... 6

*McLemore v. Regions Bank,*
   682 F.3d 414 (6th Cir. 2012) ........................................................... 7, 10

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,*
   666 F.3d 68 (2d Cir. 2011) ................................................................... 19

*Pegram v. Herdich,*
   530 U.S. 211 (2000) ........................................................................... 3, 4

*Renfro v. Unisys Corp.,*
   671 F.3d 314 (3d Cir. 2011) ...........................................................passim

*Schulist v. Blue Cross of Iowa & Blue Shield of Iowa,*
   717 F.2d 1127 (7th Cir. 1983) ......................................................... 6, 11

*Seaway Food Town, Inc. v. Med. Mut. of Ohio,*
   347 F.3d 610 (6th Cir. 2003) ....................................................... 6, 7, 11

*Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account,*
   2012 WL 3042986 (S.D.N.Y. July 25, 2012) ...................................... 19

- iii -

## TABLE OF AUTHORITIES
(continued)

Page

*Srein v. Soft Drink Workers Union, Local 812*,
    93 F.3d 1088 (2d Cir. 1996) ................................................................. 6

*Tibble v. Edison Int'l*,
    639 F. Supp. 2d 1122 (C.D. Cal. 2009) .............................................. 16

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ....................................................................... 19, 20

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins.
    Co.*, 783 F. Supp. 899 (D.N.J. 1992) .................................................. 11

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ............................................................ 16

*Zang v. Paychex*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) ................................. 4, 8, 10, 14

**STATUTES**

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ................................. 3, 10, 11

ERISA § 403, 29 U.S.C. § 1103 ................................................................. 19

ERISA § 406(a), 29 U.S.C. § 1106(a) ...................................................... 16

ERISA § 406(b), 29 U.S.C. § 1106(b) ............................................... 14, 15

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-21 .............................................................................. 14

29 C.F.R. § 2550.408b-2(c)(2) (2011) ..................................................... 15

29 C.F.R. § 2550.408b-2(e)(2) ................................................................ 16

42 Fed. Reg. 32390 (June 24, 1977) ........................................................ 15

DOL Adv. Op. No. 2003-09A .................................................................. 15

DOL Advisory Op. 97-16A, 1997 .............................................................. 8

Fed. R. Civ. P. 8(a)(2) ............................................................................... 4

REPLY ISO DEF. TRANSAMERICA LIFE
INSURANCE COMPANY'S MOTION TO
DISMISS CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Civ. P. 12(b)(6) ............................................................... 20

Rev. R. 89-52, 1989-1 C.B. 110, 1989 WL 572038 (Apr. 10, 1989) ..................... 19

# INTRODUCTION

Plaintiffs allege that Transamerica Life Insurance Company ("TLIC") breached fiduciary duties by charging excessive fees for providing investment products and administrative services to 401(k) plans in which Plaintiffs participated (the "Plaintiff Plans").  The Complaint's factual allegations and the plan agreements make clear, however, that those fees were not imposed on the Plaintiff Plans as a matter of TLIC's discretion.  Rather, it was the Plans' sponsors, in their roles as plan fiduciaries, who committed the Plaintiff Plans to incur those fees by selecting TLIC products and services for their respective Plans at TLIC's disclosed rates.  As a matter of law, TLIC did not act as a fiduciary by negotiating its compensation for those products and services at arm's length and so cannot be held liable as a fiduciary for adhering to those compensation terms.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 323-24 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 585-86 (7th Cir. 2009).  Accordingly, Plaintiffs' ERISA claims against TLIC, asserting various theories of fiduciary liability, should be dismissed in their entirety.

In an effort to escape this straightforward legal conclusion, Plaintiffs resort to two novel theories.  First, while essentially conceding that TLIC was not acting as a fiduciary when initially negotiating the terms of its retention and compensation, Plaintiffs argue that TLIC acted as a fiduciary by simply collecting its plan-approved contractual fees.  That is a distinction without a difference.  A fiduciary's well-recognized right to negotiate its compensation is only meaningful if the fiduciary can also receive that negotiated compensation without fiduciary liability.

Second, Plaintiffs argue that TLIC retained fiduciary authority to unilaterally alter its fee.  That is both wrong as a matter of fact, and irrelevant as a matter of law.  As a matter of fact, the Complaint and TLIC's contracts with the Plans make clear that TLIC was not permitted to unilaterally alter its fees, but was instead required to give plan sponsors in their fiduciary roles advance notice of any

proposed change, allowing them to avoid such changes by opting out of their service agreements with TLIC (or just the particular investment subject to the fee increase).  The point is also legally irrelevant, because Plaintiffs' allegations have absolutely nothing to do with revisions to the negotiated fees.  Plaintiffs have never alleged that TLIC increased its fees after its retention, but are instead challenging the very fees that TLIC negotiated with the plans.

Beyond these two flawed theories, Plaintiffs' effort to hold TLIC responsible for the ills alleged in the Complaint reduces to a series of reasons why Plaintiffs believe TLIC is a fiduciary.  But Plaintiffs cannot tie those theories to their actual claims for relief or reconcile the theories with their attack on TLIC's entire range of investment products.  As a result, Plaintiffs fail to confront the critical question: whether TLIC was acting as a fiduciary when taking the actions challenged in Plaintiffs' Complaint.  In this case, Plaintiffs are complaining about TLIC negotiating, and accepting, what Plaintiffs allege were excessive fees.  Those actions fall outside the scope of any of TLIC's fiduciary duties, and Plaintiffs' ERISA claims fail as a matter of law.

