ROBERT ECCLES (Pro Hac Vice)
reccles@omm.com
BRIAN BOYLE (S.B. #126576)
bboyle@omm.com
SHANNON BARRETT (Pro Hac Vice)
sbarrett@omm.com
THERESA GEE (S.B. #136241)
tgee@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

AMY J. LONGO (S.B. #198304)
alongo@omm.com
CHRISTOPHER B. CRAIG (S.B. #257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendants Transamerica Life Insurance Company, Transamerica Investment Management, LLC and Transamerica Asset Management, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al.,

Plaintiffs,

v.

TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC.,

Defendants.

Case No. 2:12-cv-02782-DDP-MAN

Hon. Dean D. Pregerson

**NOTICE OF MOTION AND MOTION; MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO AMEND THE COURT'S FEBRUARY 19, 2013 ORDER IN ORDER TO CERTIFY FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)**

**HEARING: APRIL 8, 2013**
**TIME: 10:00 AM**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 3
A. The Question Proposed for Certification Is One on Which There Is Substantial Ground for Difference of Opinion .......... 3
B. The Proposed Question Is A "Controlling" Question, and Immediate Appeal May Materially Advance Termination of the Litigation. .......... 9
CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998) .... 4

*Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008) .... 11

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007) .... 5

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992) .... 4

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) .... 6

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) .... 8

*Danza v. Fidelity Mgmt. Trust Co.*, 2012 WL 3599362 (D.N.J. Aug. 20, 2012) .... 8

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732 (7th Cir. 1986) .... 6, 9, 11

*F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250 (2d Cir. 1987) .... 5

*Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697 (5th Cir. 1961) .... 3

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) .... 5, 6

*In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020 (9th Cir. 1982) .... 2, 9

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980) .... 3

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) .......... 10

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) .......... 2, 9, 10

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) .......... 9

*Marks v. Independence Blue Cross*,
71 F. Supp. 2d 432 (E.D. Pa. 1999) .......... 5

*Mills v. Everest Reinsurance Co.*,
771 F. Supp. 2d 270 (S.D.N.Y. 2009) .......... 4

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......... 2, 4, 5, 7

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......... 3, 10

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) .......... 5, 6

*Schulist v. Blue Cross of Iowa & Blue Shield of Iowa*,
717 F.2d 1127 (7th Cir. 1983) .......... 5, 6, 8, 9

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
347 F.3d 610 (6th Cir. 2003) .......... 5, 6, 9

*S.E.C. v. Capital Consultants, LLC*,
397 F.3d 733, 751 (9th Cir. 2005) .......... 5

*Sokaogon Gaming Enters. Corp. v. Tushie-Montgomery Assocs., Inc.*,
86 F.3d 656 (7th Cir. 1996) .......... 9

*Srein v. Soft Drink Workers Union, Local 812*,
93 F.3d 1088 (2d Cir. 1996) .......... 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) .......... 10

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
783 F. Supp. 899 (D.N.J. 1992) .......... 9

*Tussey v. ABB, Inc.*,
2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) .......... 9

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 12

**Statutes**

28 U.S.C. § 1292(b) .......... 3

29 U.S.C. § 1002(21)(A) .......... 1, 4

29 U.S.C. § 1104(a)(1) .......... 7

**Regulations**

29 C.F.R. § 2550.408b-2(c)(3) .......... 12

**Other Authorities**

16 Charles Alan Wright et al., Federal Practice and Procedure (2012) .......... 3, 10

Dep't of Labor, Field Bulletin 2004-3 (Dec. 2004). .......... 4

## INTRODUCTION

Defendants Transamerica Life Insurance Company, Transamerica Investment Management LLC, and Transamerica Asset Management, Inc. hereby move this Court for an order amending its February 19, 2013 Order Granting In Part and Denying In Part Defendants' Motions To Dismiss ("Order"), to certify the following question for interlocutory review by the United States Court of Appeals for the Ninth Circuit pursuant to 28 U.S.C. § 1292(b):

> Whether a service provider is a fiduciary with respect to fees charged to an ERISA plan where the plan's named fiduciary agreed to the fees before the service provider charged and collected them.

