BRIAN BOYLE (S.B. #126576)
bboyle@omm.com
SHANNON BARRETT (*pro hac vice*)
sbarrett@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:   (202) 383-5300
Facsimile:   (202) 383-5414

CATALINA VERGARA (S.B. #223775)
cvergara@omm.com
MATTHEW C. HIPP (S.B. #248679)
mhipp@omm.com
CHRISTOPHER CRAIG (S.B. #257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

*Attorneys for Defendants Transamerica Life
Insurance Company, Transamerica Investment
Management LLC, and Transamerica Asset
Management, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN SANTOMENNO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 2:12-cv-02782-DDP (MANx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**[PUBLIC VERSION]**<br><br>Judge:  Hon. Dean D. Pregerson<br>Magistrate:  Hon. Margaret A. Nagle<br><br>Courtroom:  3<br>Date:  December 15, 2014<br>Time:  10:00 am |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................... 1

II.     STATEMENT OF FACTS........................................................................ 3

    A.     The Plans at Issue Here Are Made Available Only in the Highly Competitive Small End of the Market, Where Clients Require a Wide Range of Services to Meet Their Needs..................................... 4

    B.     TLIC Sells Its Small-Market Administrative and Investment Services in Tailored "Packages" or "Bundles" Only........................... 6

    C.     Total Fees Associated with TLIC's Products and Services Vary Considerably Across Plans, and the Information Needed to Judge the Reasonableness of Those Fees is Plan-Specific. ................. 8

III.    PLAINTIFFS HAVE FAILED TO ESTABLISH COMMON QUESTIONS JUSTIFYING CLASS TREATMENT. ................................... 9

    A.     TLIC's Fiduciary Status Regarding Its Fees Cannot Be Established With Common Proof. ......................................................... 9

        1.     Plaintiffs Have Not Introduced Common, Classwide Evidence of TLIC's Exercise of its Contractual Rights to Alter Fees and Add or Delete Investment Options................... 10

        2.     TLIC Has Not Acknowledged Fiduciary Responsibility for the Reasonableness of Its Fees............................................. 13

        3.     TLIC Did Not Assume Fiduciary Responsibility for Fees Through Its Investment Monitor Scorecards, and Proof Regarding Use of the Scorecards Is Individualized. ............... 14

        4.     TLIC's Fiduciary Warranty Does Not Apply to Fees At All, and in Any Event Did Not Apply to Many Plans.............. 15

        5.     This Court's Prior Dismissal Ruling Does Not Establish That TLIC is a Fiduciary with Respect to Its Fees................... 17

    B.     The Reasonableness of the Fees Paid by Plans in the Putative Class Turns on Individualized Evidence. ............................................ 18

        1.     Plan-Specific Evidence Bears on Whether Plans Agreed or Expected That IM/Admin Charges Would Help Pay for the Full Bundle of Services They Receive. ............................... 20

        2.     Plan-Specific Evidence Is Necessary to Determine Whether Plan Officials Agreed to Pay Fees Outside the Range of Fees Found in the Market. ......................................... 23

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

# TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | C. | There Is No Common Proof that TLIC Charged Unreasonable Fees for Separate Accounts Managed by Affiliates. | 26 |
| | D. | Common Proof Cannot Establish That TLIC Failed to Invest in the Lowest Cost Share Classes of Underlying Mutual Funds. | 27 |
| | E. | Plaintiffs Have No Common Proof of Prohibited Transactions. | 28 |
| IV. | | PLAINTIFFS CANNOT MEET THE OTHER REQUIREMENTS OF RULE 23. | 31 |
| | A. | Plaintiffs' Claims Are Not Typical. | 31 |
| | B. | Plaintiffs Are Not Adequate Class Representatives. | 31 |
| | | 1. Plaintiffs Cannot Advance Claims On Behalf Of Unrelated Plans In Which They Are Not Participants And To Which They Owe No Fiduciary Responsibilities. | 32 |
| | | 2. The Plaintiffs Lack Sufficient Knowledge of and Involvement in This Case. | 33 |
| V. | | PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE 23(B). | 33 |
| | A. | The Proposed Class Cannot Be Certified Under Rule 23(b)(3). | 33 |
| | B. | The Proposed Class Cannot Be Certified Under Rule 23(b)(1)(B). | 34 |
| VI. | | CONCLUSION. | 35 |

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acosta v. Pac. Enters.,*
  950 F.2d 611 (9th Cir. 1991) ............................................................... 28

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
  155 F.3d 331 (4th Cir. 1998) ............................................................... 16

