1  competition to ensure that they paid market-based fees. A multitude of plans in the
2  proposed class engaged in competitive bidding processes before accepting TLIC's
3  service proposal, ensuring that TLIC's offering was the best value. The declaration
4  of Juan Rico details bidding scenarios for plans that are included in plaintiffs'
5  proposed class that underscore the individualized inquiries into reasonableness that
6  plaintiffs' claims would require. (*See* Declaration of Juan Rico ("Rico Decl.") at
7  ¶ 4–7.)

### C. There Is No Common Proof that TLIC Charged Unreasonable Fees for Separate Accounts Managed by Affiliates.

Plaintiffs also challenge the fees charged on separate accounts managed by Defendants Transamerica Investment Management ("TI Management") and Transamerica Asset Management ("TA Management"). But plaintiffs have offered no classwide proof that the fees charged in connection with these affiliated separate accounts are unreasonable. As with plaintiffs' challenge to TLIC's IM/Admin fees, the relevant question is whether the total fees are reasonable, and not whether discrete fees charged on affiliated separate accounts are excessive. That question is inherently individualized.

Even if it were appropriate to isolate the fees for the affiliated separate accounts, the relevant comparison would be between the fees on the affiliated accounts and the fees available in the marketplace for similar investment options in the smaller end of the market.[22] Neither plaintiffs nor their experts even attempt such an analysis, and it would require examining each affiliated option and comparing its fees to those of a similar asset class available to investors of

---

[22] 

1  comparable size. ███████████████████████████████
2  ███████████████████████████
3      Plaintiffs instead contend that the appropriate test for reasonableness is what
4  TLIC's affiliates charge large institutional clients for investment management
5  services, and that these fees are uniformly lower. ████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████
8  ████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████
11 ████████████████████████████ That apples-to-
12 oranges comparison cannot be the measure of reasonableness.

### D. Common Proof Cannot Establish That TLIC Failed to Invest in the Lowest Cost Share Classes of Underlying Mutual Funds.

15     Plaintiffs also claim that, when TLIC invested in underlying mutual funds, it
16 failed to select the lowest-cost share class. ████████████████
17 ████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ████████████████████████████████
23 ████████████████████████████████████████
24 ████████████████████████████████
25 ████████████████████████████████████████
26 ████████████████████████████████████████
27 ████████████████████████████████████████
28 ████████████████████████████████████████

[lines 1-6 redacted]

### E. Plaintiffs Have No Common Proof of Prohibited Transactions.

In addition to the claims discussed above, plaintiffs ask the court to certify three prohibited transaction claims for class treatment—including one that is entirely new to the class motion. First, plaintiffs claim that the fees TI Management and TA Management charged the separate accounts are prohibited. Second, they challenge the revenue sharing payments TLIC receives. Third, they argue for the first time in their motion, with a single explanatory sentence, that the portion of the IM/Admin fee used to pay for "investment advice" is a prohibited transaction.

None of these claims implicates common issues. First, plaintiffs offer no classwide proof for the proposition that merely offering a separate account product whose assets are managed by affiliated entities causes a prohibited transaction, where an independent fiduciary approves the transaction with knowledge of the affiliated entity's involvement. *See Acosta v. Pac. Enters.*, 950 F.2d 611, 621 (9th Cir. 1991) ("In order to state a claim for self-dealing under ERISA, Acosta must demonstrate that Pacific Enterprises actually used its power to deal with the assets of the plan for its own benefit or account."); DOL Adv. Op. No. 2003-09A (no prohibited transaction where investment decision "is made by a fiduciary who is independent of [the trustee] and its affiliates, or by participants of such employee benefit plans."). In other words, where a plan official selected the separate account for its plan menu knowing that TLIC affiliates were providing investment management services, and a participant chose to invest in the account with the same

knowledge, the plan (and the participant) caused the transaction—not TLIC.[23] *See David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) ("To establish a claim under section 406(a), Appellants must 'show that a fiduciary caused the plan to engage in the allegedly unlawful transaction.'" (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996))). Accordingly, to determine whether a prohibited transaction occurred, the Court would have to examine, at minimum, whether each plan official had knowledge (directly or through the plan's advisor) of the affiliated entity's involvement. While TLIC contends that the status of TLIC's affiliates that were involved in managing separate account assets was systematically disclosed to clients in advance of their investment selections (Ex. Q (fee disclosure showing the affiliated status of TIM/TAM)), plaintiffs punted in their discovery responses on what the plan officials knew at the time they selected affiliated options, implying that individualized inquiry will be required. (*See, e.g.*, Ex. II at 4–5, Reqs. for Admis. 13–14.) Such individualized proof bars certification, and the authorities plaintiffs cite do not hold differently.[24]