Plaintiffs' Investment Advisers Act ("IAA") claims fare no better.  Plaintiffs concede that Count IX should be dismissed, and their theory under Count VIII does not meet the core requirements for a private action under the IAA because they are not parties to investment advisory contracts with TLIC.

**ARGUMENT**

**I.      PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED.**

Plaintiffs' ERISA fiduciary breach claims (Counts I-VII) fail because TLIC did not act as a fiduciary with respect to setting its own fees.  Plaintiffs argue at length that TLIC had certain fiduciary duties.  *See* Plaintiffs' Opposition to TLIC's Motion to Dismiss ("Opp.") at 2-33.  TLIC has never contended otherwise.  *See* Memorandum in Support of Transamerica Life Insurance Company's Motion to

Dismiss Class Action Complaint (Dkt. # 103) ("Mem.") at 12 ("TLIC does have limited fiduciary responsibilities"). But it is not enough for Plaintiffs to note that TLIC had some fiduciary responsibilities. As the text of ERISA makes clear, the fact that a defendant has some fiduciary role with respect to an ERISA plan does not make it a fiduciary in all of its interactions with the plan. 29 U.S.C. § 1002(21)(A) (a person is a fiduciary only "to the extent" that they have or exercise requisite authority or control). Thus, when evaluating a fiduciary breach claim, the threshold inquiry is "whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) ***when taking the action subject to complaint***." *Pegram v. Herdich*, 530 U.S. 211, 225-26 (2000) (emphasis added). "In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992); *see Renfro v. Unisys Corp.,* 671 F.3d 314, 321 (3d Cir. 2011) ("we must ask whether the entity is a fiduciary with respect to the particular activity in question") (internal quotation omitted); *Harris v. Amgem, Inc.*, 573 F.3d 728, 737 n.6 (9th Cir. 2009). It is at that level that Plaintiffs' allegations and arguments fall short.

Of the various fiduciary functions that Plaintiffs allege TLIC performs, none meaningfully relates to the claims in Plaintiffs' Complaint. For instance, Plaintiffs point to programs, including the "Fiduciary Management Program" and "AdviceSolutions," Opp. at 5-6, that Plaintiffs contend enabled TLIC to steer the Plans or the Plans' participants into particular investment options among TLIC's product line-up. But Plaintiffs do not claim that TLIC injured them by causing the Plans to invest in one TLIC option over another. To the contrary, Plaintiffs assert that "it is entirely beside the point whether TLIC pushed one option or another" because "[i]t pushed them all." Opp. at 30. Plaintiffs' theories that TLIC could engage in such steering, true or not, are utterly irrelevant to Plaintiffs' asserted

1    claims.

2           At bottom, no matter how Plaintiffs may try to cast or recast their theories of

3    liability, each of those asserted claims challenges the rates at which TLIC offered

4    its products and services to its plan clients.  TLIC did not commit the Plans to incur

5    those rates.  Those fiduciary decisions were made instead by the Plans' sponsors in

6    their fiduciary roles when they selected TLIC and its products from among the

7    other alternatives available on the market.  Because TLIC did not make the relevant

8    fiduciary decisions, Plaintiffs' fiduciary claims against TLIC are misdirected and

9    should be dismissed accordingly.

10          **A.     Whether Plaintiffs Have Adequately Alleged A Breach Of**
            **Fiduciary Duty Can Be Assessed On The Pleadings.**
11

12          Plaintiffs begin by asserting that a defendant's fiduciary status cannot be

13   resolved on the pleadings.  Opp. at 13-14.  None of the cases they cite expresses

14   such a categorical rule, and there is no shortage of cases dismissing fiduciary duty

15   claims—including excessive fee claims similar to what Plaintiffs present here—on

16   grounds that defendants were not fiduciaries as to the conduct challenged.  *See, e.g.,*

17   *Renfro*, 671 F.3d at 320 ; *Hecker*, 556 F.3d at 583-84; *Zang v. Paychex,* 728 F.

18   Supp. 2d 261 (W.D.N.Y. 2010); *Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust*

19   *Co.*, 2008 WL 4457861 (D. Mass. Sept. 30, 2008).  Indeed, the U.S. Supreme Court

20   has determined that an adjudication as a matter of law is proper where a defendant

21   is not a fiduciary with respect to the matters in dispute, and affirmed dismissal

22   under Rule 12.  *Pegram,* 530 U.S. 211.  As is true of all claims, "where the well-

23   pleaded facts do not permit the court to infer more than the mere possibility of

24   misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader

25   is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R.