This question plainly satisfies each of the statutory criteria of 28 U.S.C. § 1292(b) because it involves "a controlling question of law as to which there is substantial ground for difference of opinion" and immediate appeal "may materially advance the ultimate termination of the litigation."

In its February 19, 2013 Order, this Court held that an ERISA service provider is "accountable for the reasonableness of [the] fees" it charges an employee benefit plan even if it simply charges the fees it negotiated in advance with an authorized plan fiduciary who is independent from that service provider.[1] Op. 13. This is a question as to which there is "substantial ground for difference of opinion" because other courts have held the opposite, viz., that an ERISA service provider, even one retained in a fiduciary role, is not a fiduciary as to its own compensation negotiated at arm's length and approved by an independent fiduciary. This conclusion follows from a central tenet of ERISA: an entity is a fiduciary only "to the extent" it exercises discretionary control or authority. 29 U.S.C. § 1002(21)(A). Where a service provider does not exercise discretionary control or

[1] In this case, the independent fiduciaries were the individuals or entities authorized under individual plans to retain service providers such as Transamerica Life Insurance Company ("TLIC") for their respective plans. Those individuals and entities are also referred to as their plans' "named fiduciaries."

authority over its fees because they were approved in advance by an independent fiduciary, there is no fiduciary duty and consequently there can be no fiduciary breach. This principle is critical to the operation of ERISA pension and welfare plans because, were it otherwise, plans would be unable to retain the professional service providers on which they often depend.

This question is also a "controlling" one within the meaning of 28 U.S.C. § 1292(b) because it could "materially advance" the outcome of litigation in this Court, *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982), and is "serious to the conduct of the litigation, either practically or legally," *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). This Court must determine whether Transamerica Life Insurance Company ("TLIC") had a fiduciary duty with respect to the amount of its compensation before it can be held liable for breaching that duty. Indeed, this is the threshold question in any case charging a breach of fiduciary duty. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) ("threshold question" for "every case charging breach of ERISA fiduciary duty" is "whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*" (emphasis added)). Answering that question in the negative will dramatically affect the progress of the litigation. In fact, it may affect the ultimate outcome of the litigation not only as to TLIC, but as to all of the defendants, because the claims against all of the defendants ultimately derive from TLIC's alleged fiduciary status.

Finally, for similar reasons, immediate appeal "may materially advance the ultimate termination of the litigation" because it will provide critical guidance as to the scope of TLIC's fiduciary duty. If the law does not impose fiduciary obligations on service providers with respect to fees approved by a plan's fiduciaries, the "threshold" question of TLIC's fiduciary status will (as the Court's decision recognizes) turn on individualized facts specific to each service provider and its interaction with the plan's independent named fiduciaries. Because these

facts will vary from plan to plan, their relevance will make fiduciary status a critical issue in determining whether class treatment is appropriate. Clear and immediate appellate guidance on this question will thus help determine the need for discovery and briefing of those issues.

## ARGUMENT

Under 28 U.S.C. § 1292(b), this Court may certify an order for interlocutory appeal where the order involves a "controlling question of law as to which there is substantial ground for difference of opinion" and appellate resolution of the legal question "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011). Section 1292(b) is "[t]he most explicitly flexible provision for interlocutory appeals," 16 Charles Alan Wright et al., Federal Practice and Procedure § 3929, at 430 (2012), and the three statutory criteria are "the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal," *id.* § 3930, at 488.[2] In this case, the probable gains of immediate appeal plainly outweigh any possible losses, and certification is thus appropriate.

### A. The Question Proposed for Certification Is One on Which There Is Substantial Ground for Difference of Opinion.

As the Ninth Circuit has recognized, there is "substantial ground for difference of opinion" where the appeal "involves an issue over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion on the issue." *Reese*, 643 F.3d at 688 (internal quotation omitted).