*Cannon v. BP Prods. N. Am., Inc.,*
  No. 3:10-CV-00622, 2013 WL 5514284 (S.D. Tex. Sept. 30, 2013) ................. 35

*Daskalea v. Wash. Humane Soc.,*
  275 F.R.D. 346 (D.D.C. 2011) ............................................................. 35

*David v. Alphin,*
  704 F.3d 327 (4th Cir. 2013) ............................................................... 29

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
  213 F.3d 454 (9th Cir. 2000) ......................................................... 31, 32

*Gene And Gene LLC v. BioPay LLC,*
  541 F.3d 318 (5th Cir. 2008) ............................................................... 33

*Haddock v. Nationwide Financial Services, Inc.,*
  293 F.R.D. 272 (D. Conn. 2013) ...................................................... 29, 32

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ............................................................... 31

*Harris v. Amgen, Inc.,*
  573 F.3d 728 (9th Cir. 2009) ............................................................... 13

*Healthcare Strategies v. ING Life Ins. & Annuity Co.,*
  No. 3:11-cv-282, 2012 WL 10242276 (D. Conn. Sept. 27, 2012) ................. 32

*Hecker v. Deere & Co.,*
  556 F.3d 575 (7th Cir. 2009) ............................................................... 11

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hum v. Dericks,*

    162 F.R.D. 628 (D. Haw. 1995) ........................................................34

*In re Northrop Grumman,*

    No. CV-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ...............29, 33

*Jones v. Harris Assoc. L.P.,*

    559 U.S. 335 (2010) ........................................................19

*Kanawi v. Bechtel Corp.,*

    254 F.R.D. 102 (N.D. Cal. 2008) ........................................................29

*Leimkuehler v. Am. United Life Ins. Co.,*

    713 F.3d 905 (7th Cir. 2013) ...............................................10, 11, 18

*Pegram v. Herdrich,*

    530 U.S. 211 (2000) ........................................................9, 13

*Tibble v. Edison Int'l,*

    639 F. Supp. 2d 1074 (C.D. Cal. 2009) ........................................................30

*Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local*

    *1M Health & Welfare Plan v. Bjorkedal,*

    516 F.3d 719 (8th Cir. 2008) ........................................................10

*Wal-Mart Stores, Inc. v. Dukes,*

    __ U.S. __, 131 S. Ct. 2541 (2011) ...............................................12, 20, 35

*Zinser v. Accufix Research Inst., Inc.,*

    253 F.3d 1180 (9th Cir. 2001) ........................................................33


**STATUTES**

29 U.S.C. § 1002(21)(A) ........................................................10, 18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................. 10

Fed. R. Civ. P. 19(a) ...................................................................... 32

Fed. R. Civ. P. 23 .................................................................... passim

Fed. R. Civ. P. 26(e) ...................................................................... 30

Fed. R. Civ. P. 37(c)(1) .................................................................. 30

**REGULATIONS**

29 C.F.R. 2510.3-21 ...................................................................... 15

**OTHER AUTHORITIES**

DOL Adv. Op. No. 2003-09A ........................................................ 28

## I.     INTRODUCTION.

Plaintiffs have retreated from the broader allegations of their Complaint and now argue only that investment management and administrative fees ("IM/Admin fees") on *some* separate accounts—the "Menu 10 Ret Opt" accounts—are excessive.  They admit that all other components of TLIC's fee structure are reasonable.  Purporting to represent a nationwide class, plaintiffs argue that these IM/Admin fees are the same for each plan investor and thus can be tested for reasonableness across all plans with the same evidence.  They build this contention on the false premise that one can unravel the total fees TLIC charges for a bundle of investment products and administrative services, ignoring the overwhelming evidence that TLIC's retirement products are always priced and sold as a package. In other words, they insist on litigating the reasonableness of the IM/Admin fees solely by reference to investment-level services, without considering the other services TLIC provides to plans and participants, or evidence showing that the IM/Admin charges sometimes defrayed the cost of those other services.