Second, there can be no common proof of plaintiffs' contention that the

---

[23] [redacted]

[24] In *Haddock v. Nationwide Financial Services, Inc.*, 293 F.R.D. 272 (D. Conn. 2013), the district court certified a class of plan trustees challenging the plan provider's collection of revenue sharing payments. But *Haddock* involved a plan sponsor class, not a participant class, making the class far more manageable. Further, the prohibited transaction claims that plaintiffs raise here depend upon the plan-specific evidence of whether the independent fiduciary plan sponsors made the decisions to invest in the affiliated funds (with knowledge of their affiliated status). Both *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) and *In re Northrop Grumman*, No. CV-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) are thus wholly inapposite, as those cases did not involve the individualized question of whether an independent fiduciary was responsible for the transaction.

1  revenue sharing payments TLIC received as offsets for the IM/Admin fees were
2  prohibited. ████████████████████████████████
3  ████████████████████████████████ TLIC didn't "cause" the plans to
4  incur the fees, the plans' fiduciaries did. *See Tibble v. Edison Int'l*, 639 F. Supp. 2d
5  1074, 1087 (C.D. Cal. 2009) (finding no prohibited transaction where the fiduciary
6  receiving "consideration" did not have control over the "transaction in question")
7  (internal quotations and citations omitted). To the extent plaintiffs raise questions
8  about whether each plan's fiduciary was aware of and "approved" the IM/Admin
9  fees for each relevant account, or received full credit against those fees in the
10 amount of the revenue sharing actually received by TLIC, those questions require
11 plan-specific proof.
12      Third, plaintiffs cannot show, on a classwide basis, that using IM/Admin fees
13 to pay for "investment advice" is a prohibited transaction.[25] ████████
14 ████████████████████████████████
15 ████████████████████████████████
16 ████████████████████████████████
17 ████████████████████████████████
18 ████████████████████████ Plan-specific inquiry is
19 required to determine whether plan officials (rather than TLIC) "caused" the plans'
20 payment of IM/Admin fees by approving TLIC's products and fees.

---

[25] Plaintiffs' have also waived this argument by failing to raise it in either their Complaint or their Interrogatory Responses. Rule 37(c)(1) provides that a party that fails to disclose information required by Rule 26(e) is "not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*; *see also* Fed. R. Civ. P. 26(e) (requiring litigants to supplement or correct interrogatory responses "in a timely manner" where their responses were incomplete or incorrect).

IV. **PLAINTIFFS CANNOT MEET THE OTHER REQUIREMENTS OF RULE 23.**

A. **Plaintiffs' Claims Are Not Typical.**

Plaintiffs fail to satisfy the typicality requirement of Rule 23(a)(3) because their plans were situated far differently from the average plan serviced by TLIC. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

B. **Plaintiffs Are Not Adequate Class Representatives.**

Named class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing the adequacy of proposed class representatives, the Ninth Circuit "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec.*

*Litig.)*, 213 F.3d 454, 462 (9th Cir. 2000). Plaintiffs were participants in just two of the thousands of plans included in the proposed class, and they lack sufficient knowledge to prosecute their claims even as to those two plans. They thus cannot represent the best interests of all plans and participants in the proposed class.

### 1. Plaintiffs Cannot Advance Claims On Behalf Of Unrelated Plans In Which They Are Not Participants And To Which They Owe No Fiduciary Responsibilities.

To protect the interests of all persons affected by a given suit, Rule 19 requires the joinder of any party who has "an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . ." Fed. R. Civ. P. 19(a). Here, plaintiffs equivocate on whether the plan sponsors who actually had fiduciary responsibilities for approving the reasonableness of TLIC's fees are even in the proposed class. (Mot. at 15.) This ambiguity is damning. If plan sponsors are class members, can they opt out to preserve their relationship with TLIC, as other courts have insisted (*see, e.g., Healthcare Strategies v. ING Life Ins. & Annuity Co.*, No. 3:11-cv-282, 2012 WL 10242276 (order certifying opt-out class of plan administrators) (D. Conn. Sept. 27, 2012); *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 129-31 (D. Conn. 2009) (certifying opt-out class of plan trustees); Dkt. 143 at 14–15), or can any participant force a plan to remain in the class? Can a plan sponsor present evidence in conflict with that of named plaintiffs or other participants? By contrast, if the plan sponsors are not class members, there will be no legal mechanism to settle the class. (*See* Dkt. 168 at 9 n.5 (citing Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003) ("PTE 2003-09")).) Plaintiffs' motion elides these tensions.