26   Civ. P. 8(a)(2)).  Under such circumstances, which are presented here, these

27   authorities confirm that a plaintiff's claims must be dismissed.  These standards

28

ensure that a plaintiff with a "largely groundless claim" should not be permitted to wield that claim to coerce an undeserved settlement.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (plaintiffs should not be "allowed to take up the time of a number of other people with the right to do so representing an *in terrorem* increment of the settlement value").  Further, and contrary to Plaintiffs' suggestions, this is not a case in which Plaintiffs "lack the inside information necessary to make out their claims in detail" or where they "cannot fairly be expected to ascertain all of the factual details of [TLIC]'s precise responsibilities and actions."  Opp. at 14 (citations omitted).  The Complaint and incorporated documents make clear everything Plaintiffs need to know to assert their excessive fee claims, and everything this Court needs to know to reject them.  Plaintiffs' claims do not suffer from a lack of factual development; they are legally defective because they seek to hold TLIC liable for its arm's length negotiation of its fees.[1]

### B.    Counts I-II Fail As A Matter Of Law Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation.

Counts I and II allege that TLIC breached fiduciary duties by charging Administrative and Investment Management fees in connection with Transamerica separate accounts containing underlying mutual fund investments.  But, even if those charges could be deemed improper, TLIC was not the fiduciary responsible

---

[1] Plaintiffs baldly assert for the first time in their Opposition that TLIC's contracts with the Plans' sponsors were not the product of arm's length negotiation. Opp. at 19, n. 9. This was never pled, and has thus been waived. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  In any event, Plaintiffs give no reasons supporting this unadorned assertion.  On the face of the contractual documents, the sponsors of the Plaintiff Plans affirmatively applied to enter into the contracts, Hatton Decl., Exs. D & E, and Plaintiffs allege no facts remotely suggesting that those sponsors—much less the sponsors of the thousands of other plans Plaintiffs seek to represent—had some prior relationship with TLIC compelling or improperly influencing them to do so in lieu of other alternatives in the market.

for the Plaintiff Plans' decision to pay those fees.  Rather, the Plans' sponsors expressly authorized the payment of Administrative and Investment Management fees—which Plaintiffs allege were improper in any amount, Compl. ¶¶ 260—as part of their original group annuity contracts with TLIC, before TLIC had assumed any fiduciary responsibilities to those Plans.  Declaration of Darcy Hatton (Dkt. # 103-1) ("Hatton Decl."), Ex. D §§ B.06 & B.07; *id.,* Ex. E §§ B.06 & B.07.[2]  TLIC sought and obtained those charges as part of its contracted-for compensation.

It is well-established that a service provider to an ERISA plan does not exercise fiduciary authority when it conducts an arm's length business negotiation over the terms by which it will provide services to the plan, including—as here— the terms of its fee for providing such services.  *Renfro*, 671 F.3d at 323-24; *Hecker*, 556 F.3d at 583; *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473-75 (7th Cir. 2007); *Schulist v. Blue Cross of Iowa & Blue Shield of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983); *Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1096 (2d Cir. 1996); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 436 (E.D. Pa. 1999).

As the Third Circuit explained in *Renfro*, a service provider "negotiating a contract with [a] plan" does not function as a fiduciary during that negotiation because "he has no authority over or responsibility to the plan and presumably is

---

[2] Plaintiffs do not directly dispute that a service provider has no fiduciary duties toward a plan prior to its retention.  *See* Opp. at 37; *see also Chi. Dist. Council of Carpenters Welfare Fund*, 474 F.3d at 477 (Defendant was "not a fiduciary at the time it was engaged in arm's length negotiations with [plaintiffs], prior to entering into any agreements.")  However, they do repeatedly try to cast TLIC's pre-retention activities as fiduciary functions.  *See, e.g.*, Opp. at 5 (TLIC's "fiduciary functions" include selecting "an investment menu with 170 separate account investment options," Opp. at 5, something that occurred before its retention by the Plaintiff Plans).  This only illustrates that Plaintiffs' claims are based on the non-fiduciary function of offering products and services at particular rates.

1   unable to exercise any control over the trustees' decision whether or not, and on

2   what terms, to enter into an agreement with him.'"  *Renfro*, 671 F.3d at 324

3   (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1259, 1259 (3d Cir

4   2011)).

5              1.   *Collecting negotiated fees is not a fiduciary act.*

6         In response to the overwhelming authority that service providers do not act as

7   fiduciaries when negotiating their own compensation, Plaintiffs attempt to draw

8   two unavailing distinctions.  First, they argue that, because TLIC assumed ***some***

9   fiduciary functions upon being retained, it had a fiduciary duty to refuse its

10  contractually authorized compensation.  Opp. at 16, 37.  But that is no distinction at

11  all.  Collecting fees pursuant to an agreed-upon contract is not a fiduciary act.

12  *McLemore v. Regions Bank*, 682 F.3d 414, 424 (6th Cir. 2012) ("We reject the

13  Trustee's argument that Regions' collection of fees rendered it subject to liability as

14  an ERISA fiduciary.").  Moreover, courts have recognized, as a corollary to the rule

15  that a service provider's negotiation of its compensation terms is not a fiduciary act,

16  that a service provider's adherence to those terms is not fiduciary either.  *See, e.g.,*

17  *Seaway Food Town*, 347 F.3d at 619 (holding that HMO's adherence to contractual

18  term allowing it to retain funds resulting from provider discounts did not render

19  HMO a fiduciary under ERISA); *Ed Miniat, Inc. v. Globe Life Insurance Group,*

20  *Inc.*, 805 F.2d 732, 737 (7th Cir. 1986) (where a specific term "is bargained for at

21  arm's length, adherence to that term is not a breach of fiduciary duty.  No discretion

22  is exercised when an insurer merely adheres to a specific contract term.").  Indeed,

23  in each of the cases holding that a service provider does not act as a fiduciary in

24  negotiating its fee, the plaintiff was not challenging the negotiations per se, but was

25  alleging that the provider breached its duty by ultimately accepting the agreed upon

26  compensation—and those claims in turn have been roundly rejected.

27             2.   *TLIC did not have "unilateral discretion" to change its fees, and*
*even if it did, such discretion has no relation to Plaintiffs' claims.*

28

- 7 -

Second, Plaintiffs attempt to distinguish the cases cited above by arguing that none of those cases "involve service providers or other entities that retained the ability—much less the unilateral ability—to change fees levied against participants' accounts."  Opp. at 20.  But that is not a meaningful distinction either.  TLIC could neither adjust the Administrative or Investment Management fees Plaintiffs challenge nor alter the plan's contracted-for investment options without advance written notice to the plans, as Plaintiffs recognize.  Opp. at 19.[3]  Thus, plans could avoid any adjustment by removing investments from any separate account subjected to a fee increase, or by terminating TLIC altogether.  Plan sponsors in their fiduciary roles, in all instances, thereby retained fiduciary control over TLIC's fees.  *See* DOL Advisory Op. 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) (opining that service provider's ability to alter funds available for plan's lineup did not make service provider a fiduciary where sponsor could avoid changes by terminating service relationship); *Zang*, 728 F. Supp. 2d at 271.

Plaintiffs point to *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008), which held that advance notice of changes did not preclude a service provider from having fiduciary status over the changes where the retaining fiduciary could only terminate the service provider by paying a termination fee.  *Id.* at 199.  On that point, *Charters* is inconsistent with the principles expressed by the Third Circuit in *Renfro* and the Seventh Circuit in *Hecker*.  Negotiated termination fees are just a mechanism for service providers to ensure reasonable compensation,

---

[3]  Plaintiffs contend that TLIC did not have to provide notice before changing the mutual funds within its separate accounts.  Opp. at 23.  But, even accepting that as true, the ability to change the underlying mutual funds did not enable TLIC to affect its own compensation because, as Plaintiffs allege, TLIC's Investment Management and Administrative fees were separate charges in addition to the mutual funds' fees and so did not depend on the mutual fund selected. Compl., Count I ¶¶ 3-7; Count II ¶ 3.  And there is no allegation that TLIC imprudently replaced underlying mutual funds.

including the recovery of initial costs in the event of an early termination.  The mere fact that termination would entail costs or inconvenience does not give a service provider control over the sponsor's decisions.  For example, in *Renfro*, plaintiffs argued that a contract term requiring a trustee's consent to the addition of new funds to a trust gave the trustee fiduciary control over investment selection. The Third Circuit rejected the argument on grounds that the plan sponsor could add investment options to the plan without the trustee's consent by creating a separate trust—even though creating a separate trust would obviously entail added burden and expense.  671 F.3d at 323.  Plaintiffs have never alleged that the termination fee was itself excessive or somehow compelled plan sponsors to remain with TLIC against their better judgment.

Plaintiffs' reliance on TLIC's "unilateral discretion," moreover, is particularly misplaced here because Plaintiffs do not allege that TLIC ever used that supposed discretion to increase, or attempt to increase, its Administrative or Investment Management fees.[4]  This distinguishes the various cases that Plaintiffs rely upon where it was alleged that service providers had, in fact, unilaterally increased their fees and those increases—rather than the negotiated fees provided

---

[4]  Plaintiffs attempt to remedy this omission by suggesting that whether TLIC altered its fees is a factual question and asserting that they uncovered evidence, not referenced in their Complaint, that TLIC did so.  Opp. at 24.  The issue in TLIC's motion to dismiss, however, is whether the Complaint has alleged sufficient facts to support a fiduciary duty claim; Plaintiffs cannot establish the sufficiency of that claim by relying on the mere possibility of facts that the Complaint does not actually allege.  *Cf.  Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  Further, the "uncovered evidence" Plaintiffs seek to introduce "that TLIC altered its fees," Opp. at 24, actually shows that TLIC indirectly ***decreased*** fees.  Opp. Ex. I. (changing investment into a "lower-priced share class of the mutual fund").  Thus, Plaintiffs have not alleged, or even argued, that TLIC ever unilaterally increased its fees over its negotiated rates.

for in the service agreements—formed the gravamen of the complaints.  *See, e.g.,* *Charters*, 583 F. Supp. 2d at 197, 199 (distinguishing cases holding that "receiving agreed upon fees" is not a fiduciary act on grounds that the defendant actually exercised its discretion to increase its fees unilaterally).

By ERISA's plain terms, a party is only a fiduciary with respect to the management of a plan or the disposition of its assets when it ***exercises*** authority or control over the plan.  Mem. at 17-18; ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (providing that an entity is a fiduciary if it "exercises any discretionary authority or discretionary control respecting management of such plan or authority or control respecting management or disposition of its assets").  This is in contrast to plan administration, as to which a party only needs to ***have*** discretionary authority.  29 U.S.C. § 1002(21)(A) (providing that a party is a fiduciary to the extent it "has any discretionary authority or discretionary responsibility in the administration of such plan").  The selection of investment options and setting of plan-related compensation fall squarely in the former category.  Mem. at 17-18 & n. 26; *Zang*, 728 F. Supp. 2d at 271 (dismissing excessive fee claims against service provider because, although service provider allegedly had control over its compensation, plaintiffs did not allege that it ever exercised that control to increase its compensation).  While Plaintiffs respond by citing cases for the proposition that TLIC can be a fiduciary even if it never exercised power over plan assets, Opp. at 23 & n. 14, none of those cases addressed the distinction ERISA draws between plan asset management and plan administration in determining fiduciary status, or determined on which side of that divide the conduct before them fell.  Moreover, the principle that a service provider may collect its agreed-upon compensation without taking on fiduciary responsibility cannot be disputed.  *See McLemore*, 682 F.3d at 424 ("Construing the allegations in the light most favorable to the Trustee, Regions' withdrawal of routine contractual fees constitutes no more an exercise of

control than any other account holder's request effectuated by a depository bank.
Such transactions amount to "'control respecting management or disposition of
[plan] assets,' 29 U.S.C. § 1002(21)(A), in only the hollowest sense of 'control.'").

In the absence of any allegation that TLIC ever unilaterally increased its
Administrative or Investment Management fees, Plaintiffs are again left solely with
the argument that TLIC breached fiduciary duties because it could have accepted
less than its independently approved fees, and it was therefore obligated to do so.
*See* Opp. at 24 (TLIC was obligated "to end conduct that may be ... imprudent").
But that is not the rule and cannot be squared with the cases holding that a person
does not act as a fiduciary with respect to its own compensation, because a service
provider ***always has unilateral discretion to reduce its fee*** or to accept less than it
is owed.  Every service provider, and every vendor of any type, has the "unilateral
discretion" to forgo the agreed upon compensation by not collecting or discounting
its compensation.  Yet courts have consistently concluded that a fiduciary does not
implicate, much less breach, any fiduciary duties in declining to do so.  *See, e.g.,*
*Seaway Food Town*, 347 F.3d at 619; *Ed Miniat*, 805 F.2d at 737; *Schulist*, 717
F.2d at 1131-32 (insurer was not a fiduciary with respect to failure to rebate fees to
the plan because it assessed charges at the maximum negotiated rate); *Trustees of*
*Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.,* 783 F. Supp.
899, 908 (D.N.J. 1992) ("Nationwide contracted directly with trustees to sell the
annuities to Plan participants, and agreed to a maximum price that it would receive
for such annuities.  The only discretion left to Nationwide was to charge less than
the maximum set forth in the Contract. . . . [The] discretion to make this choice is
not, in the view of this court, sufficient to subject Nationwide to fiduciary duties
with respect to the purchase of annuities pursuant to the Contract.").

Finally, Plaintiffs contend that, by offering the protection of a "fiduciary
warranty," TLIC somehow caused plan sponsors acting in their fiduciary capacity

REPLY ISO DEF. TRANSAMERICA LIFE
INSURANCE COMPANY'S MOTION TO
DISMISS CLASS ACTION COMPLAINT

to rubber stamp TLIC's recommendations as to which of its products to include in their plans' lineups. Opp. at 18. The argument fails on multiple levels. First, Plaintiffs' conclusory assertion that the fiduciary warranty lulls plan fiduciaries into accepting TLIC's recommendations is not only speculative, it is illogical. The warranty expressly excludes any claims challenging whether the "fees paid directly or indirectly by the plan are reasonable." Hatton Decl. Ex. I.[5] Second, Plaintiffs' theory that TLIC steered plans into some subset of TLIC's investment products is wholly disconnected from their actual claims. *See supra* at 8-9. Plaintiffs do not allege that they were harmed by the selection of one group of TLIC investment products over another; they contend it was improper to use TLIC's entire platform at all. The fiduciary warranty gave TLIC no discretion over that decision.

### C. Count III Fails As A Matter of Law Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation.

Count III fails for the same reasons as Counts I and II, and Plaintiffs make no effort to distinguish this count in any substantive way in their Opposition. Count III alleges that TLIC breached fiduciary duties by receiving revenue sharing payments from mutual funds contained in the Plans' separate account investment options. Compl. § V.G, ¶¶ 178-79.

At its heart, however, Plaintiffs' theory is not an attack on the revenue sharing payments at all. Plaintiffs do not dispute that the revenue sharing payments TLIC receives are applied to offset TLIC's Administrative and Investment

---

[5] Plaintiffs respond to this exclusion by arguing that "a service provider may not eviscerate with words fiduciary status that exists due to conduct." Opp. at 18. But their assertion has it precisely backward. TLIC does not point to the warranty to "eviscerate" its duties; it is Plaintiffs who seek to read the fiduciary warranty to expand those duties to cover TLIC's own compensation. Plaintiffs fail at that endeavor based on the warranty's own terms. The warranty did not create or confer any fiduciary duties on the part of TLIC. Hatton Decl., Ex. I. It only indemnified the plan sponsors for certain of their fiduciary actions, and it did not indemnify them for the harms alleged in Plaintiffs' Complaint.

REPLY ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Management charges, and that those payments thus do not affect TLIC's total compensation.  Compl. ¶¶ 288, 294, Count III ¶ 3.  Plaintiffs take issue with TLIC's statement in its opening brief that Plaintiffs "admit" the revenue sharing payments were used to reduce the total fees under the group annuity contract, Opp. at 10, n.7, when in fact they simply did not question that fact or make any allegations to the contrary.  Suffice it to say that it is unrefuted that the revenue sharing payments were used to reduce the total fees, and for purposes of evaluating whether Plaintiffs have stated a claim under Count III, that fact is considered established.  *See Gila River Indian Community v. Waddell*, 967 F.2d 1404, 1412 (9th Cir. 1992) (it is an "elementary principle that a court reviewing a motion to dismiss for failure to state a claim should not look beyond the facts as alleged in the plaintiff's complaint").

Plaintiffs' only substantive contention on Count III is that offsetting the Administrative and Investment Management charges did not benefit the Plans because those charges were themselves improper.  This is just a recasting of Counts I and II.  Control over the revenue sharing payments did not give TLIC control over the amount of its compensation—it just altered the way the compensation was collected.  Thus, Plaintiffs' real criticism in Count III, as in Counts I and II, is of the Administrative and Investment Management charges themselves.  And, as discussed in Section I.B above, TLIC was not a fiduciary responsible for those charges.

**D.**   **Counts IV and VII Fail As A Matter Of Law Because TLIC Is Not A Fiduciary As To The Selection of Affiliates Who Advise Its Separate Account Products.**

Counts IV and VII allege that TLIC caused the Plans to engage in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by allowing the Plans to invest in separate accounts containing TLIC-affiliated funds.  Both counts fail, however, because Plaintiffs have not identified any transaction that TLIC "caused" in a fiduciary capacity, as explained in TLIC's opening brief.  Mem. at

16-17.  Although TLIC offered separate accounts containing funds or trusts advised by Transamerica Asset Management and Transamerica Investment Management, it was the plan sponsors acting on behalf of the plans in their fiduciary roles—not TLIC—who made the fiduciary decisions to include those options in the Plaintiff Plans.[6]  Indeed, most of the separate accounts that Plaintiffs allege contained underlying investments managed by TIM or TAM were included at the time of TLIC's original retention—and thus were agreed to by the plans before TLIC had any role with respect to those Plans.   *Compare* Compl. ¶¶ 206-08 *with* Hatton Decl., Ex. D-1 at 19-22 & Ex. E at 27-28.[7]

Plaintiffs respond that "every time TLIC collects fees" or every time "TLIC actively charged fees to Plaintiffs," that constituted another transaction under Section 406(b).  Opp. at 41.  But, whether or not the collection of fees is a "transaction," it is not a prohibited transaction under Section 406(b).  As the Ninth

---

[6]  While Plaintiffs suggest that TLIC exercised fiduciary authority by determining the range of separate account products it offered to its plan clients for investment, Opp. at 5, that theory has been soundly rejected by the courts. *See, e.g., Hecker,* 556 F.3d at 575 ("The Hecker group first argues that Fidelity Trust exercised the necessary control to confer fiduciary status by its act of limiting Deere's selection of funds through the Trust Agreement to those managed by Fidelity Research. But what if it did? Plaintiffs point to no authority that holds that limiting funds to a sister company automatically creates discretionary control sufficient for fiduciary status."); *Zang,* 728 F. Supp. 2d at 270-71.

[7]  Plaintiffs suggest that TLIC was responsible for the Plans' selection of the separate accounts by virtue of providing "investment advice."  Opp. at 41. Nowhere in the Complaint, however, do Plaintiffs allege that TLIC ever recommended that the Plans invest in the separate accounts containing TLIC-affiliated underlying investments, much less that the Plans' sponsors accepted such recommendations under the conditions necessary for the recommendations to constitute "investment advice," as that term is defined under governing Department of Labor regulations.  *See* 29 C.F.R.  § 2510.3-21 (setting forth detailed requirements for advice to be "investment advice" for purposes of ERISA).  Nor can such recommendations be reasonably inferred given the plan sponsors' use of their own independent financial advisors.  Hatton Decl. Exs. F & G.

1   Circuit and the Department of Labor ("DOL") have made clear, a party only

2   engages in a prohibited transaction under Section 406(b) if the party affirmatively

3   uses its fiduciary authority to engage in a self-dealing transaction.  *See Acosta v.*

4   *Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1991) ("In order to state a claim for self-

5   dealing under ERISA, Acosta must demonstrate that Pacific Enterprises actually

6   used its power to deal with the assets of the plan for its own benefit or account.");

7   42 Fed. Reg. 32390 (June 24, 1977) (codified as amended at 29 C.F.R.

8   § 2550.408b-2(c)(2) (2011) (fiduciary does not engage in a prohibited transaction if

9   it "does not use any of the authority, control or responsibility which makes such

10   person a fiduciary to cause a plan to" pay the fee at issue).  Thus, a party, even a

11   fiduciary, does not engage in a prohibited transaction by merely collecting fees

12   from transactions that a different, independent fiduciary caused the plan to

13   undertake.  *See* DOL Adv. Op. No. 2003-09A (trustee's receipt of fees from mutual

14   funds in connection with benefit plans' investment in those mutual funds "would

15   not violate section 406(b)(1) or 406(b)(3) of ERISA when the decision to invest in

16   such funds is made by a fiduciary who is independent of [the trustee] and its

17   affiliates, or by participants of such employee benefit plans.").  The authorities

18   Plaintiffs cite do not hold differently.[8]

19      Plaintiffs also suggest that TLIC causes transactions because it "maintains

20   authority to swap out underlying investments with whatever it chooses and increase

21   its fees[.]"  Opp. at 41.  As previously discussed, Plaintiffs misconstrue the nature

22   of TLIC's "authority."  *See supra* at 8-9.  But, even assuming that TLIC's authority

23   was as Plaintiffs characterize it, Plaintiffs do not allege that TLIC ever used that

24      [8] In *Goldenberg v. Indel, Inc.,* 741 F. Supp. 618 (D.N.J. 2010) and  *In re*
25   *Regions Morgan Keegan ERISA Litig.,* 692 F. Supp. 2d 944 (W.D.Tenn. 2010),
    plaintiffs alleged that defendants caused prohibited transactions by causing plans to
26   invest in affiliated funds, not by merely receiving fees from plan investments.
    Here, of course, the plans made their own decisions to invest in the separate
27   accounts by choosing TLIC's platform.

28

- 15 -

authority to switch a separate account's underlying investment from a non-affiliated to an affiliated fund or to otherwise increase the fees paid to it or its affiliates. Thus, Plaintiffs' argument rests on the flawed premise that TLIC caused prohibited transactions through mere inactivity—a premise that contravenes established law. *Acosta*, 950 F.2d at 620; 29 C.F.R. § 2550.408b-2(e)(2); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009) ("[A] fiduciary's failure to act cannot form the basis for a prohibited transaction under [29 U.S.C.] § 1106.") (citing *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004)); *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 711-12 (W.D. Mich. 2007) (holding that defendant could not be liable under ERISA § 406(a) because defendant did not actively participate in challenged transactions but merely failed to prevent them).[9]

### E.   Counts V And VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Obtain Lower Fees For The Underlying Investments Within The Separate Account Investment Options.

Count V and VI allege that TLIC breached fiduciary duties by not including less expensive mutual fund share classes or otherwise cheaper investment vehicles as the underlying investments contained within its separate account products.  As explained in TLIC's initial brief, these counts go nowhere because the expenses associated with those underlying investments are merely components of the total disclosed expense ratios for TLIC's separate accounts.  Mem. at 18-19; *cf. Leimkuehler v. Am. United Life Ins. Co.*, 2012 WL 28606, *9 (S.D. Ind. Jan. 5, 2012) (holding that insurer did not exercise fiduciary authority under ERISA in determining what mutual fund share classes to offer in its separate account

---

[9] Similarly, TLIC cannot be liable for the Plaintiff Plans' investments in separate accounts with TIM- or TAM-managed underlying investments or any resulting fees because TLIC never exercised any discretion to cause the plans to make those investments.  *See supra* at 13-16.

products).  And it is the plans, not TLIC, who make the  decisions to select the
separate accounts as plan investment options at the disclosed rates.

In response, Plaintiffs reiterate the assertion, made throughout their
Opposition, that disclosure of a breach is not a defense.  Opp. at 40; *see also* Opp.
at 33, 38.  That retort misses the point.  TLIC does not claim to have disclosed a
breach.  Instead, TLIC's point is that, because the plan sponsor selected TLIC's
separate accounts at their disclosed rates, no breach ever occurred.  Plaintiffs offer
no response to that argument, and dismissal of Counts V and VI is therefore
warranted.  Similarly, Plaintiffs repeatedly assert that TLIC is attempting to shift
blame to the plans and that TLIC cannot absolve itself of misconduct by doing so.
Opp. at 1.  This also misses the point.  TLIC is not attempting to shift the blame or
to assert a defense based on a co-fiduciary's liability; TLIC is blameless for any
allegations regarding its agreed upon compensation.  As explained above, TLIC
negotiated its fees and services and, after plan approval, performed those services
and collected its fees pursuant to the agreed-upon contract.

## II.   PLAINTIFFS' INVESTMENT ADVISERS ACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' claims under the IAA should also be dismissed.  Plaintiffs have
conceded as much as to Count IX, which purported to state a derivative claim under
the IAA.  Opp. at 49.  As a result, Plaintiffs' only remaining IAA claim is Count
VIII, which seeks rescission of supposed investment advisory contracts between
them and TLIC.  That claim fails because Plaintiffs have not adequately alleged the
existence of such contracts.

While the Complaint makes the conclusory assertion that Plaintiffs'
"investments in the TLIC investment options" created individual contracts between
them and TLIC, the assertion is legally erroneous.  Plaintiffs' allocation of the
investments in their plan accounts did not create any new contracts with TLIC;

TLIC merely performed the services it was already contractually required to perform, and received the fees it was contractually entitled to receive, under the QualCare Plan Contract. No new, individual contracts between TLIC and the participants were required or can be reasonably inferred. And, even if such individual contracts could be inferred and rescinded, TLIC would still be entitled under the QualCare Plan Contract to retain its contractual fees for the products and services it provided—making rescission of the supposed individual contracts pointless.[10]

This is amply demonstrated by Plaintiffs' Complaint. The Complaint makes clear that the investments to which Plaintiffs refer were QualCare Plan investments, Compl. ¶ 32; Count VIII, ¶¶ 8, 10, and so were governed by the QualCare Plan Contract between TLIC and the QualCare Plan's trustee. Hatton Decl., Ex. E. The QualCare Contract, in turn, required TLIC to make investment products available for investment by the QualCare Plan and to transfer the QualCare Plan's investment options among those products at the direction of the Plan's trustee or participants. QualCare Plan Contract §§ 2.01, B.02-04.[11] The QualCare Plan also entitled TLIC to receive compensation, including Investment Management fees. *Id.* §§ B.06-07.

Plaintiffs nonetheless insist that "because the 'trustee' did not pay the 'Investment Management' fee and Plaintiffs did, the latter, not the former, had an investment contract." Opp. at 49. But this is wrong as a matter of law. The

---

[10] As explained at pages 20-21 of TLIC's opening brief, Plaintiffs cannot rescind the QualCare Plan Contract because they were not parties to it. Plaintiffs do not contend otherwise.

[11] A separate services agreement between TLIC and the QualCare Plan also required TLIC to provide a website permitting participants "to initiate transfers of investments among or between funds" and "change the investment direction of future contributions[.]" Hatton Decl., Ex. C, at 3297. Thus, in providing participants access to that website, TLIC was not making an "offer" to contract with participants, as Plaintiffs contend, Opp. at 47, but was instead carrying out a plan service it was contractually obligated to provide.

QualCare Plan Contract provides that the Investment Management fees Plaintiffs challenge were paid out of the separate accounts in which the QualCare Plan invested, and which Plaintiffs themselves contend were Plan assets.  QualCare Plan Contract § B.06; Op. at 15; *see also* Mem. at 22.  The "assets of an ERISA-regulated plan are held and owned by the plan's trustee, not its participants." *Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account,* 2012 WL 3042986, *5 (S.D.N.Y. July 25, 2012) (holding that plan participants were not "customers" of brokerage firm because they did not own the money deposited by their plans).[12] Thus, by Plaintiffs' own reasoning, it was the QualCare Plan's trustee, and not Plaintiffs, who formed a contract with TLIC.

Plaintiffs also argue that, even if they are not parties to investment management contracts with TLIC, they are nonetheless entitled to restitution because they "pay the Investment Management fee." Opp. at 49.  The argument fails at its premise because Plaintiffs did not pay the Investment Management fees; the QualCare Plan did, pursuant to the QualCare Plan Contract.  Moreover, Plaintiffs' argument is flatly contradicted by the Supreme Court's holding in *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11 (1979), "that there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable." *Id.* at 249.  While the Court recognized that a rescissionary award could include restitution "of the consideration given under the contract," *id.* at 249 n. 14, that holding squarely foreclosed any claim for restitution

---

[12] *See also LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 262(2008) (Thomas, J., concurring) ("The allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the plan remain plan assets. . . .") (citing 29 U.S.C. § 1103); *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,* 666 F.3d 68, 74 (2d Cir. 2011)(plan's assets are "legally owned by the trustee."); Rev. Rul. 89-52, 1989-1 C.B. 110, 1989 WL 572038 (Apr. 10, 1989).

REPLY ISO DEF. TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

1   absent a right to rescission.  The other cases cited by Plaintiffs do not hold to the

2   contrary; they do not involve the IAA at all.  Absent a contract with TLIC,

3   Plaintiffs cannot seek rescission and so cannot seek restitution.

### CONCLUSION

5       For the foregoing reasons, TLIC respectfully requests that Plaintiffs'

6   Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

7

8       Dated:  August 20, 2012

9   s/ AMY J. LONGO
    ROBERT ECCLES (PRO HAC VICE)
    beccles@omm.com
    BRIAN BOYLE
10  bboyle@omm.com
    SHANNON BARRETT
11  sbarrett@omm.com
    THERESA GEE
12  tgee@omm.com
    O'MELVENY & MYERS LLP
13  1625 Eye Street, NW
    Washington, D.C. 20006-4001
14  Telephone:  (202) 383-5300
    Facsimile:   (202) 383-5414

16  AMY J. LONGO
    alongo@omm.com
17  CHRISTOPHER B. CRAIG
    christophercraig@omm.com
18  O'MELVENY & MYERS LLP
    400 South Hope Street
19  Los Angeles, CA 90071-2899
    Telephone:  (213) 430-6000
20  Facsimile:   (213) 430-6407

21  Attorneys for Defendants
    Transamerica Life Insurance Company,
22  Transamerica Investment Management,
    LLC, and Transamerica Asset
23  Management, Inc.

24

25

26

27

28