[2] *See also Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702-03 (5th Cir. 1961) (Section 1292(b) was meant "to give to the appellate machinery . . . a considerable flexibility . . . so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided."); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1263 (7th Cir. 1980) ("Section 1292(b) of the Judicial Code provides appellate courts with a flexible tool for interlocutory review of complex and controlling questions of law.").

Where the Court's decision is in conflict with existing precedent, it is plain that "reasonable judges might differ," thus producing a "substantial ground for difference of opinion." *See, e.g.*, *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 274 (S.D.N.Y. 2009) (this element satisfied by a showing that "there is conflicting authority on an issue").

The Court here concluded that a service provider who is paid out of plan assets must bear fiduciary responsibility to ensure the reasonableness of its fees even when an independent fiduciary has approved those fees and they are fixed in the parties' agreement. Op. 12-14. There is "substantial ground for difference of opinion" on this issue because the Court's opinion is in tension with a fundamental principle of ERISA law, and substantial case authority consistently applying that principle. It is a bedrock principle of ERISA law that a person is a fiduciary only "*to the extent*" he possesses or exercises certain authority over the plan or its assets. 29 U.S.C. § 1002(21)(A) (emphasis added). That "to the extent" proviso creates a "threshold question" for "every case charging breach of ERISA fiduciary duty": "[W]hether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Pegram*, 530 U.S. at 225-26 (emphasis added). A person plainly can be a fiduciary for some activities and not others, and thus in any case alleging fiduciary breach, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992).[3] Where, as here, plaintiffs allege that the service provider charged an excessive fee, the

---

[3] Fiduciary duties are by definition "limited" (Op. 12 n.2) because they exist only "to the extent" of discretion and control. *See, e.g.*, *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) ("fiduciary status is not an all or nothing proposition . . . . fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms"). For example, "directed trustees" who act at the direction of other fiduciaries have fiduciary duties that are "significantly narrower than the duties generally ascribed to a discretionary trustee." Dep't of Labor, Field Bulletin 2004-3 (Dec. 2004).

"threshold question" is whether the service provider exercised discretionary authority or control in charging that fee.

In this case, TLIC simply charged the amounts previously approved by an independent fiduciary (the plan's independent named fiduciary) and fixed in the parties' agreement and thus it could not be a fiduciary based simply on its acceptance of that fee. Courts have previously recognized that a service provider to an ERISA plan does not exercise fiduciary authority when it conducts an arm's length business negotiation over the terms by which it will provide services to a plan, including—as here—the terms of its fee for providing such services. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473-75 (7th Cir. 2007); *Schulist v. Blue Cross of Iowa & Blue Shield of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983); *Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1096 (2d Cir. 1996); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 436 (E.D. Pa. 1999). A service provider "negotiating a contract with [a] plan" does not function as a fiduciary during the negotiation because he "'has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him.'" *Renfro*, 671 F.3d at 324 (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).[4]

---

[4] As these cases all implicitly recognize, a plan sponsor (acting as the plan's fiduciary) can negotiate at arm's length with a professional service provider even where the "subject matter of the contract is a fiduciary duty" and the plan itself will "bear a burden under the contract." Op. 14-15. The plan sponsor is effectively an agent on behalf of the plan and its participants, and in reviewing and approving arrangements with service providers for the plan must act with an "eye single" to the interests of the plan and its participants. *See, e.g.*, *Pegram*, 530 U.S. at 235; *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 751 (9th Cir. 2005). That such negotiations are considered arm's length is unsurprising given the highly

If a service provider does not act as a fiduciary in negotiating its compensation terms, it necessarily follows that the service provider does not act as a fiduciary in adhering to the compensation terms the parties negotiated. Indeed, in the cases cited above, the plaintiffs were not complaining about the service provider's conduct during negotiations—they were complaining that the service provider, "as a fiduciary under ERISA, was prohibited from *accepting* unreasonable compensation for its services." *Schulist*, 717 F.2d at 1131 (emphasis added); *see Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, 2008 WL 4457861, at *2 (D. Mass. Sept. 30, 2008) ("Columbia Air alleges that FMTC breached the general fiduciary standard of loyalty under ERISA . . . when it *received* a share of mutual fund fees from Fidelity affiliates." (emphasis added)). And the courts in all of those cases rejected that claim on the common ground that, because the provider bore no fiduciary duty in negotiating its compensation at arm's length, it breached no duty in simply accepting that compensation pursuant to its arm's length agreement. *See, e.g.*, *Seaway Food Town*, 347 F.3d at 619 (holding that an HMO's adherence to contractual terms allowing it to retain funds resulting from provider discounts did not render the HMO a fiduciary under ERISA); *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 737 (7th Cir. 1986) (where a specific term "is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised when an insurer merely adheres to a specific contract term"). Likewise, the fact that the costs are incurred by the plan does not change the analysis: the material question is not the source of the compensation, but whether the service provider exercised discretionary authority or control in obtaining it. Indeed, courts have repeatedly recognized this principle in cases in which the service provider's compensation was borne by the plan. *See, e.g.*, *Hecker*, 556 F.3d at 579 (noting allegation that fees and expenses were paid by the plans); *Renfro*,

---

competitive nature of TLIC's business, as is evidenced by the numerous service providers mentioned in the cases cited herein.

671 F.3d at 319 ("Each mutual fund included in the plan incurred fees for investment management.").

Were the law otherwise, plans would effectively be unable to retain independent fiduciary service providers. After all, if service providers are deemed to have fiduciary responsibility for the amount of their own compensation, they would, under the terms of the statute, be required to carry out that responsibility "solely in the interest" of the plan and its participants. *See* 29 U.S.C. § 1104(a)(1); *see also Pegram*, 530 U.S. at 224-25. This would create an insoluble conflict of interest for the fiduciaries—in fact, they would not be able to accept *any* compensation beyond recovery of their incremental costs without being charged with a breach. This conundrum would, in turn, reduce the incentives for professional, qualified fiduciaries to offer their services to employee benefit plans, a result that would fundamentally undermine the operation of ERISA pension and other benefit plans that almost universally depend on such service providers to meet their responsibilities to participants.[5] Defendants submit that the substantial case authority recognizing that a service provider does not act as a fiduciary in accepting compensation reflects this reality and ensures that ERISA benefit plans may retain the professional service providers on which they often depend.

The Court rejected this general principle, holding that fiduciaries must not be allowed "to contract themselves out of their duties." Op. 13. But the principle recognized in the cases cited above is not rooted in any idea that fiduciaries are able

[5] It is no exaggeration to say that the Court's decision would affect the full spectrum of professional, qualified fiduciaries that currently make the administration of ERISA plans possible—custodians, institutional trustees, and investment managers, to name just a few examples. This concern becomes even greater if a service provider's mere ability to reduce a fee below that negotiated with a plan fiduciary is itself sufficient to make it a fiduciary with respect to its own fees. *See infra* at 9 n.6. In that case, the Court's analysis would bestow fee-related fiduciary status on a whole host of additional service providers retained in purely ministerial, non-fiduciary capacities, such as accountants, communications specialists, and reporting services.

to contract out of their duties. Instead, it is based on the recognition—consistent with the statute's "to the extent" formulation—that the parties' contract establishes the scope of the service provider's duties in the first place. If the plan's independent fiduciary agrees to fix some of the terms of the service providers' service such that the service provider does not exercise discretionary authority or control with respect to those terms, then the plan's fiduciary did not want the service provider to act as a fiduciary with respect to those terms. That is the plan sponsor's choice, and courts should not override that choice. *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA is "built around reliance on the face of written plan documents").

The Court also expressed concern that the case law cited above would enable a fiduciary to "negotiate for a fee of 99% of each separate account and still be considered to be fulfilling its fiduciary duty of managing the separate account simply because it negotiated this fee by contract." Op. 13. But as the cases cited above have implicitly recognized, no sponsor wearing its plan fiduciary hat could reasonably agree to such a fee, *see, e.g.*, *Schulist*, 717 F.2d at 1131 ("BC/BS was selected as medical carrier presumably because its premium rate . . . was more favorable than the other bids submitted"), and if it did, it would plainly have breached its own fiduciary duty, *id.* at 1132 ("The responsibility for ensuring a prudent choice . . . rested upon the Trustees."). Thus, the substantial case authority holding that a service provider does not act as a fiduciary when it accepts compensation approved by a plan's named fiduciary in no way limits a plan participant's ability to obtain relief if compensation paid to a service provider is unlawfully excessive. If a provider's compensation is too high, the participant has an ERISA claim for breach of fiduciary duty against the plan sponsor or plan fiduciary who agreed to the excessive compensation. *See, e.g.*, *Danza v. Fidelity Mgmt. Trust Co.*, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012) ("Plaintiffs' claims, without offering an opinion as to whether a claim would be meritorious, are

properly against A&P—the named fiduciary who negotiated on behalf of the A&P Plan."); *see also Tussey v. ABB, Inc.*, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) (holding plan's named fiduciaries, but not service provider Fidelity, responsible for breach of fiduciary duty as to fees paid by plan to Fidelity). But in the absence of a showing of discretionary authority or control, there is no ERISA remedy against the service provider itself, as the cases cited above have all recognized.[6] At a minimum, this case law establishes a "substantial ground for difference of opinion" within the meaning of § 1292(b).

### B. The Proposed Question Is A "Controlling" Question, and Immediate Appeal May Materially Advance Termination of the Litigation.

As the Ninth Circuit has recognized, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982); *see, e.g.*, *Sokaogon Gaming Enters. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658-59 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) ("a reversal of the order [need not] terminate the litigation" to qualify as "controlling"); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*

---

[6] The fact that TLIC *could have* decided at any point to accept less than it was owed, or to volunteer a reduced fee, does not mean that it had discretionary control (and thus fiduciary status) over its own compensation, as numerous cases have recognized. *See, e.g.*, *Seaway Food Town*, 347 F.3d at 619; *Ed Miniat, Inc.*, 805 F.2d at 737; *Schulist*, 717 F.2d at 1131-32; *Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 908 (D.N.J. 1992). Any service provider has the flexibility to reduce its compensation simply by rejecting what the plan fiduciaries have agreed to pay. Thus, if that fact were sufficient to make a service provider a fiduciary as to its compensation, *all* service providers would be fiduciaries as to their compensation. That is plainly not right. *See supra* at 5-6.

*Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (same). "The requirement that a question be controlling 'is not read literally. It could not be . . . .'" *Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991). It is enough that the question is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755. A question is "serious to the conduct of the litigation" when immediate appeal would "sav[e] . . . time of the district court and of expense to the litigants." *Id.* As a leading treatise on federal procedure explains, "[a] steadily growing number of decisions . . . have accepted the . . . view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense of the litigants." Wright, Federal Practice and Procedure § 3930, at 499. By contrast, a question is not serious to the conduct of the litigation and thus "not controlling" if the litigation "would be conducted in the same way no matter how it were decided, or if it is a matter of merely formal procedure that can readily be accommodated to whatever ruling is made." *Id.* at 496-97.

"The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Id.* at 505. As the Ninth Circuit has recognized, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688; *see Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court").

The question here is "controlling," and its resolution would "materially advance the termination of the litigation." To start, the question whether a service provider can be a fiduciary with respect to compensation pre-approved by an

independent fiduciary is central to the litigation: whether TLIC breached its fiduciary duties by charging excessive fees plainly depends on whether it was a fiduciary with respect to its receipt of those fees. If it was not, that will dramatically affect the progress of the litigation and may affect the ultimate outcome. As the Court's own decision reflects, if TLIC does not bear inherent fiduciary responsibility as to its own compensation where its fee structure has been approved in advance by independent plan fiduciaries, it may nonetheless be a fiduciary with respect to an individual plan if there is evidence that it exercised control or authority over the plan sponsor during the negotiation of the fees, or during the subsequent implementation of the parties' agreement. Op. 15, 17-18. But in that event the question of fiduciary status will involve a number of discrete, plan-specific factual issues such as the nature of negotiations between TLIC and the individual plan sponsor and the significance of any termination fees to that sponsor's decisionmaking. Clear appellate guidance will thus help determine the need for discovery and briefing on those issues.[7]

[7] Defendants argued below that TLIC's ability to change its fee schedule upon advance notice did not provide it "discretion" over its fees because employers could reject any noticed fee changes by terminating their contracts. The Court rejected this argument, holding that "whether the employer chooses to terminate the contract or not is immaterial to determining whether TLIC has the discretion to change the fees," and that "[t]his is all the more true where, as here, there are financial and logistical hurdles to prevent an employer from cancelling a contract." *Id.* at 16-17. The cases cited by the Court for this analysis did not involve situations where an independent fiduciary had the opportunity to approve (or reject through termination) a service provider's fee change notice; instead, in both of the cases cited by the Court, the service provider had discretion to act unilaterally. *See Ed Miniat, Inc.*, 805 F.2d at 734; *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 197 (D. Mass. 2008) (the contract gave the defendant "sole authority to set the administrative maintenance charge, limited only by a maximum charge for each sub-account"). But it stands to reason that the question whether, and to what extent, "financial and logistical hurdles" could have affected a plan sponsor's freedom to change service providers following a fee change notice will turn on distinct evidence from sponsor to sponsor, based on the contractual arrangements they formed with TLIC during the relevant period. Indeed, while this fact is not in the Complaint, TLIC can represent to the Court (as plaintiffs surely know from their own dealings with their plans) that both of the plan sponsors at issue in this

Moreover, because those discrete factual issues are logically subject to variation among different plans, the "threshold" fiduciary status question would (if the Court is reversed on the question proposed for interlocutory review) become a formidable obstacle to any effort by plaintiffs to certify a multi-plan class. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." (quotation omitted; first alteration and emphasis in original)). Thus, given its significant implications for the litigation as a whole, it would greatly aid the Court and the parties alike to have immediate appellate guidance on the Court's determination—one defendants submit is without precedent—that service providers retain fiduciary responsibility for ensuring the reasonableness of their own fees when those fees have been approved in advance by an independent plan fiduciary. In other words, resolution of this "controlling question" would "materially advance" the termination of the litigation within the meaning of § 1292(b).

//

//

//

//

//

---

case have exercised their contract rights to terminate their TLIC arrangements in favor of different service providers, demonstrating that whatever termination fees applied were no barrier to their exercise of discretion over the plan's servicing arrangements and fees. The Department of Labor's regulations that declare unreasonable any service arrangements that are not terminable on short notice without "penalty" also bear emphasis; they state that provisions, like the ones at issue here, that reasonably compensate a service provider for loss upon an early termination do not create "penalties." *See* 29 C.F.R. § 2550.408b-2(c)(3). Whether a payment in connection with termination reflects "reasonable" compensation for TLIC's sunk costs of implementing the account also may vary from plan to plan.

## CONCLUSION

For the foregoing reasons, the motion to amend should be granted.

Dated: March 6, 2013

s/ AMY J. LONGO
ROBERT ECCLES
reccles@omm.com
BRIAN BOYLE
bboyle@omm.com
SHANNON BARRETT
sbarrett@omm.com
THERESA GEE
tgee@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

AMY J. LONGO
alongo@omm.com
CHRISTOPHER B. CRAIG
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendants
Transamerica Life Insurance Company,
Transamerica Investment Management, LLC,
and Transamerica Asset Management, Inc.

Statement of Compliance: Local Rule 7-3

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 5, 2013.