Yet in order to justify class litigation challenging the reasonableness *only* of TLIC's IM/Admin charges on certain separate accounts and *only* with reference to specific services plaintiffs have plucked out of TLIC's comprehensive offerings, they bear the heavy burden of establishing across all TLIC-serviced plans that TLIC's services were not sold as a bundle.  For if a plan bargained at arm's length for a package of services by reference to the total cost of the package, it is the reasonableness of that total fee that matters.  Thus the first problem with plaintiffs' class petition: There is overwhelming evidence that TLIC's Ret Opt separate accounts were sold only as part of a package in exchange for an interdependent package of fees, including compelling proof specific to each plan that the plans bargained on a total fee basis. ███████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1 [REDACTED]

2 [REDACTED]

3 [REDACTED]

4 [REDACTED]

5 [REDACTED]

6 [REDACTED]

7 [REDACTED]

8      The more fundamental problem with plaintiffs' proposal for class litigation is

9 that the reasonableness of TLIC's total fees can only be litigated on a plan-specific

10 basis. This conundrum explains why plaintiffs desperately cling to their theory that

11 TLIC's IM/Admin fees can be singled out and assessed solely in light of TLIC's

12 separate account-level services (and ignore TLIC's plan-level services). Plaintiffs

13 all but concede that what a reasonable fiduciary would have paid for the package of

14 products and services TLIC delivered to a given plan is an inherently individualized

15 fact question. One of the most significant variables in determining the fee for any

16 plan is the amount charged to the plan by its independent financial advisor. TLIC

17 does not determine this fee; the plan chooses its financial advisor, commits to the

18 financial advisor what fee will be paid, and then instructs TLIC to price the

19 financial advisor's fee into the total bundle of fees. This pass-through fee is just

20 one variable in determining the total fees that plans pay for their TLIC package.

21 [REDACTED]

22 [REDACTED]

23 [REDACTED]

24 [REDACTED]

25 [REDACTED]

26 [REDACTED]

27 [REDACTED]

28

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1    The experiences of the named plaintiffs' plans, Gain and QualCare, illustrate
2    the folly of class litigation on plaintiffs' claims.  These two plans had different fee
3    structures and service levels.  Indeed, even though the plans each retained the same
4    independent financial advisor, Anthony Pascazio, they sought wildly different
5    levels of service from him—and, accordingly, instructed TLIC to compensate him
6    at substantially different rates out of TLIC's collected fees.  Their common advisor
7    testified that he bargained for the plans' services on a total-cost basis.  And the
8    competitive bidding scenarios in which each plan came to the TLIC platform, and
9    later left, are unique.  The finder of fact would have to consider those scenarios in
10   determining whether each plan paid market-level total fees, negotiated at arm's
11   length, to TLIC.  The fact that claims of just the two plans in which plaintiffs
12   participated would have to be tried separately dooms plaintiffs' bid for a nationwide
13   class of thousands of plans.

14   There are a host of other plan-specific inquiries that preclude class
15   treatment—including the threshold question of whether TLIC undertook a fiduciary
16   duty to each plan with respect to the reasonableness of its own fees.  For these and
17   other reasons, described in greater detail below, plaintiffs' motion should be denied.

18   **II.    STATEMENT OF FACTS.**[1]

19   In challenging the reasonableness of one discrete element of TLIC's fees in
20   isolation—investment-level fees collected from Menu 10 Ret Opt separate
21   accounts—plaintiffs ignore essential elements of how TLIC prices its products and
22   how the market for TLIC's products works.[2]  ████████████████████

23   ─────────────────────
24       [1] All lettered exhibits cited in this brief are exhibits to the concurrently-filed
     Declaration of Catalina J. Vergara In Opposition to Plaintiffs' Motion for Class
25   Certification ("Vergara Declaration"), unless otherwise noted.
26   [2] ████████████████████████████████████
27   ████████████████████████████████████████
28   ████████████████████████████████████████

*(footnote continued next page)*

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1

2

3

4

5

6

7

8       TLIC's counterstatement of facts corrects plaintiffs' omissions by describing

9 the competitive market in which TLIC operates, the bundled nature of TLIC's

10 offerings, and the wide variation in both the package of services selected by plans

11 and the range of fees that they pay. These facts bear directly on what plaintiffs

12 need to prove to show their claims are entitled to class treatment.

13     **A.**    **The Plans at Issue Here Are Made Available Only in the Highly
        Competitive Small End of the Market, Where Clients Require a**

14         **Wide Range of Services to Meet Their Needs.**

15       To properly administer a 401(k) plan, an employer must work with service

16 providers such as TLIC to obtain the investment products and administrative

17 services required for a successful plan. TLIC competes vigorously for the privilege

18 of delivering those investment products and services. In the small end of the

19 market, which comprises plans with assets under $20 million, competition from

20 other insurance companies, banks, financial services companies, and even payroll

21

22

23

24

25

26

27

28



1   companies is fierce.  (Declaration of Stig Nybo ("Nybo Decl.") at ¶ 8.)

12   Others retain a TPA to handle some aspects of 401(k) plan

13   administration and instruct TLIC to compensate that TPA out of its collected fees.

14   (Ex. J at ¶ 48.)  Most retain (and instruct TLIC to pay) an independent financial

15   advisor, and the level and quality of services provided by such an advisor vary from

16   plan to plan.  (Ex. J at ¶ 53.)  It is the plan, not TLIC, that determines the financial

17   advisors' fees.  (Id.)

18   The named plaintiffs' plans provide a good example of this kind of variation.



**B.** **TLIC Sells Its Small-Market Administrative and Investment Services in Tailored "Packages" or "Bundles" Only.**

In the small end of the market, TLIC made investment options available through separate accounts in two ways during the proposed class period: "Inv Opts" and "Ret Opts."  Plaintiffs ignore Inv Opts and only challenge some of the Ret Opts.[4]



22   Bundled servicing arrangements are an industry norm, particularly for the

23   plans in plaintiffs' purported class.  (Ex. J at ¶ 40.)  The characteristics of the

24   arrangements are also fully disclosed to the named fiduciaries of plan sponsors

25   before they approve as reasonable the services and fees provided for in the GAC

26   and Services Agreement.  The specific disclosures regarding TLIC's fees have

27   varied over time, however, such that different plans in the proposed class would

28   have seen different forms.

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)



**C.** **Total Fees Associated with TLIC's Products and Services Vary Considerably Across Plans, and the Information Needed to Judge the Reasonableness of Those Fees is Plan-Specific.**



7    Here, too, the experiences of the named plaintiffs' plans are instructive.

18   **III.   PLAINTIFFS HAVE FAILED TO ESTABLISH COMMON QUESTIONS JUSTIFYING CLASS TREATMENT.**

**A.    TLIC's Fiduciary Status Regarding Its Fees Cannot Be Established With Common Proof.**

21   Even though establishing TLIC's fiduciary status with respect to its fees is an essential predicate to all of plaintiffs' claims, *see Pegram v. Herdrich*, 530 U.S.

---

[5] Competition does not cease when TLIC places a plan, as plans routinely seek to re-price their contracts when assets increase or a new advisor is hired.  (Ex. I at 55:1–8.)

1   211, 226 (2000) (fiduciary status is a "threshold question" in "every case charging

2   breach of ERISA fiduciary duty"), plaintiffs offer virtually no law, evidence, or

3   even argument suggesting that they can establish this element across all plans with

4   common, classwide proof.  Plaintiffs instead attempt to piggyback on this Court's

5   motion to dismiss ruling, which held only that plaintiffs "have **stated a claim** for

6   TLIC's fiduciary status" sufficient to survive Rule 12(b)(6).  (Dkt. 137 at 22

7   (emphasis added).)  As explained below, that ruling is largely immaterial at this

8   stage of the proceedings, where the relevant rule is Rule 23 and the critical question

9   is whether plaintiffs have carried their burden of establishing that they can prove

10  TLIC's fiduciary status as to all class members with common evidence.  They have

11  not come close: Every asserted basis for finding fiduciary status on a classwide

12  basis fractures on plan-specific proof, fails on the merits, or both.

13  **1.    Plaintiffs Have Not Introduced Common, Classwide**
    **Evidence of TLIC's Exercise of its Contractual Rights to**
14  **Alter Fees and Add or Delete Investment Options.**

15          Plaintiffs' primary submission is that they can establish TLIC's fiduciary

16  status "with respect to its compensation" simply by pointing to "uniform aspects of

17  the Group Annuity Contract" that give TLIC the "power[]" on advance notice to

18  adjust fees and change available investment options.  (Mot. at 19.)  But under

19  ERISA, the mere fact that a person possesses discretion regarding the management

20  of a plan or its assets is not enough; he is a plan fiduciary only "to the extent he

21  *exercises* any discretionary authority or discretionary control" over those matters.

22  29 U.S.C. § 1002(21)(A)(i) (emphasis added).  Ample case law confirms the point,

23  including the Seventh Circuit's recent opinion in *Leimkuehler v. American United*

24  *Life Insurance Co.*, 713 F.3d 905 (7th Cir. 2013).  There, the court correctly held

25  that § 1002(21)(A) "requir[es] that an entity *exercise* authority or control with

26  respect to the action at issue in the suit in order to be subject to liability as a

27  fiduciary."  *Id.* at 913 (emphasis added); *see also Trustees of the Graphic*

28  *Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v.*

- 10 -

*Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008) (§ 1002(21)(A)(i) imposes fiduciary obligation only "where the individual actually exercises some authority").

TLIC's contractual rights are thus relevant to the fiduciary status question only if plaintiffs can offer classwide proof regarding TLIC's exercise of those rights to alter fees or investment options from those to which the plan sponsors agreed. No such proof exists. To begin with fees: ███████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████ That question requires a plan-specific showing. ████████████████████ ████████████████████████████

The same principles doom plaintiffs' efforts to establish fiduciary status through TLIC's right to add or delete investment options.[8] TLIC could only be a fiduciary "to the extent it exercise[d] its contractual authority" to deprive a plan of an option its sponsor previously selected, *Leimkuehler*, 713 F.3d at 914, and evidence of that exercise varies across participants and plans. ████████████ ████████████████████████████████ ████████████████████████████████

---

[7] ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████ Plan sponsors' ability to terminate their relationship with TLIC following such notice (or to select a different option) means that they had "final authority" over any changes to the investment lineup, *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009)— precluding any finding that TLIC was a fiduciary on this basis.

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1 ███████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████

4 Assessing whether TLIC was a fiduciary based on the exercise of its authority to

5 alter investment lineups would require inquiry into whether class members invested

6 in one of these few affected accounts at the time it was removed and whether any

7 damages were sustained—a participant- and plan-specific inquiry.  Moreover, to the

8 extent the effect of TLIC's exercise of its removal power was to move participants

9 into better or cheaper investments, plaintiffs would have a difficult time proving a

10 breach even if they established TLIC's fiduciary responsibility for the change.  It

11 follows that TLIC's contractual rights cannot justify deeming TLIC a fiduciary with

12 respect to all plans.[10]

13      Still more, the evidence regarding whether plaintiffs would have to pay

14 "contract termination and participant level redemption fees" to leave the TLIC

15 platform in the face of increased fees—a fact this Court cited in support of its

16 hypothesis that TLIC could be a fiduciary under the facts pled in the Complaint

17 (Dkt. 137-16)—is likewise individualized. ████████████████████████

18 ████████████████████████████████████████████████

19 █████████████████████████████████████████████████████

20 ███████████████████████████████████████████

21 ██████████████████████████████████████████

22 ████  These are the kinds of "[d]issimilarities . . . [t]hat have the potential

23 to impede the generation of common answers."  *Wal-Mart Stores, Inc. v. Dukes*, __

_____

[9] ███████████████████████████████████████████████████████
███████████████████████████████████████████

24

25

26     Dr. Strombom's Report establishes that the question whether TLIC

27 exercised its contractual right to change the underlying investments in Separate

28 Accounts likewise turns on plan-specific proof.  (Ex. J at ¶¶ 132–41.)

- 12 -

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1    U.S. __, 131 S. Ct. 2541, 2565 (2011) (quoting Richard A. Nagareda, *Class*

2    *Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

3    ███████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████

6    ████████████ [11]

7    ### 2.   TLIC Has Not Acknowledged Fiduciary Responsibility for the Reasonableness of Its Fees.

8

9            Plaintiffs next assert that TLIC has acknowledged a fiduciary responsibility

10   for the fees it charged to the plans in the class, resting on a string citation to various

11   promotional brochures prepared by TLIC (Mot. at 20) that do not support their

12   point. ███████████████████████████████████████████████████

13   ███████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████

17   ███████████████████████████████████████████████████   As this

18   Court has recognized, fiduciary status under ERISA "is determined not by a party's

19   status but by particular actions taken with respect to a plan." Dkt. 137-11; *see also*

20   *Pegram*, 530 U.S. at 225–26 ("the threshold question is … whether [the defendant]

21   was acting as a fiduciary (that is, was performing a fiduciary function) when taking

22   the action subject to complaint"); *accord Harris v. Amgen, Inc.*, 573 F.3d 728, 737

23   n.6 (9th Cir. 2009) (quoting *Pegram*, 530 U.S. at 225–26).  TLIC's acceptance of

24   fiduciary status regarding one set of actions (investment and advisor selection)

25   ────────────────────

26   [11] ██████████████████████████████████████████████████████

27   ███████████████████████████████████████████████████████████

28   ███████████████████████████████████████████████████████████

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1  proves nothing about its fiduciary status regarding another (fee-setting).

10       In all events, plaintiffs offer no proof that these brochures and other materials

11  were universally, or even widely, disseminated to clients.  The acknowledgments of

12  fiduciary status could be relevant only for plans where plan officials received and

13  understood them as such.  This Court therefore need not conclude that TLIC lacks

14  fiduciary status as to all Ret Opt plans in order to deny class treatment.  It is

15  sufficient for the Court to recognize that, even on plaintiffs' reading of the cited

16  materials, TLIC is entitled to present plan-by-plan evidence of the materials

17  received by plan sponsors, and that the need for such evidence fractures the

18  proposed class.

19       **3.    TLIC Did Not Assume Fiduciary Responsibility for Fees**
            **Through Its Investment Monitor Scorecards, and Proof**
20          **Regarding Use of the Scorecards Is Individualized.**

21       TLIC's decision to offer "Investment Monitor" scorecards to its client plans,

22  as part of its "Fiduciary Management Program," did not, as plaintiffs suggest, make

23  TLIC a fiduciary regarding its fees.  The scorecards, both by design and as

24  implemented, were simply tools for plan officials to employ in making their own

25  fiduciary decisions—not replacements for fiduciary processes, or an effort by TLIC

26  to assume fiduciary status.

- 14 -

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1 ████████████████████████████████████

2     In any event, the scorecards would only give rise to fiduciary status regarding

3 fees if they were understood by TLIC and the relevant plan officials to be the

4 primary basis for the latter's decision to invest in a particular separate account.  29

5 C.F.R. 2510.3-21.  If the scorecards were not mutually understood to be the primary

6 basis for the plan's decision to include the separate account in the lineup, there

7 would be no justification for deeming TLIC a fiduciary with respect to that

8 investment selection.  Needless to say, each plan official's decision-making process

9 can only be established with individualized proof, ██████████████████

10 █████████████████████████████████████

11 ████████████████████████████

12 ████████████████████████████████████

13 ██████████████████████████  Other plan officials may have

14 used the scorecards still less, precluding common proof of TLIC's fiduciary status

15 on this theory.

    **4.   TLIC's Fiduciary Warranty Does Not Apply to Fees At All, and in Any Event Did Not Apply to Many Plans.**

18     Plaintiffs also rely on TLIC's Fiduciary Warranty in arguing that TLIC

19 assumed a fiduciary duty with respect to its fees.  That reliance is misplaced in

20 multiple respects.  First, the text of the warranty expressly *excludes* fees:  It makes

21 clear that indemnification under the warranty does not "extend to claims that any

22 expenses paid directly or indirectly by the plan are reasonable."  (Ex. V at ¶ 7.)

23 TLIC cannot have accepted fiduciary status through the Fiduciary Warranty for

24 something the Fiduciary Warranty explicitly excluded.

25     Even if the warranty could be construed—against its terms—to apply to fees,

26 determining which plans qualified is an individualized inquiry.  The warranty does

27 not apply automatically (Ex. B at 248:14–16), but instead turns on a number of

28 prerequisites.  To trigger its protections, the plan officials must, among other things,

"approve and adopt" TLIC's "investment selection and monitoring process" "as part of its own due diligence process," and must continuously offer at least one investment choice from each of seven required investment categories.  (Ex. V.) Unless these preconditions are satisfied, the warranty does not apply. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮

To the extent plaintiffs contend that the Fiduciary Warranty somehow induced plan officials to abandon their own responsibilities to make prudent investment selections from TLIC's platform, resolving that contention similarly turns on plan-specific evidence, such as testimony from each plan's sponsor and independent financial advisor regarding how the warranty affected their investment decisionmaking.[12]  These questions expose the proposed class as a "hodgepodge of factually as well as legally different plaintiffs," making a classwide finding of fiduciary status on that basis improper.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3rd Cir. 1996)).

---

[12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**5.      This Court's Prior Dismissal Ruling Does Not Establish That TLIC is a Fiduciary with Respect to Its Fees.**

Plaintiffs' sole remaining basis for asserting classwide fiduciary status is this Court's determination, at the motion to dismiss stage, that plaintiffs' Complaint adequately alleged that TLIC was a fiduciary regarding its fees.  Recent ERISA caselaw and the evidence adduced since the Court denied TLIC's motion to dismiss have undermined any rationale for accepting plaintiffs' fiduciary status allegations at the dismissal stage, and established that those rationales cannot apply on a classwide basis.[13]

The Court reasoned that TLIC must hold fiduciary responsibility for its fees because the Complaint implies that negotiations between TLIC and its clients over fees are not really at arm's length.  (Dkt. 137.)  Discovery has shown the opposite.  Competition among service providers is fierce and frequent—especially for smaller plans.  (Ex. J at Appendix C; *see also* Nybo Decl. at ¶¶ 8–13.)  Plaintiffs have not offered any evidence establishing that plan fiduciaries and their advisors universally failed to test the market to ensure that TLIC's fees were competitive and thus reasonable.[14]  The question of sponsors' diligence in assessing TLIC's fee offering must, instead, be answered individually.  ██████████████████████

██████████████████████████████████████████████

---

[13] Given that ERISA fiduciary responsibility includes a duty to act exclusively in the interests of the plan, any rule that service providers retained in a fiduciary capacity must be considered fiduciaries with respect to fees would prohibit such providers from recouping even joint-and-common costs, such as worker salaries and benefits or equipment, through its fees—which would in turn result in retirement plan service providers ceasing to provide such services.  (Ex. K at ¶¶ 84–87; Ex. W.)  There is no reason to disrupt the market with such a fiduciary rule when plans and participants can hold the plans' named fiduciaries accountable for their approval of any service provider fees judged to be unreasonable.

[14] ██████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████

- 17 -

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████████████

3      The Court also accepted plaintiffs' suggestion that TLIC must bear fiduciary

4 responsibility for its fees simply because it has the power to alter them on advance

5 notice.  But, as explained above, the Seventh Circuit's recent opinion in

6 *Leimkuehler* held otherwise on facts more similar to this case than any plaintiffs

7 cite.  As the court held, there can be no claim for fiduciary status under

8 § 1002(21)(A)(i) for a party that "never exercised" a potentially relevant

9 "contractual right" to countermand a fee or investment choice agreed to by the

10 plan's sponsor. *Leimkuehler*, 713 F.3d at 911.  "A functional fiduciary under

11 Section 1002(21)(A) owes a duty to a plan through its actions," the court added,

12 and it would be "unworkable" to hold that "fiduciary responsibilities" extend "to

13 entities that took no action at all with respect to a plan." *Id.* at 914.[15]  Applying

14 *Leimkuehler*'s reasoning here forecloses any remaining arguments for TLIC's

15 classwide fiduciary status, because, as previously explained, the evidence regarding

16 TLIC's exercise of its contractual rights is inherently individualized.

17      **B.      The Reasonableness of the Fees Paid by Plans in the Putative Class
              Turns on Individualized Evidence.**

18

19      Nor have plaintiffs shown that the reasonableness of TLIC's fees can be

20 judged on a classwide basis using common evidence.  In its dismissal order, this

21 Court acknowledged that "TLIC is entitled to reasonable fees and profits." (Dkt.

22 137 at 13.)  Plaintiffs' own experts acknowledge that a market rate, determined by

23 arm's-length bargaining, is the proper reference point for a reasonable fee (R.

24 _____

25      [15] It bears emphasis that *Leimkuehler*'s conclusion accurately reflects the
distinction ERISA's text draws: To establish fiduciary status under 29 U.S.C.

26 § 1002(21)(A)(i)—the provision plaintiffs rely on here—the putative fiduciary must

27 "*exercise*[] . . . discretionary authority or discretionary control," not merely possess

28 it, 29 U.S.C. § 1002(21)(A)(iii).

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

Lakind Decl., Ex. C at 9; *id*.., Ex. E at 17), and the case law is in accord. *See, e.g.*, *Jones v. Harris Assoc. L.P.*, 559 U.S. 335, 345–46 (2010) (only fees that "bear[] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining" are indicative of fiduciary breach) (internal citations and quotations omitted).   Yet each plan's sponsor bargains with TLIC at arm's length to assure that TLIC's fees are reasonable, in many instances conducting a competitive bidding process.   Nearly every plan also has an independent advisor to act as a further check on the reasonableness of TLIC's fees. Whether these sponsors fulfilled their duties to engage in arm's-length bargaining and pay only a market-based rate is a plan-specific inquiry.   By contrast, to find liability on a classwide basis, the Court must conclude that more than seven thousand separate plan fiduciaries, aided by their advisors, acted imprudently by agreeing to pay TLIC's investment-level fees as part of an overall package.[16]   The Court should not handcuff itself from hearing evidence of the role of the plan sponsors and their independent advisors in making sure the plans paid only market-based fees for their TLIC service packages.

Moreover, examining the total fee—and the extent to which IM/Admin fees subsidize other services within that total fee—fully dissolves the proposed class into individualized inquiry.   Indeed, plaintiffs do not even attempt to argue that the reasonableness of TLIC's total fee is subject to common proof.   Among other things, if a plan or its advisor aggressively sought competitive bids— ██████████ ██████████—and TLIC's fully-disclosed fees were comparable to market rates, those fees cannot be judged unreasonable.



OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)

1    This is why plaintiffs try to single out TLIC's IM/Admin fees on Menu 10

2   Ret Opts from the full package of fees, and argue they appear excessive when

3   compared just to the discrete investment-level services TLIC provides to these

4   separate accounts.[17]  But IM/Admin fees are simply components of TLIC's bundled

5   401(k) product and fee structure, and answering whether the fees are reasonable

6   cannot be done without examining TLIC's total fees, by reference to plan- and

7   participant-specific evidence.

8    As with the question of TLIC's fiduciary status regarding its own fees, the

9   Court need not resolve the reasonableness of TLIC's overall fees at the certification

10   stage.  It is enough for the Court to recognize that the reasonableness of a plan's

11   fees is by its nature a plan-specific inquiry, and, indeed, that the very question

12   whether it is appropriate to single out IM/Admin charges for scrutiny—divorced

13   from the other elements of TLIC's fee structure—turns substantially on evidence

14   that is unique to each plan in the class.  *See Dukes*, 131 S. Ct. at 2551 (quoting

15   Nagareda, 84 N.Y.U. L. Rev. at 132).

16    **1.    Plan-Specific Evidence Bears on Whether Plans Agreed or**
        **Expected That IM/Admin Charges Would Help Pay for the**
17       **Full Bundle of Services They Receive.**



OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)



Only individual inquiry can determine which plans received and understood these disclosures.

Plan-specific inquiries would thus be required to determine what each plan sponsor understood about the role of TLIC's IM/Admin fees in the overall fee structure.

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)



1

2

3

4

5

6

7

8

9

10                                                             In contrast, for the

11 plan-specific Form 5500s that plan officials did receive (and, indeed, had to sign off

12 on), DOL instructions specifically allow reporting of service provider fees on a

13 bundled basis, providing that, "[f]or Schedule C reporting purposes, a bundled

14 service arrangement includes any service arrangements where the plan hires one

15 company to provide a range of services either directly from the company, through

16 affiliates or subcontractors, or through a combination, which are priced to the plan

17 as a single package rather than on a service-by-service basis." (*See* Ex. AA at 25.)

18 Although plaintiffs make no reference to the plan-level Form 5500s, individual

19 inquiry would be needed to determine how each of the thousands of plans in the

20 proposed class completed the forms.  Both named plaintiffs' plans, at least, reported

21

22      [18] The DOL requires both plans and separate accounts to report annually on

23 their financial condition, investments, and fees via Form 5500 and its related

24 schedules.  At minimum, plans must review and sign the plan-level forms—for
example, █████████████████████████████████████

25 ████████████████████████████████████ although TLIC

26 sometimes assists plans in completing the plan-level forms as part of its bundle of
services.  TLIC completes and files the separate account Form 5500s on its own.

27 The separate account filings, however, are not distributed to plans. (Declaration of

28 Leecea Johnson at ¶ 3.)

TLIC's fees as bundled on Schedule C, rather than separately reporting the separate account fees. (Exs. BB, CC.)  As a result, to the extent Form 5500s are relevant,[19] they provide plan-specific support in those (and other similar) cases for TLIC's contention that its IM/Admin fees were part of a bundled service offering.

### 2.     Plan-Specific Evidence Is Necessary to Determine Whether Plan Officials Agreed to Pay Fees Outside the Range of Fees Found in the Market.

Defendants' expert, Dr. Strombom, demonstrated the wide range of fees paid by plans in the proposed class, and the many choices plans and their advisors made that influenced total fees.

_____

[19] The Government Accountability Office released a report this summer criticizing the Form 5500 as "poorly designed and unduly complicated," and recommending, inter alia, that the DOL revise the reporting requirements to align more closely with DOL's Section 408(b)(2) disclosures.  (*See* Ex. DD.)

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)



20

(*footnote continued next page*)

OPP. TO PLS.' MOT. FOR CLASS CERT.
2:12-CV-02782-DDP (MANx)



1

2

3    The experience of the named plaintiffs' plans proves that individualized

4    inquiry is necessary to understand whether the sponsors agreed to pay fees outside

5    the range of prices found in the market between arm's-length buyers and sellers.

6

7

8

9

10

11

12

13

14

15

16

17

18

19    The plaintiffs' plans were by no means unique in harnessing the forces of

20

21

22

23

24

25

26

27

28

- 25 -