2. **The Plaintiffs Lack Sufficient Knowledge of and Involvement in This Case.**

Because class representatives have fiduciary obligations to the absent class members they represent, they must have knowledge of and involvement in the litigation sufficient to protect the interests of the class. *In re Northrop Grumman Corp. ERISA Litig.*, No. CV-06-06213, 2011 WL 3505264, at *60 (C.D. Cal. Mar. 29, 2011) (finding class representatives' active participation in discovery, meetings with counsel, and review of the complaint before filing as the "kind of participation [that] comports with what courts expect of class representatives"). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Plaintiffs cannot vigorously prosecute this action on behalf of the proposed class when they are unacquainted with even the basic facts of the case.

V. **PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE 23(B).**

A. **The Proposed Class Cannot Be Certified Under Rule 23(b)(3).**

Plaintiffs cannot pursue treatment under Rule 23(b)(3) because common issues do not predominate over individualized ones and a class action is not superior to individual suits. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). The variations in proof required for each of plaintiffs'

1 | theories have been discussed at length in the preceding sections, and apply with
2 | even greater force on the question of whether common issues predominate. *See*
3 | *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) ("The
4 | predominance requirement of Rule 23(b)(3), though redolent of the commonality
5 | requirement of Rule 23(a), is 'far more demanding' because it 'tests whether
6 | proposed classes are sufficiently cohesive to warrant adjudication by
7 | representation.'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24
8 | (1997))). Plaintiffs' claims regarding the reasonableness of TLIC's fees, especially,
9 | cannot satisfy the predominance requirement. Because both the precise service
10 | package and the total fees charged for those services vary considerably,
11 | determining whether and to what extent the plans paid allegedly excessive fees
12 | requires a plan-by-plan analysis. (*See* Ex. J at ¶¶ 159–70.)

13 | Moreover, plaintiffs' demand for "disgorgement" of TLIC's collected fees
14 | can be litigated only on a plan-by-plan basis. ████████████████
15–24 | [text redacted]

25 | **B.   The Proposed Class Cannot Be Certified Under Rule 23(b)(1)(B).**
26 | Plaintiffs make a brief, alternative argument that the class should be certified
27 | under Rule 23(b)(1)(B) (*see* Mot. at 33–34), but this argument is equally flawed.
28 | First, Rule 23(b)(1)(B) generally applies to limited fund cases. *See* Advisory

Committee Notes, Fed. R. Civ. P. 23(b)(1)(B); *see also Hum v. Dericks*, 162 F.R.D. 628, 641 (D. Haw. 1995) ("The drafters of Rule 23 intended 23(b)(1)(B) to apply to 'limited fund' cases where numerous plaintiffs claim 'against a fund insufficient to satisfy all claims.'" (quoting Advisory Committee Note)). That is not the case here. In any case, resolution of plaintiffs' claims will not be dispositive of absent class members' interests. Even if plaintiffs were correct in their assertion that TLIC is a fiduciary as to its fees, a finding that one of the named plaintiffs' plan's total fees were unreasonable for the services that it received would not necessarily have any effect on the interests of other plans in the question of whether their total fees were unreasonable in light of the services that they received.

Moreover, certification under Rule 23(b)(1)(B) is also inappropriate where, as here, the plaintiffs are seeking significant individualized monetary relief. In *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011), the U.S. Supreme Court held that claims for monetary relief that are not incidental to injunctive or declaratory relief cannot be certified under Rule 23(b)(2). *See* 131 S. Ct. at 2557. The reasoning in *Wal-Mart* applies equally to certification under Rule 23(b)(1) because neither subdivision (b)(1) nor (b)(2) includes the procedural protections afforded to a Rule 23(b)(3) class. *See Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 364 (D.D.C. 2011); *Cannon v. BP Prods. N. Am., Inc.*, No. 3:10-CV-00622, 2013 WL 5514284, at *16 n.18 (S.D. Tex. Sept. 30, 2013). Certification is therefore inappropriate under Rule 23(b)(1)(B).

## VI. CONCLUSION.

For the foregoing reasons, TLIC respectfully requests that plaintiffs' motion for class certification be denied.

Dated: September 8, 2014

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Brian D. Boyle
     Brian D. Boyle

BRIAN D. BOYLE
bboyle@omm.com
SHANNON BARRETT
sbarrett@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

CATALINA J. VERGARA
cvergara@omm.com
MATTHEW C. HIPP
mhipp@omm.com
CHRISTOPHER B. CRAIG
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants*