BRIAN BOYLE (S.B. #126576)
bboyle@omm.com
SHANNON BARRETT (*pro hac vice*)
sbarrett@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

CATALINA VERGARA (S.B. #223775)
cvergara@omm.com
MATTHEW C. HIPP (S.B. #248679)
mhipp@omm.com
CHRISTOPHER CRAIG (S.B. #257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants Transamerica Life Insurance Company, Transamerica Investment Management LLC, and Transamerica Asset Management, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JACLYN SANTOMENNO, *et al.*,

Plaintiffs,

v.

TRANSAMERICA LIFE INSURANCE COMPANY, *et al.*,

Defendants.

Case No. 2:12-cv-02782-DDP (MANx)

**DECLARATION OF CATALINA J. VERGARA IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**[PUBLIC VERSION]**

Judge: Hon. Dean D. Pregerson
Magistrate: Hon. Margaret A. Nagle

Courtroom: 3
Date: December 15, 2014
Time: 10:00 a.m.

# DECLARATION

I, Catalina J. Vergara, the undersigned, hereby declare:

1. I am an attorney at law and am licensed to practice law in the Central District of California. I am a partner in the law firm of O'Melveny & Myers LLP, counsel of record for Transamerica Life Insurance Company ("TLIC"), Transamerica Investment Management, LLC, and Transamerica Asset Management, Inc. (collectively, "Defendants") in this matter.

2. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification. I have personal knowledge of the following facts and, if called and sworn as a witness, could and would testify competently thereto.

3. Attached hereto as **Exhibit A** is a true and correct copy of excerpts from the November 19, 2013 Deposition of Eric King, Vice President of the Investment Solutions Group at TLIC.

4. Attached hereto as **Exhibit B** is a true and correct copy of excerpts from the December 10, 2013 Deposition of Darcy Hatton, Senior Vice President and Chief Operating Officer at TLIC.

5. Attached hereto as **Exhibit C** is a true and correct copy of excerpts from the November 21, 2013 Deposition of Juan Rico, Vice President at Transamerica Retirement Solutions.

6. Attached hereto as **Exhibit D** is a true and correct copy of excerpts from the May 15, 2014 Deposition of Plaintiffs' expert Ethan Kra, Ph.D., FSA.

7. Attached hereto as **Exhibit E** is a true and correct copy of excerpts from the June 3, 2014 Deposition of Plaintiffs' expert Steve Pomerantz, Ph.D.

8. Attached hereto as **Exhibit F** is a true and correct copy of excerpts from the February 5, 2014 Deposition of Plaintiff Barbara Ann Poley.

9. Attached hereto as **Exhibit G** is a true and correct copy of excerpts from the February 4, 2014 Deposition of Plaintiff Karen Poley.

10. Attached hereto as **Exhibit H** is a true and correct copy of excerpts from the December 23, 2013 Deposition of Plaintiff Jaclyn Santomenno.

11. Attached hereto as **Exhibit I** is a true and correct copy of excerpts from the November 1, 2013 Deposition of Anthony Pascazio, who served as a financial advisor to both named plaintiffs' plans.

12. Attached hereto as **Exhibit J** is a true and correct copy of the Expert Report of Defendants' expert Bruce A. Strombom, Ph.D., dated March 31, 2014.

13. Attached hereto as **Exhibit K** is a true and correct copy of the Rebuttal Report of Defendants' expert Bruce A. Strombom, Ph.D., dated May 7, 2014.

14. Attached hereto as **Exhibit L** is a true and correct copy of a PowerPoint presentation entitled "Expense Class Training," dated February 2011 and Bates stamped TRAN-01023910.

15. Attached hereto as **Exhibit M** is a true and correct copy of an Application and Agreement for Services for Gain Capital Group, LLC, Bates stamped TRAN-00021097–TRAN-00021111.

16. Attached hereto as **Exhibit N** is a true and correct copy of an Application for Administrative Services for QualCare Alliance Networks, Inc., Bates stamped TRAN-00000749–TRAN-00000758.

17. Attached hereto as **Exhibit O** is a true and correct copy of a Sample Fee Schedule prepared for QualCare Alliance Networks, Inc., Bates stamped PASCAZIO-00001313–PASCAZIO-00001314.

18. Attached hereto as **Exhibit P** is a true and correct copy of a Commission Disclosure pertaining to the QualCare Alliance Networks, Inc. Retirement Plan, Bates stamped TRAN-00000761 to TRAN-00000762.

19.     Attached hereto as **Exhibit Q** is a true and correct copy of a Fee Disclosure for a 401(k) Plan, dated June 13, 2012 and Bates stamped TRAN-02287684–TRAN-02287694.

20.     Attached hereto as **Exhibit R** is a true and correct copy of a Plan Pricing document for a 401(k) & Profit Sharing Plan, dated December 11, 2012 and Bates stamped TRAN-02679052–TRAN-02679073.

21.     Attached hereto as **Exhibit S** is a true and correct copy of a Fund Assessment and Recommendations document for Qualcare Inc. 401(k) Plan, Bates stamped QUALCARE-00002140–QUALCARE-00002236.

22.     Attached hereto as **Exhibit T** is a true and correct copy of Exhibit A to Defendant Transamerica Life Insurance Company's Responses and Objections to Plaintiffs' Third Request for Production and Defendant Transamerica Life Insurance Company's Responses and Objections to Plaintiffs' Fourth Set of Interrogatories, served March 13, 2014.

23.     Attached hereto as **Exhibit U** is a true and correct copy of a Group Annuity Contract for Gain Capital Group, LLC 401(k) Plan, Bates stamped TRAN-00014556–TRAN-00014583.

24.     Attached hereto as **Exhibit V** is a true and correct copy of a Transamerica Fiduciary Management Program Warranty, Bates stamped TRAN-00512379–TRAN-00512380.

25.     Attached hereto as **Exhibit W** is a true and correct copy of Advisory Opinion 2001-10A as issued by the U.S. Department of Labor, Employee Benefits Security Administration on December 14, 2001.

26.     Attached hereto as **Exhibit X** is a true and correct copy of a Group Annuity Contract for QualCare Alliance Networks, Inc. Retirement Plan, Bates stamped TRAN-00001062–TRAN-00001086.

27. Attached hereto as **Exhibit Y** is a true and correct copy of a Fee Disclosure for a 401(k) Savings & Retirement Plan, dated August 31, 2012 and Bates stamped TRAN-02692113–TRAN-02692124.

28. Attached hereto as **Exhibit Z** is a true and correct copy of a Plan Pricing document for a 401(k) Profit Sharing Plan, dated September 7, 2007 and Bates stamped TRAN-02678586–TRAN-02678589.

29. Attached hereto as **Exhibit AA** is a true and correct copy of the 2010 Instructions for Form 5500 as issued by the Internal Revenue Service.

30. Attached hereto as **Exhibit BB** is a true and correct copy of the 2010 Form 5500 for Gain Capital Group, LLC 401(k) Plan filed publicly with the U.S. Department of Labor.

31. Attached hereto as **Exhibit CC** is a true and correct copy of the 2010 Form 5500 for QualCare Alliance Networks, Inc. Retirement Plan filed publicly with the U.S. Department of Labor.

32. Attached hereto as **Exhibit DD** is a true and correct copy of a June 2014 report entitled *Private Pensions: Targeted Revisions Could Improve Usefulness of Form 5500 Information*, as issued by the U.S. Government Accountability Office. This document is publicly available at: http://www.gao.gov/products/GAO-14-441.

33. Attached hereto as **Exhibit EE** is a true and correct copy of a 401(k) Product Summary for QualCare, Inc. Retirement Plan, Bates stamped QUALCARE-00001801.

34. Attached hereto as **Exhibit FF** is a true and correct copy of QualCare Alliance Networks, Inc.'s Retirement Plan Committee Minutes from its September 22, 2005 meeting, Bates stamped QUALCARE-00001804–QUALCARE-00001806.

35. Attached hereto as **Exhibit GG** is a true and correct copy of a Retirement Plan Fee Summary issued by Principal for QualCare Alliance Networks, Inc., dated September 18, 2013 and Bates stamped QUALCARE-00003791–QUALCARE-00003798.

36. Attached hereto as **Exhibit HH** is a true and correct copy of QualCare Alliance Networks, Inc.'s Retirement Plan Committee Minutes from its August 25, 2011 meeting, Bates stamped QUALCARE-00000427–QUALCARE-00000429.

37. Attached hereto as **Exhibit II** is a true and correct copy of Plaintiff Barbara Poley's Revised Responses to Transamerica Life Insurance Company's First Set of Requests for Admissions Nos. 4 to 15 and 17 to 18, served March 4, 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Los Angeles, California on September 8, 2014.

Catalina J. Vergara

# EXHIBIT A

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT B

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT C

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT D

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT E

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT F

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT G

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT H

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT I

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT J

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT K

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT L

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT M

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT N

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT O

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT P

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT Q

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT R

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT S

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT T

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT U

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT V

Transamerica Fiduciary Management Program℠

# *Warranty*

Subject to the "Conditions and Limitations" set forth below:

1. Transamerica Retirement Services[1] ("Transamerica") represents, warrants, and covenants that the Transamerica investment line-up that the plan fiduciaries select to offer to plan participants:

   - Will satisfy the requirement set forth in the United States Department of Labor regulation under section 404(c) of the Employee Retirement Income Security Act (ERISA) relating to participant-directed retirement plans, 29 C.F.R. § 2550.404c-1(b)(3), that such plans offer a broad range of investment alternatives (broad range requirement);
   - Will meet the prudence requirement of section 404(a)(1)(B) of ERISA, that the investment choices be selected according to prevailing industry practices and generally accepted investment theories (prudence requirement);
   - Will be appropriate for long-term investing.

2. In the event a claim is asserted that the investment choices selected by the plan's fiduciaries from Transamerica's investment line-up either (1) fail to meet the broad range requirement; (2) fail to meet the prudence requirement, or (3) are not appropriate for long-term investment, and that the plan has suffered a resulting loss, Transamerica will:

   - Indemnify and make the plan whole for any loss resulting from breach of Transamerica's representations, warranties, and covenants as set forth above, as determined in a final, binding, and valid adjudication; and
   - Bear the reasonable costs, including attorneys' fees, of defending a claim that is subject to our warranty.

[1] Transamerica Retirement Services ("Transamerica"), a marketing unit of Transamerica Life Insurance Company ("TLIC"), 4333 Edgewood Road NE, Cedar Rapids, Iowa 52499, and other of its affiliates, specializes in the promotion of retirement plan products and services. Investment choices are available from Transamerica Retirement Services under contract form numbers TGP-439-194, TGP-416-192/194, TGP-430-192/194, CNT-TALIAC 05-02 or CNT-TLIC 10-05, group variable annuity contracts underwritten by TLIC. TLIC is not authorized in New York and does not do business in New York. Contract form and number may vary, and these investment choices may not be available in all jurisdictions. Fees and charges may apply. Certain limitations on the number of investment choices for your plan will still apply. For complete information, contact your Transamerica representative.

TRANSAMERICA WARRANTY FIDUCIARY MANAGEMENT PROGRAM

Ex. V
809

**Conditions and Limitations:**

The representations, warranties, and covenants provided by Transamerica are subject to the following conditions and limitations:

1. Transamerica's Indemnification shall only apply in the event that the plan fiduciaries responsible for selecting from Transamerica's investment products (the plan's "Investment Fiduciaries") properly discharge the following responsibilities:
   - Review our investment selection and monitoring process and, if approved, adopt them as part of the due diligence process for the selection and ongoing monitoring of investment alternatives for the plan;
   - Review the materials we provide about the investment choices we offer;
   - Evaluate the needs and abilities of the plan and its participants and select a line-up of investment choices, from among the investment alternatives Transamerica offers, that is tailored to those needs and abilities.
2. In order for the Indemnification to apply, the Investment Fiduciaries must select from Transamerica's models or, if the Investment Fiduciaries select a customized line-up of investments choices, the investment choices offered for plan participants must, at a minimum and at all times, include at least one investment choice from each of the following investment categories:

   **• Cash Equivalents • Bond • Balanced**
   **• Asset Allocation and/or Target Maturity • Large Cap Blend**
   **• Small Cap Blend • International Equity**

   The above models and investment categories may be changed from time to time by Transamerica. Such changes shall apply prospectively to the plan investment line-up. The Investment Fiduciaries must make any changes within 120 days of receipt of notice of changes in the models or Requirement Investment Choices, as applicable, to bring them into conformity with any changes by Transamerica.
3. If a claim is asserted against any of the plan's fiduciaries, the plan's fiduciaries must promptly notify Transamerica of the claim, provide to Transamerica all written evidence of the claim that they receive, provide notice of the claim in accordance with the terms of any fiduciary liability or other insurance policy that may cover the claim, and provide to Transamerica a complete copy of any such insurance policy. Transamerica shall only be responsible for those losses incurred by the plan that are not directly or indirectly covered or reimbursed by insurance or any other source.
4. In the event of a claim that may be subject to the Indemnification, Transamerica will have the right and option, if it so chooses, to assume, direct or participate in the defense of the claim, including but not limited to the right to approve of counsel selected to defend such claim, or alternatively, to appoint defense counsel with regard to such claim, and the right to settle such claim. If Transamerica chooses to exercise one or more of these rights, it shall make reasonable efforts to coordinate such action with any fiduciary liability insurer and to address any issues arising from the assertion of claims that might not be subject to this Indemnification.
5. The plan's fiduciaries must reasonably cooperate with Transamerica in connection with all matters described in this Indemnification, including but not limited to the defense of any claim.
6. This Indemnification applies only to investment choices that are included in the investment line-up offered by Transamerica. Any claim relating to any other investment choice (including, for instance, individual employer stock, investments in a brokerage account, or any other investment choice that is outside the platform of funds offered by Transamerica to qualified retirement plans) is excluded from the terms of this Indemnification.
7. Transamerica does not and cannot warrant or guarantee that any particular investment choice—including any investment choice offered by Transamerica—is suited to the needs of any individual plan participant(s); as a result, this Indemnification does not extend to claims based on the needs of, or suitability for, any individual participant(s), but instead covers the general prudence of the investment choices for long-term investing, such as retirement investing. Also, since past performance is not a guarantee of future results, we cannot warrant or guarantee either that any investment choice we offer will yield any specific return, or even that it will yield a positive return. Nor does this Indemnification extend to claims that any expenses paid directly or indirectly by the plan are reasonable.
8. This Indemnification extends only to loss, damage, expenses, or liabilities that would be recoverable under ERISA as a result of a breach of fiduciary duty by plan fiduciaries and the plan sponsor who select and monitor the plan's investment alternatives, subject to the conditions stated above and the Investment Fiduciaries' performance of the fiduciary responsibilities stated above. In addition, this Indemnification is inapplicable in respect of any change in law that occurs after the plan qualified for the Indemnification.
9. This Indemnification is not insured by any federal or state government agency.
10. Transamerica reserves the right to eliminate or change the terms of this Indemnification prospectively.

| NOT FDIC INSURED | MAY LOSE VALUE | NO BANK GUARANTEE |
|---|---|---|

TRS 5111-1009

Ex. V
810

# EXHIBIT W

Advisory Opinion

## December 14, 2001

Mr. James M. Winn
Smith & Downey
1110 Vermont Ave., NW, Suite 400
Washington, DC 20005

2001-10A
ERISA Sec. 408(b)(2) & 408(b)(6)

Dear Mr. Winn:

This is in response to your letter requesting an advisory opinion under the Employee Retirement Income Security Act of 1974, as amended (ERISA). In particular, you request an opinion that the provision of trustee services by Laurel Trust Company (Laurel) to two defined benefit pension plans sponsored by Laurel (the Plans), and the payment by the Plans of Laurel's standard trustee fees would be exempt from ERISA's prohibited transaction provisions by reason of section 408(b)(6) of ERISA.[1]

Your letter contains the following representations. Laurel provided trustee services to the Plans and charged its customary trustee fees for such services. Laurel assumed that the provision of such services and the receipt of the fees was exempted from the prohibited transactions provisions of section 406 of ERISA by reason of section 408(b)(6). You represent that in 1996, the Department of Labor (the Department) determined that this arrangement constituted a violation of section 406 of ERISA and imposed on Laurel (then known as BT Management Trust Company) a civil penalty under section 502(l) of ERISA. Laurel petitioned the Department for a waiver or reduction of the civil penalty, which was denied. Laurel paid the civil penalty and ceased charging its customary fees to the Plans. Citing a 1993 IRS Field Service Advice Memorandum, which you believe takes a view contrary to that of the Department, you have requested that the Department reconsider its position with respect to section 408(b)(6) of ERISA.

Laurel contends that section 406 of ERISA does not prohibit the Plans from paying Laurel its customary trustee fees, which are the same fees paid by plans sponsored by parties unrelated to Laurel. You represent that such fees represent reasonable compensation for services, which plans are permitted to pay, even if those fees include a profit component. You recognize that ERISA section 406 would otherwise prohibit the payment of such fees, but claim that the statutory exemption provided by section 408(b)(6) permits the payment of the fees by the Plans to Laurel.

Section 406(a)(1)(C) and (D) of ERISA provides that a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if the fiduciary knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest or a transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. Section 406(b)(1) of ERISA provides that a fiduciary with respect to a plan shall not deal with plan assets in his own interest or for his own account. Section 406(b)(2) of ERISA prohibits a fiduciary with respect to a plan from acting in any transaction involving the plan on behalf of a party, or represent a party, whose interests are adverse to the interests of the plan or of its participants and beneficiaries.

Section 408(b)(6) of ERISA provides that the prohibitions of section 406 shall not apply to the provision of any ancillary service by a bank or similar financial institution supervised by the United States or a State, if such bank or financial institution is a fiduciary of such plan, provided that certain conditions are satisfied.

You represent that Laurel, as a Pennsylvania state-chartered trust company, is a "bank or similar financial institution" that is supervised by a State. You further represent that the provision of services to and payment of fees by the Plans satisfies the other conditions of ERISA section 408(b)(6).

You claim that the Department has previously concluded that a plan's payment of fees that include a profit component is not "reasonable compensation," as that term is used in both section 408(b)(2) and 408(b)(6) of ERISA. You further claim that the Internal Revenue Service (IRS) has taken a contrary position with respect to section 4975(d)(6) of the Internal Revenue Code of 1986 (the Code), a parallel provision to ERISA section 408(b)(6), in a 1993 Field Service Advice Memorandum (Memorandum), a copy of which you included with your letter. Pursuant to section 102 of Reorganization Plan No. 4 of 1978 (see, footnote 1, above), all authority to issue regulations, rulings, interpretations, and exemptions under section 4975(d) of the Code, with exceptions not here relevant, was transferred to the Department. The Department, therefore, has sole authority and responsibility to interpret section 4975(d)(6) of the Code.

Section 408(b)(6) of ERISA (and by reference, section 4975(d)(6) of the Code, see, footnote 1, above) exempts from the prohibited transaction provisions of ERISA the provision of "ancillary" services to a plan by a fiduciary that is a bank or similar financial institution supervised by the United States or a State and the payment of no more than "reasonable compensation" by the plan. It is the opinion of the Department that trustee services are not ancillary services.

Trustee services are necessary and essential to the establishment, maintenance, and operation of a pension plan that is subject to ERISA. Section 403(a) of ERISA requires that, subject to several exceptions not relevant here, all assets of an employee benefit plan shall be held in trust by one or more trustees. The trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to ERISA, or to the extent that authority to manage, acquire, or dispose of assets of the plan is delegated to one or more investment managers. In the Department's view a service is "ancillary" if it aids or is auxiliary to a primary or principal service. For instance, the Department has stated that the provision of "sweep services" by a trustee who is subject to direction from an independent investment manager for the investment of plan assets, may constitute an "ancillary service" within the meaning of section 408(b)(6).[2] Given the central role that the establishment of a trust and the naming of a trustee plays in the establishment, maintenance, and operation of an employee benefit plan, the Department concludes that trustee services cannot be "ancillary services" within the meaning of ERISA section 408(b)(6).

Ex. W
811

Section 408(b)(2) of ERISA exempts from the prohibitions of section 406(a) any contract or reasonable arrangement with a party in interest, including a fiduciary, for office space, or legal, accounting or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore. Regulations issued by the Department clarify the terms "necessary service" (29 CFR §2550.408b-2(b)), "reasonable contract or arrangement" (29 CFR §2550.408b-2(c)) and "reasonable compensation" (29 CFR §2550.408b-2(d) and 2550.408c-2) as used in section 408(b)(2). As a general matter, whether the requirements of that section are met in each case involves questions which are inherently factual in nature. Pursuant to section 5.01 of ERISA Procedure 76-1, the Department ordinarily does not issue opinions on such matters. The Department has not concluded, however, that fees including a profit component necessarily exceed reasonable compensation.

With respect to the prohibitions in section 406(b), the regulation under section 408(b)(2) of ERISA (29 CFR §2550.408b-2(a)) states that section 408(b)(2) of ERISA does not contain an exemption for an act described in section 406(b) even if such act occurs in connection with a provision of services that is exempt under section 408(b)(2).

As explained in regulation 29 CFR §2550.408b-2(e)(1), the prohibitions of section 406(b) are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility that makes them fiduciaries when they have interests that may conflict with the interests of the plans for which they act. Thus, a fiduciary may not use the authority, control, or responsibility that makes him a fiduciary to cause a plan to pay an additional fee to such fiduciary, or to a person in which he has an interest that may affect the exercise of his best judgment as a fiduciary, to provide a service. However, regulation 29 CFR §2550.408b-2(e)(2) provides that a fiduciary does not engage in an act described in section 406(b)(1) of ERISA if the fiduciary does not use any of the authority, control, or responsibility that makes him a fiduciary to cause a plan to pay additional fees for a service furnished by such fiduciary or to pay a fee for a service furnished by a person in which the fiduciary has an interest that may affect the exercise of his judgment as a fiduciary. Furthermore, regulation section 2550.408b-2(e)(3) explains that if a fiduciary provides services to a plan without the receipt of compensation or other consideration other than the reimbursement of direct expenses properly and actually incurred in the performance of such services, the provision of such services does not, in and of itself, constitute an act described in section 406(b) of ERISA. Regulation section 2550.408c-2(b)(3) provides that an expense is not a direct expense to the extent that it would have been sustained had the service not been provided or if it represents an allocable portion of overhead.

Accordingly, it is the opinion of the Department that if Laurel provides trustee services to the Plans and charges the Plans a fee that exceeds the direct expenses that Laurel incurs in the provision of trustee services to the Plans, it would engage in violations of ERISA section 406(b)(1) and (2), which would not be exempted by ERISA section 408(b)(2) or (6).

This letter constitutes an advisory opinion under ERISA Procedure 76-1 (41 Fed. Reg. 36281, August 27, 1976). Accordingly, this letter is issued subject to the provisions of the procedure, including section 10 relating to the effect of advisory opinions.

Sincerely,
Louis Campagna
Chief, Division of Fiduciary Interpretations
Office of Regulations and Interpretations

---

## Footnotes

1. Under Reorganization Plan No. 4 of 1978 (43 FR 47713, October 17, 1978), 5 U.S.C. App.1, 92 Stat. 3790, the authority of the Secretary of the Treasury to issue rulings under section 4975 of the Code has been transferred, with certain exceptions not here relevant, to the Secretary of Labor. Therefore, the references in this letter to specific sections of ERISA should be taken as referring also to the corresponding sections of the Code.

2. See, letter from Alan D. Lebowitz to Robert S. Plotkin, Assistant Director, Division of Banking Supervision and Regulation, Board of Governors of the Federal Reserve System, August 1, 1986.

# EXHIBIT X

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT Y

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT Z

**[FILED SEPARATELY UNDER SEAL]**

# EXHIBIT AA

2010

# Instructions for Form 5500

## Annual Return/Report of Employee Benefit Plan

Code section references are to the Internal Revenue Code unless otherwise noted. ERISA refers to the Employee Retirement Income Security Act of 1974.

## EFAST2 Processing System

Under the computerized ERISA Filing Acceptance System (EFAST2), you must electronically file your 2010 Form 5500. Your Form 5500 entries will be initially screened electronically. For more information, see the instructions for *Electronic Filing Requirement* and the EFAST2 website at *www.efast.dol.gov*. You cannot file a paper Form 5500 by mail or other delivery service.

### About the Form 5500

The Form 5500, Annual Return/Report of Employee Benefit Plan, including all required schedules and attachments (Form 5500 return/report), is used to report information concerning employee benefit plans and Direct Filing Entities (DFEs). Any administrator or sponsor of an employee benefit plan subject to ERISA must file information about each benefit plan every year (pursuant to Code section 6058 and ERISA sections 104 and 4065). Some plans participate in certain trusts, accounts, and other investment arrangements that file a Form 5500 annual return/report as DFEs. See *Who Must File* and *When To File*.

The Internal Revenue Service (IRS), Department of Labor (DOL), and Pension Benefit Guaranty Corporation (PBGC) have consolidated certain returns and report forms to reduce the filing burden for plan administrators and employers. Employers and administrators who comply with the instructions for the Form 5500 generally will satisfy the annual reporting requirements for the IRS and DOL.

Defined contribution and defined benefit pension plans may have to file additional information with the IRS including Form 5330, Return of Excise Taxes Related to Employee Benefit Plans, and Form 5310-A, Notice of Plan Merger or Consolidation, Spinoff, or Transfer of Plan Assets or Liabilities; Notice of Qualified Separate Lines of Business. See *www.irs.gov* for more information.

Plans covered by the PBGC have special additional requirements, including premiums and reporting certain transactions directly with that agency. See PBGC's website (*www.pbgc.gov/practitioners/*) for information on premium payments and reporting and disclosure.

Each Form 5500 must accurately reflect the characteristics and operations of the plan or arrangement being reported. The requirements for completing the Form 5500 will vary according to the type of plan or arrangement. The section *What To File* summarizes what information must be reported for different types of plans and arrangements. The *Quick Reference Chart of Form 5500, Schedules and Attachments,* gives a brief guide to the annual return/report requirements of the 2010 Form 5500.

The Form 5500 must be filed electronically as noted above. See *How To File – Electronic Filing Requirement* instructions and the EFAST2 website at *www.efast.dol.gov*. Your Form 5500 entries will be initially screened electronically. Your entries must satisfy this screening for your filing to be received. Once received, your form may be subject to further detailed review, and your filing may be rejected based upon this further review.

ERISA and the Code provide for the assessment or imposition of penalties for not submitting the required information when due. See *Penalties*.

Annual reports filed under Title I of ERISA must be made available by plan administrators to plan participants and beneficiaries and by the DOL to the public pursuant to ERISA sections 104 and 106. Pursuant to Section 504 of the Pension Protection Act of 2006 (PPA), this availability for defined benefit pension plans must include the posting of identification and basic plan information and actuarial information on any plan sponsor intranet website (or website maintained by the plan administrator on behalf of the plan sponsor) that is used for the purpose of communicating with employees and not the public. Section 504 also requires DOL to display such information on DOL's website within 90 days after the filing of the plan's annual return/report. To see 2010 Forms 5500, including actuarial information, see *www.dol.gov/ebsa*. See *www.dol.gov/ebsa/actuarialsearch.html* for 2008 and short plan year 2009 actuarial information filed under the previous paper-based system.

### Changes to Note

- **Eligible Combined Plans.** The Pension Protection Act of 2006 ("PPA") established rules for a new type of pension plan, an "eligible combined plan," effective for plan years beginning after December 31, 2009. An eligible combined plan consists of a defined benefit plan and a defined contribution plan that includes a qualified cash or deferred arrangement under Code section 401(k), with the assets of the two plans held in a single trust, but clearly identified and allocated between the plans. The eligible combined plan design is available only to employers that employed an average of at least 2 but not more than 500 employees on each business day during the calendar year preceding the plan year as of which the eligible combined plan is established and that employs at least 2 employees on the first day of the plan year. Because an eligible combined plan includes both a defined benefit plan and a defined contribution plan, the Form 5500 filed for the plan must include all the information, schedules and attachments that would be required for either a defined benefit plan (such as Schedule SB) or a defined contribution plan.

- **2010 Short Plan Year Filings for Defined Benefit Plans Required to File Actuarial Information.** Availability of instructions for Schedules SB and MB for the 2010 plan year was delayed because of possible changes to the instructions for these schedules resulting from additional regulatory guidance on the Pension Protection Act. Short plan year filers for the 2010 plan year, other than money purchase plan filers required to file Schedule MB, were prohibited from using the

2009 Schedule SB (Single-Employer Defined Benefit Plan Actuarial Information) or Schedule MB (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) for 2010 short plan year filings. Rather, filers who were required to file a Schedule SB or Schedule MB with respect to a defined benefit plan were required to wait to file their 2010 Form 5500 or 2010 Form 5500-SF until the 2010 Schedule SB and MB instructions were made available for filing. **The final 2010 Schedule MB, 2010 Schedule SB, and accompanying instructions, are now available and can be used for filing. You can find a hyperlink to the instructions for the 2010 Schedule MB on page 51, and a hyperlink to the 2010 Schedule SB instructions on page 57, or you can go directly to the links on the DOL website for the 2010 Forms and Instructions.**

**Table of Contents** **Page**

***Section 1: Who Must File*** .... 2
Pension Benefit Plan .... 2
Welfare Benefit Plan .... 3
Direct Filing Entity (DFE) .... 4
***Section 2: When To File*** .... 4
Extension of Time To File .... 4
***Section 3: Electronic Filing Requirement*** .... 5
Amended Return/Report .... 6
Final Return/Report .... 6
Signature and Date .... 6
Change in Plan Year .... 6
Penalties .... 6
Administrative Penalties .... 6
Other Penalties .... 7
***Section 4: What To File*** .... 7
Form 5500 Schedules .... 7
Pension Schedules .... 7
General Schedules .... 7
Pension Benefit Plan Filing Requirements .... 8
Limited Pension Plan Reporting .... 8
Welfare Benefit Plan Filing Requirements .... 9
Direct Filing Entity (DFE) Filing Requirements .... 9
Master Trust Investment Account (MTIA) .... 9
Common/Collective Trust (CCT) and Pooled Separate Account (PSA) .... 10
103-12 Investment Entity (103-12 IE) .... 10
Group Insurance Arrangement (GIA) .... 11
Quick Reference Chart of Form 5500, Schedules, and Attachments .... 12
***Section 5: Line-by-Line Instructions for the 2010 Form 5500 and Schedules*** .... 14
Part I (Form 5500) – Annual Return/Report Identification Information .... 14
Part II (Form 5500) – Basic Plan Information .... 15
Schedule A – *Insurance Information* .... 21
Schedule C – *Service Provider Information* .... 24
Schedule D – *DFE/Participating Plan Information* .... 29
Schedule G – *Financial Transaction Schedules* .... 31
Schedule H – *Financial Information* .... 33
Schedule I – *Financial Information – Small Plan* .... 43
Schedule MB – *Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information* .... 51
Schedule R – *Retirement Plan Information* .... 52
Schedule SB – *Single-Employer Defined Benefit Plan Actuarial Information* .... 57
***Paperwork Reduction Act Notice*** .... 58
***Codes for Principal Business Activity*** .... 59
***ERISA Compliance Quick Checklist*** .... 62
***Index*** .... 63

## How To Get Assistance

If you need help completing this form or have related questions, call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) (toll-free). The EFAST2 Help Line is available Monday through Friday from 8:00 am to 8:00 pm, Eastern Time.

You can access the EFAST2 website 24 hours a day, 7 days a week at *www.efast.dol.gov* to:

- File the Form 5500-SF or 5500, and any needed schedules or attachments.
- Check on the status of a filing you submitted.
- View filings posted by EFAST2.
- Register for electronic credentials to sign or submit filings.
- View forms and related instructions.
- Get information regarding EFAST2, including approved software vendors.
- See answers to frequently asked questions about the Form 5500-SF, the Form 5500 and its schedules, and EFAST2.
- Access the main EBSA and DOL websites for news, regulations, and publications.

You can access the IRS website 24 hours a day, 7 days a week at *www.irs.gov* to:

- View forms, instructions, and publications.
- See answers to frequently asked tax questions.
- Search publications on-line by topic or keyword.
- Send comments or request help by e-mail.
- Sign up to receive local and national tax news by e-mail.

You can order related forms and IRS publications by calling **1-800-TAX-FORM** (1-800-829-3676). You can order EBSA publications by calling **1-866-444-EBSA** (3272).

## Section 1: Who Must File

A return/report must be filed every year for every pension benefit plan, welfare benefit plan, and for every entity that files as a DFE as specified below (pursuant to Code section 6058 and ERISA sections 104 and 4065).

If you are a small plan (generally under 100 participants at the beginning of the plan year), you may be eligible to file the Form 5500-SF instead of the Form 5500. For more information, see the instructions to the Form 5500-SF.

### Pension Benefit Plan

All pension benefit plans covered by ERISA must file an annual return/report except as provided in this section. The return/report must be filed whether or not the plan is "tax-qualified," benefits no longer accrue, contributions were not made this plan year, or contributions are no longer made. Pension benefit plans required to file include both defined benefit plans and defined contribution plans.

The following are among the pension benefit plans for which a return/report must be filed.

1. Profit-sharing plans, stock bonus plans, money purchase plans, 401(k) plans, etc.
2. Annuity arrangements under Code section 403(b)(1) and custodial accounts established under Code section 403(b)(7) for regulated investment company stock.
3. Individual retirement accounts (IRAs) established by an employer under Code section 408(c).

Ex. AA
855

4. Church pension plans electing coverage under Code section 410(d).

5. Pension benefit plans that cover residents of Puerto Rico, the U.S. Virgin Islands, Guam, Wake Island, or American Samoa. This includes a plan that elects to have the provisions of section 1022(i)(2) of ERISA apply.

6. Plans that satisfy the Actual Deferral Percentage requirements of Code section 401(k)(3)(A)(ii) by adopting the "SIMPLE" provisions of section 401(k)(11).

See *What To File* for more information about what must be completed for pension plans.

### Do Not File a Form 5500 for a Pension Benefit Plan That Is Any of the Following:

1. An unfunded excess benefit plan. See ERISA section 4(b)(5).

2. An annuity or custodial account arrangement under Code sections 403(b)(1) or (7) not established or maintained by an employer as described in DOL Regulation 29 CFR 2510.3-2(f).

3. A Savings Incentive Match Plan for Employees of Small Employers (SIMPLE) that involves SIMPLE IRAs under Code section 408(p).

4. A simplified employee pension (SEP) or a salary reduction SEP described in Code section 408(k) that conforms to the alternative method of compliance in 29 CFR 2520.104-48 or 2520.104-49. A SEP is a pension plan that meets certain minimum qualifications regarding eligibility and employer contributions.

5. A church pension benefit plan not electing coverage under Code section 410(d).

6. A pension plan that is maintained outside the United States primarily for the benefit of persons substantially all of whom are nonresident aliens.

7. An unfunded pension plan for a select group of management or highly compensated employees that meets the requirements of 29 CFR 2520.104-23, including timely filing of a registration statement with the DOL.

8. An unfunded dues financed pension benefit plan that meets the alternative method of compliance provided by 29 CFR 2520.104-27.

9. An individual retirement account or annuity not considered a pension plan under 29 CFR 2510.3-2(d).

10. A governmental plan.

11. A One-Participant (Owners and Their Spouses) Retirement Plan (generally referred to as a One-Participant Plan). However, one-participant plans that are required to file must file either the **Form 5500-EZ**, Annual Return of One-Participant (Owners and Their Spouses) Retirement Plan, with the IRS or, if eligible, may file the **Form 5500-SF**, Short Form Annual Return/Report of Employee Benefit Plan, electronically with EFAST. For this purpose, a one-participant plan is:

a. a pension benefit plan that covers only an individual or an individual and his or her spouse who wholly own a trade or business, whether incorporated or unincorporated; or

b. a pension benefit plan for a partnership that covers only the partners or the partners and the partners' spouses.

See the instructions to the Form 5500-EZ and the Form 5500-SF for eligibility conditions and filing requirements. For more information, go to *www.irs.gov/ep* or call 1-877-829-5500.

## Welfare Benefit Plan

All welfare benefit plans covered by ERISA are required to file a Form 5500 except as provided in this section. Welfare benefit plans provide benefits such as medical, dental, life insurance, apprenticeship and training, scholarship funds, severance pay, disability, etc. See *What To File* for more information.

**Reminder:** The administrator of an employee welfare benefit plan that provides benefits wholly or partially through a Multiple Employer Welfare Arrangement (MEWA) as defined in ERISA section 3(40) must file a Form 5500, unless otherwise exempt.

### Do Not File a Form 5500 for a Welfare Benefit Plan That Is Any of the Following:

1. A welfare benefit plan that covered fewer than 100 participants as of the beginning of the plan year and is unfunded, fully insured, or a combination of insured and unfunded.

**Note.** To determine whether the plan covers fewer than 100 participants for purposes of these filing exemptions for insured and unfunded welfare plans, see instructions for lines 5 and 6 on counting participants in a welfare plan. *See also* 29 CFR 2510.3-3(d).

a. An *unfunded welfare benefit plan* has its benefits paid as needed directly from the general assets of the employer or employee organization that sponsors the plan.

**Note.** Plans that are NOT unfunded include those plans that received employee (or former employee) contributions during the plan year and/or used a trust or separately maintained fund (including a Code section 501(c)(9) trust) to hold plan assets or act as a conduit for the transfer of plan assets during the year. A welfare benefit plan with employee contributions that is associated with a cafeteria plan under Code section 125 may be treated for annual reporting purposes as an unfunded welfare plan if it meets the requirements of DOL Technical Release 92-01, 57 Fed. Reg. 23272 (June 2, 1992) and 58 Fed. Reg. 45359 (Aug. 27, 1993). The mere receipt of COBRA contributions or other after-tax participant contributions (e.g., retiree contributions) by a cafeteria plan would not by itself affect the availability of the relief provided for cafeteria plans that otherwise meet the requirements of DOL Technical Release 92-01. See 61 Fed. Reg. 41220, 41222-23 (Aug. 7, 1996).

b. A *fully insured welfare benefit plan* has its benefits provided exclusively through insurance contracts or policies, the premiums of which must be paid directly to the insurance carrier by the employer or employee organization from its general assets or partly from its general assets and partly from contributions by its employees or members (which the employer or employee organization forwards within three (3) months of receipt). The insurance contracts or policies discussed above must be issued by an insurance company or similar organization (such as Blue Cross, Blue Shield or a health maintenance organization) that is qualified to do business in any state.

c. A *combination unfunded/insured welfare benefit plan* has its benefits provided partially as an unfunded plan and partially as a fully insured plan. An example of such a plan is a welfare benefit plan that provides medical benefits as in **a** above and life insurance benefits as in **b** above. See 29 CFR 2520.104-20.

**Note.** A voluntary employees beneficiary association, as used in Code section 501(c)(9) (VEBA), should not be confused with the employer or employee organization that sponsors the plan. See ERISA section 3(4).

2. A welfare benefit plan maintained outside the United States primarily for persons substantially all of whom are nonresident aliens.

3. A governmental plan.

4. An unfunded or insured welfare benefit plan maintained for a select group of management or highly compensated employees, which meets the requirements of 29 CFR 2520.104-24.

5. An employee benefit plan maintained only to comply with workers' compensation, unemployment compensation, or disability insurance laws.

6. A welfare benefit plan that participates in a group insurance arrangement that files a Form 5500 on behalf of the welfare benefit plan as specified in 29 CFR 2520.103-2. See 29 CFR 2520.104-43.

7. An apprenticeship or training plan meeting all of the conditions specified in 29 CFR 2520.104-22.

8. An unfunded dues financed welfare benefit plan exempted by 29 CFR 2520.104-26.

9. A church plan under ERISA section 3(33).

10. A welfare benefit plan maintained solely for *(1)* an individual or an individual and his or her spouse, who wholly own a trade or business, whether incorporated or unincorporated, or *(2)* partners or the partners and the partners' spouses in a partnership. See 29 CFR 2510.3-3(b).

### Direct Filing Entity (DFE)

Some plans participate in certain trusts, accounts, and other investment arrangements that file the Form 5500 annual return/report as a DFE in accordance with the *Direct Filing Entity (DFE) Filing Requirements.* A Form 5500 must be filed for a master trust investment account (MTIA). A Form 5500 is not required but may be filed for a common/collective trust (CCT), pooled separate account (PSA), 103-12 investment entity (103-12 IE), or group insurance arrangement (GIA). Plans that participate in CCTs, PSAs, 103-12 IEs, or GIAs that file as DFEs, however, generally are eligible for certain annual reporting relief. For reporting purposes, a CCT, PSA, 103-12 IE, or GIA is not considered a DFE unless a Form 5500 and all required attachments are filed for it in accordance with the *Direct Filing Entity (DFE) Filing Requirements.*

**Note.** Special requirements also apply to Schedules D and H attached to the Form 5500 filed by plans participating in MTIAs, CCTs, PSAs, and 103-12 IEs. See these schedules and their instructions.

## Section 2: When To File

**Plans and GIAs.** File 2010 returns/reports for plan and GIA years that began in 2010. All required forms, schedules, statements, and attachments must be filed by the last day of the 7th calendar month after the end of the plan or GIA year (not to exceed 12 months in length) that began in 2010. If the plan or GIA year differs from the 2010 calendar year, fill in the fiscal year beginning and ending dates in the space provided.

**DFEs other than GIAs.** File 2010 returns/reports no later than 9½ months after the end of the DFE year that ended in 2010. A Form 5500 filed for a DFE must report information for the DFE year (not to exceed 12 months in length). If the DFE year differs from the 2010 calendar year, fill in the fiscal year beginning and ending dates in the space provided.

**Short Years.** For a plan year of less than 12 months (short plan year), file the form and applicable schedules by the last day of the 7th calendar month after the short plan year ends or by the extended due date, if filing under an authorized extension of time. Fill in the short plan year beginning and ending dates in the space provided and check the appropriate box in Part I, line B, of the Form 5500. For purposes of this return/report, the short plan year ends on the date of the change in accounting period or upon the complete distribution of assets of the plan. Also see the instructions for *Final Return/Report* to determine if "the final return/report" box in line B should be checked.

**Notes.** ***(1)*** If the filing due date falls on a Saturday, Sunday, or Federal holiday, the return/report may be filed on the next day that is not a Saturday, Sunday, or Federal holiday. ***(2)*** If the 2011 Form 5500 is not available before the plan or DFE filing use the 2010 Form 5500 and enter the 2011 fiscal year beginning and ending dates on the line provided at the top of the form.

**Note:** All 2010 short plan year filers must use the 2010 forms, schedules, and instructions.

### Extension of Time To File

#### Using Form 5558

A plan or GIA may obtain a one-time extension of time to file a Form 5500 annual return/report (up to 2½ months) by filing IRS Form 5558, Application for Extension of Time To File Certain Employee Plan Returns, on or before the normal due date (not including any extensions) of the return/report. **You MUST file Form 5558 with the IRS.** Approved copies of the Form 5558 will not be returned to the filer. A copy of the completed extension request must, however, be retained with the filer's records.

File Form 5558 with the Department of the Treasury, Internal Revenue Service Center, Ogden, UT 84201-0027.

#### Using Extension of Time To File Federal Income Tax Return

An automatic extension of time to file the Form 5500 annual return/report until the due date of the federal income tax return of the employer will be granted if all of the following conditions are met: **(1)** the plan year and the employer's tax year are the same; **(2)** the employer has been granted an extension of time to file its federal income tax return to a date later than the normal due date for filing the Form 5500; and **(3)** a copy of the application for extension of time to file the federal income tax return is maintained with the filer's records. An extension granted by using this automatic extension procedure CANNOT be extended further by filing a Form 5558, nor can it be extended beyond a total of 9½ months beyond the close of the plan year.

**Note.** An extension of time to file the Form 5500 does not operate as an extension of time to file a Form 5500 filed for a DFE (other than a GIA), to file PBGC premiums or annual financial and actuarial reports (if required by section 4010 of ERISA) or to file the annual registration statement required to be filed with the IRS under Code section 6057).

#### Other Extensions of Time

The IRS, DOL, and PBGC may announce special extensions of time under certain circumstances, such as extensions for Presidentially-declared disasters or for service in, or in support of, the Armed Forces of the United States in a combat zone. See *www.irs.gov, www.efast.dol.gov,* and *www.pbgc.gov/practitioners* for announcements regarding such special extensions. If you are relying on one of these announced special extensions, check the appropriate box on Form 5500, Part I, line D, and enter a description of the announced authority for the extension.

### Delinquent Filer Voluntary Compliance (DFVC) Program

The DFVC Program facilitates voluntary compliance by plan administrators who are delinquent in filing annual reports under Title I of ERISA by permitting administrators to pay reduced civil penalties for voluntarily complying with their DOL annual reporting obligations. If the Form 5500 is being filed under the DFVC Program, check the appropriate box in Form 5500, Part I, line D, to indicate that the Form 5500 is being filed under the DFVC Program.

See *www.efast.dol.gov* for additional information, including information concerning DFVC Program filings and the submission of penalty payments to the DFVC Program processing center.

Plan administrators are reminded that they can use the online calculator available at *www.dol.gov/ebsa/calculator/dfvcpmain.html* to compute the penalties due under the program. Payments under the DFVC Program also may be submitted electronically. For information on how to pay DFVC Program payments online, go to *www.dol.gov/ebsa*.

## Section 3: Electronic Filing Requirement

Under the computerized ERISA Filing Acceptance System (EFAST2), you must file your 2010 Form 5500 annual return/report electronically. You may file online using EFAST2's web-based filing system or you may file through an EFAST2-approved vendor. Detailed information on electronic filing is available at *www.efast.dol.gov*. For telephone assistance, call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278). The EFAST2 Help Line is available Monday through Friday from 8:00 am to 8:00 pm, Eastern Time.

*Annual returns/reports filed under Title I of ERISA must be made available by plan administrators to plan participants and beneficiaries and by the DOL to the public pursuant to ERISA sections 104 and 106. Even though the Form 5500 must be filed electronically, the administrator must keep a copy of the Form 5500, including schedules and attachments, with all required signatures on file as part of the plan's records and must make a paper copy available upon request to participants, beneficiaries, and the DOL as required by section 104 of ERISA and 29 CFR 2520.103-1. Filers may use electronic media for record maintenance and retention, so long as they meet the applicable requirements.*

Generally, questions on the Form 5500 relate to the plan year entered at the top of the first page of the form. Therefore, answer all questions on the 2010 Form 5500 with respect to the 2010 plan year unless otherwise explicitly stated in the instructions or on the form itself.

Your entries must be in the proper format in order for the EFAST2 system to process your filing. For example, if a question requires you to enter a dollar amount, you cannot enter a word. Your software will not let you submit your return/report unless all entries are in the proper format. To reduce the possibility of correspondence and penalties:

- Complete all lines on the Form 5500 unless otherwise specified. Also complete and electronically attach, as required, applicable schedules and attachments.
- Do not enter "N/A" or "Not Applicable" on the Form 5500 unless specifically permitted. "Yes" or "No" questions on the forms and schedules cannot be left blank, unless specifically permitted. Answer either "Yes" or "No," but not both.

All schedules and attachments to the Form 5500 must be properly identified, and must include the name of the plan or DFE, EIN, and plan number (PN) as found on the Form 5500, lines, 1a, 2b, and 1b, respectively. At the top of each attachment, indicate the schedule and line, if any (e.g., Schedule H, line 4i) to which the attachment relates.

You should check your return/report for errors before signing or submitting it to EFAST2. Your filing software or, if you are using it, the EFAST2 web-based filing system will allow you to check your return/report for errors. If, after reasonable attempts to correct your filing to eliminate any identified problem or problems, you are unable to address them, or you believe that you are receiving the message in error, call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) or contact the service provider you used to help prepare and file your annual return/report.

Once you complete the return/report and finish the electronic signature process, you can electronically submit it to EFAST2. When you electronically submit your return/report, EFAST2 is designed to immediately notify you if your submission was received and whether the return/report is ready to be processed by EFAST2. If EFAST2 does not notify you that your submission was successfully received and is ready to be processed, you will need to take steps to correct the problem or you may be deemed a non-filer subject to penalties from DOL, IRS, and/or PBGC.

Once EFAST2 receives your return/report, the EFAST2 system should be able to provide a filing status within 20 minutes. The person submitting the filing should check back into the EFAST2 system to determine the filing status of your return/report. The filing status message will include a list of any filing errors or warnings that EFAST2 may have identified in your filing. If EFAST2 did not identify any filing errors or warnings, EFAST2 will show the filing status of your return/report as "Filing_Received." Persons other than the submitter can check whether the filing was received by the system by calling the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) and using the automated telephone system.

To reduce the possibility of correspondence and penalties from the DOL, IRS, and/or PBGC, you should do the following: (1) Before submitting your return/report to EFAST2, check it for errors, and (2) after you have submitted it to EFAST2, verify that you have received a filing status of "Filing_Received" and attempt to correct and resolve any errors or warnings listed in the status report.

**Note.** Even after being received by the EFAST2 system, your return/report filing may be subject to further detailed review by DOL, IRS, and/or PBGC, and your filing may be deemed deficient based upon this further review. See Penalties on Page 6.

*Do not enter social security numbers in response to questions asking for an employer identification number (EIN). Because of privacy concerns, the inclusion of a social security number on the Form 5500 or on a schedule or attachment that is open to public inspection may result in the rejection of the filing. If you discover a filing disclosed on the EFAST2 website that contains a social security number, immediately call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278).*

*Do not attach a copy of the annual registration statement identifying separated participants with deferred vested benefits, or a previous years' Schedule SSA (Form 5500) to your 2010 Form 5500 annual return/report. The annual registration statement must be filed directly with the IRS and cannot be attached to a Form 5500 submission with EFAST2.*

Ex. AA
858

Employers without an EIN must apply for one as soon as possible. The EBSA does not issue EINs. To apply for an EIN from the IRS:

- Mail or fax Form SS-4, Application for Employer Identification Number, obtained by calling 1-800-TAX-FORM (1-800-829-3676) or at the IRS website at *www.irs.gov*.
- Call 1-800-829-4933 to receive your EIN by telephone.
- Select the Online EIN Application link at *www.irs.gov*. The EIN is issued immediately once the application information is validated. (The online application process is not yet available for corporations with addresses in foreign countries or Puerto Rico.)

## Amended Return/Report

File an amended return/report to correct errors and/or omissions in a previously filed annual return/report for the 2010 plan year. The amended Form 5500 and any amended schedules and/or attachments must conform to the requirements in these instructions. See the DOL website at *www.efast.dol.gov* for information on filing amended returns/ reports for prior years.

*Check the line B box for "an amended return/report" if you filed a previous 2010 annual return/report that was given a "Filing_Received," "Filing_Error," or "Filing_Stopped" status by EFAST2. Do not check the line B box for "an amended return/report" if your previous submission attempts were not successfully received by EFAST2 because of problems with the transmission of your return/report. For more information, go to the EFAST2 website at* www.efast.dol.gov *or call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278).*

## Final Return/Report

If all assets under the plan (including insurance/annuity contracts) have been distributed to the participants and beneficiaries or legally transferred to the control of another plan, and when all liabilities for which benefits may be paid under a welfare benefit plan have been satisfied, check the final return/report box in Part I, line B at the top of the Form 5500. If a trustee is appointed for a terminated defined benefit plan pursuant to ERISA section 4042, the last plan year for which a return/report must be filed is the year in which the trustee is appointed.

**Examples:**

### Mergers/Consolidations

A final return/report should be filed for the plan year (12 months or less) that ends when all plan assets were legally transferred to the control of another plan.

### Pension and Welfare Plans That Terminated Without Distributing All Assets

If the plan was terminated, but all plan assets were not distributed, a return/report must be filed for each year the plan has assets. The return/report must be filed by the plan administrator, if designated, or by the person or persons who actually control the plan's assets/property.

### Welfare Plans Still Liable To Pay Benefits

A welfare plan cannot file a final return/report if the plan is still liable to pay benefits for claims that were incurred prior to the termination date, but not yet paid. See 29 CFR 2520.104b-2(g)(2)(ii).

## Signature and Date

For purposes of Title I of ERISA, the plan administrator is required to file the Form 5500. If the plan administrator does not sign a filing, the filing status will indicate that there is an error with your filing, and your filing will be subject to further review, correspondence, rejection, and civil penalties. The plan administrator or, if the plan administrator is an entity, a person authorized to sign on behalf of the plan administrator must electronically sign the Form 5500 submitted to EFAST2.

**Note.** The Code permits either the plan sponsor/employer or the administrator to sign the filing. However, any Form 5500 that is not electronically signed by the plan administrator will be subject to rejection and civil penalties under Title I of ERISA.

For DFE filings, a person authorized to sign on behalf of the DFE must sign for the DFE.

The Form 5500 annual return/report must be filed electronically and signed. To obtain an electronic signature, go to *www.efast.dol.gov* and register in EFAST2 as a signer. You will be provided with a UserID and PIN. Both the UserID and PIN are needed to sign the Form 5500. The plan administrator must keep a copy of the Form 5500, including schedules and attachments with all required signatures on file as part of the plan's records. See 29 CFR 2520.103-1.

Electronic signatures on annual returns/reports filed under EFAST2 are governed by the applicable statutory and regulatory requirements.

## Change in Plan Year

Generally, only defined benefit pension plans need to get approval for a change in the plan year. (See Code section 412(d)(1).) However, under Rev. Proc. 87-27, 1987-1 C.B. 769, these pension plans may be eligible for automatic approval of a change in plan year.

If a change in plan year for a pension or a welfare plan creates a short plan year, the appropriate box in Part I, line B, of the Form 5500 must be checked, and a Form 5500, with all required schedules and attachments, must be filed by the last day of the 7th calendar month after the end of the short plan year.

## Penalties

Plan administrators and plan sponsors must provide complete and accurate information and must otherwise comply fully with the filing requirements. ERISA and the Code provide for the DOL and the IRS, respectively, to assess or impose penalties for not giving complete and accurate information and for not filing complete and accurate statements and returns/reports. Certain penalties are administrative (i.e., they may be imposed or assessed by one of the governmental agencies delegated to administer the collection of the annual return/report data). Others require a legal conviction.

### Administrative Penalties

Listed below are various penalties under ERISA and the Code that may be assessed or imposed for not meeting the annual return/report filing requirements. Generally, whether the penalty is under ERISA or the Code, or both, depends upon the agency for which the information is required to be filed. One or more of the following administrative penalties may be assessed or imposed in the event of incomplete filings or filings received after the due date unless it is determined that your failure to file properly is for reasonable cause:

1. A penalty of up to $1,100 a day (or higher amount if adjusted pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended) for each day a plan

Ex. AA
859

administrator fails or refuses to file a complete report. See ERISA section 502(c)(2) and 29 CFR 2560.502c-2.

2. A penalty of $25 a day (up to $15,000) for not filing returns for certain plans of deferred compensation, trusts and annuities, and bond purchase plans by the due date(s). See Code section 6652(e).

3. A penalty of $1,000 for not filing an actuarial statement (Schedule MB (Form 5500) or Schedule SB (Form 5500)) required by the applicable instructions. See Code section 6692.

### Other Penalties

1. Any individual who willfully violates any provision of Part 1 of Title I of ERISA shall on conviction be fined not more than $100,000 or imprisoned not more than 10 years, or both. See ERISA section 501.

2. A penalty up to $10,000, five (5) years imprisonment, or both, may be imposed for making any false statement or representation of fact, knowing it to be false, or for knowingly concealing or not disclosing any fact required by ERISA. See section 1027, Title 18, U.S. Code, as amended by section 111 of ERISA.

## Section 4: What To File

The Form 5500 reporting requirements vary depending on whether the Form 5500 is being filed for a "large plan," a "small plan," and/or a DFE, and on the particular type of plan or DFE involved (e.g., welfare plan, pension plan, common/collective trust (CCT), pooled separate account (PSA), master trust investment account (MTIA), 103-12 IE, or group insurance arrangement (GIA)).

The instructions below provide detailed information about each of the Form 5500 schedules and which plans and DFEs are required to file them.

The schedules are grouped in the instructions by type: **(1)** Pension Benefit Schedules and **(2)** General Schedules. Each schedule is listed separately with a description of the subject matter covered by the schedule and the plans and DFEs that are required to file the schedule.

Filing requirements also are listed by type of filer: **(1)** Pension Benefit Plan Filing Requirements; **(2)** Welfare Benefit Plan Filing Requirements; and **(3)** DFE Filing Requirements. For each filer type there is a separate list of the schedules that must be filed with the Form 5500 (including where applicable, separate lists for large plan filers, small plan filers, and different types of DFEs).

The filing requirements also are summarized in a "*Quick Reference Chart of Form 5500, Schedules, and Attachments.*"

Generally, a return/report filed for a pension benefit plan or welfare benefit plan that covered fewer than 100 participants as of the beginning of the plan year should be completed following the requirements below for a "small plan," and a return/report filed for a plan that covered 100 or more participants as of the beginning of the plan year should be completed following the requirements below for a "large plan."

Use the number of participants required to be entered in line 5 of the Form 5500 to determine whether a plan is a "small plan" or "large plan."

**Exceptions**:

***(1) 80-120 Participant Rule:*** *If the number of participants reported on line 5 is between 80 and 120, and a Form 5500 annual return/report was filed for the prior plan year, you may elect to complete the return/report in the same category ("large plan" or "small plan") as was filed for the prior return/report. Thus, if a Form 5500 annual return/report was filed for the 2009 plan year as a small plan, including the Schedule I if applicable, and the number entered on line 5 of the 2010 Form 5500 is 120 or less, you may elect to complete the 2010 Form 5500 and schedules in accordance with the instructions for a small plan, including for eligible filers, filing the Form 5500-SF instead of the Form 5500.*

***(2) Short Plan Year Rule:*** *If the plan had a short plan year of seven (7) months or less for either the prior plan year or the plan year being reported on the 2010 Form 5500, an election can be made to defer filing the accountant's report in accordance with 29 CFR 2520.104-50. If such an election was made for the prior plan year, the 2010 Form 5500 must be completed following the requirements for a large plan, including the attachment of the Schedule H and the accountant's reports, regardless of the number of participants entered in Part II, line 5.*

## Form 5500 Schedules

### Pension Schedules

**Schedule R** ***(Retirement Plan Information)*** – is required for a pension benefit plan that is a defined benefit plan or is otherwise subject to Code section 412 or ERISA section 302. Schedule R may also be required for certain other pension benefit plans unless otherwise specified under *Limited Pension Plan Reporting*. For additional information, see the Schedule R instructions.

**Schedule MB** ***(Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information)*** – is required for most multiemployer defined benefit plans and for defined contribution pension plans that currently amortize a waiver of the minimum funding requirements specified in the instructions for the Schedule MB. For additional information, see the instructions for the Schedule MB and the Schedule R.

**Schedule SB** ***(Single-Employer Defined Benefit Plan Actuarial Information)*** – is required for most single-employer defined benefit plans, including multiple-employer defined benefit pension plans. For additional information, see the instructions for the Schedule SB.

### General Schedules

**Schedule H** ***(Financial Information)*** – is required for pension benefit plans and welfare benefit plans filing as "large plans" and for all DFE filings. Employee benefit plans, 103-12 IEs, and GIAs filing the Schedule H are generally required to engage an independent qualified public accountant (IQPA) and attach a report of the IQPA pursuant to ERISA section 103(a)(3)(A). These plans and DFEs are also generally required to attach to the Form 5500 a **"Schedule of Assets (Held At End of Year),"** and, if applicable, a **"Schedule of Assets (Acquired and Disposed of Within Year),"** a **"Schedule of Reportable Transactions,"** and a **"Schedule of Delinquent Participant Contributions."** For additional information, see the Schedule H instructions.

**Exceptions:** Insured, unfunded, or combination unfunded/insured welfare plans, as described in 29 CFR 2520.104-44(b)(1), and certain pension plans and arrangements, as described in 29 CFR 2520.104-44(b)(2), and in *Limited Pension Plan Reporting*, are exempt from completing the Schedule H.

**Schedule I** ***(Financial Information - Small Plan)*** – is required for all pension benefit plans and welfare benefit plans filing the Form 5500 annual return/report, rather than the Form 5500-SF, as "small plans," except for certain pension benefit

Ex. AA
860

plans and arrangements described in 29 CFR 2520.104-44(b)(2) and *Limited Pension Plan Reporting*. For additional information, see the Schedule I instructions.

**Schedule A** ***(Insurance Information)*** – is required if any benefits under an employee benefit plan are provided by an insurance company, insurance service or other similar organization (such as Blue Cross, Blue Shield, or a health maintenance organization). This includes investment contracts with insurance companies, such as guaranteed investment contracts and pooled separate accounts. For additional information, see the Schedule A instructions.

**Note.** Do not file Schedule A for Administrative Services Only (ASO) contracts. Do not file Schedule A if a Schedule A is filed for the contract as part of the Form 5500 filed directly by a master trust investment account (MTIA) or 103-12 IE.

**Schedule C** ***(Service Provider Information)*** – is required for a large plan, MTIA, 103-12 IE, or GIA if **(1)** any service provider who rendered services to the plan or DFE during the plan or DFE year received $5,000 or more in compensation, directly or indirectly from the plan or DFE, or **(2)** an accountant and/or enrolled actuary has been terminated. For additional information, see the Schedule C instructions.

**Schedule D** ***(DFE/Participating Plan Information)*** – Part I is required for a plan or DFE that invested or participated in any MTIAs, 103-12 IEs, CCTs, and/or PSAs. Part II is required when the Form 5500 is filed for a DFE. For additional information, see the Schedule D instructions.

**Schedule G** ***(Financial Transaction Schedules)*** – is required for a large plan, MTIA, 103-12 IE, or GIA when Schedule H (Financial Information) lines 4b, 4c, and/or 4d are checked "Yes." Part I of the Schedule G reports loans or fixed income obligations in default or classified as uncollectible. Part II of the Schedule G reports leases in default or classified as uncollectible. Part III of the Schedule G reports nonexempt transactions. For additional information, see the Schedule G instructions.

*An unfunded, fully insured, or combination unfunded/insured welfare plan with 100 or more participants exempt under 29 CFR 2520.104-44 from completing Schedule H must still complete Schedule G, Part III, to report nonexempt transactions.*

## Pension Benefit Plan Filing Requirements

Pension benefit plan filers must complete the Form 5500 annual return/report, including the signature block and, unless otherwise specified, attach the following schedules and information:

### Small Pension Plan

The following schedules (including any additional information required by the instructions to the schedules) must be attached to a Form 5500 filed for a small pension plan that is neither exempt from filing nor is filing the Form 5500-SF:

1. Schedule A (as many as needed), to report insurance, annuity, and investment contracts held by the plan.
2. Schedule D, Part I, to list any CCTs, PSAs, MTIAs, and 103-12 IEs in which the plan participated at any time during the plan year.
3. Schedule I, to report small plan financial information, unless exempt.
4. Schedule MB or SB, to report actuarial information, if applicable.
5. Schedule R, to report retirement plan information, if applicable.

*If Schedule I, line 4k, is checked "No," you must attach the report of the independent qualified public accountant (IQPA) or a statement that the plan is eligible and elects to defer attaching the IQPA's opinion pursuant to 29 CFR 2520.104-50 in connection with a short plan year of seven months or less.*

### Large Pension Plan

The following schedules (including any additional information required by the instructions to the schedules) must be attached to a Form 5500 filed for a large pension plan:

1. Schedule A (as many as needed), to report insurance, annuity, and investment contracts held by the plan.
2. Schedule C, if applicable, to report information on service providers and, if applicable, any terminated accountants or enrolled actuaries.
3. Schedule D, Part I, to list any CCTs, PSAs, MTIAs, and 103-12 IEs in which the plan invested at any time during the plan year.
4. Schedule G, to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the plan year, leases in default or classified as uncollectible, and nonexempt transactions, i.e., file Schedule G if Schedule H (Form 5500) lines 4b, 4c, and/or 4d are checked "Yes."
5. Schedule H, to report large plan financial information, unless exempt.
6. Schedule MB or SB, to report actuarial information, if applicable.
7. Schedule R, to report retirement plan information, if applicable.

*You must* attach *the report of the independent qualified public accountant (IQPA) identified on Schedule H, line 3c, unless line 3d(2) is checked.*

### Limited Pension Plan Reporting

The pension benefit plans or arrangements described below are eligible for limited annual reporting:

1. **IRA Plans:** A pension plan using individual retirement accounts or annuities (as described in Code section 408) as the sole funding vehicle for providing pension benefits need complete only Form 5500, Part I and Part II, lines 1 through 4, and 8 (enter pension feature code 2N).
2. **Fully Insured Pension Plan:** A pension benefit plan providing benefits exclusively through an insurance contract or contracts that are fully guaranteed and that meet all of the conditions of 29 CFR 2520.104-44(b)(2) during the entire plan year must complete all the requirements listed under this *Pension Benefit Plan Filing Requirements* section, except that such a plan is exempt from attaching Schedule H, Schedule I, and an independent qualified public accountant's opinion, and from the requirement to engage an IQPA.

A pension benefit plan that has insurance contracts of the type described in 29 CFR 2520.104-44 as well as other assets must complete all requirements for a pension benefit plan, except that the value of the plan's allocated contracts (see below) should not be reported in Part I of Schedule H or I. All other assets should be reported on Schedule H or Schedule I,

and any other required schedules. If Schedule H is filed, attach an accountant's report in accordance with the Schedule H instructions.

**Note.** For purposes of the annual return/report and the alternative method of compliance set forth in 29 CFR 2520.104-44, a contract is considered to be "allocated" only if the insurance company or organization that issued the contract unconditionally guarantees, upon receipt of the required premium or consideration, to provide a retirement benefit of a specified amount. This amount must be provided to each participant without adjustment for fluctuations in the market value of the underlying assets of the company or organization, and each participant must have a legal right to such benefits, which is legally enforceable directly against the insurance company or organization. For example, deposit administration, immediate participation guarantee, and guaranteed investment contracts are NOT allocated contracts for Form 5500 annual return/report purposes.

## Welfare Benefit Plan Filing Requirements

Welfare benefit plan filers must complete the Form 5500 annual return/report, including the signature block and, unless otherwise specified, attach the following schedules and information:

### Small Welfare Plan

The following schedules (including any additional information required by the instructions to the schedules) must be attached to a Form 5500 filed for a small welfare plan that is neither exempt from filing nor filing the Form 5500-SF:

1. Schedule A (as many as needed), to report insurance contracts held by the plan.
2. Schedule D, Part I, to list any CCTs, PSAs, MTIAs, and 103-12 IEs in which the plan participated at any time during the plan year.
3. Schedule I, to report small plan financial information.

### Large Welfare Plan

The following schedules (including any additional information required by the instructions to the schedules) must be attached to a Form 5500 filed for a large welfare plan:

1. Schedule A (as many as needed), to report insurance and investment contracts held by the plan.
2. Schedule C, if applicable, to report information on service providers and any terminated accountants or actuaries.
3. Schedule D, Part I, to list any CCTs, PSAs, MTIAs, and 103-12 IEs in which the plan invested at any time during the plan year.
4. Schedule G, to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the plan year, leases in default or classified as uncollectible, and nonexempt transactions, i.e., file Schedule G if Schedule H (Form 5500) lines 4b, 4c, and/or 4d are checked "Yes" or if a large welfare plan that is not required to file a Schedule H has nonexempt transactions.
5. Schedule H, to report financial information, unless exempt.

*Attach the report of the independent qualified public accountant (IQPA) identified on Schedule H, line 3c, unless line 3d(2) is checked.*

*Neither Schedule H nor an IQPA's opinion should be attached to a Form 5500 filed for an unfunded, fully insured or combination unfunded/insured welfare plan that covered 100 or more participants as of the beginning of the plan year that meets the requirements of 29 CFR 2520.104-44. However, Schedule G, Part III, must be attached to the Form 5500 to report any nonexempt transactions. A welfare benefit plan that uses a "voluntary employees' beneficiary association" (VEBA) under Code section 501(c)(9) is generally not exempt from the requirement of engaging an IQPA.*

## Direct Filing Entity (DFE) Filing Requirements

Some plans participate in certain trusts, accounts, and other investment arrangements that file the Form 5500 annual return/report as a DFE. A Form 5500 must be filed for a master trust investment account (MTIA). A Form 5500 is not required but may be filed for a common/collective trust (CCT), pooled separate account (PSA), 103-12 investment entity (103-12 IE), or group insurance arrangement (GIA). However, plans that participate in CCTs, PSAs, 103-12 IEs, or GIAs that file as DFEs generally are eligible for certain annual reporting relief. For reporting purposes, a CCT, PSA, 103-12 IE, or GIA is considered a DFE only when a Form 5500 and all required schedules and attachments are filed for it in accordance with the following instructions.

Only one Form 5500 should be filed for each DFE for all plans participating in the DFE; however, the Form 5500 filed for the DFE, including all required schedules and attachments, must report information for the DFE year (not to exceed 12 months in length) that ends with or within the participating plan's year.

Any Form 5500 filed for a DFE is an integral part of the annual report of each participating plan, and the plan administrator may be subject to penalties for failing to file a complete annual report unless both the DFE Form 5500 and the plan's Form 5500 are properly filed. The information required for a Form 5500 filed for a DFE varies according to the type of DFE. The following paragraphs provide specific guidance for the reporting requirements for each type of DFE.

## Master Trust Investment Account (MTIA)

The administrator filing a Form 5500 for an employee benefit plan is required to file or have a designee file a Form 5500 for each MTIA in which the plan participated at any time during the plan year. For reporting purposes, a "master trust" is a trust for which a regulated financial institution (as defined below) serves as trustee or custodian (regardless of whether such institution exercises discretionary authority or control with respect to the management of assets held in the trust), and in which assets of more than one plan sponsored by a single employer or by a group of employers under common control are held.

"Common control" is determined on the basis of all relevant facts and circumstances (whether or not such employers are incorporated).

A "regulated financial institution" means a bank, trust company, or similar financial institution that is regulated, supervised, and subject to periodic examination by a state or federal agency. A securities brokerage firm is not a "similar financial institution" as used here. See DOL Advisory Opinion 93-21A (available at *www.dol.gov/ebsa*).

The assets of a master trust are considered for reporting purposes to be held in one or more "investment accounts." A "master trust investment account" may consist of a pool of assets or a single asset. Each pool of assets held in a master trust must be treated as a separate MTIA if each plan that has an interest in the pool has the same fractional interest in each

Ex. AA
862

asset in the pool as its fractional interest in the pool, and if each such plan may not dispose of its interest in any asset in the pool without disposing of its interest in the pool. A master trust may also contain assets that are not held in such a pool. Each such asset must be treated as a separate MTIA.

**Notes.** ***(1)*** If an MTIA consists solely of one plan's asset(s) during the reporting period, the plan may report the asset(s) either as an investment account on an MTIA Form 5500, or as a plan asset(s) that is not part of the master trust (and therefore subject to all instructions concerning assets not held in a master trust) on the plan's Form 5500. ***(2)*** If a master trust holds assets attributable to participant or beneficiary directed transactions under an individual account plan and the assets are interests in registered investment companies, interests in contracts issued by an insurance company licensed to do business in any state, interests in common/collective trusts maintained by a bank, trust company or similar institution, or the assets have a current value that is readily determinable on an established market, those assets may be treated as a single MTIA.

The Form 5500 submitted for the MTIA must comply with the Form 5500 instructions for a *Large Pension Plan*, unless otherwise specified in the forms and instructions. The MTIA must file:

1. Form 5500, except lines C, D, 1c, 2d, and 5 through 9. Be certain to enter "M" in Part I, line A, as the DFE code.
2. Schedule A (as many as needed) to report insurance, annuity and investment contracts held by the MTIA.
3. Schedule C, if applicable, to report service provider information. Part III is not required for an MTIA.
4. Schedule D, to list CCTs, PSAs, and 103-12 IEs in which the MTIA invested at any time during the MTIA year and to list all plans that participated in the MTIA during its year.
5. Schedule G, to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the MTIA year, all leases in default or classified as uncollectible, and nonexempt transactions.
6. Schedule H, except lines 1b(1), 1b(2), 1c(8), 1g, 1h, 1i, 2a, 2b(1)(E), 2e, 2f, 2g, 4a, 4e, 4f, 4g, 4h, 4k, 4l, 4m, 4n, and 5, to report financial information. An independent qualified public accountant's (IQPA's) opinion is not required for an MTIA.
7. Additional information required by the instructions to the above schedules, including, for example, the schedules of assets held for investment and the schedule of reportable transactions. For purposes of the schedule of reportable transactions, the 5% figure shall be determined by comparing the current value of the transaction at the transaction date with the current value of the investment account assets at the beginning of the applicable fiscal year of the MTIA. All attachments must be properly labeled.

## Common/Collective Trust (CCT) and Pooled Separate Account (PSA)

A Form 5500 is not required to be filed for a CCT or PSA. However, the administrator of a large plan or DFE that participates in a CCT or PSA that files as specified below is entitled to reporting relief that is not available to plans or DFEs participating in a CCT or PSA for which a Form 5500 is not filed.

For reporting purposes, "common/collective trust" and "pooled separate account" are, respectively: **(1)** a trust maintained by a bank, trust company, or similar institution or **(2)** an account maintained by an insurance carrier, which are regulated, supervised, and subject to periodic examination by a state or federal agency in the case of a CCT, or by a state agency in the case of a PSA, for the collective investment and reinvestment of assets contributed thereto from employee benefit plans maintained by more than one employer or controlled group of corporations as that term is used in Code section 1563. See 29 CFR 2520.103-3, 103-4, 103-5, and 103-9.

**Note.** For reporting purposes, a separate account that is not considered to be holding plan assets pursuant to 29 CFR 2510.3-101(h)(1)(iii) does not constitute a pooled separate account.

The Form 5500 submitted for a CCT or PSA must comply with the Form 5500 instructions for *a Large Pension Plan*, unless otherwise specified in the forms and instructions.

The CCT or PSA must file:

1. Form 5500, except lines C, D, 1c, 2d, and 5 through 9. Enter "C" or "P," as appropriate, in Part I, line A, as the DFE code.
2. Schedule D, to list all CCTs, PSAs, MTIAs, and 103-12 IEs in which the CCT or PSA invested at any time during the CCT or PSA year and to list in Part II all plans that participated in the CCT or PSA during its year.
3. Schedule H, except lines 1b(1), 1b(2), 1c(8), 1d, 1e, 1g, 1h, 1i, 2a, 2b(1)(E), 2e, 2f, and 2g, to report financial information. Part IV and an accountant's (IQPA's) opinion are not required for a CCT or PSA.

*Different requirements apply to the Schedules D and H attached to the Form 5500 filed by plans and DFEs participating in CCTs and PSAs, depending upon whether a DFE Form 5500 has been filed for the CCT or PSA. See the instructions for these schedules.*

## 103-12 Investment Entity (103-12 IE)

DOL Regulation 2520.103-12 provides an alternative method of reporting for plans that invest in an entity (other than an MTIA, CCT, or PSA), whose underlying assets include "plan assets" within the meaning of 29 CFR 2510.3-101 of two or more plans that are not members of a "related group" of employee benefit plans. Such an entity for which a Form 5500 is filed constitutes a "103-12 IE." A Form 5500 is not required to be filed for such entities; however, filing a Form 5500 as a 103-12 IE provides certain reporting relief, including the limitation of the examination and report of the independent qualified public accountant (IQPA) provided by 29 CFR 2520.103-12(d), to participating plans and DFEs. For this reporting purpose, a "related group" of employee benefit plans consists of each group of two or more employee benefit plans **(1)** each of which receives 10% or more of its aggregate contributions from the same employer or from a member of the same controlled group of corporations (as determined under Code section 1563(a), without regard to Code section 1563(a)(4) thereof); or **(2)** each of which is either maintained by, or maintained pursuant to a collective-bargaining agreement negotiated by, the same employee organization or affiliated employee organizations. For purposes of this paragraph, an "affiliate" of an employee organization means any person controlling, controlled by, or under common control with such organization. See 29 CFR 2520.103-12.

The Form 5500 submitted for a 103-12 IE must comply with the Form 5500 instructions for a *Large Pension Plan*, unless otherwise specified in the forms and instructions. The 103-12 IE must file:

1. Form 5500, except lines C, D, 1c, 2d, and 5 through 9. Enter "E" in part I, line A, as the DFE code.
2. Schedule A (as many as needed), to report insurance, annuity and investment contracts held by the 103-12 IE.

Ex. AA
863

3. Schedule C, if applicable, to report service provider information and any terminated accountants.

4. Schedule D, to list all CCTs, PSAs, and 103-12 IEs in which the 103-12 IE invested at any time during the 103-12 IE's year, and to list all plans that participated in the 103-12 IE during its year.

5. Schedule G, to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the 103-12 IE year, leases in default or classified as uncollectible, and nonexempt transactions.

6. Schedule H, except lines 1b(1), 1b(2), 1c(8), 1d, 1e, 1g, 1h, 1i, 2a, 2b(1)(E), 2e, 2f, 2g, 4a, 4e, 4f, 4g, 4h, 4j, 4k, 4l, 4m, 4n, and 5, to report financial information.

7. Additional information required by the instructions to the above schedules, including, for example, the report of the independent qualified public accountant (IQPA) identified on Schedule H, line 3c, and the schedule(s) of assets held for investment. All attachments must be properly labeled.

## Group Insurance Arrangement (GIA)

Each welfare benefit plan that is part of a group insurance arrangement is exempted from the requirement to file a Form 5500 if a consolidated Form 5500 report for all the plans in the arrangement was filed in accordance with 29 CFR 2520.104-43. For reporting purposes, a "group insurance arrangement" provides benefits to the employees of two or more unaffiliated employers (not in connection with a multiemployer plan or a collectively-bargained multiple-employer plan), fully insures one or more welfare plans of each participating employer, uses a trust or other entity as the holder of the insurance contracts, and uses a trust as the conduit for payment of premiums to the insurance company. The GIA must file:

1. Form 5500, except lines C and 2d. (Enter "G" in Part I, line A, as the DFE code).

2. Schedule A (as many as needed), to report insurance, annuity and investment contracts held by the GIA.

3. Schedule C, if applicable, to report service provider information and any terminated accountants.

4. Schedule D, to list all CCTs, PSAs, and 103-12 IEs in which the GIA invested at any time during the GIA year, and to list all plans that participated in the GIA during its year.

5. Schedule G, to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the GIA year, leases in default or classified as uncollectible, and nonexempt transactions.

6. Schedule H, except lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, 4n, and 5, to report financial information.

7. Additional information required by the instructions to the above schedules, including, for example, the report of the independent qualified public accountant (IQPA) identified on Schedule H, line 3c, the schedules of assets held for investment and the schedule of reportable transactions. (All attachments must be properly labeled.)

## Quick Reference Chart of Form 5500, Schedules, and Attachments (Not Applicable for Form 5500-SF Filers)[1]

| | Large Pension Plan | Small Pension Plan[2] | Large Welfare Plan | Small Welfare Plan[2] | DFE |
|---|---|---|---|---|---|
| **Form 5500** | Must complete. | Must complete. | Must complete.[3] | Must complete.[3] | Must complete. |
| **Schedule A** (Insurance Information) | Must complete if plan has insurance contracts. | Must complete if plan has insurance contracts.[4] | Must complete if plan has insurance contracts. | Must complete if plan has insurance contracts.[4] | Must complete if MTIA, 103-12 IE, or GIA has insurance contracts. |
| **Schedule C** (Service Provider Information) | Must complete Part I if service provider was paid $5,000 or more, Part II if a service provider failed to provide information necessary for the completion of Part I, and Part III if an accountant or actuary was terminated. | Not required. | Must complete Part I if service provider was paid $5,000 or more, Part II if a service provider failed to provide information necessary for the completion of Part I, and Part III if an accountant or actuary was terminated. | Not required. | MTIAs, GIAs, and 103-12 IEs must complete Part I if service provider paid $5,000 or more, and Part II if a service provider failed to provide information necessary for the completion of Part I. GIAs and 103-12 IEs must complete Part III if accountant was terminated. |
| **Schedule D** (DFE/Participating Plan Information) | Must complete Part I if plan participated in a CCT, PSA, MTIA, or 103-12 IE. | Must complete Part I if plan participated in a CCT, PSA, MTIA, or 103-12 IE.[4] | Must complete Part I if plan participated in a CCT, PSA, MTIA, or 103-12 IE. | Must complete Part I if plan participated in a CCT, PSA, MTIA, or 103-12 IE.[4] | All DFEs must complete Part II, and DFEs that invest in a CCT, PSA, or 103-12 IE must also complete Part I. |
| **Schedule G** (Financial Schedules) | Must complete if Schedule H, lines 4b, 4c, or 4d are "Yes." | Not required. | Must complete if Schedule H, lines 4b, 4c, or 4d are "Yes."[3] | Not required. | Must complete if Schedule H, lines 4b, 4c, or 4d for a GIA, MTIA, or 103-12 IE are "Yes." |
| **Schedule H** (Financial Information) | Must complete.[5] | Not required. | Must complete.[3, 5] | Not required. | All DFEs must complete Parts I, II, and III. MTIAs, 103-12 IEs, and GIAs must also complete Part IV.[5] |
| **Schedule I** (Financial Information) | Not required. | Must complete.[4] | Not required. | Must complete.[4] | Not required. |
| **Schedule MB** (Actuarial Information) | Must complete if multiemployer defined benefit plan or money purchase plan subject to minimum funding standards.[6] | Must complete if multiemployer defined benefit plan or money purchase plan subject to minimum funding standards.[6] | Not required. | Not required. | Not required. |
| **Schedule R** (Pension Plan Information) | Must complete.[7] | Must complete.[4, 7] | Not required. | Not required. | Not required. |
| **Schedule SB** (Actuarial Information) | Must complete if single-employer or multiple-employer defined benefit plan, including an eligible combined plan and subject to minimum funding standards . | Must complete if single-employer or multiple-employer defined benefit plan, including an eligible combined plan and subject to minimum funding standards. | Not required. | Not required. | Not required. |

Ex. AA
865

| | Large Pension Plan | Small Pension Plan[2] | Large Welfare Plan | Small Welfare Plan[2] | DFE |
|---|---|---|---|---|---|
| **Accountant's Report** | Must attach. | Not required unless Schedule I, line 4k, is checked "No." | Must attach.[3] | Not required. | Must attach for a GIA or 103-12 IE. |

[1] This chart provides only general guidance. Not all rules and requirements are reflected. Refer to specific Form 5500 instructions for complete information on filing requirements (e.g., *Who Must File* and *What To File*). For example, a pension plan is exempt from filing any schedules if the plan uses Code section 408 individual retirement accounts as the sole funding vehicle for providing benefits. See *Limited Pension Plan Reporting*.

[2] Pension plans and welfare plans with fewer than 100 participants at the beginning of the plan year that are not exempt from filing an annual return/report may be eligible to file the Form 5500-SF, a simplified report. In addition to the limitation on the number of participants, a Form 5500-SF may only be filed for a plan that is exempt from the requirement that the plan's books and records be audited by an independent qualified public accountant (but not by reason of enhanced bonding), has 100 percent of its assets invested in certain secure investments with a readily determinable fair market value, holds no employer securities, and is not a multiemployer plan. See *Who Must File*.

[3] Unfunded, fully insured, or combination unfunded/fully insured welfare plans covering fewer than 100 participants at the beginning of the plan year that meet the requirements of 29 CFR 2520.104-20 are exempt from filing an annual report. See *Who Must File*. Such a plan with 100 or more participants must file an annual report, but is exempt under 29 CFR 2520.104-44 from the accountant's report requirement and completing Schedule H, but MUST complete Schedule G, Part III, to report any nonexempt transactions. See *What To File*.

[4] Do not complete if filing the Form 5500-SF instead of the Form 5500.

[5] Schedules of assets and reportable (5%) transactions also must be filed with the Form 5500 if Schedule H, line 4i or 4j is "Yes."

[6] Money purchase defined contribution plans that are amortizing a funding waiver are required to complete lines 3, 9, and 10 of the Schedule MB in accordance with the instructions. Also see instructions for line 5 of Schedule R and line 12a of Form 5500-SF.

[7] A pension plan is exempt from filing Schedule R if all of the following conditions are met:

- The plan is not a defined benefit plan or otherwise subject to the minimum funding standards of Code section 412 or ERISA section 302.
- No plan benefits that would be reportable on line 1 of Part I of this Schedule R were distributed during the plan year. See the instructions for Schedule R, Part I, line 1, below.
- No benefits, as described in the instructions for Schedule R, Part I, line 2, below, were paid during the plan year other than by the plan sponsor or plan administrator. (This condition is not met if benefits were paid by the trust or any other payor(s) which are reportable on IRS Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., using an EIN other than that of the plan sponsor or plan administrator reported on line 2b or 3b of Form 5500.)
- Unless the plan is a profit-sharing, ESOP or stock bonus plan, no plan benefits of living or deceased participants were distributed during the plan year in the form of a single-sum distribution. See the instructions for Schedule R, Part I, line 3, below.
- The plan is not an ESOP.
- The plan is not a multiemployer defined benefit plan.

# Section 5: Line-by-Line Instructions for the 2010 Form 5500 and Schedules

## Part I - Annual Return/Report Identification Information

File the 2010 Form 5500 annual return/report for a plan year that began in 2010 or a DFE year that ended in 2010. If the plan or DFE year is not the 2010 calendar year, enter the dates in Part I. The 2010 Form 5500 annual return/report must be filed electronically. Because of this, filings for 2010 plan years, including short plan years, cannot use prior year paper forms.

One Form 5500 is generally filed for each plan or entity described in the instructions to the boxes in line A. **Do not check more than one box.**

A separate Form 5500, with line A (single-employer plan) checked, must be filed by each employer participating in a plan or program of benefits in which the funds attributable to each employer are available to pay benefits only for that employer's employees, even if the plan is maintained by a controlled group.

A "controlled group" is generally considered one employer for Form 5500 reporting purposes. A "controlled group" is a controlled group of corporations under Code section 414(b), a group of trades or businesses under common control under Code section 414(c), or an affiliated service group under Code section 414(m).

**Line A – Box for Multiemployer Plan.** Check this box if the Form 5500 is filed for a multiemployer plan. A plan is a multiemployer plan if: **(a)** more than one employer is required to contribute, **(b)** the plan is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer; **(c)** an election under Code section 414(f)(5) and ERISA section 3(37)(E) has not been made; and **(d)** the plan meets any other applicable conditions of 29 CFR 2510.3-37. A plan that has made a proper election under ERISA section 3(37)(G) and Code section 414(f)(6) on or before August 17, 2007, is also a multiemployer plan. Participating employers do not file individually for these plans.

**Line A – Box for Single-Employer Plan.** Check this box if the Form 5500 is filed for a single-employer plan. A single-employer plan for this Form 5500 reporting purpose is an employee benefit plan maintained by one employer or one employee organization.

**Line A – Box for Multiple-Employer Plan.** Check this box if Form 5500 is being filed for a multiple-employer plan. A multiple-employer plan is a plan that is maintained by more than one employer and is not one of the plans already described. A multiple-employer plan can be collectively bargained and collectively funded, but if covered by PBGC termination insurance, must have properly elected before September 27, 1981, not to be treated as a multiemployer plan under Code section 414(f)(5) or ERISA sections 3(37)(E) and 4001(a)(3). Participating employers do not file individually for this type of plan. *Do **not** check this box if the employers maintaining the plan are members of the same controlled group.*

**Line A – Box for Direct Filing Entity (DFE).** Check this box and enter the correct letter from the following chart in the space provided to indicate the type of entity.

| Type of entity | Enter the letter |
|---|---|
| Master Trust Investment Account | M |
| Common/Collective Trust | C |
| Pooled Separate Account | P |
| 103-12 Investment Entity | E |
| Group Insurance Arrangement | G |

**Note.** A separate annual report with "M" entered as the DFE code on Form 5500, line A, must be filed for each MTIA. See instructions on page 9.

**Line B — Box for First Return/Report.** Check this box if an annual return/report has not been previously filed for this plan or DFE. For the purpose of completing this box, the Form 5500-EZ is not considered an annual return/report.

**Line B – Box for Amended Return/Report.** Check this box if you have already filed for the 2010 plan year and are now filing an amended return/report to correct errors and/or omissions on the previously filed return/report. See instructions on page 6.

*Check the line B box for an "amended return/report" if you filed a previous 2010 annual return/report that was given a "Filing_Received," "Filing_Error," or "Filing_Stopped" status by EFAST2. Do not check the line B box for an "amended return/report" if your previous submission attempts were not successfully received by EFAST2 because of problems with the transmission of your return/report. For more information, go to the EFAST2 website at* www.efast.dol.gov *or call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278).*

**Line B – Box for Final Return/Report.** Check this box if this Form 5500 is the last annual return/report required to be submitted for this plan. (See *Final Return/Report.*)

**Note.** Do not check box B (Final Return/Report) if "4R" is entered on line 8b for a welfare plan that is not required to file a Form 5500 for the next plan year because the welfare plan has become eligible for an annual reporting exemption. For example, certain unfunded and insured welfare plans may be required to file the 2010 Form 5500 and be exempt from filing a Form 5500 for the plan year 2011 if the number of participants covered as of the beginning of the 2011 plan year drops below 100. See *Who Must File*. Should the number of participants covered by such a plan increase to 100 or more in a future year, the plan must resume filing Form 5500 and enter "4S" on line 8b on that year's Form 5500. See 29 CFR 2520.104-20.

**Line B – Box for Short Plan Year Return/Report.** Check this box if this Form 5500 is being filed for a plan year period of less than 12 months. Provide the dates in Part I, Plan Year Beginning and Ending.

**Line C – Box for Collectively-Bargained Plan.** Check this

Ex. AA
867

box when the contributions to the plan and/or the benefits paid by the plan are subject to the collective bargaining process (even if the plan is not established and administered by a joint board of trustees and even if only some of the employees covered by the plan are members of a collective bargaining unit that negotiates contributions and/or benefits). The contributions and/or benefits do not have to be identical for all employees under the plan.

**Line D – Box for Extension and DFVC Program.** Check the appropriate box here if:

- You filed for an extension of time to file this form with the IRS using a completed **Form 5558**, Application for Extension of Time To File Certain Employee Plan Returns (maintain a copy of the Form 5558 with the filer's records);
- You are filing using the automatic extension of time to file Form 5500 until the due date of the federal income tax return of the employer (maintain a copy of the employer's extension of time to file the income tax return with the filer's records);
- You are filing using a special extension of time to file the Form 5500 that has been announced by the IRS, DOL, and PBGC. If you checked that you are using a special extension of time, enter a description of the extension of time in the space provided.
- You are filing under DOL's Delinquent Filer Voluntary Compliance (DFVC) Program.

## Part II - Basic Plan Information

**Line 1a.** Enter the formal name of the plan or DFE or enough information to identify the plan or DFE. Abbreviate if necessary. If an annual return/report has previously been filed on behalf of the plan, regardless of the type of form that was filed (Form 5500, Form 5500-EZ, or Form 5500-SF) use the same name or abbreviation as was used on the prior filings. Once you use an abbreviation, continue to use it for that plan on all future annual return/report filings with the IRS, DOL, and PBGC. Do not use the same name or abbreviation for any other plan, even if the first plan is terminated.

**Line 1b.** Enter the three-digit plan or entity number (PN) the employer or plan administrator assigned to the plan or DFE. This three-digit number, in conjunction with the employer identification number (EIN) entered on line 2b, is used by the IRS, DOL, and PBGC as a unique 12-digit number to identify the plan or DFE.

Start at 001 for plans providing pension benefits, plans providing pension and welfare benefits, or DFEs as illustrated in the table below. Start at 501 for plans providing only welfare benefits and GIAs. Do not use 888 or 999.

Once you use a plan or DFE number, continue to use it for that plan or DFE on all future filings with the IRS, DOL, and PBGC. Do not use it for any other plan or DFE, even if the first plan or DFE is terminated.

| **For each Form 5500 with the same EIN (line 2b), when** ▼ | **Assign PN** ▼ |
|---|---|
| Part II, line 8a is completed, or Part I, line A, for a DFE is checked and an M, C, P, or E is entered | 001 to the first plan or DFE. Consecutively number others as 002, 003… |
| Part II, line 8b is completed and 8a is not checked, or Part I, line A, for a DFE is checked and a G is entered | 501 to the first plan or GIA. Consecutively number others as 502, 503… |

**Exception.** If Part II, line 8a is completed and 333 (or a higher number in a sequence beginning with 333) was previously assigned to the plan, that number may be entered on line 1b.

**Line 1c.** Enter the date the plan first became effective.

**Line 2a.** Limit your response to the information required in each row as specified below:

1. Enter the name of the plan sponsor or, in the case of a Form 5500 filed for a DFE, the name of the insurance company, financial institution, or other sponsor of the DFE (e.g., in the case of a GIA, the trust or other entity that holds the insurance contract, or in the case of an MTIA, one of the sponsoring employers). If the plan covers only the employees of one employer, enter the employer's name.

The term "plan sponsor" means:

- The employer, for an employee benefit plan that a single employer established or maintains;
- The employee organization in the case of a plan of an employee organization; or
- The association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan, if the plan is established or maintained jointly by one or more employers and one or more employee organizations, or by two or more employers.

**Note.** In the case of a multiple-employer plan, file only one annual return/report for the plan. If an association or other entity is not the sponsor, enter the name of a participating employer as sponsor. A plan of a controlled group of corporations should enter the name of one of the sponsoring members. In either case, the same name must be used in all subsequent filings of the Form 5500 for the multiple-employer plan or controlled group (see instructions to line 4 concerning change in sponsorship).

2. Enter any "in care of" (C/O) name.
3. Enter the street address. A post office box number may be entered if the Post Office does not deliver mail to the sponsor's street address.
4. Enter the name of the city.
5. Enter the two-character abbreviation of the U.S. state or possession and zip code.
6. Enter the foreign routing code, if applicable. Leave U.S. state and zip code blank if entering a foreign routing code and country name.
7. Enter the foreign country, if applicable.
8. Enter the D/B/A (the doing business as) or trade name of the sponsor if different from the plan sponsor's name.
9. Enter any second address. Use only a street address here, not a P.O. box.

**Line 2b.** Enter the nine-digit employer identification number (EIN) assigned to the plan sponsor/employer, for example, 00-1234567. In the case of a DFE, enter the employer identification number (EIN) assigned to the CCT, PSA, MTIA, 103-12 IE, or GIA.

Do not use a social security number in lieu of an EIN. The Form 5500 is open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this line may result in the rejection of the filing.

Employers without an EIN must apply for one as soon as possible. The EBSA does not issue EINs. To apply for an EIN from the IRS:

Ex. AA
868

- Mail or fax Form SS-4, Application for Employer Identification Number, obtained by calling 1-800-TAX-FORM (1-800-829-3676) or at the IRS website at www.irs.gov.
- Call 1-800-829-4933 to receive your EIN by telephone.
- Select the Online EIN Application link at www.irs.gov. The EIN is issued immediately once the application information is validated. (The online application process is not yet available for corporations with addresses in foreign countries or Puerto Rico.)

A multiple-employer plan or plan of a controlled group of corporations should use the EIN of the sponsor identified in line 2a. The EIN must be used in all subsequent filings of the Form 5500 for these plans (see instructions to line 4 concerning change in EIN).

If the plan sponsor is a group of individuals, get a single EIN for the group. When you apply for the EIN, provide the name of the group, such as "Joint Board of Trustees of the Local 187 Machinists' Retirement Plan." (If filing Form SS-4, enter the group name on line 1.)

**Note.** EINs for funds (trusts or custodial accounts) associated with plans (other than DFEs) are generally not required to be furnished on the Form 5500; the IRS will issue EINs for such funds for other reporting purposes. EINs may be obtained as explained above. Plan sponsors should use the trust EIN described above when opening a bank account or conducting other transactions for a trust that require an EIN.

**Line 2d.** Enter the six-digit business code that best describes the nature of the plan sponsor's business from the list of business codes on pages 59, 60, and 61. If more than one employer or employee organization is involved, enter the business code for the main business activity of the employers and/or employee organizations.

**Line 3a.** Please limit your response to the information required:

1. Enter the name of the plan administrator unless the administrator is the sponsor identified in line 2 or the Form 5500 is submitted for a DFE (Part I, line A, for a DFE should be checked and the appropriate DFE code entered). If this is the case, enter the word "same" on line 3a and leave the remainder of line 3a, and all of lines 3b and 3c blank.

The term "plan administrator" means:

- The person or group of persons specified as the administrator by the instrument under which the plan is operated;
- The plan sponsor/employer if an administrator is not so designated; or
- Any other person prescribed by regulations if an administrator is not designated and a plan sponsor cannot be identified.

2. Enter any "in care of" (C/O) name.
3. Enter the street address. A post office box number may be entered if the Post Office does not deliver mail to the administrator's street address.
4. Enter the name of the city.
5. Enter the two-character abbreviation of the U.S. state or possession and zip code.
6. Enter the foreign routing code and foreign country, if applicable. Leave U.S. state and zip code blank if entering foreign routing code and country information.

**Line 3b.** Enter the plan administrator's nine-digit EIN. A plan administrator must have an EIN for Form 5500 reporting purposes. If the plan administrator does not have an EIN, apply for one as explained in the instructions for line 2b. One EIN should be entered for a group of individuals who are, collectively, the plan administrator.

**Note.** Employees of the plan sponsor who perform administrative functions for the plan are generally not the plan administrator unless specifically designated in the plan document. If an employee of the plan sponsor is designated as the plan administrator, that employee must get an EIN.

**Line 4.** If the plan sponsor's or DFE's name and/or EIN have changed since the last return/report was filed for this plan or DFE, enter the plan sponsor's or DFE's name, EIN, and the plan number as it appeared on the last return/report filed.

*The failure to indicate on line 4 that a plan sponsor was previously identified by a different name or a different employer identification number (EIN) could result in correspondence from the DOL and the IRS.*

**Lines 5 and 6.** All filers **must** complete both lines 5 and 6 unless the Form 5500 is filed for an IRA Plan described in *Limited Pension Plan Reporting* or for a DFE.

The description of "participant" in the instructions below is only for purposes of these lines.

An individual becomes a participant covered under an employee welfare benefit plan on the earliest of:

- the date designated by the plan as the date on which the individual begins participation in the plan;
- the date on which the individual becomes eligible under the plan for a benefit subject only to occurrence of the contingency for which the benefit is provided; or
- the date on which the individual makes a contribution to the plan, whether voluntary or mandatory.

See 29 CFR 2510.3-3(d)(1). This includes former employees who are receiving group health continuation coverage benefits pursuant to Part 6 of ERISA and who are covered by the employee welfare benefit plan. Covered dependents are not counted as participants. A child who is an "alternate recipient" entitled to health benefits under a qualified medical child support order (QMCSO) should not be counted as a participant for lines 5 and 6. An individual is not a participant covered under an employee welfare plan on the earliest date on which the individual (a) is ineligible to receive any benefit under the plan even if the contingency for which such benefit is provided should occur, and (b) is not designated by the plan as a participant. See 29 CFR 2510.3-3(d)(2).

*Before counting the number of participants, especially in a welfare benefit plan, it is important to determine whether the plan sponsor has established one or more plans for Form 5500/Form 5500-SF reporting purposes. As a matter of plan design, plan sponsors can offer benefits through various structures and combinations. For example, a plan sponsor could create (i) one plan providing major medical benefits, dental benefits, and vision benefits, (ii) two plans with one providing major medical benefits and the other providing self-insured dental and vision benefits; or (iii) three separate plans. You must review the governing documents and actual operations to determine whether welfare benefits are being provided under a single plan or separate plans.*

*The fact that you have separate insurance policies for each different welfare benefit does not necessarily mean that you have separate plans. Some plan sponsors use a "wrap" document to incorporate various benefits and insurance policies into one comprehensive plan. In addition, whether a benefit* arrangement *is deemed to be a single plan may be*

*different for purposes other than Form 5500/Form 5500-SF reporting. For example, special rules may apply for purposes of HIPAA, COBRA, and Internal Revenue Code compliance. If you need help determining whether you have a single welfare benefit plan for Form 5500/Form 5500-SF reporting purposes, you should consult a qualified benefits consultant or legal counsel.*

For pension benefit plans, "alternate payees" entitled to benefits under a qualified domestic relations order are not to be counted as participants for this line.

For pension benefit plans, "participant" for this line means any individual who is included in one of the categories below:

1. Active participants (i.e., any individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan). This includes any individuals who are eligible to elect to have the employer make payments under a Code section 401(k) qualified cash or deferred arrangement. Active participants also include any nonvested individuals who are earning or retaining credited service under the plan. This does not include (a) nonvested former employees who have incurred the break in service period specified in the plan or (b) former employees who have received a "cash-out" distribution or deemed distribution of their entire nonforfeitable accrued benefit.

2. Retired or separated participants receiving benefits (i.e., individuals who are retired or separated from employment covered by the plan and who are receiving benefits under the plan). This does not include any individual to whom an insurance company has made an irrevocable commitment to pay all the benefits to which the individual is entitled under the plan.

3. Other retired or separated participants entitled to future benefits (i.e., any individuals who are retired or separated from employment covered by the plan and who are entitled to begin receiving benefits under the plan in the future). This does not include any individual to whom an insurance company has made an irrevocable commitment to pay all the benefits to which the individual is entitled under the plan.

4. Deceased individuals who had one or more beneficiaries who are receiving or are entitled to receive benefits under the plan. This does not include any individual to whom an insurance company has made an irrevocable commitment to pay all the benefits to which the beneficiaries of that individual are entitled under the plan.

**Line 6g.** Enter the number of participants included on line 6f (total participants at the end of the plan year) who have account balances. For example, for a Code section 401(k) plan the number entered on line 6g should be the number of participants counted on line 6f who have made a contribution, or for whom a contribution has been made, to the plan for this plan year or any prior plan year. Defined benefit plans should leave line 6g blank.

**Line 6h.** Include any individual who terminated employment during this plan year, whether or not he or she (a) incurred a break in service, (b) received an irrevocable commitment from an insurance company to pay all the benefits to which he or she is entitled under the plan, and/or (c) received a cash distribution or deemed cash distribution of his or her nonforfeitable accrued benefit. Multiemployer plans and multiple-employer plans that are collectively bargained do not have to complete line 6h.

**Line 7.** Only multiemployer plans should complete line 7. Multiemployer plans must enter the total number of employers obligated to contribute to the plan. For purposes of line 7 of the Form 5500, an employer obligated to contribute is defined as an employer who, during the 2010 plan year, is a party to the collective bargaining agreement(s) pursuant to which the plan is maintained or who may otherwise be subject to withdrawal liability pursuant to ERISA section 4203. Any two or more contributing entities (e.g., places of business with separate collective bargaining agreements) that have the same nine-digit employer identification number (EIN) must be aggregated and counted as one employer for this purpose.

**Line 8 - Benefits Provided Under the Plan.** In line(s) 8a and/or 8b, as appropriate, enter all applicable plan characteristic codes from the List of Plan Characteristics Codes in these instructions that describe the characteristics of the plan being reported.

**Note.** In the case of an eligible combined plan, the codes entered in line 8a must include any codes applicable for either the defined benefit pension features or the defined contribution pension features of the plan.

*For plan sponsors of Puerto Rico plans, enter characteristic code 3C only in instances where there was no election made under section 1022(i)(2) of ERISA and, therefore, the plan does not intend to qualify under section 401(a) of the Code. If an election was made under section 1022(i)(2) of ERISA, do not enter characteristic code 3C.*

**Line 9 - Funding and Benefit Arrangements.** Check all boxes that apply to indicate the funding and benefit arrangements used during the plan year. The "funding arrangement" is the method for the receipt, holding, investment, and transmittal of plan assets prior to the time the plan actually provides benefits. The "benefit arrangement" is the method by which the plan provides benefits to participants. For purposes of line 9:

**"Insurance"** means the plan has an account, contract, or policy with an insurance company, insurance service, or other similar organization (such as Blue Cross, Blue Shield, or a health maintenance organization) during the plan or DFE year. (This includes investments with insurance companies such as guaranteed investment contracts (GICs).) An annuity account arrangement under Code section 403(b)(1) that is required to complete the Form 5500 should mark "insurance" for both the plan funding arrangement and plan benefit arrangement. Do not check "insurance" if the sole function of the insurance company was to provide administrative services.

**"Code section 412(e)(3) insurance contracts"** are contracts that provide retirement benefits under a plan that are guaranteed by an insurance carrier. In general, such contracts must provide for level premium payments over the individual's period of participation in the plan (to retirement age), premiums must be timely paid as currently required under the contract, no rights under the contract may be subject to a security interest, and no policy loans may be outstanding. If a plan is funded exclusively by the purchase of such contracts, the otherwise applicable minimum funding requirements of section 412 of the Code and section 302 of ERISA do not apply for the year and neither the Schedule MB nor the Schedule SB is required to be filed.

**"Trust"** includes any fund or account that receives, holds, transmits, or invests plan assets other than an account or policy of an insurance company. A custodial account arrangement under Code section 403(b)(7) that is required to complete the Form 5500 should mark "trust" for both the plan funding arrangement and the plan benefit arrangement.

**"General assets of the sponsor"** means either the plan had no assets or some assets were commingled with the general assets of the plan sponsor prior to the time the plan

actually provided the benefits promised.

***Example.*** If the plan holds all its assets invested in registered investment companies and other non-insurance company investments until it purchases annuities to pay out the benefits promised under the plan, box 9a(3) should be checked as the funding arrangement and box 9b(1) should be checked as the benefit arrangement.

**Note.** An employee benefit plan that checks boxes 9a(1), 9a(2), 9b(1), and/or 9b(2) must attach ***Schedule A (Form 5500)***, Insurance Information, to provide information concerning each contract year ending with or within the plan year. See the instructions to the Schedule A and enter the number of Schedules A on line 10b(3), if applicable.

**Line 10.** Check the boxes on line 10 to indicate the schedules being filed and, where applicable, count the schedules and enter the number of attached schedules in the space provided.

## LIST OF PLAN CHARACTERISTICS CODES FOR LINES 8a AND 8b

| CODE | Defined Benefit Pension Features |
|---|---|
| 1A | Benefits are primarily pay related. |
| 1B | Benefits are primarily flat dollar (includes dollars per year of service). |
| 1C | Cash balance or similar plan – Plan has a "cash balance" formula. For this purpose, a "cash balance" formula is a benefit formula in a defined benefit plan by whatever name (for example, personal account plan, pension equity plan, life cycle plan, cash account plan, etc.) that rather than, or in addition to, expressing the accrued benefit as a life annuity commencing at normal retirement age, defines benefits for each employee in terms more common to a defined contribution plan such as a single sum distribution amount (for example, 10 percent of final average pay times years of service, or the amount of the employee's hypothetical account balance). |
| 1D | Floor-offset plan – to offset for retirement benefits provided by an employer-sponsored defined contribution plan. |
| 1E | Code section 401(h) arrangement – Plan contains separate accounts under Code section 401(h) to provide employee health benefits. |
| 1F | Code section 414(k) arrangement – Benefits are based partly on the balance of the separate account of the participant (also include appropriate defined contribution pension feature codes). |
| 1G | Covered by PBGC – Plan is covered under the PBGC insurance program (see ERISA section 4021). |
| 1H | Plan covered by PBGC that was terminated and closed out for PBGC purposes – Before the end of the plan year (or a prior plan year), (1) the plan terminated in a standard (or distress) termination and completed the distribution of plan assets in satisfaction of all benefit liabilities (or all ERISA Title IV benefits for distress termination); or (2) a trustee was appointed for a terminated plan pursuant to ERISA section 4042. |
| 1I | Frozen plan – As of the last day of the plan year, the plan provides that no participant will get any new benefit accrual (whether because of service or compensation). |

| CODE | Defined Contribution Pension Features |
|---|---|
| 2A | Age/service weighted or new comparability or similar plan – Age/service weighted plan: Allocations are based on age, service, or age and service. New comparability or similar plan: Allocations are based on participant classifications and a classification(s) consists entirely or predominantly of highly compensated employees; or the plan provides an additional allocation rate on compensation above a specified threshold, and the threshold or additional rate exceeds the maximum threshold or rate allowed under the permitted disparity rules of Code section 401(l). |
| 2B | Target benefit plan. |
| 2C | Money purchase (other than target benefit). |
| 2D | Offset plan – Plan benefits are subject to offset for retirement benefits provided in another plan or arrangement of the employer. |
| 2E | Profit-sharing. |
| 2F | ERISA section 404(c) plan – This plan, or any part of it, is intended to meet the conditions of 29 CFR 2550.404c-1. |
| 2G | Total participant-directed account plan – Participants have the opportunity to direct the investment of all the assets allocated to their individual accounts, regardless of whether 29 CFR 2550.404c-1 is intended to be met. |
| 2H | Partial participant-directed account plan – Participants have the opportunity to direct the investment of a portion of the assets allocated to their individual accounts, regardless of whether 29 CFR 2550.404c-1 is intended to be met. |
| 2I | Stock bonus. |
| 2J | Code section 401(k) feature – A cash or deferred arrangement described in Code section 401(k) that is part of a qualified defined contribution plan that provides for an election by employees to defer part of their compensation or receive these amounts in cash. |
| 2K | Code section 401(m) arrangement – Employee contributions are allocated to separate accounts under the plan or employer contributions are based, in whole or in part, on employee deferrals or contributions to the plan. Not applicable if plan is 401(k) with only QNECs and/or QMACs. Also not applicable if Code sections 403(b)(1), 403(b)(7), or 408 arrangement/accounts annuities. |
| 2L | Code section 403(b)(1) arrangement. |
| 2M | Code section 403(b)(7) accounts. |
| 2N | Code section 408 accounts and annuities – See Limited Pension Plan Reporting instructions for pension plan utilizing Code section 408 individual retirement accounts or annuities as the funding vehicle for providing benefits. |
| 2O | ESOP other than a leveraged ESOP. |
| 2P | Leveraged ESOP – An ESOP that acquires employer securities with borrowed money or other debt-financing techniques. |
| 2Q | The employer maintaining this ESOP is an S corporation. |
| 2R | Participant-directed brokerage accounts provided as an investment option under the plan. |
| 2S | Plan provides for automatic enrollment in plan that has employee contributions deducted from payroll. |
| 2T | Total or partial participant-directed account plan – plan uses default investment account for participants who fail to direct assets in their account. |

| CODE | Other Pension Benefit Features |
|---|---|
| 3B | Plan covering self-employed individuals. |
| 3C | Plan not intended to be qualified – A plan not intended to be qualified under Code sections 401, 403, or 408. |
| 3D | Pre-approved pension plan – A master, prototype, or volume submitter plan that is the subject of a favorable opinion or advisory letter from the IRS. |
| 3F | Plan sponsor(s) received services of leased employees, as defined in Code section 414(n), during the plan year. |

Ex. AA
872

## LIST OF PLAN CHARACTERISTICS CODES FOR LINES 8a AND 8b (Continued)

| | |
|---|---|
| 3H | Plan sponsor(s) is (are) a member(s) of a controlled group (Code sections 414(b), (c), or (m)). |
| 3I | Plan requiring that all or part of employer contributions be invested and held, at least for a limited period, in employer securities. |
| 3J | U.S.-based plan that covers residents of Puerto Rico and is qualified under both Code section 401 and section 1165 of Puerto Rico Code. |
| **CODE** | **Welfare Benefit Features** |
| 4A | Health (other than vision or dental). |
| 4B | Life insurance. |
| 4C | Supplemental unemployment. |
| 4D | Dental. |
| 4E | Vision. |
| 4F | Temporary disability (accident and sickness). |
| 4G | Prepaid legal. |
| 4H | Long-term disability. |
| 4I | Severance pay. |
| 4J | Apprenticeship and training. |
| 4K | Scholarship (funded). |
| 4L | Death benefits (include travel accident but not life insurance). |
| 4P | Taft-Hartley Financial Assistance for Employee Housing Expenses. |
| 4Q | Other. |
| 4R | Unfunded, fully insured, or combination unfunded/fully insured welfare plan that will not file an annual report for next plan year pursuant to 29 CFR 2520.104-20. |
| 4S | Unfunded, fully insured, or combination unfunded/fully insured welfare plan that stopped filing annual reports in an earlier plan year pursuant to 29 CFR 2520.104-20. |
| 4T | 10 or more employer plan under Code section 419A(f)(6). |
| 4U | Collectively-bargained welfare benefit arrangement under Code section 419A(f)(5). |

Ex. AA
873

# 2010 Instructions for Schedule A (Form 5500) *Insurance Information*

## General Instructions

### Who Must File

Schedule A (Form 5500) must be attached to the Form 5500 filed for every defined benefit pension plan, defined contribution pension plan, and welfare benefit plan required to file a Form 5500 if any benefits under the plan are provided by an insurance company, insurance service, or other similar organization (such as Blue Cross, Blue Shield, or a health maintenance organization). This includes investment contracts with insurance companies such as guaranteed investment (GICs). In addition, Schedules A must be attached to a Form 5500 filed for GIAs, MTIAs, and 103-12 IEs for each insurance or annuity contract held in the MTIA, or 103-12 IE or by the GIA.

*If Form 5500 line 9a(1), 9a(2), 9b(1), or 9b(2) is checked, indicating that either the plan funding arrangement or plan benefit arrangement includes an account, policy, or contract with an insurance company (or similar organization), at least one Schedule A would be required to be attached to the Form 5500 filed for a pension or welfare plan to provide information concerning the contract year ending with or within the plan year.*

Do not file Schedule A for a contract that is an Administrative Services Only (ASO) contract, a fidelity bond or policy, or a fiduciary liability insurance policy. Also, if a Schedule A for a contract or policy is filed as part of a Form 5500 for an MTIA or 103-12 IE that holds the contract, do not include a Schedule A for the contract or policy on the Form 5500s filed for the plans participating in the TIA or 103-12 IE.

Check the Schedule A box on the Form 5500 (Part II, line 10b(3)), and enter the number attached in the space provided if one or more Schedules A are attached to the Form 5500.

## Specific Instructions

Information entered on Schedule A should pertain to the insurance contract or policy year ending with or within the plan year (for reporting purposes, a year cannot exceed 12 months).

***Example.*** If an insurance contract year begins on July 1 and ends on June 30, and the plan year begins on January 1 and ends on December 31, the information on the Schedule A attached to the 2010 Form 5500 should be for the insurance contract year ending on June 30, 2010.

**Exception.** If the insurance company maintains records on the basis of a plan year rather than a policy or contract year, the information entered on Schedule A may pertain to the plan year instead of the policy or contract year.

Include only the contracts issued to or held by the plan, GIA, MTIA, or 103-12 IE for which the Form 5500 is being filed.

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule A is attached.

Do not use a social security number in lieu of an EIN. The Schedule A and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule A or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500*. The EBSA does not issue EINs.

### Part I - Information Concerning Insurance Contract Coverage, Fees, and Commissions

**Line 1(c).** Enter the code number assigned by the National Association of Insurance Commissioners (NAIC) to the insurance company. If none has been assigned, enter zeros (-0-) in the spaces provided.

**Line 1(d).** If individual policies with the same carrier are grouped as a unit for purposes of this report, and the group does not have one identification number, you may use the contract or identification number of one of the individual contracts, provided this number is used consistently to report these contracts as a group and the plan administrator maintains the records necessary to disclose all the individual contract numbers in the group upon request. Use separate Schedules A to report individual contracts that cannot be grouped as a unit.

**Line 1(e).** Since plan coverage may fluctuate during the year, the administrator should estimate the number of persons that were covered by the contract at the end of the policy or contract year. Where contracts covering individual employees are grouped, compute entries as of the end of the plan year.

**Line 1(f) and (g).** Enter the beginning and ending dates of the policy year for the contract identified in 1(d). Leave 1(f) blank if separate contracts covering individual employees are grouped.

**Line 2.** Report on line 2 the total of all insurance fees and commissions directly or indirectly attributable to the contract or policy placed with or retained by the plan.

**Totals.** Enter on line 2 the total of all such commissions and fees paid to agents, brokers, and other persons listed on line 3. Complete a separate line 3 item (elements **(a)** through **(e)**) for each person listed.

For purposes of lines 2 and 3, commissions and fees include sales and base commissions and all other monetary and non-monetary forms of compensation where the broker's agent's, or other person's eligibility for the payment or the amount of the payment is based, in whole or in part, on the value (e.g., policy amounts, premiums) of contracts or policies (or classes thereof) placed with or retained by an ERISA plan, including, for example, persistency and profitability bonuses. The amount (or pro rata share of the total) of such commissions or fees attributable to the contract or policy placed with or retained by the plan must be reported in line 2 and in line 3, element (b) and/or (c), as appropriate.

Insurers must provide plan administrators with a proportionate allocation of commissions and fees attributable to each contract. Any reasonable method of allocating commissions and fees to policies or contracts is acceptable, provided the method is disclosed to the plan administrator. A reasonable allocation method could, in the Department of Labor's view, allocate fees and commissions to a Schedule A based on a calendar year calculation even if the plan year or policy year was not a calendar year. For additional information on these Schedule A reporting requirements, see ERISA Advisory Opinion 2005-02A, available on the Internet at *www.dol.gov/ebsa*.

Where benefits under a plan are purchased from and guaranteed by an insurance company, insurance service, or other similar organization, and the contract or policy is reported on a Schedule A, payments of reasonable monetary compensation by the insurer out of its general assets to affiliates or third parties for performing administrative activities necessary for the insurer to fulfill its contractual obligation to provide benefits, where there is no direct or indirect charge to the plan for the administrative services other than the insurance premium, then the payments for administrative services by the insurer to the affiliates or third parties do not need to be reported on lines 2 and 3 of Schedule A. This would include compensation for services such as recordkeeping and claims processing services provided by a third party pursuant to a contract with the insurer to provide those services but would not include compensation provided by the insurer incidental to the sale or renewal of a policy, such as finder's fees, insurance brokerage commissions and fees, or similar fees.

Schedule A reporting also is not required for compensation paid by the insurer to a "general agent" or "manager" for that general agent's or manager's management of an agency or performance of administrative functions for the insurer. For this purpose, (1) a "general agent" or "manager" does not include brokers representing insureds, and (2) payments would not be treated as paid for managing an agency or performance of administrative functions where the recipient's eligibility for the payment or the amount of the payment is dependent or based on the value (e.g., policy amounts, premiums) of contracts or policies (or classes thereof) placed with or retained by ERISA plan(s).

Schedule A reporting is not required for occasional non-monetary gifts or meals of insubstantial value that are tax deductible for federal income tax purposes by the person providing the gift or meal and would not be taxable income to the recipient. For this exemption to be available, the gift or gratuity must be both occasional and insubstantial. For this exemption to apply, the gift must be valued at less than $50, the aggregate value of gifts from one source in a calendar year must be less than $100, but gifts with a value of less than $10 do not need to be counted toward the $100 annual limit. If the $100 aggregate value limit is exceeded, then the aggregate value of all the gifts will be reportable. For this purpose, non-monetary gifts of less than $10 also do not need to be included in calculating the aggregate value of all gifts required to be reported if the $100 limit is exceeded.

Gifts from multiple employees of one service provider should be treated as originating from a single source when calculating whether the $100 threshold applies. On the other hand, in applying the threshold to an occasional gift received from one source by multiple employees of a single service provider, the amount received by each employee should be separately determined in applying the $50 and $100 thresholds. For example, if six employees of a broker attend a business conference put on by an insurer designed to educate and explain the insurer's products for employee benefit plans, and the insurer provides, at no cost to the attendees, refreshments valued at $20 per individual, the gratuities would not be reportable on lines 2 and 3 of the Schedule A even though the total cost of the refreshments for all the employees would be $120.

These thresholds are for purposes of Schedule A reporting. Filers are cautioned that the payment or receipt of gifts and gratuities of any amount by plan fiduciaries may violate ERISA and give rise to civil liabilities and criminal penalties.

**Line 3.** Identify agents, brokers, and other persons individually in descending order of the amount paid. Complete as many entries as necessary to report all required information. Complete elements **(a)** through **(e)** for each person as specified below.

**Element (a).** Enter the name and address of the agents, brokers, or other persons to whom commissions or fees were paid.

**Element (b).** Report all sales and base commissions here. For purposes of this element, sales and/or base commissions are monetary amounts paid by an insurer that are charged directly to the contract or policy and that are paid to a licensed agent or broker for the sale or placement of the contract or policy. All other payments should be reported in element **(c)** as fees.

**Element (c).** Fees to be reported here represent payments by an insurer attributable directly or indirectly to a contract or policy to agents, brokers, and other persons for items other than sales and/or base commissions (e.g., service fees, consulting fees, finders fees, profitability and persistency bonuses, awards, prizes, and non-monetary forms of compensation). Fees paid to persons other than agents and brokers should be reported here, **not** in Parts II and III on Schedule A as acquisition costs, administrative charges, etc.

**Element (d).** Enter the purpose(s) for which fees were paid.

**Element (e).** Enter the most appropriate organization code for the broker, agent, or other person entered in element **(a)**.

| Code | Type of Organization |
|---|---|
| 1 | Banking, Savings & Loan Association, Credit Union, or other similar financial institution |
| 2 | Trust Company |
| 3 | Insurance Agent or Broker |
| 4 | Agent or Broker other than insurance |
| 5 | Third party administrator |
| 6 | Investment Company/Mutual Fund |
| 7 | Investment Manager/Adviser |
| 8 | Labor Union |
| 9 | Foreign entity (e.g., an agent or broker, bank, insurance company, etc., not operating within the jurisdictional boundaries of the United States) |
| 0 | Other |

For plans, GIAs, MTIAs, and 103-12 IEs required to file Part I of Schedule C, commissions and fees listed on the Schedule A are not required to be reported again on Schedule C. The amount of the compensation that must be reported on Schedule A must, however, be taken into account in determining whether the agent's, broker's, or other person's direct or indirect compensation in relation to the plan or DFE is $5,000 or more and, thus, requiring the compensation not listed on the Schedule A to be reported on the Schedule C. See FAQs about the Schedule C available on the EBSA website at *www.dol.gov/ebsa/faqs*.

## Part II - Investment and Annuity Contract Information

**Line 4.** Enter the current value of the plan's interest at year end in the contract reported on line 7, e.g., deposit administration (DA), immediate participation guarantee (IPG), or guaranteed investment contracts (GIC).

**Exception.** Contracts reported on line 7 need not be included on line 4 if ***(1)*** the Schedule A is filed for a defined benefit pension plan and the contract was entered into before March 20, 1992, or ***(2)*** the Schedule A is filed for a defined contribution pension plan and the contract is a fully benefit-responsive contract, i.e., it provides a liquidity guarantee by a

Ex. AA
875

financially responsible third party of principal and previously accrued interest for liquidations, transfers, loans, or hardship withdrawals initiated by plan participants exercising their rights to withdraw, borrow, or transfer funds under the terms of a defined contribution plan that does not include substantial restrictions to participants' access to plan funds.

**Important Reminder.** Plans may treat multiple individual annuity contracts, including Code section 403(b)(1) annuity contracts, issued by the same insurance company as a single group contract for reporting purposes on Schedule A.

**Line 6a.** The rate information called for here may be furnished by attaching the appropriate schedules of current rates filed with the appropriate state insurance department or by providing a statement regarding the basis of the rates. Enter "see attached" if appropriate.

**Lines 7a through 7f.** Report contracts with unallocated funds. Do not include portions of these contracts maintained in separate accounts. Show deposit fund amounts rather than experience credit records when both are maintained.

## Part III - Welfare Benefit Contract Information

**Line 8i.** Report a stop-loss insurance policy that is an asset of the plan.

**Note.** Employers sponsoring welfare plans may purchase a stop-loss insurance policy with the employer as the insured to help the employer manage its risk associated with its liabilities under the plan. These employer contracts with premiums paid exclusively out of the employer's general assets without any employee contributions generally are not plan assets and are not reportable on Schedule A.

## Part IV - Provision of Information

The insurance company, insurance service, or other similar organization is required under ERISA section 103(a)(2) to provide the plan administrator with the information needed to complete this return/report. If you do not receive this information in a timely manner, contact the insurance company, insurance service, or other similar organization.

**Lines 11 and 12.** If information is missing on Schedule A due to a refusal by the insurance company, insurance service, or other similar organization to provide information, check "Yes" on line 11 and enter a description of the information not provided on line 12. If you received all the information necessary to receive the Schedule A, check "No" and leave line 12 blank.

*As noted above, the insurance company, insurance service, or other similar organization is statutorily required to provide you with all of the information necessary to complete the Schedule A, but need not provide the information on a Schedule A itself.*

# 2010 Instructions for Schedule C (Form 5500) *Service Provider Information*

## General Instructions

### Who Must File

Schedule C (Form 5500) must be attached to a Form 5500 filed for a large pension or welfare benefit plan, an MTIA, a 103-12 IE, or a GIA to report certain information concerning service providers. Remember to check the Schedule C box on the Form 5500 (Part II, line 10b(4)) if a Schedule C is attached to the Form 5500.

Part I of the Schedule C must be completed to report persons who rendered services to or who had transactions with the plan (or with the DFE in the case of a Schedule C filed by a DFE) during the reporting year if the person received, directly or indirectly, $5,000 or more in reportable compensation in connection with services rendered or their position with the plan or DFE, except:

1. Employees of the plan whose only compensation in relation to the plan was less than $25,000 for the plan year;
2. Employees of the plan sponsor or other business entity where the plan sponsor or business entity is reported on the Schedule C as a service provider, provided the employee did not separately receive reportable direct or indirect compensation in relation to the plan;
3. Persons who only compensation in relation to the plan consists of insurance fees and commissions listed in a Schedule A filed for the plan; and
4. Payments made directly by the plan sponsor that are not reimbursed by the plan.

Only line 1 of Part I of the Schedule C must be completed for persons who received only "eligible indirect compensation" as defined below.

Part II of the Schedule C must be completed to report service providers who fail or refuse to provide information necessary to complete Part I of this Schedule.

Part III of the Schedule C must be completed to report a termination in the appointment of an accountant or enrolled actuary during the 2010 plan year.

For plans, GIAs, MTIAs, and 103-12 IEs required to file Part I of Schedule C, commissions and fees listed on the Schedule A are not required to be reported again on Schedule C. The amount of the compensation that must be reported on Schedule A must, however, be taken into account in determining whether the service provider's direct or indirect compensation in relation to the plan or DFE is $5,000 or more and, thus, requiring the compensation not listed on the Schedule A to be reported on the Schedule C. See FAQs about the Schedule C available on the EBSA website at *www.dol.gov/ebsa/faqs*.

*Health and welfare plans that meet the conditions of the limited exemption at 29 CFR 2520.104-44 or Technical Release 92-01 are not required to complete and file a Schedule C.*

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule C is attached.

Do not use a social security number in line D in lieu of an EIN. The Schedule C and its attachments are open to public inspection, and the contents are public information subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule C or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500*. The EBSA does not issue EINs.

Do not list the PBGC or the IRS on Schedule C as service providers.

Either the cash or accrual basis may be used for the recognition of transactions reported on the Schedule C as long as you use one method consistently.

If service provider compensation is reported on a Schedule C filed as a part of a Form 5500 filed for a MTIA or a 103-12 IE, do not report the same compensation again on the Schedule C filed for the plans that participate in the MTIA or 103-12 IE.

## Specific Instructions

### Part I - Service Provider Information

You must enter the information required for each person who rendered services to or had transactions with the plan and who received $5,000 or more in total direct or indirect compensation in connection with services rendered to the plan or the person's position with the plan during the plan year.

***Example.*** A plan had service providers, A, B, C, and D, who received $12,000, $6,000, $4,500, and $430, respectively, in direct and indirect compensation from the plan. Service providers A and B must be identified separately by name, EIN, etc. As service providers C and D each received less than $5,000, they do not need to be reported on the Schedule C.

For Schedule C purposes, reportable compensation includes money and any other thing of value (for example, gifts, awards, trips) received by a person, directly or indirectly, from the plan (including fees charged as a percentage of assets and deducted from investment returns) in connection with services rendered to the plan, or the person's position with the plan. The term "person" for this purpose includes individuals, trades and businesses (whether incorporated or unincorporated). See ERISA section 3(9).

***Direct Compensation:*** Payments made directly by the plan for services rendered to the plan or because of a person's position with the plan are reportable as direct compensation. Direct payments by the plan would include, for example, direct payments by the plan out of a plan account, charges to plan forfeiture accounts and fee recapture accounts, charges to a plan's trust account before allocations are made to individual participant accounts, and direct charges to plan participant individual accounts. Payments made by the plan sponsor, which are not reimbursed by the plan, are not subject to Schedule C reporting requirements even if the sponsor is paying for services rendered to the plan.

***Indirect Compensation:*** Compensation received from sources other than directly from the plan or plan sponsor is reportable on Schedule C as indirect compensation from the plan if the compensation was received in connection with services rendered to the plan during the plan year or the person's position with the plan. For this purpose, compensation is considered to have been received in connection with

Ex. AA
877

services rendered to the plan or the person's position with the plan if the person's eligibility for a payment is based, in whole or in part, on services that were rendered to the plan or on a transaction or series of transactions with the plan. Indirect compensation would not include compensation that would have been received had the service not been rendered or the transaction had not taken place and that cannot be reasonably allocated to the services performed or transaction(s) with the plan.

Persons that provide investment management, recordkeeping, claims processing, participant communication, brokerage, and other services to the plan as part of an investment contract or transaction are considered to be providing services to the plan for purposes of Schedule C reporting and would be required to be identified in Part I if they received $5,000 or more in reportable compensation for providing those services.

Examples of reportable indirect compensation include fees and expense reimbursement payments received by a person from mutual funds, bank commingled trusts, insurance company pooled separate accounts, and other separately managed accounts and pooled investment funds in which the plan invests that are charged against the fund or account and reflected in the value of the plan's investment (such as management fees paid by a mutual fund to its investment adviser, sub-transfer agency fees, shareholder servicing fees, account maintenance fees, and 12b-1 distribution fees). The investment of plan assets and payment of premiums for insurance contracts, however, are not in and of themselves payments for services rendered to the plan for purposes of Schedule C reporting and the investment and payment of premiums themselves are not reportable compensation for purposes of Part I of the Schedule C.

In the case of charges against an investment fund, reportable "indirect compensation" includes, for example, the fund's investment adviser asset-based investment management fee from the fund, brokerage commissions and fees charged in connection with purchases and sales of interests in the fund, fees related to purchases and sales of interests in the fund (including 12b-1 fees), fees for providing services to plan investors or plan participants such as communication and other shareholder services, and fees relating to the administration of the employee benefit plan such as recordkeeping services, Form 5500 return/report filing and other compliance services. Amounts charged against the fund for other ordinary operating expenses, such as attorneys' fees, accountants' fees, printers fees, are not reportable indirect compensation for Schedule C purposes. Also, brokerage costs associated with a broker-dealer effecting securities transactions within the portfolio of a mutual fund or for the portfolio of an investment fund that holds "plan assets" for ERISA purposes should be treated for Schedule C purposes as an operating expense of the investment fund, not reportable indirect compensation paid to a plan service provider or in connection with a transaction with the plan.

Other examples of reportable indirect compensation are finder's fees, float revenue, brokerage commissions (regardless of whether the broker is granted discretion), research or other products or services, other than execution, received from a broker-dealer or other third party in connection with securities transactions (soft dollars), and other transaction based fees received in connection with transactions or services involving the plan whether or not they are capitalized as investment costs.

For more information, see FAQs about the Schedule C, available on the EBSA website at *www.dol.gov/ebsa/faqs*.

**Special rules for non-monetary compensation of insubstantial value, guaranteed benefit insurance policies, bundled service arrangements, and allocating compensation among multiple plans:**

***Excludable Non-Monetary Compensation:*** You may exclude non-monetary compensation of insubstantial value (such as gifts or meals of insubstantial value) that is tax deductible for federal income tax purposes by the person providing the gift or meal and would not be taxable income to the recipient. The gift or gratuity must be valued at less than $50, and the aggregate value of gifts from one source in a calendar year must be less than $100, but gifts with a value of less than $10 do not need to be counted toward the $100 limit. If the $100 aggregate value limit is exceeded, then the value of all the gifts over $10 will be reportable. Gifts received by one person from multiple employees of one entity must be treated as originating from a single source when calculating whether the $100 threshold applies. On the other hand, gifts received from one person by multiple employees of one entity can be treated as separate compensation when calculating the $50 and $100 thresholds. For more information, see FAQs about the Schedule C, available on the EBSA website at *www.dol.gov/ebsa/faqs*.

*These thresholds are for purposes of Schedule C reporting only. Filers are strongly cautioned that gifts and gratuities of any amount paid to or received by plan fiduciaries may violate ERISA and give rise to civil liabilities and criminal penalties.*

***Fully Insured Group Health and Similarly Fully Insured Benefits:*** Where benefits under a plan are purchased from and guaranteed by an insurance company, insurance service, or other similar organization, and the contract or policy is reported on a Schedule A, payments of reasonable monetary compensation by the insurer out of its general assets to persons for performing administrative activities necessary for the insurer to fulfill its contractual obligation to provide benefits, where there is no direct or indirect charge to the plan for the administrative services other than the insurance premium, would not be treated as indirect compensation for services provided to the plan for Schedule C reporting purposes. This would include compensation for services such as recordkeeping and claims processing services provided by a third party pursuant to a contract with the insurer to provide those services, but would not include compensation provided by the insurer incidental to the sale or renewal of a policy, such as finder's fees, insurance brokerage commissions and fees, or similar fees. Insurance investment contracts are not eligible for this exception.

***Bundled Service Arrangements:*** For Schedule C reporting purposes, a bundled service arrangement includes any service arrangements where the plan hires one company to provide a range of services either directly from the company, through affiliates or subcontractors, or through a combination, which are priced to the plan as a single package rather than on a service-by-service basis. A bundled service arrangement would also include an investment transaction in which the plan receives a range of services either directly from the investment provider, through affiliates or subcontractors, or through a combination.

Direct payments by the plan to the bundled service provider should be reported as direct compensation to the bundled service provider. Such direct payments by the plan do not need to be allocated among affiliates or subcontractors and do not need to be reported as indirect compensation received by the affiliates or subcontractors unless the amount paid to the

Ex. AA
878

affiliate or subcontractor is set on a per transaction basis, e.g., brokerage fees and commissions.

Fees charged to the plan's investment and reflected in the net value of the investment, such as management fees paid by mutual funds to their investment advisers, float revenue, commissions (including "soft dollars"), finder's fees, 12b-1 distribution fees, account maintenance fees, and shareholder servicing fees, must, subject to the alternative reporting option for "eligible indirect compensation," described below, be treated as separate reportable compensation by the person receiving the fee for purposes of Schedule C reporting.

For each person who is a fiduciary to the plan or provides one or more of the following services to the plan – contract administrator, consulting, investment advisory (plan or participants), investment management, securities brokerage, or recordkeeping – commissions and other transaction based fees, finder's fees, float revenue, soft dollar and other non-monetary compensation, would also be required to be treated as separate compensation for Schedule C purposes even if those fees were paid from mutual fund management fees or other fees charged to the plan's investment and reflected in the net value of the investment.

Other revenue sharing payments among members of a bundled service arrangement do not need to be allocated among affiliates or subcontractors and treated as indirect compensation received by the affiliates or subcontractors in determining whether the affiliate or subcontractor must be separately identified on line 2 of the Schedule C.

For more information about bundled arrangements for reporting purposes, see FAQs about the Schedule C, available on the EBSA website at *www.dol.gov/ ebsa/faqs*.

***Allocating Compensation Among Multiple Plans***: Where reportable compensation is received by a person in connection with several plans or DFEs, any reasonable method of allocating the compensation among the plans or DFEs may be used provided that the allocation method is disclosed to the plan administrator. In calculating the $5,000 threshold for purposes of determining whether a person must be identified in Part I, include the amount of compensation received by the person that is attributable to the plan or DFE filing the Form 5500, not the aggregate amount received in connection with all the plans or DFEs.

***Affiliates***: For purposes of Schedule C reporting, an "affiliate" of a person includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the person applying principles consistent with the regulations prescribed under section 414(c) of the Code.

**Line 1.** Check "Yes" or "No" on line 1a to indicate whether you are relying on the alternative reporting option for a person or persons who received only "eligible indirect compensation." If you check "Yes" on line 1a, provide as many entries in line 1b as necessary to identify the person or persons who provided you with the necessary disclosures regarding the eligible indirect compensation. If any indirect compensation is either not of the type described below or if the plan did not receive the written disclosures described below, the indirect compensation is not "eligible indirect compensation" for purposes of Part 1.

***(1) Eligible Indirect Compensation:*** The types of indirect compensation that can be treated as eligible indirect compensation are indirect compensation that is fees or expense reimbursement payments charged to investment funds and reflected in the value of the investment or return on investment of the participating plan or its participants finder's fees "soft dollar" revenue, float revenue, and/or brokerage commissions or other transaction-based fees for transactions or services involving the plan that were not paid directly by the plan or plan sponsor (whether or not they are capitalized as investment costs).

Investment funds or accounts for this purpose would include mutual funds, bank commingled trusts, including common and collective trusts, insurance company pooled separate accounts, and other separately managed accounts and pooled investment vehicles in which the plan invests. Investment funds or accounts would also include separately managed investment accounts that contain assets of individual plans.

***(2) Required Written Disclosures:*** For the types of indirect compensation described above to be treated as eligible indirect compensation for purposes of completing line 1, you must have received written materials that disclosed and described (a) the existence of the indirect compensation; (b) the services provided for the indirect compensation or the purpose for payment of the indirect compensation; (c) the amount (or estimate) of the compensation or a description of the formula used to calculate or determine the compensation; and (d) the identity of the party or parties paying and receiving the compensation. The written disclosures for a bundled arrangement must separately disclose and describe each element or indirect compensation that would be required to be separately reported if you were not relying on this alternative reporting option.

*If any person received eligible indirect compensation and either direct compensation and/or indirect compensation that does not meet the requirements of this line to be eligible indirect compensation, you cannot rely on the alternative reporting option for that person and must complete line 2 for each such person who received $5,000 or more in direct and indirect compensation.*

**Line 2.** Except for those persons and eligible indirect compensation for which you answered "Yes" to line 1 above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total direct and indirect compensation. Start with the most highly compensated and list in descending order of compensation. Enter in element (a) the person's name and complete elements (a) through (h) as specified below. Use as many entries as necessary to list all persons and information required to be reported.

**Element (a).** Enter the EIN for the person identified in element (a). If the name of an individual is entered in element (a) and the individual does not have an EIN, enter the EIN of the individual's employer. If the person is self-employed and does not have an EIN, you may enter the person's address and telephone number. Do not use a social security number in lieu of an EIN. The Schedule C and its attachments are open to public inspection and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule C or any of its attachments may result in the rejection of the filing.

**Element (b).** Select from the list below all codes that describe the services provided and compensation received. Enter as many codes as apply:

| Code | Service |
|---|---|
| 10 | Accounting (including auditing) |
| 11 | Actuarial |
| 12 | Claims processing |
| 13 | Contract Administrator |
| 14 | Plan Administrator |

Ex. AA
879

15 Recordkeeping and information management (computing, tabulating, data processing, etc.)
16 Consulting (general)
17 Consulting (pension)
18 Custodial (other than securities)
19 Custodial (securities)
20 Trustee (individual)
21 Trustee (bank, trust company, or similar financial institution)
22 Insurance agents and brokers
23 Insurance services
24 Trustee (discretionary)
25 Trustee (directed)
26 Investment advisory (participants)
27 Investment advisory (plan)
28 Investment management
29 Legal
30 Employee (plan)
31 Named fiduciary
32 Real estate brokerage
33 Securities brokerage
34 Valuation (appraisals, etc.)
35 Employee (plan sponsor)
36 Copying and duplicating
37 Participant loan processing
38 Participant communication
40 Foreign entity (e.g., an agent or broker, bank, insurance company, etc. not operating within jurisdictional boundaries of the United States)
49 Other services
50 Direction payment from the plan
51 Investment management fees paid directly by plan
52 Investment management fees paid indirectly by plan
53 Insurance brokerage commissions and fees
54 Sales loads (front end and deferred)
55 Other commissions
56 Non-monetary compensation
57 Redemption fees
58 Product termination fees (surrender charges, etc.)
59 Shareholder servicing fees
60 Sub-transfer agency fees
61 Finders' fees/placement fees
62 Float revenue
63 Distribution (12b-1) fees
64 Recordkeeping fees
65 Account maintenance fees
66 Insurance mortality and expense charge
67 Other insurance wrap fees
68 "'Soft dollars' commissions"
70 Consulting fees
71 Securities brokerage commissions and fees
72 Other investment fees and expenses
73 Other insurance fees and expenses
99 Other fees

**Element (c).** Enter any relationship of the person identified in element **(a)** to the plan sponsor, to the participating employer or employee organization, or to any person known to be a party-in-interest, for example, employee of employer, vice-president of employer, union officer, affiliate of plan recordkeeper, etc.

**Element (d).** Enter the total amount of compensation received directly from the plan for services rendered to the plan during the plan year. If a service provider charges the plan a fee or commission, but agrees to offset the fee or commission with any revenue received from a party other than the plan or plan sponsor, for example, as part of a commission recapture or other offset arrangement, only the amount paid directly by the plan after any revenue sharing offset should be entered in element **(d)**.

**Note.** Do not leave element **(d)** blank. If no direct compensation was received, enter "0".

**Element (e).** Check "Yes" if the person identified in element **(a)**, or any related person, received during the plan year indirect compensation in connection with the person's position with the plan or services provided to the plan. (See instructions above on definition of indirect compensation.) If the answer is "No," skip elements **(f)** through **(h)** for the person identified in element **(a).**

**Element (f).** Check "Yes" if any of the indirect compensation was eligible indirect compensation for which the plan received the necessary disclosures. See instructions for line 1 for definition of eligible indirect compensation. Check "No" if none of the indirect compensation was eligible indirect compensation.

**Element (g).** Enter the total of all indirect compensation that is not eligible indirect compensation for which the plan received the necessary disclosure. Do not leave blank. If none, enter "0".

**Element (h).** Check "Yes" if the service provider, instead of an amount or an estimated amount, gave the plan a formula or other description of the method used to determine some or all of the indirect compensation received.

**Line 3**. For each person identified in line 2 who is a fiduciary to the plan or provides one or more of the following services to the plan – contract administrator, consulting, investment advisory (plan or participants), investment management, securities brokerage, or recordkeeping – enter the requested information for each source from whom the person received indirect compensation if (1) the amount of the compensation was $1,000 or more, or (2) the plan was given a formula or other description of the method used to determine the indirect compensation rather than an amount or estimated amount of the indirect compensation.

### Part II - Service Providers Who Fail or Refuse To Provide Information

**Line 4.** Provide the requested information for each plan fiduciary or service provider who you believe failed or refused to provide any of the information necessary to complete Part I of this schedule.

**Important Reminder.** Before identifying a fiduciary or service provider as a person who failed or refused to provide information, you should contact the fiduciary or service provider to request the necessary information and tell them that you will list them on the Schedule C as a fiduciary or service provider who failed or refused to provide information if they do not provide the necessary information.

### Part III - Termination Information on Accountants and Enrolled Actuaries

Complete Part III if there was a termination in the appointment of an accountant or enrolled actuary during the 2010 plan year. This information must be provided on the Form 5500 for the plan year during which the termination occurred. For example, if an accountant was terminated in the 2010 plan year after completing work on an audit for the 2008 plan year, the termination should be reported on the Schedule C filed with the 2010 plan year Form 5500. If the accountant is a firm (such as a corporation, partnership, etc.), report when the service provider (not an individual within the firm) was terminated. An enrolled actuary is by definition an individual and not a firm, and you must report when the individual is terminated.

Ex. AA
880

Provide an explanation of the reasons for the termination of an accountant or enrolled actuary. Include a description of any material disputes or matters of disagreement concerning the termination, even if resolved prior to the termination. If an individual is listed, and the individual does not have an EIN, the EIN to be entered should be the EIN of the individual's employer.

Do not use a social security number in lieu of an EIN. The Schedule C and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule C or any of its attachments may result in the rejection of the filing.

The plan administrator must also provide the terminated accountant or enrolled actuary with a copy of the explanation for the termination provided in Part III of the Schedule C, along with a completed copy of the notice below.

---

**Notice to Terminated Accountant or Enrolled Actuary**

I, as plan administrator, verify that the explanation that is reproduced below or attached to this notice is the explanation concerning your termination reported on the Schedule C (Form 5500) attached to the 2010 Form 5500, Annual Return/Report of Employee Benefit Plan, for the ________________________________________________(enter name of plan). This Form 5500 is identified in line 2b by the nine-digit EIN ____-__________(enter sponsor's EIN), and in line 1b by the three-digit PN________(enter plan number).

You have the opportunity to comment to the Department of Labor concerning any aspect of this explanation. Comments should include the name, EIN, and PN of the plan and be submitted to: Office of Enforcement, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, DC 20210.

Signed

Dated

# 2010 Instructions for Schedule D (Form 5500)
## *DFE/Participating Plan Information*

## General Instructions

### Purpose of Schedule

When the Form 5500 is filed for a plan or Direct Filing Entity (DFE) that invested or participated in any master trust investment accounts (MTIAs), 103-12 Investment Entities (103-12 IEs), common/collective trusts (CCTs), and/or pooled separate accounts (PSAs), Part I provides information about these entities. When the Form 5500 is filed for a DFE, Part II provides information about plans participating in the DFE.

### Who Must File

**Employee Benefit Plans**: Schedule D (Form 5500) must be attached to a Form 5500 filed for an employee benefit plan that participated or invested in one or more CCTs, PSAs, MTIAs, or 103-12 IEs at anytime during the plan year.

**Direct Filing Entities:** Schedule D (Form 5500) must be attached to a Form 5500 filed for a CCT, PSA, MTIA, 103-12 IE, or Group Insurance Arrangement (GIA), as a Direct Filing Entity (i.e., when a "DFE" is checked on Part I, line A, of the Form 5500). For more information, see instructions for *Direct Filing Entity (DFE) Filing Requirements*.

Check the Schedule D box on the Form 5500 (Part II, line 10b(5)) if a Schedule D is attached to the Form 5500. Complete as many repeating entries as necessary to report the required information.

### Specific Instructions

**Lines A, B, C, and D.** The information must be the same as reported in Part II of the Form 5500 to which this Schedule D is attached.

Do not use a social security number in line D in lieu of an EIN. The Schedule D and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule D or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500*. The EBSA does not issue EINs.

### Part I - Information on Interests in MTIAs, CCTs, PSAs, and 103-12 IEs (To Be Completed by Plans and DFEs)

Complete as many repeating entries as necessary to enter the information specified below for all MTIAs, CCTs, PSAs, and 103-12 IEs in which the plan or DFE filing the Form 5500 participated at anytime during the plan or DFE year.

Complete a separate item (elements **(a)** through **(e)**) for each MTIA, CCT, PSA, or 103-12 IE.

**Element (a).** Enter the name of the MTIA, CCT, PSA, or103-12 IE in which the plan or DFE filing the Form 5500 participated at any time during the plan or DFE year.

**Element (b).** Enter the name of the sponsor of the MTIA, CCT, PSA, or 103-12 IE named in element **(a)**.

**Element (c).** Enter the nine-digit employer identification number (EIN) and three-digit plan/entity number (PN) for each MTIA, CCT, PSA, or 103-12 IE named in element **(a)**. This **must** be the same DFE EIN/PN as reported on lines 2b and 1b of the Form 5500 filed for the DFE. If a Form 5500 was **not** filed for a CCT or PSA named in element **(a)**, enter the EIN for the CCT or PSA and enter 000 for the PN. Do not use a social security number in lieu of an EIN. The Schedule D and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule D or any of its attachments may result in the rejection of the filing.

**Element (d).** Enter an M, C, P, or E, as appropriate, (see table below) to identify the type of entity (MTIA, CCT, PSA, or 103-12 IE).

| Type of entity ▼ | Enter in (d) ▼ |
|---|---|
| MTIA | M |
| CCT | C |
| PSA | P |
| 103-12 IE | E |

**Element (e).** Enter the dollar value of the plan's or DFE's interest as of the end of the year. If the plan or DFE for which this Schedule D is filed had no interest in the MTIA, CCT, PSA, or 103-12 IE listed at the end of the year, enter "0".

***Example for Part I:*** If a plan participates in an MTIA, the MTIA is named in element **(a)**; the MTIA's sponsor is named in element **(b)**; the MTIA's EIN and PN are entered in element **(c)** (such as: 12-3456789-001); an "M" is entered in element **(d)**; and the dollar value of the plan's interest in the MTIA as of the end of plan year is entered in element **(e)**.

If the plan also participates in a CCT for which a Form 5500 was **not** filed, the CCT is named in another element **(a)**; the name of the CCT sponsor is entered in element **(b)**; the EIN for the CCT, followed by 000 is entered in element **(c)** (such as: 99-8765432-000); a "C" is entered in element **(d)**; and the dollar value of the plan's interest in the CCT is entered in element **(e)**.

If the plan also participates in a PSA for which a Form 5500 **was** filed, the PSA is named in a third element **(a)**; the name of the PSA sponsor is entered in element **(b)**; the PSA's EIN and PN is entered in element **(c)** (such as: 98-7655555-001); a "P" is entered in element **(d)**; and the dollar value of the plan's interest in the PSA is entered in element **(e)**.

### Part II - Information on Participating Plans (To Be Completed Only by DFEs)

Complete as many repeating entries as necessary to enter the information specified below for all plans invested or participated in the DFE at any time during the DFE year.

Complete a separate item (elements **(a)** through **(c)**) for each plan.

**Element (a).** Enter the name of each plan that invested or participated in the DFE at any time during the DFE year. GIAs need not complete element **(a)**.

**Element (b).** Enter the name of the sponsor of each and every plan investing or participating in the DFE.

**Element (c).** Enter the nine-digit EIN and three-digit PN for each plan named in element **(a)**. This is the EIN and PN

Ex. AA
882

entered on lines 2b and 1b of the plan's Form 5500 or Form 5500-SF. GIAs should enter the EIN of the sponsor listed in element **(b)**. Do not use a social security number in lieu of an EIN. The Schedule D and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule D or any of its attachments may result in the rejection of the filing.

# 2010 Instructions for Schedule G (Form 5500) *Financial Transaction Schedules*

## General Instructions

### Who Must File

Schedule G (Form 5500) must be attached to a Form 5500 filed for a plan, MTIA, 103-12 IE, or GIA to report loans or fixed income obligations in default or determined to be uncollectible as of the end of the plan year, leases in default or classified as uncollectible, and nonexempt transactions. See Schedule H (Form 5500) lines 4b, 4c, and/or 4d.

Check the Schedule G box on the Form 5500 (Part II, line 10b(6)) if a Schedule G is attached to the Form 5500. Complete as many entries as necessary to report the required information.

The Schedule G consists of three parts. Part I of the Schedule G reports any loans or fixed income obligations in default or determined to be uncollectible as of the end of the plan year. Part II of the Schedule G reports any leases in default or classified as uncollectible. Part III of the Schedule G reports nonexempt transactions.

## Specific Instructions

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule G is attached.

Do not use a social security number in Line D in lieu of an EIN. The Schedule G and its attachments are open to public inspection, and the contents are public information and are subject to publication on the internet. Because of privacy concerns, the inclusion of a social security number on this Schedule G or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, *see Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500.* The EBSA does not issue EINs.

### Part I - Loans or Fixed Income Obligations in Default or Classified as Uncollectible

List all loans or fixed income obligations in default or determined to be uncollectible as of the end of the plan year or the fiscal year of the GIA, MTIA, or 103-12 IE. Include:

- Obligations where the required payments have not been made by the due date;
- Fixed income obligations that have matured, but have not been paid, for which it has been determined that payment will not be made; and
- Loans that were in default even if renegotiated later during the year.

**Note.** *Identify in element **(a)** each obligor known to be a party-in-interest to the plan.*

Provide, on a separate attachment, an explanation of what steps have been taken or will be taken to collect overdue amounts for each loan listed and label the attachment ***"Schedule G, Part I – Overdue Loan Explanation."***

The due date, payment amount, and conditions for determining default in the case of a note or loan are usually contained in the documents establishing the note or loan. A loan is in default when the borrower is unable to pay the obligation upon maturity. Obligations that require periodic repayment can default at any time. Generally loans and fixed income obligations are considered uncollectible when payment has not been made and there is little probability that payment will be made. A fixed income obligation has a fixed maturity date at a specified interest rate.

Do not report in Part I participant loans under an individual account plan with investment experience segregated for each account, that are made in accordance with 29 CFR 2550.408b-1, and that are secured solely by a portion of the participant's vested accrued benefit. Report all other participant loans in default or classified as uncollectible on Part I, and list each such loan individually.

### Part II - Leases in Default or Classified as Uncollectible

List any leases in default or classified as uncollectible. A lease is an agreement conveying the right to use property, plant, or equipment for a stated period. A lease is in default when the required payment(s) has not been made. An uncollectible lease is one where the required payments have not been made and for which there is little probability that payment will be made. Provide, on a separate attachment, an explanation of what steps have been taken or will be taken to collect overdue amounts for each lease listed and label the attachment ***"Schedule G, Part II – Overdue Lease Explanation."***

### Part III - Nonexempt Transactions

All nonexempt party-in-interest transactions must be reported, regardless of whether disclosed in the accountant's report, unless the nonexempt transaction is:

1. Statutorily exempt under Part 4 of Title I of ERISA;
2. Administratively exempt under ERISA section 408(a);
3. Exempt under Code sections 4975(c) or 4975(d);
4. The holding of participant contributions in the employer's general assets for a welfare plan that meets the conditions of ERISA Technical Release 92-01;
5. A transaction of a 103-12 IE with parties other than the plan; or
6. A delinquent participant contribution or a delinquent participant loan repayment reported on Schedule H, line 4a.

**Nonexempt transactions** with a party-in-interest include any direct or indirect:

**A.** Sale or exchange, or lease, of any property between the plan and a party-in-interest.
**B.** Lending of money or other extension of credit between the plan and a party-in-interest.
**C.** Furnishing of goods, services, or facilities between the plan and a party-in-interest.
**D.** Transfer to, or use by or for the benefit of, a party-in-interest, of any income or assets of the plan.
**E.** Acquisition, on behalf of the plan, of any employer security or employer real property in violation of ERISA section 407(a).
**F.** Dealing with the assets of the plan for a fiduciary's own interest or own account
**G.** Acting in a fiduciary's individual or any other capacity in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries.
**H.** Receipt of any consideration for his or her own personal account by a party-in-interest who is a fiduciary from any

Ex. AA
884

party dealing with the plan in connection with a transaction involving the income or assets of the plan.

For purposes of this form, party-in-interest is deemed to include a disqualified person. See Code section 4975(e)(2). The term "party-in-interest" means, as to an employee benefit plan:

**A.** Any fiduciary (including, but not limited to, any administrator, officer, trustee or custodian), counsel, or employee of the plan;
**B.** A person providing services to the plan;
**C.** An employer, any of whose employees are covered by the plan;
**D.** An employee organization, any of whose members are covered by the plan;
**E.** An owner, direct or indirect, of 50% or more of: **(1)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, **(2)** the capital interest or the profits interest of a partnership, or **(3)** the beneficial interest of a trust or unincorporated enterprise that is an employer or an employee organization described in C or D;
**F.** A relative of any individual described in A, B, C, or E;
**G.** A corporation, partnership, or trust or estate of which (or in which) 50% or more of: **(1)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, **(2)** the capital interest or profits interest of such partnership, or **(3)** the beneficial interest of such trust or estate is owned directly or indirectly, or held by, persons described in A, B, C, D, or E;
**H.** An employee, officer, director (or individual having powers or responsibilities similar to those of officers or directors), or a 10% or more shareholder, directly or indirectly, of a person described in B, C, D, E, or G, or the employee benefit plan; or
**I.** A 10% or more (directly or indirectly in capital or profits) partner or joint venture of a person described in B, C, D, E, or G.

*An unfunded, fully insured, or combination unfunded/insured welfare plan with 100 or more participants exempt under 29 CFR 2520.104-44 from completing Schedule H must still complete Schedule G, Part III, to report nonexempt transactions.*

If you are unsure whether a transaction is exempt or not, you should consult with either the plan's independent qualified public accountant or legal counsel or both.

You may indicate that an application for an administrative exemption is pending.

If the plan is a qualified pension plan and a nonexempt prohibited transaction occurred with respect to a disqualified person, an IRS **Form 5330**, Return of Excise Taxes Related to Employee Benefit Plans, is required to be filed with the IRS to pay the excise tax on the transaction.

*The DOL Voluntary Fiduciary Correction Program (VFCP) describes how to apply, the specific transactions covered (which transactions include delinquent participation contributions to pension and welfare plans), and acceptable methods for correcting violations. In addition, applicants that satisfy both the VFCP requirements and the conditions of Prohibited Transaction Exemption (PTE) 2002-51 are eligible for immediate relief from payment of certain prohibited excise taxes for certain corrected transactions, and are also relieved from the obligation to file the Form 5330 with the IRS. For more information, see 71 Fed. Reg. 20261 (Apr. 19, 2006) and 71 Fed. Reg. 20135 (Apr. 19, 2006). If conditions of PTE 2002-51 are satisfied, corrected transactions should be treated as exempt under Code section 4975(c) for the purposes of answering Schedule G, Part III. Information about the VFCP is also available on the internet at* www.dol.gov/ebsa.

# 2010 Instructions for Schedule H (Form 5500) *Financial Information*

## General Instructions

### Who Must File

Schedule H (Form 5500) must be attached to a Form 5500 filed for a pension benefit plan or a welfare benefit plan that covered 100 or more participants as of the beginning of the plan year and a Form 5500 filed for an MTIA, CCT, PSA, 103-12 IE, or GIA. See the instructions to the Form 5500 for *Direct Filing Entity (DFE) Filing Requirements*.

**Exceptions: (1)** Fully insured, unfunded, or a combination of unfunded/insured welfare plans and fully insured pension plans that meet the requirements of 29 CFR 2520.104-44 are exempt from completing the Schedule H. **(2)** If a Schedule I was filed for the plan for the 2009 plan year and the plan covered fewer than 121 participants as of the beginning of the 2010 plan year, the Schedule I may be completed instead of a Schedule H. See *What To File*. If eligible, such a plan may file the Form 5500-SF instead of the Form 5500 and its schedules, including the Schedule I. See Instructions for Form 5500-SF. **(3)** Plans that file a Form 5500-SF for the 2010 plan year are not required to file a Schedule H for that year.

Check the Schedule H box on the Form 5500 (Part II, line 10b(1)) if a Schedule H is attached to the Form 5500. Do not attach both a Schedule H and a Schedule I to the same Form 5500.

## Specific Instructions

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule H is attached.

Do not use a social security number in line D in lieu of an EIN. The Schedule H and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule H or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500*. The EBSA does not issue EINs.

**Note.** The cash, modified cash, or accrual basis may be used for recognition of transactions in Parts I and II, as long as you use one method consistently. Round off all amounts reported on the Schedule H to the nearest dollar. Any other amounts are subject to rejection. Check all subtotals and totals carefully.

If the assets of two or more plans are maintained in a fund or account that is not a DFE, a registered investment company, or the general account of an insurance company under an the unallocated contract (see the instructions for lines 1c(9) through 1c(14)), complete Parts I and II of the Schedule H by entering the plan's allocable part of each line item.

**Exception.** When completing Part II of the Schedule H for a plan or DFE that participates in a CCT or PSA for which a Form 5500 has not been filed, do not allocate the income of the CCT or PSA and expenses that were subtracted from the gross income of the CCT or PSA in determining their net investment gain (loss). Instead, enter the CCT or PSA net gain (loss) on line 2b(6) or (7) in accordance with the instructions for these lines.

If assets of one plan are maintained in two or more trust funds, report the combined financial information in Parts I and II.

*Current value* means fair market value where available. Otherwise, it means the fair value as determined in good faith under the terms of the plan by a trustee or a named fiduciary, assuming an orderly liquidation at time of the determination. See ERISA section 3(26).

**Note.** For the 2010 plan year, plans that provide participant-directed brokerage accounts as an investment alternative (and have entered pension feature code "2R" on line 8a of the Form 5500) may report investments in assets made through participant-directed brokerage accounts either:

1. *As individual investments on the applicable asset and liability categories in Part I and the income and expense categories in Part II, or*
2. *By including on line 1c(15) the total aggregate value of the assets and on line 2c the total aggregate investment income (loss) before expenses, provided the assets are not loans, partnership or joint-venture interests, real property, employer securities, or investments that could result in a loss in excess of the account balance of the participant or beneficiary who directed the transaction. Expenses charged to the accounts must be reported on the applicable expense line items. Participant-directed brokerage account assets reported in the aggregate on line 1c(15) should be treated as one asset held for investment for purposes of the line 4i schedules, except that investments in tangible personal property must continue to be reported as separate assets on the line 4i schedules.*

In the event that investments made through a participant-directed brokerage account are loans, partnership or joint venture interests, real property, employer securities, or investments that could result in a loss in excess of the account balance of the participant or beneficiary who directed the transaction, such assets must be broken out and treated as separate assets on the applicable asset and liability categories in Part I, income and expense categories in Part II, and on the line 4i schedules. The remaining assets in the participant-directed brokerage account may be reported in the aggregate as set forth in paragraph 2 above.

**Columns (a) and (b).** Enter the current value on each line as of the beginning and end of the plan year.

**Note.** Amounts reported in column (a) must be the same as reported for the end of the plan year for corresponding line items of the return/report for the preceding plan year. Do not include contributions designated for the 2010 plan year in column (a).

**Line 1a.** Total noninterest bearing cash includes, among other things, cash on hand or cash in a noninterest bearing checking account.

**Line 1b(1).** Noncash basis filers must include contributions due the plan by the employer but not yet paid. Do not include other amounts due from the employer such as the reimbursement of an expense or the repayment of a loan.

**Line 1b(2).** Noncash basis filers must include contributions withheld by the employer from participants and amounts due directly from participants that have not yet been received by the plan. Do not include the repayment of participant loans.

**Line 1b(3).** Noncash basis filers must include amounts due to the plan that are not includable in lines 1b(1) or 1b(2). These amounts may include investment income earned but not yet received by the plan and other amounts due to the plan such as amounts due from the employer or another plan for expense

Ex. AA
886

reimbursement or from a participant for the repayment of an overpayment of benefits.

**Line 1c(1).** Include all assets that earn interest in a financial institution account such as interest bearing checking accounts, passbook savings accounts, or in money market accounts.

**Line 1c(2).** Include securities issued or guaranteed by the U.S. Government or its designated agencies such as U.S. Savings Bonds, Treasury Bonds, Treasury Bills, FNMA, and GNMA.

**Line 1c(3).** Include investment securities (other than employer securities defined below in line 1d(1)) issued by a corporate entity at a stated interest rate repayable on a particular future date such as most bonds, debentures, convertible debentures, commercial paper and zero coupon bonds. Do not include debt securities of governmental units that should be reported on line 1c(2) or 1c(15).

"Preferred" means any of the above securities that are publicly traded on a recognized securities exchange and the securities have a rating of "A" or above. If the securities are not "Preferred," they are listed as "Other."

**Line 1c(4)(A).** Include stock issued by corporations (other than employer securities defined in line 1d(1) below) which is accompanied by preferential rights such as the right to share in distributions of earnings at a higher rate or which has general priority over the common stock of the same entity. Include the value of warrants convertible into preferred stock.

**Line 1c(4)(B).** Include any stock (other than employer securities defined in line 1d(1)) that represents regular ownership of the corporation and is not accompanied by preferential rights. Include the value of warrants convertible into common stock.

**Line 1c(5).** Include the value of the plan's participation in a partnership or joint venture if the underlying assets of the partnership or joint venture are not considered to be plan assets under 29 CFR 2510.3-101. Do not include the value of a plan's interest in a partnership or joint venture that is a 103-12 Investment Entity (103-12 IE). Include the value of a 103-12 IE in line 1c(12).

**Line 1c(6).** Include the current value of both income and non-income producing real property owned by the plan. Do not include the value of property that is employer real property or property used in plan operations that must be reported on lines 1d and 1e, respectively.

**Line 1c(7).** Enter the current value of all loans made by the plan, except participant loans reportable on line 1c(8). Include the sum of the value of loans for construction, securities loans, commercial and/or residential mortgage loans that are not subject to Code section 72(p) (either by making or participating in the loans directly or by purchasing loans originated by a third party), and other miscellaneous loans.

**Line 1c(8).** Enter the current value of all loans to participants including residential mortgage loans that are subject to Code section 72(p). Include the sum of the value of the unpaid principal balances, plus accrued but unpaid interest, if any, for participant loans made under an individual account plan with investment experience segregated for each account, that are made in accordance with 29 CFR 2550.408b-1 and secured solely by a portion of the participant's vested accrued benefit. When applicable, combine this amount with the current value of any other participant loans. Do not include in column (b) a participant loan that has been deemed distributed during the plan year under the provisions of Code section 72(p) and Treasury Regulations section 1.72(p)-1, if both of the following circumstances apply:

1. Under the plan, the participant loan is treated as a directed investment solely of the participant's individual account; and
2. As of the end of the plan year, the participant is not continuing repayment under the loan.

If both of these circumstances apply, report the loan as a deemed distribution on line 2g. However, if either of these circumstances does not apply, the current value of the participant loan (including interest accruing thereon after the deemed distribution) must be included in column (b) without regard to the occurrence of a deemed distribution.

**Note.** After a participant loan that has been deemed distributed is reported on line 2g, it is no longer to be reported as an asset on Schedule H or Schedule I unless, in a later year, the participant resumes repayment under the loan. However, such a loan (including interest accruing thereon after the deemed distribution) that has not been repaid is still considered outstanding for purposes of applying Code section 72(p)(2)(A) to determine the maximum amount of subsequent loans. Also, the deemed distribution is not treated as an actual distribution for other purposes, such as the qualification requirements of Code section 401, including, for example, the determination of top-heavy status under Code section 416 and the vesting requirements of Treasury Regulations section 1.411(a)-7(d)(5). See Q&As 12 and 19 of Treasury Regulations section 1.72(p)-1.

The entry on line 1c(8), column (b), of Schedule H (participant loans - end of year) or on line 1a, column (b), of Schedule I (plan assets - end of year) must include the current value of any participant loan that was reported as a deemed distribution on line 2g for any earlier year if the participant resumes repayment under the loan during the plan year. In addition, the amount to be entered on line 2g must be reduced by the amount of the participant loan that was reported as a deemed distribution on line 2g for the earlier year.

**Lines 1c(9), (10), (11), and (12).** Enter the total current value of the plan's or DFE's interest in DFEs on the appropriate lines as of the beginning and end of the plan or DFE year. The value of the plan's or DFE's interest in each DFE at the end of the plan or DFE year must be reported on the Schedule D (Form 5500).

*The plan's or DFE's interest in common/collective trusts (CCTs) and pooled separate accounts (PSAs) for which a DFE Form 5500 has not been filed may not be included on lines 1c(9) or 1c(10). The plan's or DFE's interest in the underlying assets of such CCTs and PSAs must be allocated and reported in the appropriate categories on a line-by-line basis on Part I of the Schedule H.*

**Note.** For reporting purposes, a separate account that is not considered to be holding plan assets pursuant to 29 CFR 2510.3-101(h)(1)(iii) does not constitute a PSA.

**Line 1c(14).** Use the same method for determining the value of the insurance contracts reported here as you used for line 4 of Schedule A, or, if line 4 is not required, line 7 of Schedule A.

**Line 1c(15).** Include all other investments not includable in lines 1c(1) through (14), such as options, index futures, state and municipal securities, collectibles, and other personal property.

**Line 1d(1).** An employer security is any security issued by an employer (including affiliates) of employees covered by the plan. These may include common stocks, preferred stocks, bonds, zero coupon bonds, debentures, convertible debenturees, notes and commercial paper.

**Line 1d(2).** The term "employer real property" means real property (and related personal property) that is leased to an employer of employees covered by the plan, or to an affiliate of such employer. For purposes of determining the time at which a

Ex. AA
887

plan acquires employer real property for purposes of this line, such property shall be deemed to be acquired by the plan on the date on which the plan acquires the property or on the date on which the lease to the employer (or affiliate) is entered into, whichever is later.

**Line 1e.** Include the current (not book) value of the buildings and other property used in the operation of the plan. Buildings or other property held as plan investments should be reported in 1c(6) and 1d(2).

*Do not include the value of future pension payments on lines 1g, h, i, j, or k.*

**Line 1g.** Noncash basis plans must include the total amount of benefit claims that have been processed and approved for payment by the plan. Include welfare plan "incurred but not reported" (IBNR) benefit claims on this line.

**Line 1h.** Noncash basis plans must include the total amount of obligations owed by the plan which were incurred in the normal operations of the plan and have been approved for payment by the plan but have not been paid.

**Line 1i.** "Acquisition indebtedness," for debt-financed property other than real property, means the outstanding amount of the principal debt incurred:

1. By the organization in acquiring or improving the property;
2. Before the acquisition or improvement of the property if the debt was incurred only to acquire or improve the property; or
3. After the acquisition or improvement of the property if the debt was incurred only to acquire or improve the property and was reasonably foreseeable at the time of such acquisition or improvement. For further explanation, see Code section 514(c).

**Line 1j.** Noncash basis plans must include amounts owed for any liabilities that would not be classified as benefit claims payable, operating payables, or acquisition indebtedness.

**Line 1l.** The entry in column (b) must equal the sum of the entry in column (a) plus lines 2k, 2l(1), and 2l(2).

**Line 2a.** Include the total cash contributions received and/or (for accrual basis plans) due to be received.

**Note.** Plans using the accrual basis of accounting should not include contributions designated for years before the 2010 plan year on line 2a.

**Line 2a(1)(B).** For welfare plans, report all employee contributions, including all elective contributions under a cafeteria plan (Code section 125). For pension benefit plans, participant contributions, for purposes of this item, also include elective contributions under a qualified cash or deferred entities arrangement (Code section 401(k)).

**Line 2a(2).** Use the current value, at date contributed, of securities or other noncash property.

**Line 2b(1)(A).** Enter interest earned on interest-bearing cash, including earnings from sweep accounts, STIF accounts, money market accounts, certificates of deposit, etc. This is the interest earned on the investments reported on line 1c(1).

**Line 2b(1)(B).** Enter interest earned on U.S. Government Securities. This is the interest earned on the investments reported on line 1c(2).

**Line 2b(1)(C).** Generally, this is the interest earned on securities that are reported on lines 1c(3)(A) and (B) and 1d(1).

**Line 2b(2).** Generally, the dividends are for investments reported on lines 1c(4)(A) and (B), 1c(13), and 1d(1). For accrual basis plans, include any dividends declared for stock held on the date of record, but not yet received as of the end of the plan year.

**Line 2b(3).** Generally, rents represent the income earned on the real property that is reported in lines 1c(6) and 1d(2). Enter rents as a "Net" figure. Net rents are determined by taking the total rent received and subtracting all expenses directly associated with the property. If the real property is jointly used as income producing property and for the operation of the plan, net that portion of the expenses attributable to the income producing portion of the property against the total rents received.

**Line 2b(4).** Enter in column (b), the total of net gain (loss) on sale of assets. This equals the sum of the net realized gain (or loss) on each asset held at the beginning of the plan year which was sold or exchanged during the plan year, and on each asset that was both acquired and disposed of within the plan year.

**Note.** As current value reporting is required for the Form 5500, assets are revalued to current value at the end of the plan year. For purposes of this form, the increase or decrease in the value of assets since the beginning of the plan year (if held on the first day of the plan year) or their acquisition date (if purchased during the plan year) is reported in line 2b(5) below, with two exceptions: ***(1)*** the realized gain (or loss) on each asset that was disposed of during the plan year is reported in line 2b(4) (NOT on line 2b(5)), and ***(2)*** the net investment gain (or loss) from CCTs, PSAs, MTIAs, 103-12 IEs, and registered investment companies is reported in lines 2b(6) through (10).

The sum of the realized gain (or loss) of assets sold or exchanged during the plan year is to be calculated as follows:

1. Enter in line 2b(4)(A), column (a), the sum of the amount received for these former assets;
2. Enter in line 2b(4)(B), column (a), the sum of the current value of these former assets as of the beginning of the plan year and the purchase price for assets both acquired and disposed of during the plan year; and
3. Enter in 2b(4) (C), column (b), the result obtained when 2b(4)(B) is subtracted from 2b(4)(A). If entering a negative number, enter a minus sign "–" to the left of the number.

**Note.** Bond write-offs should be reported as realized losses.

**Line 2b(5).** Subtract the current value of assets at the beginning of the year plus the cost of any assets acquired during the plan year from the current value of assets at the end of the year to obtain this figure. If entering a negative number, enter a minus sign "–" to the left of the number. Do not include the value of assets reportable in lines 2b(4) and 2b(6) through 2b(10).

**Lines 2b(6), (7), (8), and (9).** Report all earnings, expenses, gains or losses, and unrealized appreciation or depreciation included in computing the net investment gain (or loss) from all CCTs, PSAs, MTIAs, and 103-12 IEs here. If some plan funds are held in any of these entities and other plan funds are held in other funding media, complete all applicable subitems of line 2 to report plan earnings and expenses relating to the other funding media. The net investment gain (or loss) allocated to the plan for the plan year from the plan's investment in these entities is equal to:

1. The sum of the current value of the plan's interest in each entity at the end of the plan year,
2. Minus the current value of the plan's interest in each entity at the beginning of the plan year,
3. Plus any amounts transferred out of each entity by the plan during the plan year, and
4. Minus any amounts transferred into each entity by the plan during the plan year.

Enter the net gain as a positive number or the net loss as a negative number.

Ex. AA
888

**Note.** Enter the combined net investment gain or loss from all CCTs and PSAs, regardless of whether a DFE Form 5500 was filed for the CCTs and PSAs.

**Line 2b(10).** Enter net investment gain (loss) from registered investment companies here. Compute in the same manner as discussed above for lines 2b(6) through (9), except do not include dividends reported on line 2b(2)(C).

**Line 2c.** Include all other plan income earned that is not included in line 2a or 2b. Do not include transfers from other plans that should be reported in line 2l.

**Line 2e(1).** Include the current value of all cash, securities, or other property at the date of distribution. Include all eligible rollover distributions as defined in Code section 401(a)(31)(D) paid at the participant's election to an eligible retirement plan (including an IRA within the meaning of section 401(a)(31)(E)).

**Line 2e(2).** Include payments to insurance companies and similar organizations such as Blue Cross, Blue Shield, and health maintenance organizations for the provision of plan benefits (e.g., paid-up annuities, accident insurance, health insurance, vision care, dental coverage, stop-loss insurance whose claims are paid to the plan (or which is otherwise an asset of the plan )), etc.

**Line 2e(3).** Include all payments made to other organizations or individuals providing benefits. Generally, these are individual providers of welfare benefits such as legal services, day care services, training, and apprenticeship services.

**Line 2f.** Include on this line all distributions paid during the plan year of excess deferrals under Code section 402(g)(2)(A)(ii), excess contributions under Code section 401(k)(8), and excess aggregate contributions under Code section 401(m)(6). Include allocable income distributed. Also include on this line any elective deferrals and employee contributions distributed or returned to employees during the plan year, as well as any attributable income that was also distributed.

**Line 2g.** Report on line 2g a participant loan that has been deemed distributed during the plan year under the provisions of Code section 72(p) and Treasury Regulations section 1.72(p)-1 only if both of the following circumstances apply:

1. Under the plan, the participant loan is treated as a directed investment solely of the participant's individual account; and

2. As of the end of the plan year, the participant is not continuing repayment under the loan.

If either of these circumstances does not apply, a deemed distribution of a participant loan should not be reported on line 2g. Instead, the current value of the participant loan (including interest accruing thereon after the deemed distribution) must be included on line 1c(8), column (b) (participant loans – end of year), without regard to the occurrence of a deemed distribution.

**Note.** The amount to be reported on line 2g of Schedule H or Schedule I must be reduced if, during the plan year, a participant resumes repayment under a participant loan reported as a deemed distribution on line 2g for any earlier year. The amount of the required reduction is the amount of the participant loan reported as a deemed distribution on line 2g for the earlier year. If entering a negative number, enter a minus sign "–" to the left of the number. The current value of the participant loan must then be included in line 1c(8), column (b), of Schedule H (participant loans - end of year) or in line 1a, column (b), of Schedule I (plan assets - end of year).

Although certain participant loans deemed distributed are to be reported on line 2g of the Schedule H or Schedule I, and are not to be reported on the Schedule H or Schedule I as an asset

thereafter (unless the participant resumes repayment under the loan in a later year), they are still considered outstanding loans and are not treated as actual distributions for certain purposes. See Q&As 12 and 19 of Treasury Regulations section 1.72(p)-1.

**Line 2h.** Interest expense is a monetary charge for the use of money borrowed by the plan. This amount should include the total of interest paid or to be paid (for accrual basis plans) during the plan year.

**Line 2i.** Report all administrative expenses (by specified category) paid by or charged to the plan, including those that were not subtracted from the gross income of CCTs, PSAs, MTIAs, and 103-12 IEs in determining their net investment gain(s) or loss(es). Expenses incurred in the general operations of the plan are classified as administrative expenses.

**Line 2i(1).** Include the total fees paid (or in the case of accrual basis plans, costs incurred during the plan year but not paid as of the end of the plan year) by the plan for outside accounting, actuarial, legal, and valuation/appraisal services. Include fees for the annual audit of the plan by an independent qualified public accountant (IQPA); for payroll audits; for accounting/bookkeeping services; for actuarial services rendered to the plan; and to a lawyer for rendering legal opinions, litigation, and advice (but not for providing legal services as a benefit to plan participants). Report here fees and expenses for corporate trustees and individual plan trustees, including reimbursement of expenses associated with trustees, such as lost time, seminars, travel, meetings, etc. Include the fee(s) for valuations or appraisals to determine the cost, quality, or value of an item such as real property, personal property (gemstones, coins, etc.), and for valuations of closely held securities for which there is no ready market. Do not include amounts paid to plan employees to perform bookkeeping/ accounting functions that should be included in line 2i(4).

**Line 2i(2).** Enter the total fees paid (or in the case of accrual basis plans, costs incurred during the plan year but not paid as of the end of the plan year) to a contract administrator for performing administrative services for the plan. For purposes of the return/report, a contract administrator is any individual, partnership, or corporation, responsible for managing the clerical operations (e.g., handling membership rosters, claims payments, maintaining books and records) of the plan on a contractual basis. Do not include salaried staff or employees of the plan or banks or insurance carriers.

**Line 2i(3).** Enter the total fees paid (or in the case of accrual basis plans, costs incurred during the plan year but not paid as of the end of the plan year) to an individual, partnership or corporation (or other person) for advice to the plan relating to its investment portfolio. These may include fees paid to manage the plan's investments, fees for specific advice on a particular investment, and fees for the evaluation for the plan's investment performance.

**Line 2i(4).** Other expenses are those that cannot be included in 2i(1) through 2i(3). These may include plan expenditures such as salaries and other compensation and allowances (e.g., payment of premiums to provide health insurance benefits to plan employees), expenses for office supplies and equipment, cars, telephone, postage, rent, expenses associated with the ownership of a building used in the operation of the plan, and all miscellaneous expenses.

**Line 2l.** Include in these reconciliation figures the value of all transfers of assets or liabilities into or out of the plan resulting from, among other things, mergers and consolidations. A transfer of assets or liabilities occurs when there is a reduction of assets or liabilities with respect to one plan and the receipt of these assets or the assumption of these liabilities by another

Ex. AA
889

plan. A transfer is not a shifting of one plan's assets or liabilities from one investment to another. A transfer is not a distribution of all or part of an individual participant's account balance that is reportable on IRS **Form 1099-R**, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., (see the instructions for line 2e). Transfers out at the end of the year should be reported as occurring during the plan year. Include premium payments to the PBGC when paid from plan assets.

**Note.** If this Schedule H is filed for a CCT, PSA, MTIA, or 103-12 IE, report the value of all asset transfers to the CCT, PSA, MTIA, or 103-12 IE, including those resulting from contributions to participating plans on line 2l(1), and report the total value of all assets transferred out of the CCT, PSA, MTIA, or 103-12 IE, including assets withdrawn for disbursement as benefit payments by participating plans, on line 2l(2). Contributions and benefit payments are considered to be made to/by the plan (not to/by a CCT, PSA, MTIA, or 103-12 IE).

**Line 3.** The administrator of an employee benefit plan who files a Schedule H generally must engage an IQPA pursuant to ERISA section 103(a)(3)(A) and 29 CFR 2520.103-1(b). This requirement also applies to a Form 5500 filed for a 103-12 IE and for a GIA (see 29 CFR 2520.103-12 and 29 CFR 2520.103-2). The IQPA's report must be attached to the Form 5500 when a Schedule H is attached unless line 3d(1) or 3d(2) on the Schedule H is checked.

29 CFR 2520.103-1(b) requires that any separate financial statements prepared in order for the IQPA to form the opinion and notes to these financial statements must be attached to the Form 5500. Any separate statements must include the information required to be disclosed in Parts I and II of the Schedule H; however, they may be aggregated into categories in a manner other than that used on the Schedule H. The separate statements must consist of reproductions of Parts I and II or statements incorporating by reference Parts I and II. See ERISA section 103(a)(3)(A), and the DOL regulations 29 CFR 2520.103-1(a)(2) and (b), 2520.103-2, and 2520.104-50.

**Note.** Delinquent participant contributions reported on line 4a should be treated as part of the separate schedules referenced in ERISA section 103(a)(3)(A) and 29 CFR 2520.103-1(b) and 2520.103-2(b) for purposes of preparing the IQPA's opinion described on line 3 even though they are no longer required to be listed on Part III of the Schedule G. If the information contained on line 4a is not presented in accordance with regulatory requirements, i.e., when the IQPA concludes that the scheduled information required by line 4a does not contain all the required information or contains information that is inaccurate or is inconsistent with the plan's financial statements, the IQPA report must make the appropriate disclosures in accordance with generally accepted auditing standards. Delinquent participant contributions that are exempt because they satisfy the DOL voluntary fiduciary correction program (VFCP) requirements and the conditions of prohibited transaction exemption (PTE) 2002-51 do not need to be treated as part of the schedule of nonexempt party-in-interest transactions.

If the required IQPA's report is not attached to the Form 5500, the filing is subject to rejection as incomplete and penalties may be assessed.

**Lines 3a(1) through 3a(4).** These boxes identify the type of opinion offered by the accountant.

**Line 3a(1).** Check if an unqualified opinion was issued. Generally, an unqualified opinion is issued when the IQPA concludes that the plan's financial statements present fairly, in all material respects, the financial status of the plan as of the

end of the period audited and the changes in its financial status for the period under audit in conformity with generally accepted accounting principles (GAAP) or another comprehensive basis of accounting (OCBOA), e.g., cash basis.

**Line 3a(2).** Check if a qualified opinion was issued. Generally, a qualified opinion is issued by an IQPA when the plan's financial statements present fairly, in all material respects, the financial status of the plan as of the end of the audit period and the changes in its financial status for the period under audit in conformity with GAAP or OCBOA, except for the effects of one or more matters described in the opinion.

**Line 3a(3).** Check if a disclaimer of opinion was issued. A disclaimer of opinion is issued when the IQPA does not express an opinion on the financial statements because he or she has not performed an audit sufficient in scope to enable him or her to form an opinion on the financial statements.

**Line 3a(4).** Check if the plan received an adverse accountant's opinion. Generally, an adverse opinion is issued by an IQPA when the plan's financial statements do not present fairly, in all material respects, the financial status of the plan as of the end of the audit period and the changes in its financial status for the period under audit in conformity with GAAP or OCBOA.

**Line 3b.** Check "Yes" if a box is checked on line 3a and the only limitation on the scope of the plan's audit was pursuant to DOL regulations 29 CFR 2520.103-8 and 2520.103-12(d) because the examination and report of an IQPA did not extend to: **(a)** statements or information regarding assets held by a bank, similar institution, or insurance carrier that is regulated and supervised and subject to periodic examination by a state or federal agency provided that the statements or information are prepared by and certified to by the bank or similar institution or an insurance carrier, or **(b)** information included with the Form 5500 filed for a 103-12 IE. The term "similar institution" as used here does not extend to securities brokerage firms (see DOL Advisory Opinion 93-21A). See 29 CFR 2520.103-8 and 2520.103-12(d).

 *Check "No" if the scope of the plan's audit was limited for any reason in addition to that pursuant to DOL regulations 29 CFR 2520.103-8 and 2520.103-12.*

**Note.** These regulations do not exempt the plan administrator from engaging an IQPA or from attaching the IQPA's report to the Form 5500. If you check line 3b, you must also check the appropriate box on line 3a to identify the type of opinion offered by the IQPA.

**Line 3c.** Enter the name and EIN of the accountant (or accounting firm) in the space provided on line 3c. Do not use a social security number in lieu of an EIN. The Schedule H is open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule H may result in the rejection of the filing.

**Line 3d(1).** Check this box only if the Schedule H is being filed for a CCT, PSA, or MTIA.

**Line 3d(2).** Check this box if the plan has elected to defer attaching the IQPA's opinion for the first of two (2) consecutive plan years, one of which is a short plan year of seven (7) months or fewer. The Form 5500 for the first of the two (2) years must be complete and accurate, with all required attachments, except for the IQPA's report, including an attachment explaining why one of the two (2) plan years is of seven (7) or fewer months duration and stating that the annual report for the immediately following plan year will include a report of an IQPA with respect to the financial statements and accompanying

Ex. AA
890

schedules for both of the two (2) plan years. The Form 5500 for the second year must include: **(a)** financial schedules and statements for both plan years; **(b)** a report of an IQPA with respect to the financial schedules and statements for each of the two (2) plan years (regardless of the number of participants covered at the beginning of each plan year); and **(c)** a statement identifying any material differences between the unaudited financial information submitted with the first Form 5500 and the audited financial information submitted with the second Form 5500. See 29 CFR 2520.104-50.

**Note.** Do not check the box on line 3d(2) if the Form 5500 is filed for a 103-12 IE or a GIA. A deferral of the IQPA's opinion is not permitted for a 103-12 IE or a GIA. If an "E" or "G" is entered on Form 5500, Part I, line A(4), an IQPA's opinion must be attached to the Form 5500 and the type of opinion must be reported on Schedule H, line 3a.

**Lines 4a through 4n.** Plans completing Schedule H must answer all these lines either "Yes" or "No." Do not leave any answer blank, unless otherwise directed. For lines 4a through 4h and line 4l, if the answer is "Yes," an amount must be entered.

Report investments in CCTs, PSAs, MTIAs, and 103-12 IEs, but not the investments made by these entities. Plans with all of their funds held in a master trust should check "No" on line 4b, 4c, 4i, and 4j. CCTs and PSAs do not complete Part IV. MTIAs, 103-12 IEs, and GIAs do not complete lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, or 4n. 103-12 IEs also do not complete line 4j and 4l. MTIAs also do not complete line 4l.

**Line 4a.** Amounts paid by a participant or beneficiary to an employer and/or withheld by an employer for contribution to the plan are participant contributions that become plan assets as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets (see 29 CFR 2510.3-102). Plans that check "Yes" must enter the aggregate amount of all late contributions for the year. The total amount of the delinquent contributions should be included on line 4a of the Schedule H or I, as applicable, for the year in which the contributions were delinquent and should be carried over and reported again on line 4a of the Schedule H or I, as applicable, for each subsequent year until the year after the violation has been fully corrected, which correction includes payment of the late contributions and reimbursement of the plan for lost earnings or profits. If no participant contributions were received or withheld by the employer during the plan year, answer "No."

An employer holding these assets after that date commingled with its general assets will have engaged in a prohibited use of plan assets (see ERISA section 406). If such a nonexempt prohibited transaction occurred with respect to a disqualified person (see Code section 4975(e)(2)), file IRS **Form 5330**, Return of Excise Taxes Related to Employee Benefit Plans, with the IRS to pay any applicable excise tax on the transaction.

Participant loan repayments paid to and/or withheld by an employer for purposes of transmittal to the plan that were not transmitted to the plan in a timely fashion must be reported either on line 4a in accordance with the reporting requirements that apply to delinquent participant contributions or on line 4d. See Advisory Opinion 2002-02A, available at *www.dol.gov/ebsa*.

**TIP** *Delinquent participant contributions reported on line 4a should be treated as part of the separate schedules referenced in ERISA section 103(a)(3)(A) and 29 CFR 2520.103-1(b) and 2520.103-2(b) for purposes of preparing the IQPA's opinion described on line 3 even though they are no longer required to be listed on Part III of the Schedule G. If the information contained on line 4a is not presented in accordance with regulatory requirements, i.e., when the IQPA concludes that the scheduled information required by line 4a does not contain all the required information or contains information that is inaccurate or is inconsistent with the plan's financial statements, the IQPA report must make the appropriate disclosures in accordance with generally accepted auditing standards. For more information, see EBSA's Frequently Asked Questions About Reporting Delinquent Contributions on the Form 5500, available on the Internet at* www.dol.gov/ebsa. *These Frequently Asked Questions clarify that plans have an obligation to include delinquent participant contributions on their financial statements and supplemental schedules and that the IQPA's report covers such delinquent contributions even though they are not required to be included on Part III of the Schedule G. Although all delinquent participant contributions must be reported on line 4a, delinquent contributions for which the DOL VFCP requirements and the conditions of PTE 2002-51 have been satisfied do not need to be treated as nonexempt party-in-interest transactions.*

*The VFCP describes how to apply, the specific transactions covered (which transactions include delinquent participant contributions to pension and welfare plans), and acceptable methods for correcting violations. In addition, applicants that satisfy both the VFCP requirements and the conditions of PTE 2002-51 are eligible for immediate relief from payment of certain prohibited transaction excise taxes for certain corrected transactions, and are also relieved from the obligation to file the IRS Form 5330 with the IRS. For more information, see 71 Fed. Reg. 20261 (Apr. 19, 2006) and 71 Fed. Reg. 20135 (Apr. 19, 2006). Information about the VFCP is also available on the Internet at* www.dol.gov/ebsa.

All delinquent participant contributions must be reported on line 4a even if violations have been corrected.

**Line 4a Schedule.** Attach a Schedule of Delinquent Participant Contributions using the format below if you entered "Yes." If you chose to include participant loan repayments on line 4a, you must apply the same supplemental schedule and IQPA disclosure requirements to the loan repayments as applied to delinquent transmittals of participant contributions.

**Schedule H Line 4a — Schedule of Delinquent Participant Contributions**

| Participant Contributions Transferred Late to Plan | Total that Constitute Nonexempt Prohibited Transactions | | | Total Fully Corrected Under VFCP and PTE 2002-51 |
|---|---|---|---|---|
| Check here if Late Participant Loan Repayments are included: ☐ | Contributions Not Corrected | Contributions Corrected Outside VFCP | Contributions Pending Correction in VFCP | |

**Line 4b.** Plans that check "Yes" must enter the amount and complete Part I of Schedule G. The due date, payment amount and conditions for determining default of a note or loan are usually contained in the documents establishing the note or loan. A loan by the plan is in default when the borrower is unable to pay the obligation upon maturity. Obligations that require periodic repayment can default at any time. Generally, loans and fixed income obligations are considered uncollectible when payment has not been made and there is little probability that payment will be made. A fixed income obligation has a fixed maturity date at a specified interest rate. Do not include participant loans made under an individual account plan with investment experience segregated for each account that were



Ex. AA
891

made in accordance with 29 CFR 2550.408b-1 and secured solely by a portion of the participant's vested accrued benefit.

**Line 4c.** Plans that check "Yes" must enter the amount and complete Part II of Schedule G. A lease is an agreement conveying the right to use property, plant, or equipment for a stated period. A lease is in default when the required payment(s) has not been made. An uncollectible lease is one where the required payments have not been made and for which there is little probability that payment will be made.

**Line 4d.** Plans that check "Yes" must enter the amount and complete Part III of Schedule G. Check "Yes" if any nonexempt transaction with a party-in-interest occurred regardless of whether the transaction is disclosed in the IQPA's report. Do not check "Yes" or complete Schedule G, Part III, with respect to transactions that are: **(1)** statutorily exempt under Part 4 of Title I of ERISA; **(2)** administratively exempt under ERISA section 408(a); **(3)** exempt under Code sections 4975(c) or 4975(d); **(4)** the holding of participant contributions in the employer's general assets for a welfare plan that meets the conditions of ERISA Technical Release 92-01; **(5)** a transaction of a 103-12 IE with parties other than the plan; or **(6)** delinquent participant contributions or delinquent participant loan repayments reported on line 4a.

**Note.** See the instructions for Part III of the Schedule G (Form 5500) concerning nonexempt transactions and party-in-interest.

You may indicate that an application for an administrative exemption is pending. If you are unsure as to whether a transaction is exempt or not, you should consult with either the plan's IQPA or legal counsel or both.

*Applicants that satisfy the VFCP requirements and the conditions of PTE 2002-51 (see the instructions for line 4a) are eligible for immediate relief from payment of certain prohibited transaction excise taxes for certain corrected transactions, and are also relieved from the obligation to file the IRS Form 5330 with the IRS. For more information, see 71 Fed. Reg. 20261 (Apr. 19, 2006) and 71 Fed. Reg. 20135 (Apr. 19, 2006). When the conditions of PTE 2002-51 have been satisfied, the corrected transactions should be treated as exempt under Code section 4975(c) for the purposes of answering line 4d.*

**Line 4e.** Plans that check "Yes" must enter the aggregate amount of fidelity bond coverage for all claims. Check "Yes" only if the plan itself (as opposed to the plan sponsor or administrator) is a named insured under a fidelity bond from an approved surety covering plan officials and that protects the plan from losses due to fraud or dishonesty as described in 29 CFR Part 2580. Generally, every plan official of an employee benefit plan who "handles" funds or other property of such plan must be bonded. Generally, a person shall be deemed to be "handling" funds or other property of a plan, so as to require bonding, whenever his or her duties or activities with respect to given funds are such that there is a risk that such funds could be lost in the event of fraud or dishonesty on the part of such person, acting either alone or in collusion with others. Section 412 of ERISA and 29 CFR Part 2580 describe the bonding requirements, including the definition of "handling" (29 CFR 2580.412-6), the permissible forms of bonds (29 CFR 2580.412-10), the amount of the bond (29 CFR Part 2580, subpart C), and certain exemptions such as the exemption for unfunded plans, certain banks and insurance companies (ERISA section 412), and the exemption allowing plan officials to purchase bonds from surety companies authorized by the Secretary of the Treasury as acceptable reinsurers on federal bonds (29 CFR 2580.412-23). Information concerning the list of approved sureties and reinsures is available on the Internet at *www.fms.treas/gov/c570*. For more information on the fidelity bonding requirements, see Field Assistance Bulletin 2008-04, available on the Internet at *www.dol.gov/ebsa*.

**Note.** Plans are permitted under certain conditions to purchase fiduciary liability insurance. These fiduciary liability insurance policies are not written specifically to protect the plan from losses due to dishonest acts and cannot be reported as fidelity bonds on line 4e.

**Line 4f.** Check "Yes," if the plan suffered or discovered any loss as a result of any dishonest or fraudulent act(s) even if the loss was reimbursed by the plan's fidelity bond or from any other source. If "Yes" is checked enter the full amount of the loss. If the full amount of the loss has not yet been determined, provide an estimate and disclose that the figure is an estimate as determined in good faith by a plan fiduciary. You must keep, in accordance with ERISA section 107, records showing how the estimate was determined.

*Willful failure to report is a criminal offense. See ERISA section 501.*

**Lines 4g and 4h.** *Current value* means fair market value where available. Otherwise, it means the fair value as determined in good faith under the terms of the plan by a trustee or a named fiduciary, assuming an orderly liquidation at the time of the determination. See ERISA section 3(26).

An accurate assessment of fair market value is essential to a pension plan's ability to comply with the requirements set forth in the Code (e.g., the exclusive benefit rule of Code section 401(a)(2), the limitations on benefits and contributions under Code section 415, and the minimum funding requirements under Code section 412) and must be determined annually.

Examples of assets that may not have a readily determinable value on an established market (e.g., NYSE, AMEX, over the counter, etc.) include real estate, nonpublicly traded securities, shares in a limited partnership, and collectibles. Do not check "Yes" on line 4g for mutual fund shares or insurance company investment contracts for which the plan receives valuation information at least annually. Also, do not check "Yes" on line 4g if the plan is a defined contribution plan and the only assets the plan holds, that do not have a readily determinable value on an established market, are: **(1)** participant loans not in default, or **(2)** assets over which the participant exercises control within the meaning of section 404(c) of ERISA.

Although the current value of plan assets must be determined each year, there is no requirement that the assets (other than certain nonpublicly traded employer securities held in ESOPs) be valued every year by independent third-party appraisers.

Enter in the amount column the fair market value of the assets referred to on line 4g whose value was not readily determinable on an established market and which were not valued by an independent third-party appraiser in the plan year. Generally, as it relates to these questions, an appraisal by an independent third party is an evaluation of the value of an asset prepared by an individual or firm who knows how to judge the value of such assets and does not have an ongoing relationship with the plan or plan fiduciaries except for preparing the appraisals.

**Line 4i.** Check "Yes" if the plan had any assets held for investment purposes, and attach a schedule of assets held for investment purposes at end of year, a schedule of assets held for investment purposes that were both acquired and disposed of within the plan year, or both, as applicable. The schedules must use the format set forth below or a similar format. See 29 CFR 2520.103-11.

Assets held for investment purposes shall include:

- Any investment asset held by the plan on the last day of the plan year; and
- Any investment asset purchased during the plan year and sold before the end of the plan year except:

1. Debt obligations of the U.S. or any U.S. agency.
2. Interests issued by a company registered under the Investment Company Act of 1940 (e.g., a mutual fund).
3. Bank certificates of deposit with a maturity of one year or less.
4. Commercial paper with a maturity of 9 months or less if it is valued in the highest rating category by at least two nationally recognized statistical rating services and is issued by a company required to file reports with the Securities and Exchange Commission under section 13 of the Securities Exchange Act of 1934.
5. Participations in a bank common or collective trust.
6. Participations in an insurance company pooled separate account.
7. Securities purchased from a broker-dealer registered under the Securities Exchange Act of 1934 and either: **(1)** listed on a national securities exchange and registered under section 6 of the Securities Exchange Act of 1934 or **(2)** quoted on NASDAQ.

Assets held for investment purposes shall not include any investment that was not held by the plan on the last day of the plan year if that investment is reported in the annual report for that plan year in any of the following:

1. The schedule of loans or fixed income obligations in default required by Schedule G, Part I;
2. The schedule of leases in default or classified as uncollectible required by Schedule G, Part II;
3. The schedule of nonexempt transactions required by Schedule G, Part III; or
4. The schedule of reportable transactions required by Schedule H, line 4j.

**Line 4i schedules.** The first schedule required to be attached is a schedule of all assets held for investment purposes at the end of the plan year, aggregated and identified by issue, maturity date, rate of interest, collateral, par or maturity value, cost and current value, and, in the case of a loan, the payment schedule.

In column (a), place an asterisk (*) on the line of each identified person known to be a party-in-interest to the plan. In column (c), include any restriction on transferability of corporate securities. (Include lending of securities permitted under Prohibited Transactions Exemption 81-6.)

This schedule must be clearly labeled **"Schedule H, line 4i—Schedule of Assets (Held At End of Year)."**

| **(a)** | **(b)** Identity of issue, borrower, lessor, or similar party | **(c)** Description of investment including maturity date, rate of interest, collateral, par, or maturity value | **(d)** Cost | **(e)** Current value |
|---|---|---|---|---|
| | | | | |
| | | | | |

The second schedule required to be attached is a schedule of investment assets that were both acquired and disposed of within the plan year. This schedule must be clearly labeled **"Schedule H, line 4i—Schedule of Assets (Acquired and Disposed of Within Year)."**

| **(a)** Identity of issue, borrower, lessor, or similar party | **(b)** Description of investment including maturity date, rate of interest, collateral, par, or maturity value | **(c)** Cost of acquisitions | **(d)** Proceeds of dispositions |
|---|---|---|---|
| | | | |
| | | | |

**Notes: (1)** *Participant loans under an individual account plan with investment experience segregated for each account, that are made in accordance with 29 CFR 2550.408b-1 and that are secured solely by a portion of the participant's vested accrued benefit, may be aggregated for reporting purposes in line 4i. Under identity of borrower enter "Participant loans," under rate of interest enter the lowest rate and the highest rate charged during the plan year (e.g., 8%–10%), under the cost and proceeds columns enter zero, and under current value enter the total amount of these loans.* ***(2)*** *Column (d) cost information for the* ***Schedule of Assets (Held At End of Year)*** *and the column (c) cost of acquisitions information for the* ***Schedule of Assets (Acquired and Disposed of Within Year)*** *may be omitted when reporting investments of an individual account plan that a participant or beneficiary directed with respect to assets allocated to his or her account (including a negative election authorized under the terms of the plan). Likewise, cost information for investments in Code sections 403(b)(1) annuity contracts and 403(b)(7) custodial accounts may also be omitted.* ***(3)*** *Participant-directed brokerage account assets reported in the aggregate on line 1c(15) must be treated as one asset held for investment for purposes of the line 4i schedules, except investments in tangible personal property must continue to be reported as separate assets on the line 4i schedules. Investments in Code section 403(b) annuity contracts and Code section 403(b)(7) custodial accounts should also be treated as one asset held for investment for purposes on the line 4i schedules.*

**Line 4j.** Check "Yes" and attach to the Form 5500 the following schedule if the plan had any reportable transactions (see 29 CFR 2520.103-6 and the examples provided in the regulation). The schedule must use the format set forth below or a similar format. See 29 CFR 2520.103-11.

A *reportable transaction* includes:

1. A single transaction within the plan year in excess of 5% of the current value of the plan assets;

2. Any series of transactions with or in conjunction with the same person, involving property other than securities, which amount in the aggregate within the plan year (regardless of the category of asset and the gain or loss on any transaction) to more than 5% of the current value of plan assets;

3. Any transaction within the plan year involving securities of the same issue if within the plan year any series of transactions with respect to such securities amount in the aggregate to more than 5% of the current value of the plan assets; and

4. Any transaction within the plan year with respect to securities with, or in conjunction with, a person if any prior or subsequent single transaction within the plan year with such person, with respect to securities, exceeds 5% of the current value of plan assets.

The 5% figure is determined by comparing the current value of the transaction at the transaction date with the current value of the plan assets at the beginning of the plan year. If this is the initial plan year, you may use the current value of the plan assets at the end of the plan year to determine the 5% figure.

If the assets of two or more plans are maintained in one trust, except as provided below, the plan's allocable portion of the transactions of the trust shall be combined with the other transactions of the plan, if any, to determine which transactions (or series of transactions) are reportable (5%) transactions.

For investments in common/collective trusts (CCTs), pooled separate accounts (PSAs), 103-12 IEs, and registered investment companies, determine the 5% figure by comparing the transaction date value of the acquisition and/or disposition of units of participation or shares in the entity with the current value of the plan assets at the beginning of the plan year. If the Schedule H is attached to a Form 5500 filed for a plan with all plan funds held in a master trust, check "No" on line 4j. Plans with assets in a master trust that have other transactions should determine the 5% figure by subtracting the current value of plan assets held in the master trust from the current value of all plan assets at the beginning of the plan year and check "Yes" or "No," as appropriate. Do not include individual transactions of (CCTs), (PSAs), master trust investment accounts (MTIAs), 103-12 IEs, and registered investment companies in which this plan or DFE invests.

In the case of a purchase or sale of a security on the market, do not identify the person from whom purchased or to whom sold.

***Special rule for certain participant-directed transactions.*** *Transactions under an individual account plan that a participant or beneficiary directed with respect to assets allocated to his or her account (including a negative election authorized under the terms of the plan) should not be treated for purposes of line 4j as reportable transactions. The current value of all assets of the plan, including these participant-directed transactions, should be included in determining the 5% figure for all other transactions.*

**Line 4k.** Check "Yes" if all the plan assets (including insurance/annuity contracts) were distributed to the participants and beneficiaries, legally transferred to the control of another plan, or brought under the control of the PBGC.

Check "No" for a welfare benefit plan that is still liable to pay benefits for claims incurred before the termination date, but not yet paid. See 29 CFR 2520.104b-2(g)(2)(ii).

**Line 4l.** You must check "Yes" if any benefits due under the plan were not timely paid or not paid in full. Include in this amount the total of any outstanding amounts that were not paid when due in previous years that have continued to remain unpaid.

**Line 4m.** Check "Yes" if there was a "blackout period." A blackout period is a temporary suspension of more than three (3) consecutive business days during which participants or beneficiaries of a 401(k) or other individual account pension plan were unable to, or were limited or restricted in their ability to, direct or diversify assets credited to their accounts, obtain loans from the plan, or obtain distributions from the plan. A "blackout period" generally does not include a temporary suspension of the right of participants and beneficiaries to direct or diversity assets credited to their accounts, obtain loans from the plan, or obtain distributions from the plan if the temporary suspension is: (1) part of the regularly scheduled operations of the plan that has been disclosed to participants and beneficiaries; (2) due to a qualified domestic relations order (QDRO) or because of a pending determination as to whether a domestic relations order is a QDRO; (3) due to an action or a failure to take action by an individual participant or because of an action or claim by someone other than the plan regarding a participant's individual account; or (4) by application of federal securities laws. For more information, see 29 CFR 2520.101-3 (available at *www.dol/gov/ebsa*).

**Line 4j schedule.** The schedule required to be attached is a schedule of reportable transactions that must be clearly labeled **"Schedule H, line 4j – Schedule of Reportable Transactions."**

| **(a)** Identity of party involved | **(b)** Description of asset (include interest rate and maturity in case of a loan) | **(c)** Purchase price | **(d)** Selling price | **(e)** Lease rental | **(f)** Expense incurred with transaction | **(g)** Cost of asset | **(h)** Current value of asset on transaction date | **(i)** Net gain or (loss) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Ex. AA
894

**Line 4n.** If there was a blackout period, did you provide the required notice not less than 30 days nor more than 60 days in advance of restricting the rights of participants and beneficiaries to change their plan investments, obtain loans from the plan, or obtain distributions from the plan? If so, check "Yes." See 29 CFR 2520.101-3 for specific notice requirements and for exceptions from the notice requirement. Also, answer "Yes" if one of the exceptions to the notice requirement under 29 CFR 2520.101-3 applies.

**Line 5a.** Check "Yes" if a resolution to terminate the plan was adopted during this or any prior plan year, unless the termination was revoked and no assets reverted to the employer. If "Yes" is checked, enter the amount of plan assets that reverted to the employer during the plan year in connection with the implementation of such termination. Enter "0" if no reversion occurred during the current plan year.

*A Form 5500 must be filed for each year the plan has assets, and, for a welfare benefit plan, if the plan is still liable to pay benefits for claims incurred before the termination date, but not yet paid. See 29 CFR 2520.104b-2(g)(2)(ii).*

**Line 5b.** Enter information concerning assets and/or liabilities transferred from this plan to another plan(s) (including spinoffs) during the plan year. A transfer of assets or liabilities occurs when there is a reduction of assets or liabilities with respect to one plan and the receipt of these assets or the assumption of these liabilities by another plan. Enter the name, EIN, and PN for the transferee plan(s) involved on lines 5b(1), (2), and (3).

Do not use a social security number in lieu of an EIN or include an attachment that contains visible social security numbers. The Schedule H is open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule H or the inclusion of a visible social security number on an attachment may result in the rejection of the filing.

**Note.** A distribution of all or part of an individual participant's account balance that is reportable on Form 1099-R should not be included on line 5b. Do not submit Form 1099-R with the Form 5500.

*IRS **Form 5310-A**, Notice of Plan Merger or Consolidation, Spinoff, or Transfer of Plan Assets or Liabilities; Notice of Qualified Separate Lines of Business, may be required to be filed at least 30 days before any plan merger or consolidation or any transfer of plan assets or liabilities to another plan. There is a penalty for not filing IRS Form 5310-A on time. In addition, a transfer of benefit liabilities involving a plan covered by PBGC insurance may be reportable to the PBGC. See PBGC Form 10, Post-Event Notice of Reportable Events, and PBGC Form 10-Advance, Advance Notice of Reportable Events.*

# 2010 Instructions for Schedule I (Form 5500)
# *Financial Information – Small Plan*

## General Instructions

### Who Must File

Schedule I (Form 5500) must be attached to a Form 5500 filed for pension benefit plans and welfare benefit plans that covered fewer than 100 participants as of the beginning of the plan year and that are not eligible to file Form 5500-SF.

**Note.** If a Schedule I was filed for the plan for the 2009 plan year and the plan covered fewer than 121 participants as of the beginning of the 2010 plan year, the Schedule I may be completed instead of a Schedule H.

**Exception.** Certain insured, unfunded or combination unfunded/insured welfare plans are exempt from filing the Form 5500 and the Schedule I. In addition, certain fully insured pension benefit plans are exempt from completing the Schedule I. See the Form 5500 instructions for *Who Must File* and *Limited Pension Plan Reporting* for more information.

Check the Schedule I box on the Form 5500 (Part II, line 10b(2)) if a Schedule I is attached to the Form 5500. Do not attach both a Schedule I and a Schedule H to the same Form 5500.

### Specific Instructions

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule I is attached.

Do not use a social security number in Line D in lieu of an EIN. The Schedule I and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule I or any of its attachments may result in the rejection of the filing.

You can apply for and EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement* under *General Instructions to Form 5500.* The EBSA does not issue EINs.

**Note.** Use the cash, modified cash, or accrual basis for recognition of transactions, as long as you use one method consistently. Round off all amounts reported on the Schedule I to the nearest dollar. Any other amounts are subject to rejection. Check all subtotals and totals carefully.

If the assets of two or more plans are maintained in one fund, such as when an employer has two plans funded through a single trust (except a DFE), complete Parts I and II by entering the plan's allocable part of each line item.

If assets of one plan are maintained in two or more trust funds, report the combined financial information in Part I.

*Current value* means fair market value where available. Otherwise, it means the fair value as determined in good faith under the terms of the plan by a trustee or a named fiduciary, assuming an orderly liquidation at time of the determination. See ERISA section 3(26).

### Part I - Small Plan Financial Information

Amounts reported on lines 1a, 1b, and 1c for the beginning of the plan year must be the same as reported for the end of the plan year for corresponding lines on the return/report for the preceding plan year.

Do not include contributions designated for the 2009 plan year in column (a).

**Line 1a.** A plan with assets held in common/collective trusts (CCTs), pooled separate accounts (PSAs), master trust investment accounts (MTIAs), and/or 103-12 IEs must also attach Schedule D.

Use the same method for determining the value of the plan's interest in an insurance company general account (unallocated contracts) that you used for line 4 of Schedule A, or, if line 4 is not required, line 7 of Schedule A.

**Note.** Do not include in column (b) a participant loan that has been deemed distributed during the plan year under the provisions of Code section 72(p) and Treasury Regulations section 1.72(p)-1, if both of the following circumstances apply:

1. Under the plan, the participant loan is treated as a directed investment solely of the participant's individual account; and
2. As of the end of the plan year, the participant is not continuing repayment under the loan.

If the deemed distributed participant loan is included in column **(a)** and both of these circumstances apply, report the loan as a deemed distribution on line 2g. However, if either of these circumstances does not apply, the current value of the participant loan (including interest accruing thereon after the deemed distribution) should be included in column **(b)** without regard to the occurrence of a deemed distribution.

After a participant loan that has been deemed distributed is reported on line 2g, it is no longer to be reported as an asset on Schedule H or Schedule I unless, in a later year, the participant resumes repayment under the loan. However, such a loan (including interest accruing thereon after the deemed distribution) that has not been repaid is still considered outstanding for purposes of applying Code section 72(p)(2)(A) to determine the maximum amount of subsequent loans. Also, the deemed distribution is not treated as an actual distribution for other purposes, such as the qualification requirements of Code section 401, including, for example, the determination of top-heavy status under Code section 416 and the vesting requirements of Treasury Regulations section 1.411(a)-7(d)(5). See Q&As 12 and 19 of Treasury Regulations section 1.72(p)-1.

The entry on line 1a, column (b), of Schedule I (plan assets - end of year) or on line 1c(8), column (b), of Schedule H (participant loans - end of year) must include the current value of any participant loan reported as a deemed distribution on line 2g for any earlier year if, during the plan year, the participant resumes repayment under the loan. In addition, the amount to be entered on line 2g must be reduced by the amount of the participant loan reported as a deemed distribution on line 2g for the earlier year.

**Line 1b.** Enter the total liabilities at the beginning and end of the plan year. Liabilities to be entered here do not include the value of future pension payments to plan participants. However, the amount to be entered in line 1b for accrual basis filers includes, among other things:

1. Benefit claims that have been processed and approved for payment by the plan but have not been paid (including all incurred but not reported welfare benefit claims);
2. Accounts payable obligations owed by the plan that were incurred in the normal operations of the plan but have not been paid; and
3. Other liabilities such as acquisition indebtedness and any other amount owed by the plan.

Ex. AA
896

**Line 1c.** Enter the net assets as of the beginning and end of the plan year. (Subtract line 1b from 1a.) Line 1c, column (b) must equal the sum of line 1c, column (a) plus lines 2j and 2k.

**Line 2a.** Include the total cash contributions received and/or (for accrual basis plans) due to be received.

**Line 2a(1).** Plans using the accrual basis of accounting must not include contributions designated for years before the 2010 plan year on line 2a(1).

**Line 2a(2).** For welfare plans, report all employee contributions, including all elective contributions under a cafeteria plan (Code section 125). For pension benefit plans, participant contributions, for purposes of this item, also include elective contributions under a qualified cash or deferred arrangement (Code section 401(k)).

**Line 2b.** Use the current value, at date contributed, of securities or other noncash property.

**Line 2c.** Enter all other plan income for the plan year. Do not include transfers from other plans that are reported on line 2l. Other income received and/or receivable would include:

1. Interest on investments (including money market accounts, sweep accounts, STIF accounts, etc.).
2. Dividends. (Accrual basis plans should include dividends declared for all stock held by the plan even if the dividends have not been received as of the end of the plan year.)
3. Rents from income-producing property owned by the plan.
4. Royalties.
5. Net gain or loss from the sale of assets.
6. Other income, such as unrealized appreciation (depreciation) in plan assets.

To compute this amount subtract the current value of all assets at the beginning of the year plus the cost of any assets acquired during the plan year from the current value of all assets at the end of the year minus assets disposed of during the plan year.

**Line 2d.** Enter the total of all cash contributions (lines 2a(1) through (3)), noncash contributions (line 2b), and other plan income (line 2c) during the plan year. If entering a negative number, enter a minus sign "-" to the left of the number.

**Line 2e.** Include: **(1)** payments made (and for accrual basis filers payments due) to or on behalf of participants or beneficiaries in cash, securities, or other property (including rollovers of an individual's accrued benefit or account balance). Include all eligible rollover distributions as defined in Code section 401(a)(31)(D) paid at the participant's election to an eligible retirement plan (including an IRA within the meaning of Code section 401(a)(31)(E)); **(2)** payments to insurance companies and similar organizations such as Blue Cross, Blue Shield, and health maintenance organizations for the provision of plan benefits (e.g., paid-up annuities, accident insurance, health insurance, vision care, dental coverage, etc.); and **(3)** payments made to other organizations or individuals providing benefits. Generally, these payments discussed in (3) are made to individual providers of welfare benefits such as legal services, day care services, and training and apprenticeship services. If securities or other property are distributed to plan participants or beneficiaries, include the current value on the date of distribution.

**Line 2f.** Include on this line all distributions paid during the plan year of excess deferrals under Code section 402(g)(2)(A)(ii), excess contributions under Code section 401(k)(8), and excess aggregate contributions under Code section 401(m)(6). Include allocable income distributed. Also include on this line any elective deferrals and employee contributions distributed or returned to employees during the plan year, as well as any attributable income that was also distributed.

**Line 2g.** Report on line 2g a participant loan included in line 1a, column (a) (participant loans - beginning of year) and that has been deemed distributed during the plan year under the provisions of Code section 72(p) and Treasury Regulations section 1.72(p)-1 only if both of the following circumstances apply:

1. Under the plan, the participant loan is treated as a directed investment solely of the participant's individual account; and
2. As of the end of the plan year, the participant is not continuing repayment under the loan.

If either of these circumstances does not apply, a deemed distribution of a participant loan should not be reported on line 2g. Instead, the current value of the participant loan (including interest accruing thereon after the deemed distribution) should be included on line 1a, column (b) (plan assets – end of year), without regard to the occurrence of a deemed distribution.

**Note.** The amount to be reported on line 2g of Schedule H or Schedule I must be reduced if, during the plan year, a participant resumes repayment under a participant loan reported as a deemed distribution on line 2g for any earlier year. The amount of the required reduction is the amount of the participant loan reported as a deemed distribution on line 2g for the earlier year. If entering a negative number, enter a minus sign "-" to the left of the number. The current value of the participant loan must then be included in line 1c(8), column (b), of Schedule H (participant loans – end of year) or in line 1a, column (b), of Schedule I (plan assets – end of year).

Although certain participant loans deemed distributed are to be reported on line 2g of the Schedule H or Schedule I, and are not to be reported on the Schedule H or Schedule I as an asset thereafter (unless the participant resumes repayment under the loan in a later year), they are still considered outstanding loans and are not treated as actual distributions for certain purposes. See Q&As 12 and 19 of Treasury Regulations section 1.72(p)-1.

**Line 2h.** The amount to be reported for expenses involving administrative service providers (salaries, fees, and commissions) includes the total fees paid (or in the case of accrual basis plans, costs incurred during the plan year but not paid as of the end of the plan year) by the plan for, among others:

1. Salaries to employees of the plan;
2. Fees and expenses for accounting, actuarial, legal, investment management, investment advice, and securities brokerage services;
3. Contract administrator fees;
4. Fees and expenses for individual plan trustees, including reimbursement for travel, seminars, and meeting expenses; and
5. Fees and expenses paid for valuations and appraisals of real estate and closely held securities.

**Line 2i.** Other expenses (paid and/or payable) include other administrative and miscellaneous expenses paid by or charged to the plan, including among others, office supplies and equipment, telephone, postage, rent and expenses associated with the ownership of a building used in operation of the plan.

**Line 2j.** Enter the total of all benefits paid or due as reported on lines 2e, 2f, and 2g and all other plan expenses (lines 2h and 2i) during the year.

Ex. AA
897

**Line 2l.** Enter the net value of all assets transferred to and from the plan during the plan year including those resulting from mergers and spinoffs. A transfer of assets or liabilities occurs when there is a reduction of assets or liabilities with respect to one plan and the receipt of these assets or the assumption of these liabilities by another plan. Transfers out at the end of the year should be reported as occurring during the plan year.

**Note.** A distribution of all or part of an individual participant's account balance that is reportable on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., should not be included on line 2l but must be included in benefit payments reported on line 2e. Do not submit IRS Form 1099-R with Form 5500.

**Lines 3a through 3g.** You must check either "Yes" or "No" on each line to report whether the plan held any assets in the listed categories at any time during the plan year. If "Yes" is checked on any line, enter in the amount column for that line the current value of the assets held at the end of the plan year or "0" if no assets remain in the category at the end of the plan year. You should allocate the value of the plan's interest in a commingled trust containing the assets of more than one plan on a line-by-line basis, except do not include on lines 3a through 3g the value of the plan's interest in any CCT, PSA, MTIA, or 103-12 IE (see instructions definitions of CCT, PSA, MTIA, and 103-12 IE).

**Line 3a.** Enter the value of the plan's participation in a partnership or joint venture, unless the partnership or joint venture is a 103-12 IE.

**Line 3b.** The term "employer real property" means real property (and related personal property) that is leased to an employer of employees covered by the plan, or to an affiliate of such employer. For purposes of determining the time at which a plan acquires employer real property for purposes of this line, such property shall be deemed to be acquired by the plan on the date on which the plan acquires the property or on the date on which the lease to the employer (or affiliate) is entered into, whichever is later.

**Line 3d.** An employer security is any security issued by an employer (including affiliates) of employees covered by the plan. These may include common stocks, preferred stocks, bonds, zero coupon bonds, debentures, convertible debentures, notes and commercial paper.

**Line 3e.** Enter the current value of all loans to participants including residential mortgage loans that are subject to Code section 72(p). Include the sum of the value of the unpaid principal balances, plus accrued but unpaid interest, if any, for participant loans made under an individual account plan with investment experience segregated for each account, that are made in accordance with 29 CFR 2550.408b-1 and secured solely by a portion of the participant's vested accrued benefit. When applicable, combine this amount with the current value of any other participant loans. Do not include any amount of a participant loan deemed distributed during the plan year under the provisions of Code section 72(p) and Treasury Regulations section 1.72(p)-1, if both of the following circumstances apply:

1. Under the plan, the participant loan is treated as a directed investment solely of the participant's individual account; and
2. As of the end of the plan year, the participant is not continuing repayment under the loan,

If both of these circumstances apply, report the loan as a deemed distribution on line 2g. However, if either of these circumstances does not apply, the current value of the participant loan (including interest accruing thereon after the deemed distribution) should be included on line 3e without regard to the occurrence of a deemed distribution.

**Note.** After participant loans have been deemed distributed and reported on line 2g of the Schedule I or H, they are no longer required to be reported as assets on the Schedule I or H. However, such loans (including interest accruing thereon after the deemed distribution) that have not been repaid are still considered outstanding for purposes of applying Code section 72(p)(2)(A) to determine the maximum amount of subsequent loans. Also, the deemed distribution is not treated as an actual distribution for other purposes, such as the qualification requirements of Code section 401, including, for example, the determination of top-heavy status under Code section 416 and the vesting requirements of Treasury Regulations section 1.411(a)-7(d)(5). See Q&As 12 and 19 of Treasury Regulations section 1.72(p)-1.

**Line 3f.** Enter the current value of all loans made by the plan, except participant loans reportable on line 3e. Include the sum of the value of loans for construction, securities loans, commercial and/or residential mortgage loans that are not subject to Code section 72(p) (either by making or participating in the loans directly or by purchasing loans originated by a third party), and other miscellaneous loans.

**Line 3g.** Include all property that has concrete existence and is capable of being processed, such as goods, wares, merchandise, furniture, machines, equipment, animals, automobiles, etc. This includes collectibles, such as works of art, rugs, antiques, metals, gems, stamps, coins, alcoholic beverages, musical instruments, and historical objects (documents, clothes, etc.). Do not include the value of a plan's interest in property reported on lines 3a through 3f, or intangible property, such as patents, copyrights, goodwill, franchises, notes, mortgages, stocks, claims, interests, or other property that embodies intellectual or legal rights.

### Part II - Compliance Questions

Answer all lines either "Yes" or "No." Do not leave any answer blank, unless otherwise directed. For lines 4a through 4i and line 4l, if the answer is "Yes," an amount must be entered. If you check "No" on line 4k you must attach the report of an independent qualified public accountant (IQPA) or a statement that the plan is eligible and elects to defer attaching the IQPA's opinion pursuant to 29 CFR 2520.104-50 in connection with a short plan year of seven months or less. Plans with all of their fund held in a master trust should check "No" on Schedule I, lines 4b, c, and i.

**Line 4a.** Amounts paid by a participant or beneficiary to an employer and/or withheld by an employer for contribution to the plan are participant contributions that become plan assets as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets (see 29 CFR 2510.3-102). Plans that check "Yes" must enter the aggregate amount of all late contributions for the year. The total amount of the delinquent contributions must be included on line 4a of the Schedule H or I, as applicable, for the year in which the contributions were delinquent and must be carried over and reported again on line 4a of the Schedule H or I, as applicable, for each subsequent year until the year after the violation has been fully corrected, which correction includes payment of the late contributions and reimbursement of the plan for lost earnings or profits. If no participant contributions were received or withheld by the employer during the plan year, answer "No."

Ex. AA
898

An employer holding these assets after that date commingled with its general assets will have engaged in a prohibited use of plan assets (see ERISA section 406). If such a nonexempt prohibited transaction occurred with respect to a disqualified person (see Code section 4975(e)(2)), file IRS **Form 5330**, Return of Excise Taxes Related to Employee Benefit Plans, with the IRS to pay any applicable excise tax on the transaction.

Participant loan repayments paid to and/or withheld by an employer for purposes of transmittal to the plan that were not transmitted to the plan in a timely fashion must be reported either on line 4a in accordance with the reporting requirements that apply to delinquent participant contributions or on line 4d. See Advisory Opinion 2002-02A, available at *www.dol.gov/ebsa.*

TIP *For those Schedule I filers required to submit an IQPA report, delinquent participant contributions reported on line 4a must be treated as part of the separate schedules referenced in ERISA section 103(a)(3)(A) and 29 CFR 2520.103-1(b) and 2520.103-2(b) for purposes of preparing the IQPA's opinion even though they are not required to be listed on Part III of the Schedule G. If the information contained on line 4a is not presented in accordance with regulatory requirements, i.e., when the IQPA concludes that the scheduled information required by line 4a does not contain all the required information or contains information that is inaccurate or is inconsistent with the plan's financial statements, the IQPA report must make the appropriate disclosures in accordance with generally accepted auditing standards. For more information, see EBSA's Frequently Asked Questions about Reporting Delinquent Contributions on the Form 5500, available on the Internet at* www.dol.gov/ebsa. *These Frequently Asked Questions clarify that plans have an obligation to include delinquent participant contributions on their financial statements and supplemental schedules and that the IQPA's report covers such delinquent contributions even though they are no longer required to be included on Part III of the Schedule G. Although all delinquent participant contributions must be reported on line 4a, delinquent contributions for which the DOL Voluntary Fiduciary Correction Program (VFCP) requirements and the conditions of the Prohibited Transaction Exemption (PTE) 2002-51 have been satisfied do not need to be treated as nonexempt party-in-interest transactions.*

*The VFCP describes how to apply, the specific transactions covered (which transactions include delinquent participant contributions to pension and welfare plans), and acceptable methods for correcting violations. In addition, applicants that satisfy both the VFCP requirements and the conditions of Prohibited Transaction Exemption (PTE) 2002-51 are eligible for immediate relief from payment of certain prohibited transaction excise taxes for certain corrected transactions, and are also relieved from the obligation to file the IRS Form 5330 with the IRS. For more information, see 71 Fed. Reg. 20261 (Apr. 19, 2006) and 71 Fed. Reg. 20135 (Apr. 19, 2006). All delinquent participant contributions must be reported on line 4a even if violations have been corrected. Information about the VFCP is also available on the Internet at* www.dol.gov/ebsa.

**Line 4a Schedule.** Attach a Schedule of Delinquent Participant Contributions using the format below if you entered "Yes" on line 4a and you are checking "No" on line 4k because you are not claiming the audit waiver for the plan. If you choose to include participant loan repayments on line 4a, you must apply the same supplemental schedule and IQPA disclosure requirements to the loan repayments as apply to delinquent transmittals of participant contributions.

**Schedule I Line 4a — Schedule of Delinquent Participant Contributions**

| Participant Contributions Transferred Late to Plan | Total that Constitute Nonexempt Prohibited Transactions | | | Total Fully Corrected Under VFCP and PTE 2002-51 |
|---|---|---|---|---|
| Check here if Late Participant Loan Repayments are included: ☐ | Contributions Not Corrected | Contributions Corrected Outside VFCP | Contributions Pending Correction in VFCP | |

**Line 4b.** Plans that check "Yes" must enter the amount. The due date, payment amount and conditions for determining default of a note or loan are usually contained in the documents establishing the note or loan. A loan by the plan is in default when the borrower is unable to pay the obligation upon maturity. Obligations that require periodic repayment can default at any time. Generally, loans and fixed income obligations are considered uncollectible when payment has not been made and there is little probability that payment will be made. A fixed income obligation has a fixed maturity date at a specified interest rate. Do not include participant loans made under and individual account plan with investment experience segregated for each account that were made in accordance with 29 CFR 2550.408b-1 and secured solely by a portion of the participant's vested accrued benefit.

**Line 4c.** Plans that check "Yes" must enter the amount. A lease is an agreement conveying the right to use property, plant or equipment for a stated period. A lease is in default when the required payment(s) has not been made. An uncollectible lease is one where the required payments have not been made and for which there is little probability that payment will be made.

**Line 4d.** Plans that check "Yes" must enter the amount. Check "Yes" if any nonexempt transaction with a party-in-interest occurred regardless of whether the transaction is disclosed in the IQPA's report. Do not check "Yes" with respect to transactions that are: **(1)** statutorily exempt under Part 4 of Title I of ERISA; **(2)** administratively exempt under ERISA section 408(a); **(3)** exempt under Code sections 4975(c) or 4975(d); **(4)** the holding of participant contributions in the employer's general assets for a welfare plan that meets the conditions of ERISA Technical Release 92-01; **(5)** a transaction of a 103-12 IE with parties other than the plan; or **(6)** delinquent participant contributions or delinquent participant loan repayments reported on line 4a. You may indicate that an application for an administrative exemption is pending. If you are unsure whether a transaction is exempt or not, you should consult with either a qualified public accountant, legal counsel or both. If the plan is a qualified pension plan and a nonexempt prohibited transaction occurred with respect to a disqualified person, an IRS Form 5330 should be filed with the IRS to pay the excise tax on the transaction.

*Applicants that satisfy the VFCP requirements and the conditions of PTE 2002-51 (see the instructions for line 4a) are eligible for immediate relief from payment of certain prohibited transaction excise taxes for certain corrected transactions, and are also relieved from the obligation to file the Form 5330 with the IRS. For more information, see 71 Fed. Reg. 20261 (Apr. 19, 2006) and 71 Fed. Reg. 20135 (Apr. 19, 2006). When the conditions of PTE 2002-51 have been satisfied, the corrected transactions should*

*be treated as exempt under Code section 4975(c) for the purposes of answering line 4d.*

***Party-in-Interest.*** For purposes of this form, party-in-interest is deemed to include a disqualified person. See Code section 4975(e)(2). The term "party-in-interest" means, as to an employee benefit plan:

**A.** Any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of the plan;
**B.** A person providing services to the plan;
**C.** An employer, any of whose employees are covered by the plan;
**D.** An employee organization, any of whose members are covered by the plan;
**E.** An owner, direct or indirect, of 50% or more of: **(1)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, **(2)** the capital interest or the profits interest of a partnership, or **(3)** the beneficial interest of a trust or unincorporated enterprise that is an employer or an employee organization described in C or D;
**F.** A relative of any individual described in A, B, C, or E;
**G.** A corporation, partnership, or trust or estate of which (or in which) 50% or more of: **(1)** the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, **(2)** the capital interest or profits interest of such partnership, or **(3)** the beneficial interest of such trust or estate is owned directly or indirectly, or held by, persons described in A, B, C, D, or E;
**H.** An employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10% or more shareholder, directly or indirectly, of a person described in B, C, D, E, or G, or of the employee benefit plan; or
**I.** A 10% or more (directly or indirectly in capital or profits) partner or joint venturer of a person described in B, C, D, E, or G.

***Nonexempt transactions*** with a party-in-interest include any direct or indirect:

**A.** Sale or exchange, or lease, of any property between the plan and a party-in-interest.
**B.** Lending of money or other extension of credit between the plan and a party-in-interest.
**C.** Furnishing of goods, services, or facilities between the plan and a party-in-interest.
**D.** Transfer to, or use by or for the benefit of, a party-in-interest, of any income or assets of the plan.
**E.** Acquisition, on behalf of the plan, of any employer security or employer real property in violation of ERISA section 407(a).
**F.** Dealing with the assets of the plan for a fiduciary's own interest or own account.
**G.** Acting in a fiduciary's individual or any other capacity in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries.
**H.** Receipt of any consideration for his or her own personal account by a party-in-interest who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

**Line 4e.** Plans that check "Yes" must enter the aggregate amount of fidelity bond coverage for all claims. Check "Yes" only if the plan itself (as opposed to the plan sponsor or administrator) is a named insured under a fidelity bond from an approved surety covering plan officials and that protects the plan from losses due to fraud or dishonesty as described in 29 CFR Part 2580. Generally, every plan official of an employee benefit plan who "handles" funds or other property of such plan must be bonded. Generally, a person shall be deemed to be "handling" funds or other property of a plan, so as to require bonding, whenever his or her duties or activities with respect to given funds are such that there is a risk that such funds could be lost in the event of fraud or dishonesty on the part of such person, acting either alone or in collusion with others. Section 412 of ERISA and 29 CFR Part 2580 describe the bonding requirements, including the definition of "handling" (29 CFR 2580.412-6), the permissible forms of bonds (29 CFR 2580.412-10), the amount of the bond (29 CFR Part 2580, subpart C), and certain exemptions such as the exemption for unfunded plans, certain banks and insurance companies (ERISA section 412), and the exemption allowing plan officials to purchase bonds from surety companies authorized by the Secretary of the Treasury as acceptable reinsurers on federal bonds (29 CFR 2580.412-23). Information concerning the list of approved sureties and reinsurers is available on the Internet at *www.fms.treas.gov/c570*. For more information on the fidelity bonding requirements, see Field Assistance Bulletin 2008-04, available on the Internet at *www.dol.gov/ebsa*.

**Note.** Plans are permitted under certain conditions to purchase fiduciary liability insurance. These fiduciary liability insurance policies are not written specifically to protect the plan from losses due to dishonest acts and cannot be reported as fidelity bonds on line 4e.

**Line 4f.** Check "Yes," if the plan had suffered or discovered any loss as a result of any dishonest or fraudulent act(s) even if the loss was reimbursed by the plan's fidelity bond or from any other source. If "Yes" is checked enter the full amount of the loss. If the full amount of the loss has not yet been determined, provide an estimate as determined in good faith by a plan fiduciary. You must keep, in accordance with ERISA section 107, records showing how the estimate was determined.

*Willful failure to report is a criminal offense. See ERISA section 501.*

**Lines 4g and 4h.** *Current value* means fair market value where available. Otherwise, it means the fair value as determined in good faith under the terms of the plan by a trustee or a named fiduciary, assuming an orderly liquidation at time of the determination. See ERISA section 3(26).

An accurate assessment of fair market value is essential to a pension plan's ability to comply with the requirements set forth in the Code (e.g., the exclusive benefit rule of Code section 401(a)(2), the limitations on benefits and contributions under Code section 415, and the minimum funding requirements under Code section 412) and must be determined annually.

Examples of assets that may not have a readily determinable value on an established market (e.g., NYSE, AMEX, over the counter, etc.) include real estate, nonpublicly traded securities, shares in a limited partnership, and collectibles. Do not check "Yes" on line 4g for mutual fund shares or insurance company investment contracts for which the plan receives valuation information at least annually. Also do not check "Yes" on line 4g if the plan is a defined contribution plan and the only assets the plan holds, that do not have a readily determinable value on an established market, are: **(1)** participant loans not in default, or **(2)** assets

Ex. AA
900

over which the participant exercises control within the meaning of section 404(c) of ERISA.

Although the current value of plan assets must be determined each year, there is no requirement that the assets (other than certain nonpublicly traded employer securities held in ESOPs) be valued every year by independent third-party appraisers.

Enter in the amount column the fair market value of the assets referred to on line 4g whose value was not readily determinable on an established market and which were not valued by an independent third-party appraiser in the plan year. Generally, as it relates to these questions, an appraisal by an independent third party is an evaluation of the value of an asset prepared by an individual or firm who knows how to judge the value of such assets and does not have an ongoing relationship with the plan or plan fiduciaries except for preparing the appraisals.

**Line 4i.** Include as a single security all securities of the same issue. An example of a single issue is a certificate of deposit issued by the XYZ Bank on July 1, 2009, which matures on June 30, 2010, and yields 5.5%. For the purposes of line 4i, do not check "Yes" for securities issued by the U.S. Government or its agencies. Also, do not check "Yes" for securities held as a result of participant-directed transactions.

**Line 4j.** Check "Yes" if all the plan assets (including insurance/annuity contracts) were distributed to the participants and beneficiaries, legally transferred to the control of another plan, or brought under the control of the PBGC.

Check "No" for a welfare benefit plan that is still liable to pay benefits for claims that were incurred before the termination date, but not yet paid. See 29 CFR 2520.104b-2(g)(2)(ii).

**Line 4k.** Check "Yes" if you are claiming a waiver of the annual examination and report of an independent qualified public accountant (IQPA) under 29 CFR 2520.104-46. You are eligible to claim the waiver if the Schedule I is being filed for:

1. A small welfare plan, or
2. A small pension plan for a plan year that began on or after April 18, 2001, that complies with the conditions of 29 CFR 2520.104-46 summarized below.

Check "No" and attach the report of the IQPA meeting the requirements of 29 CFR 2520.103-1(b) if you are not claiming the waiver. Also check "No," and attach the required IQPA reports or the required explanatory statement if you are relying on 29 CFR 2520.104-50 in connection with a short plan year of seven months or less. At the top of any attached 2520.104-50 statement, enter **"2520.104-50 Statement, Schedule I, Line 4k."**

For more information on the requirements for deferring an IQPA report pursuant to 29 CFR 2520.104-50 in connection with a short plan year of seven months or less and the contents of the required explanatory statement, see the instructions for Schedule H, line 3d(2) or call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) (toll-free).

**Note.** For plans that check "No," the IQPA report must make the appropriate disclosures in accordance with generally accepted auditing standards if the information reported on line 4a is not presented in accordance with regulatory requirements.

The following summarizes the conditions of 29 CFR 2520.104-46 that must be met for a small pension plan with a plan year beginning on or after April 18, 2001, to be eligible for the waiver. For more information regarding these requirements, see the EBSA's Frequently Asked Questions on the Small Pension Plan Audit Waiver Regulation and 29 CFR

2520.104-46, which are available at *www.dol.gov/ebsa*, or call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) (toll-free)

**Condition 1:** At least 95 percent of plan assets are "qualifying plan assets" as of the end of the preceding plan year, or any person who handles assets of the plan that do not constitute qualifying plan assets is bonded in accordance with the requirements of ERISA section 412 (see the instructions for line 4e), except that the amount of the bond shall not be less than the value of such non-qualifying assets.

The determination of the "percent of plan assets" as of the end of the preceding plan year and the amount of any required bond must be made at the beginning of the plan's reporting year for which the waiver is being claimed. For purposes of this line, you will have satisfied the requirement to make these determinations at the beginning of the plan reporting year for which the waiver is being claimed if they are made as soon after the date when such year begins as the necessary information from the preceding reporting year can practically be ascertained. See 29 CFR 2580.412-11, 14 and 19 for additional guidance on these determinations, and 29 CFR 2580.412-15 for procedures to be used for estimating these amounts if there is no preceding plan year.

The term "qualifying plan assets," for purposes of this line, means:

1. Any assets held by any of the following regulated financial institutions:
   a. A bank or similar financial institution as defined in 29 CFR 2550.408b-4(c);
   b. An insurance company qualified to do business under the laws of a state;
   c. An organization registered as a broker-dealer under the Securities Exchange Act of 1934; or
   d. Any other organization authorized to act as a trustee for individual retirement accounts under Code section 408.
2. Shares issued by an investment company registered under the Investment Company Act of 1940 (e.g., mutual funds);
3. Investment and annuity contracts issued by any insurance company qualified to do business under the laws of a state;
4. In the case of an individual account plan, any assets in the individual account of a participant or beneficiary over which the participant or beneficiary has the opportunity to exercise control and with respect to which the participant or beneficiary is furnished, at least annually, a statement from a regulated financial institution referred to above describing the assets held or issued by the institution and the amount of such assets;
5. Qualifying employer securities, as defined in ERISA section 407(d)(5); and
6. Participant loans meeting the requirements of ERISA section 408(b)(1).

**Condition 2:** The administrator must disclose the following information in the summary annual report (SAR) furnished to participants and beneficiaries, in accordance with 29 CFR 2520.104b-10. For defined benefit pension plans that are required pursuant to section 101(f) of ERISA to furnish an Annual Funding Notice (AFN), the administrator must instead either provide the information to participants and beneficiaries with the AFN or as a stand-alone notification at the time a SAR would have been due and in accordance with the rules for furnishing a SAR, although such plans do not have to furnish a SAR.

1. The name of each regulated financial institution holding or issuing qualifying plan assets and the amount of such

Ex. AA 901

assets reported by the institution as of the end of the plan year (this SAR disclosure requirement does not apply to qualifying employer securities, participant loans and individual account assets described in paragraphs 4,5 and 6 above);

2. The name of the surety company issuing the fidelity bond, if the plan has more than 5% of its assets in non-qualifying plan assets;

3. A notice that participants and beneficiaries may, upon request and without charge, examine or receive from the plan evidence of the required bond and copies of statements from the regulated financial institutions describing the qualifying plan assets; and

4. A notice that participants and beneficiaries should contact the EBSA Regional Office if they are unable to examine or obtain copies of the regulated financial institution statements or evidence of the required bond, if applicable.

A Model Notice that plans can use to satisfy the enhanced SAR (or Annual Funding Notice) disclosure requirements to be eligible for the audit waiver is available as an Appendix to 29 CFR 2520.104-46.

**Condition 3:** In addition, in response to a request from any participant or beneficiary, the administrator, without charge to the participant or beneficiary, must make available for examination, or upon request furnish copies of, each regulated financial institution statement and evidence of any required bond.

***Examples.*** Plan A, which has a plan year that began on or after April 18, 2001, had total assets of $600,000 as of the end of the 2000 plan year that included: investments in various bank, insurance company and mutual fund products of $520,000; investments in qualifying employer securities of $40,000; participant loans (meeting the requirements of ERISA section 408(b)(1)), totaling $20,000; and a $20,000 investment in a real estate limited partnership. Because the only asset of the plan that did not constitute a "qualifying plan asset" is the $20,000 real estate limited partnership investment and that investment represents less than 5% of the plan's total assets, no fidelity bond is required as a condition for the plan to be eligible for the waiver for the 2001 plan year.

Plan B is identical to Plan A except that of Plan B's total assets of $600,000 as of the end of the 2000 plan year, $558,000 constitutes "qualifying plan assets" and $42,000 constitutes non-qualifying plan assets. Because 7% – more than 5% – of Plan B's assets do not constitute "qualifying plan assets," Plan B, as a condition to be eligible for the waiver for the 2001 plan year, must ensure that it has a fidelity bond in an amount equal to at least $42,000 covering persons handling its non-qualifying plan assets. Inasmuch as compliance with ERISA section 412 generally requires the amount of the bond be not less than 10% of the amount of all the plan's funds or other property handled, the bond acquired for ERISA section 412 purposes may be adequate to cover the non-qualifying plan assets without an increase (i.e., if the amount of the bond determined to be needed for the relevant persons for ERISA section 412 purposes is at least $42,000). As demonstrated by the foregoing example, where a plan has more than 5% of its assets in non-qualifying plan assets, the required bond is for the total amount of the non-qualifying plan assets, not just the amount in excess of 5%.

If you need further information regarding these requirements, see 29 CFR 2520.104-46 which is available at *www.dol.gov/ebsa* or call the EFAST2 Help Line at 1-866-GO-EFAST (1-866-463-3278) (toll-free)

**Line 4l.** You must check "Yes" if any benefits due under the plan were not timely paid or not paid in full. Include in this amount the total of any outstanding amounts that were not paid when due in previous years that have continued to remain unpaid.

**Line 4m.** Check "Yes" if there was a "blackout period." A blackout period is a temporary suspension of more than three (3) consecutive business days during which participants or beneficiaries of a 401(k) or other individual account pension plan were unable to, or were limited or restricted in their ability to, direct or diversify assets credited to their accounts, obtain loans from the plan, or obtain distributions from the plan. A "blackout period" generally does not include a temporary suspension of the right of participants and beneficiaries to direct or diversity assets credited to their accounts, obtain loans from the plan, or obtain distributions from the plan if the temporary suspension is: (1) part of the regularly scheduled operations of the plan that has been disclosed to participants and beneficiaries; (2) due to a qualified domestic relations order (QDRO) or because of a pending determination as to whether a domestic relations order is a QDRO; (3) due to an action or a failure to take action by an individual participant or because of an action or claim by someone other than the plan regarding a participant's individual account; (4) by application of federal securities laws. For more information, see 29 CFR 2520.101-3 (available at *www.dol.gov/ebsa*).

**Line 4n.** If there was a blackout period, did you provide the required notice not less than 30 days nor more than 60 days in advance of restricting the rights of participants and beneficiaries to change their plan investments, obtain loans from the plan, or obtain distributions from the plan? If so, check "Yes." See 29 CFR 2520.101-3 for specific notice requirements and for exceptions from the notice requirement. Also, answer "Yes" if one of the exceptions to the notice requirement under 29 CFR 2520.101-3 applies.

**Line 5a.** Check "Yes" if a resolution to terminate the plan was adopted during this or any prior plan year, unless the termination was revoked and no assets reverted to the employer. If "Yes" is checked, enter the amount of plan assets that reverted to the employer during the plan year in connection with the implementation of such termination. Enter "0" if no reversion occurred during the current plan year.

*A Form 5500 must be filed for each year the plan has assets, and, for a welfare benefit plan, if the plan is still liable to pay benefits for claims that were incurred before the termination date, but not yet paid. See 29 CFR 2520.104b-2(g)(2)(ii).*

**Line 5b.** Enter information concerning assets and/or liabilities transferred from this plan to another plan(s) (including spinoffs) during the plan year. A transfer of assets or liabilities occurs when there is a reduction of assets or liabilities with respect to one plan and the receipt of these assets or the assumption of these liabilities by another plan. Enter the name, EIN, and PN for the transferee plan(s).

Do not use a social security number in lieu of an EIN or include an attachment that contains visible social security numbers. The Schedule I and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this Schedule I or the inclusion of a visible social security number on an attachment may result in the rejection of the filing.

**Note.** A distribution of all or part of an individual participant's account balance that is reportable on IRS ***Form 1099-R*** should not be included on line 5b. Do not submit IRS Form 1099-R with the Form 5500.

Ex. AA
902

CAUTION *IRS **Form 5310-A**, Notice of Plan Merger or Consolidation, Spinoff, or Transfer of Plan Assets or Liabilities; Notice of Qualified Separate Lines of Business, may be required to be filed at least 30 days before any plan merger or consolidation or any transfer of plan assets or liabilities to another plan. There is a penalty for not filing IRS Form 5310-A on time. In addition, a transfer of benefit liabilities involving a plan covered by PBGC insurance may be reportable to the PBGC. See PBGC Form 10, Post-Event Notice of Reportable Events, and PBGC Form 10-Advance, Advance Notice of Reportable Events.*

# 2010 Instructions for Schedule MB *(Form 5500)* *Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information*

The final 2010 Schedule MB and accompanying instructions are now available and can be used for filing. Click here for a link to 2010 Schedule MB Instructions (Revised June 2010).

# 2010 Instructions for Schedule R (Form 5500)
# *Retirement Plan Information*

## General Instructions

### Purpose of Schedule

Schedule R (Form 5500) reports certain information on plan distributions, funding, and the adoption of amendments increasing or decreasing the value of benefits in a defined benefit pension plan, as well as certain information on employee stock ownership plans (ESOPs), and multiemployer defined benefit plans.

**Electronic Attachments**. All attachments to Schedule R must be properly identified, must include the name of the plan, plan sponsor's EIN, and plan number. Place "Schedule R" and the Schedule R line number at the top of each attachment to identify the information to which the attachment relates. Do not include attachments that contain a visible social security number. The Schedule R and its attachments are open to public inspection, and the contents are subject to publication on the Internet. Because of privacy concerns, the inclusion of a visible social security number on an attachment may result in the rejection of the filing.

### Who Must File

Schedule R must be attached to a Form 5500 filed for both tax-qualified and nonqualified pension benefit plans. The parts of Schedule R that must be completed depend on whether the plan is subject to the minimum funding standards of Code section 412 or ERISA section 302 and the type of plan. See line item requirements under *Specific Instructions* for more details.

**Exceptions: (1)** Schedule R should not be completed when the Form 5500 annual return/report is filed for a pension plan that uses, as the sole funding vehicle for providing benefits, individual retirement accounts or annuities (as described in Code section 408). See the Form 5500 instructions for *Limited Pension Plan Reporting* for more information.

**(2)** Schedule R also should not be completed if all of the following conditions are met:

- The plan is not a defined benefit plan or otherwise subject to the minimum funding standards of Code section 412 or ERISA section 302.
- No plan benefits that would be reportable on line 1 of Part I of this Schedule R were distributed during the plan year. See the instructions for Part I, line 1, below.
- No benefits, as described in the instructions for Part I, line 2, below, were paid during the plan year other than by the plan sponsor or plan administrator. (This condition is not met if benefits were paid by the trust or any other payor(s) which are reportable on IRS **Form 1099-R**, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., using an EIN other than that of the plan sponsor or plan administrator reported on line 2b or 3b of Form 5500.)
- Unless the plan is a profit-sharing, ESOP, or stock bonus plan, no plan benefits of living or deceased participants were distributed during the plan year in the form of a single-sum distribution. See the instructions for Part I, line 3, below.
- The plan is not an ESOP.
- The plan is not a multiemployer defined benefit plan.

Check the Schedule R box on the Form 5500 (Part II, line 10a(1)) if a Schedule R is attached to the Form 5500.

## Specific Instructions

**Lines A, B, C, and D.** This information must be the same as reported in Part II of the Form 5500 to which this Schedule R is attached.

Do not use a social security number in line D instead of an EIN. Schedule R and its attachments are open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on Schedule R or any of its attachments may result in the rejection of the filing.

You can apply for an EIN from the IRS online, by telephone, by fax, or by mail depending on how soon you need to use the EIN. For more information, see *Section 3: Electronic Filing Requirement*. The EBSA does not issue EINs.

**"Participant"** for purposes of Schedule R, means any present or former employee who at any time during the plan year had an accrued benefit in the plan (account balance in a defined contribution plan).

### Part I — Distributions

**"Distribution"** includes only payments of benefits during the plan year, in cash, in kind, by purchase for the distributee of an annuity contract from an insurance company, or by distribution of life insurance contracts. It does not include:

1. Corrective distributions of excess deferrals, excess contributions, or excess aggregate contributions, or the income allocable to any of these amounts;
2. Distributions of automatic contributions pursuant to Code section 414(w);
3. The distribution of elective deferrals or the return of employee contributions to correct excess annual additions under Code section 415, or the gains attributable to these amounts; and
4. A loan treated as a distribution under Code section 72(p).

**Note.** It does, however, include a distribution of a plan loan offset amount as defined in Treasury Regulations section 1.402(c)-2, Q&A 9(b).

**Line 1.** Enter the total value of all distributions made during the year (regardless of when the distribution began) in any form other than cash, annuity contracts issued by an insurance company, distribution of life insurance contracts, marketable securities within the meaning of Code section 731(c)(2), or plan loan offset amounts. Do not include eligible rollover distributions paid directly to eligible retirement plans in a direct rollover under Code section 401(a)(31) unless such direct rollovers include property other than that enumerated in the preceding sentence.

**Line 2.** Enter the EIN(s) of any payor(s) (other than the plan sponsor or plan administrator on line 2b or 3b of the Form 5500) who paid benefits reportable on IRS Form 1099-R on behalf of the plan to participants or beneficiaries during the plan year. This is the EIN that appears on the IRS Forms 1099-R that are issued to report the payments. Include the EIN of the trust if different than that of the sponsor or plan administrator. If more than two payors made such payments during the year, enter the EINs of the two payors who paid the greatest dollar amounts during the year. For purposes of this line 2, take into account all payments made during the plan year, in cash or in kind, that are reportable on IRS Form 1099-

Ex. AA
905

R, regardless of when the payments began, but take into account payments from an insurance company under an annuity only in the year the contract was purchased.

**Line 3.** Enter the number of living or deceased participants whose benefits under the plan were distributed during the plan year in the form of a single-sum distribution. For this purpose, a distribution of a participant's benefits will not fail to be a single-sum distribution merely because, after the date of the distribution, the plan makes a supplemental distribution as a result of earnings or other adjustments made after the date of the single-sum distribution. Also include any participants whose benefits were distributed in the form of a direct rollover to the trustee or custodian of a qualified plan or individual retirement account.

## Part II — Funding Information

Complete Part II only if the plan is subject to the minimum funding requirements of Code section 412 or ERISA section 302.

All qualified defined benefit and defined contribution plans are subject to the minimum funding requirements of Code section 412 unless they are described in the exceptions listed under Code section 412(e)(2). These exceptions include profit-sharing or stock bonus plans, insurance contract plans described in Code section 412(e)(3), and certain plans to which no employer contributions are made.

Nonqualified employee pension benefit plans are subject to the minimum funding requirements of ERISA section 302 unless specifically exempted under ERISA sections 4(a) or 301(a).

The employer or plan administrator of a single-employer or multiple-employer defined benefit plan that is subject to the minimum funding requirements must file Schedule SB as an attachment to Form 5500. Schedule MB is filed for multiemployer defined benefit plans and certain money purchase defined contribution plans (whether they are single-employer or multiemployer plans). However, Schedule MB is not required to be filed for a money purchase defined contribution plan that is subject to the minimum funding requirements unless the plan is currently amortizing a waiver of the minimum funding requirements.

**Line 4.** Check "Yes" if, for purposes of computing the minimum funding requirements for the plan year, the plan administrator is making an election intended to satisfy the requirements of Code section 412(d)(2) or ERISA section 302(d)(2). Under Code section 412(d)(2) and ERISA section 302(d)(2), a plan administrator may elect to have any amendment, adopted after the close of the plan year for which it applies, treated as having been made on the first day of the plan year if all of the following requirements are met:

1. The amendment is adopted no later than two and one-half months (two years for a multiemployer plan) after the close of such plan year;
2. The amendment does not reduce the accrued benefit of any participant determined as of the beginning of such plan year; and
3. The amendment does not reduce the accrued benefit of any participant determined as of the adoption of the amendment unless the plan administrator notified the Secretary of the Treasury of the amendment and the Secretary either approved the amendment or failed to disapprove the amendment within 90 days after the date the notice was filed.

See Treasury Temporary Regulations section 11.412(c)-7(b) for details on when and how to make the election and what information to include on the statement of election, which must be filed with the Form 5500 annual return/report.

**Line 5.** If a money purchase defined contribution plan (including a target benefit plan) has received a waiver of the minimum funding standard, and the waiver is currently being amortized, complete lines 3, 9, and 10 of Schedule MB. See instructions for Schedule MB. Attach Schedule MB to Form 5500. The Schedule MB for a money purchase defined contribution plan does not need to be signed by an enrolled actuary.

**Line 6a.** The minimum required contribution for a money purchase defined contribution plan (including a target benefit plan) for a plan year is the amount required to be contributed for the year under the formula set forth in the plan document. If there is an accumulated funding deficiency for a prior year that has not been waived, that amount should also be included as part of the contribution required for the current year.

**Line 6b.** Include all contributions for the plan year made not later than 81/2 months after the end of the plan year. Show only contributions actually made to the plan by the date the form is filed. For example, do not include receivable contributions for this purpose.

**Line 6c.** If the minimum required contribution exceeds the contributions for the plan year made not later than 8½ months after the end of the plan year, the excess is an accumulated funding deficiency for the plan year. File IRS **Form 5330**, Return of Excise Taxes Related to Employee Benefit Plans, with the IRS to pay the excise tax on the deficiency. There is a penalty for not filing IRS Form 5330 on time.

**Line 7.** Check "Yes" if the minimum required contribution remaining in line 6c will be made not later than 8 ½ months after the end of the plan year. If "Yes," and contributions are actually made by this date, then there will be no reportable deficiency and IRS Form 5330 will not need to be filed.

**Line 8.** Revenue Procedure 2000-40, 2002-2 C.B. 357, providing for automatic approval for a change in funding method for a plan year, generally does not apply unless the plan administrator or an authorized representative of the plan sponsor explicitly agrees to the change. If a change in funding method made pursuant to such a revenue procedure (or a class ruling letter) is to be applicable for the current plan year, this line generally must be checked "Yes." In certain situations, however, the requirement that the plan administrator or an authorized representative of the plan sponsor agree to the change in funding method will be satisfied if the plan administrator or an authorized representative of the plan sponsor is made aware of the change. In these situations, this line must be checked "N/A." See section 6.01(2) of Rev. Proc. 2000-40. If the plan's change in funding method is not made pursuant to a revenue procedure providing automatic approval or a class ruling letter (e.g., it is pursuant to a regulation or Notice 2009-22), then this line should be checked "N/A."

## Part III — Amendments

**Line 9.**

- Check "No" if no amendments were adopted during this plan year that increased or decreased the value of benefits.
- Check "Increase" if an amendment was adopted during the plan year that increased the value of benefits in any way. This includes an amendment providing for an increase in the amount of benefits or rate of accrual, more generous lump sum factors, COLAs, more rapid vesting, additional payment forms, or earlier eligibility for some benefits.
- Check "Decrease" if an amendment was adopted during the plan year that decreased the value of benefits in any

Ex. AA
906

way. This includes a decrease in future accruals, closure of the plan to new employees, or accruals being frozen for some or all participants.

- If the amendments that were adopted increased the value of some benefits but decreased the value of others, check "Both."

## Part IV — ESOP Information

**Line 11b.** A loan is a "back-to-back loan" if the following requirements are satisfied:

1. The loan from the employer corporation to the ESOP qualifies as an exempt loan under DOL regulations at 29 CFR 2550.408b-3 and under Treasury Regulations sections 54.4975-7 and 54.4975-11; and

2. The repayment terms of the loan from the sponsoring corporation to the ESOP are substantially similar to the repayment terms of the loan from the commercial lender to the sponsoring employer.

## Part V — Additional Employer Information for Multiemployer Defined Benefit Pension Plans

**Required Attachments.** Multiemployer defined benefit plans that are in Endangered Status or Critical Status must attach a summary of their Funding Improvement Plan or Rehabilitation Plan (as updated, if applicable) and also any update to a Funding Improvement Plan or Rehabilitation Plan.

The summary of any Funding Improvement Plan or Rehabilitation Plan must reflect such plan in effect at the end of the plan year (whether the original Funding Improvement Plan or Rehabilitation Plan or as updated) and must include a description of the various contribution and benefit schedules that are being provided to the bargaining parties and any other actions taken in connection with the Funding Improvement Plan or Rehabilitation Plan, such as use of the shortfall funding method or extension of an amortization period. The summary must also identify the first year and the last year of the Funding Improvement Period or the Rehabilitation Period. If an extended Funding Improvement Period (of 13 or 18 years) or Rehabilitation Period (of 13 years) applies because of an election under section 205 of the Worker, Retiree, and Employer Recovery Act of 2009 ("WRERA"), the summary must include a statement to that effect and the date that the election was filed with the IRS.

The summary must also include a schedule of the expected annual progress for the funded percentage or other relevant factors under the Funding Improvement Plan or Rehabilitation Plan. If the sponsor of a multiemployer plan in Critical Status has determined that, based on reasonable actuarial assumptions and upon exhaustion of all reasonable measures, the plan cannot emerge from Critical Status by the end of the Rehabilitation Period as described in Code section 432(e)(3)(A)(ii), the summary must include an explanation of the alternatives considered, why the plan is not reasonably expected to emerge from Critical Status by the end of the Rehabilitation Period, and when, if ever, it is expected to emerge from Critical Status under the Rehabilitation Plan.

The plan sponsor is required to annually update a Funding Improvement Plan or Rehabilitation Plan that was adopted in a prior year. The update must be filed as an attachment to the Schedule R. The update attachment must identify the modifications made to the Funding Improvement Plan or Rehabilitation Plan during the plan year, including contribution increases, benefit reductions, or other actions.

The attachment described above must be labeled "**Schedule R, Summary of Funding Improvement Plan**," or "**Schedule R, Summary of Rehabilitation Plan**" as appropriate, and if applicable, "**Schedule R, Update of Funding Improvement Plan or Rehabilitation Plan**." Each attachment must also include the plan name, the plan sponsor's name and EIN, and the plan number.

**Line 13.** This line should be completed only by multiemployer defined benefit pension plans that are subject to the minimum funding standards (see Code section 412 and Part 3 of Title I of ERISA). Enter the information on lines 13a through 13e for any employer that contributed more than five (5) percent of the plan's total contributions for the 2010 plan year. List employers in descending order according to the dollar amount of their contributions to the plan. Complete as many entries as are necessary to list all employers that contributed more than five (5) percent of the plan's contributions.

**Line 13a.** Enter the name of the employer contributing to the plan.

**Line 13b.** Enter the EIN of the employer contributing to the plan. Do not enter a social security number in lieu of an EIN; therefore, ensure that you have the employer's EIN and not a social security number. The Form 5500 is open to public inspection, and the contents are public information and are subject to publication on the Internet. Because of privacy concerns, the inclusion of a social security number on this line may result in the rejection of the filing.

EINs can be obtained from the IRS online, by telephone, by fax, or by mail depending on when you need to use the EIN. For more information, see Section 3: Electronic Filing Requirement. The EBSA does not issue EINs.

**Line 13c. Dollar Amount Contributed.** Enter the total dollar amount contributed to the plan by the employer for all covered workers in all locations for the plan year. Do not include the portion of an aggregated contribution that is for another plan, such as a welfare benefit plan, a defined contribution pension plan or another defined benefit pension plan.

**Line 13d. Collective Bargaining Agreement Expiration Date.** Enter the date on which the employer's collective bargaining agreement expires. If the employer has more than one collective bargaining agreement requiring contributions to the plan, check the box and include, as an attachment, the expiration date of each collective bargaining agreement (regardless of the amount of contributions arising from such agreement). Label the attachment: "***Schedule R, line 13d – Collective Bargaining Agreement Expiration Date***." Include the plan name and the sponsor's name and EIN.

**Line 13e. Contribution Rate Information.** Enter the contribution rate (in dollars and cents) per contribution base unit in line 13e(1) and the base unit measure in line 13e(2). Indicate whether the base unit is measured on an hourly, weekly, unit-of-production, or other basis. If "other," specify the base unit measure used. If the contribution rate changed during the plan year, enter the last contribution rate in effect for the plan year.

If the employer has different contribution rates for different classifications of employees or different places of business, check the box in the first line of line 13e and list in an attachment each contribution rate and corresponding base unit measure under which the employer made contributions (regardless of the amount of contributions resulting from each rate). Label the attachment: "***Schedule R, line 13e – Information on Contribution Rates and Base Units***." Include the plan name and the sponsor's name and EIN.

**Line 14.** Enter the number of participants on whose behalf no contributions were made by an employer as an employer of the participant. For purposes of line 14, count only those

participants whose last contributing employer had withdrawn from the plan by the beginning of the relevant plan year. Disregard any participants whose employers had not withdrawn from the plan, even if, in the relevant year, no contributions were made by the employer on behalf of those participants. Thus, for the limited purposes of line 14 and notwithstanding any contrary definition of such participants applicable elsewhere, the deferred vested and retired participants of employers who have not withdrawn from the plan should not be included in these numbers.

**Note.** Withdrawal liability payments are not to be treated as contributions for the purpose of determining the number of participants for line 14.

**Line 14a.** Enter the number of participants for the 2010 plan year described in the line 14 instructions.

**Line 14b.** Enter the number of participants for the 2009 plan year described in the line 14 instructions.

**Line 14c.** Enter the number of participants for the 2008 plan year described in the line 14 instructions.

**Line 15.** Enter the ratio of number of participants on whose behalf no employer had an obligation to make a contribution for the 2010 plan year to the corresponding number for each of the two preceding plan years. For the purpose of these ratios, count all participants whose employers have withdrawn from the plan as well as all deferred vested and retired participants of employers still active in the plan (unless the collective bargaining agreement specifically requires the employer to make contributions for such participants).

**Line 15a.** Enter the ratio of the number of participants as described in the line 15 instructions for the 2010 plan year to the number for the 2009 plan year.

**Line 15b.** Enter the ratio of the number of participants as described on the line 15 instructions for the 2010 plan year to the number for the 2008 plan year.

**Note.** Withdrawal liability payments are not to be treated as contributions for determining the number of participants on line 15.

**Line 16a.** Enter the number of employers that withdrew from the plan during the 2009 plan year.

**Line 16b.** If line 16a is greater than zero, enter the aggregate amount of withdrawal liability assessed against these employers. If the withdrawal liability for one or more withdrawing employers has not yet been determined, include the amounts estimated to be assessed against them in the aggregate amount.

The definitions of withdrawal are those contained in Section 4203 of ERISA. If the plan is in the building and construction, entertainment, or another industry that has special withdrawal rules, withdrawing employers should only be counted if the withdrawal adheres to the special rules applying to its specific industry.

**Line 17.** If assets and liabilities from another plan were transferred to or merged with the assets and liabilities of this plan during the 2010 plan year, check the box and provide the following information as an attachment. The attachment should include the names and employer identification numbers of all plans that transferred assets and liabilities to, or merged with, this plan. For each plan, including this plan, the attachment should also include the actuarial valuation of the total assets and total liabilities for the year preceding the transfer or merger, based on the most recent data available as of the day before the first day of the 2010 plan year. Label the attachment ***"Schedule R, line 17 – Information on Assets and Liabilities Transferred to or Merged with This Plan"*** and include the plan name and the plan sponsor's name and EIN.

## Part VI — Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans

**Line 18.** If any liabilities to participants or their beneficiaries under the plan at the end of the plan year consist of liabilities under two (2) or more plans as of immediately before the 2010 plan year, check the box and provide the following information as an attachment. The attachment should include the names, employer identification numbers, and plan numbers of all plans, including the current plan, that provided a portion of liabilities of the participants and beneficiaries in question. The attachment should also include the funding percentage of each plan as of the last day of the 2009 plan year. For single-employer plans, the funding percentage is the funding target attainment percentage, where the numerator is the value of plan assets reduced by the sum of the amount of the prefunding balance and the funding standard carryover balance, and the denominator is the funding target for the plan (without regard to the at-risk status of the plan). For multiemployer plans, the funding percentage is the ratio where the numerator is the actuarial value of the plan's assets and the denominator is the accrued liability of the plan. If a plan whose funding percentage is required to be reported has terminated, write "Terminated" in the space where the plan's funding percentage would otherwise have been reported. Label the attachment ***"Schedule R, line 18 – Funded Percentage of Plans Contributing to the Liabilities of Plan Participants"*** and include the plan name and the plan sponsor's name and EIN.

**Line 19.** This line must be completed by all defined benefit pension plans (except DFEs) with 1,000 or more participants at the beginning of the plan year. To determine if the plan has 1,000 or more participants, use the participant count shown on line 3d(1) of the Schedule SB for single-employer plans or on line 2b(4)(1) of the Schedule MB for multiemployer plans.

**Line 19a.** Show the beginning-of-year distribution of assets for the categories shown. Use the market value of assets and do **not** include the value of any receivables. These percentages, expressed to the nearest whole percent, should reflect the total assets held in stocks, investment-grade debt instruments, high-yield debt instruments, real estate, or other asset classes, regardless of how they are listed on the Schedule H. The percentages in the five categories should sum to 100 percent. Assets held in trusts, accounts, mutual funds, and other investment arrangements should be disaggregated and properly distributed among the five asset components. The assets in these trusts, accounts, mutual funds, and investment arrangements should not be included in the "Other" component unless these investments contain no stocks, bonds, or real estate holdings. The same methodology should be used in disaggregating trust assets as is used when disclosing the allocation of plan assets on the sponsor's 10-K filings to the Securities and Exchange Commission. Real estate investment trusts (REITs) should be listed with stocks, while real estate limited partnerships should be included in the Real Estate category.

Investment-grade debt-instruments are those with an S&P rating of BBB– or higher, a Moody's rating of Baa3 or higher, or an equivalent rating from another rating agency. High-yield debt instruments are those that have ratings below these rating levels. If the debt does not have a rating, it should be included in the "high-yield" category if it does not have the backing of a government entity. Unrated debt with the backing of a government entity would generally be included in the

Ex. AA
908

"investment-grade" category unless it is generally accepted that the debt should be considered as "high-yield." Use the ratings in effect as of the beginning of the plan year.

**Line 19b.** Check the box that shows the average duration of the plan's combined investment-grade and high-yield debt portfolio. If the average duration falls exactly on the boundary of two boxes, check the box with the lower duration. To determine the average duration, use the "effective duration" or any other generally accepted measure of duration. Report the duration measure used in line 19c. If debt instruments are held in multiple debt portfolios, report the weighted average of the average durations of the various portfolios where the weights are the dollar values of the individual portfolios.

## 2010 Instructions for Schedule SB (Form 5500)
## *Single-Employer Defined Benefit Plan Actuarial Information*

The final 2010 Schedule SB and accompanying instructions are now available and can be used for filing. Click here for a link to 2010 Schedule SB Instructions (Revised June 2010).

## OMB Control Numbers

| Agency | OMB Number |
|---|---|
| Employee Benefits Security Administration | 1210-0110 and 1210-0089 |
| Pension Benefit Guaranty Corporation | 1212 – 0057 |
| Internal Revenue Service | 1545 - 1610 |

**Paperwork Reduction Act Notice**

We ask for the information on this form to carry out the law as specified in ERISA and in Code sections 6047(e), 6058(a), and 6059(a). You are required to give us the information. We need it to determine whether the plan is operating according to the law.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books and records relating to a form or its instructions must be retained as long as their contents may become material in the administration of the Internal Revenue Code or are required to be maintained pursuant to Title I or IV of ERISA. Generally, the Form 5500 return/reports are open to public inspection and are subject to publication on the Internet.

The time needed to complete and file the forms listed below reflects the combined requirements of the Internal Revenue Service, Department of Labor, and Pension Benefit Guaranty Corporation. These times will vary depending on individual circumstances. The estimated average times are:

| | Pension Plans | | Welfare Plans | |
|---|---|---|---|---|
| | Large | Small | Large | Small |
| Form 5500 | 1 hr., 54 min. | 1 hr., 19 min. | 1 hr., 45 min. | 1 hr., 14 min. |
| Schedule A | 2 hr., 52 min. | 2 hr., 51 min. | 3 hr., 39 min. | 2 hr., 43 min. |
| Schedule C | 3 hr., 4 min | N/A | 3 hr., 38 min. | N/A |
| Schedule D | 1 hr., 39 min. | 20 min. | 1 hr., 52 min. | 20 min. |
| Schedule G | 11 hr., 29 min. | N/A | 11 hr. | N/A |
| Schedule H | 7 hr., 42 min. | N/A | 8 hr., 35 min. | N/A |
| Schedule I | N/A | 2 hr., 5 min. | N/A | 1 hr., 55 min. |
| Schedule MB | 7 hr., 52 min. | 4 hr., 14 min. | N/A | N/A |
| Schedule R | 1 hr., 43 min. | 1 hr., 5 min. | N/A | N/A |
| Schedule SB | 6 hr., 38 min. | 6 hr., 49 min. | N/A | N/A |

If you have comments concerning the accuracy of these time estimates or suggestions for making these forms simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave NW, IR-6526, Washington, DC 20224. Do not send any of these forms or schedules to this address. The forms and schedules must be filed electronically. See *How To File – Electronic Filing Requirement.*

## Forms 5500, 5500-SF, and 5500-EZ Codes for Principal Business Activity

This list of principal business activities and their associated codes is designed to classify an enterprise by the type of activity in which it is engaged.

These principal activity codes are based on the North American Industry Classification System.

### Agriculture, Forestry, Fishing and Hunting

| Code | |
|---|---|
| **Crop Production** | |
| 111100 | Oilseed & Grain Farming |
| 111210 | Vegetable & Melon Farming (including potatoes & yams) |
| 111300 | Fruit & Tree Nut Farming |
| 111400 | Greenhouse, Nursery, & Floriculture Production |
| 111900 | Other Crop Farming (including tobacco, cotton, sugarcane, hay, peanut sugar beet, & all other crop farming) |
| **Animal Production** | |
| 112111 | Beef cattle Ranching & Farming |
| 112112 | Cattle Feedlots |
| 112120 | Dairy Cattle & Milk Production |
| 112210 | Hog & Pig Farming |
| 112300 | Poultry & Egg Production |
| 112400 | Sheep & Goat Farming |
| 112510 | Aquaculture (including Shellfish, & finfish farms, & hatcheries) |
| 112900 | Other Animal Production |
| **Forestry and Logging** | |
| 113110 | Timber Tract Operations |
| 113210 | Forest Nurseries & Gathering of Forest Products |
| 113310 | Logging |
| **Fishing, Hunting, and Trapping** | |
| 114110 | Fishing |
| 114210 | Hunting & Trapping |
| **Support Activities for Agriculture and Forestry** | |
| 115110 | Support Activities for Crop Production (including cotton, ginning, soil preparation, planting, & cultivating) |
| 115210 | Support Activities for Animal Production |
| 115310 | Support Activities for Forestry |

### Mining

| Code | |
|---|---|
| 211110 | Oil & Gas Extraction |
| 212110 | Coal Mining |
| 212200 | Metal Ore Mining |
| 212310 | Stone Mining & Quarrying |
| 212320 | Sand, Gravel, Clay, & Ceramic, & Refractory Minerals Mining, & Quarrying |
| 212390 | Other Nonmetalic Mineral Mining & Quarrying |
| 213110 | Support Activities for Mining |

### Utilities

| Code | |
|---|---|
| 221100 | Electric Power Generation, Transmission & Distribution |
| 221210 | Natural Gas Distribution |
| 221300 | Water, Sewage, & Other Systems |
| 221500 | Combination Gas & Electric |

### Construction

| Code | |
|---|---|
| **Construction of Buildings** | |
| 236110 | Residential Building Construction |
| 236200 | Nonresidential Building Construction |
| **Heavy and Civil Engineering Construction** | |
| 237100 | Utility System Construction |
| 237210 | Land Subdivision |
| 237310 | Highway, Street, & Bridge Construction |
| 237990 | Other Heavy & Civil Engineering Construction |
| **Specialty Trade Contractors** | |
| 238100 | Foundation, Structure, & Building Exterior Contractors (including framing carpentry, masonry, glass, roofing, & siding) |
| 238210 | Electrical Contractors |
| 238220 | Plumbing, Heating, & Air-Conditioning Contractors |
| 238290 | Other Building Equipment Contractors |
| 238300 | Building Finishing Contractors (including drywall, insulation, painting, wallcovering, flooring, tile, & finish carpentry) |
| 238900 | Other Specialty Trade Contractors (including site preparation) |

### Manufacturing

| Code | |
|---|---|
| **Food Manufacturing** | |
| 311110 | Animal Food Mfg |
| 311200 | Grain & Oilseed Milling |
| 311300 | Sugar & Confectionary Product Mfg |
| 311400 | Fruit & Vegetable Preserving & Specialty Food Mfg |
| 311500 | Dairy Product Mfg |
| 311610 | Animal Slaughtering and Processing |
| 311710 | Seafood Product Preparation & Packaging |
| 311800 | Bakeries & Tortilla Mfg |
| 311900 | Other Food Mfg (including coffee, tea, flavorings & seasonings) |
| **Beverage and Tobacco Product Manufacturing** | |
| 312110 | Soft Drink & Ice Mfg |
| 312120 | Breweries |
| 312130 | Wineries |
| 312140 | Distilleries |
| 312200 | Tobacco Manufacturing |
| **Textile Mills and Textile Product Mills** | |
| 313000 | Textile Mills |
| 314000 | Textile Product Mills |
| **Apparel Manufacturing** | |
| 315100 | Apparel Knitting Mills |
| 315210 | Cut & Sew Apparel Contractors |
| 315220 | Men's & Boys' Cut & Sew Apparel Mfg. |
| 315230 | Women's & Girls' Cut & Sew Apparel Mfg. |
| 315290 | Other Cut & Sew Apparel Mfg |
| 315990 | Apparel Accessories & Other Apparel Mfg |
| **Leather and Allied Product Manufacturing** | |
| 316110 | Leather, & Hide Tanning, & Finishing |
| 316210 | Footwear Mfg (including rubber & plastics) |
| 316990 | Other Leather & Allied Product Mfg |
| **Wood Product Manufacturing** | |
| 321110 | Sawmills & Wood Preservation |
| 321210 | Veneer, Plywood, & Engineered Wood Product Mfg |
| 321900 | Other Wood Product Mfg |
| **Paper Manufacturing** | |
| 322100 | Pulp, Paper, & Paperboard Mills |
| 322200 | Converted Paper Product Mfg |
| **Printing and Related Support Activities** | |
| 323100 | Printing & Related Support Activities |
| **Petroleum and Coal Products Manufacturing** | |
| 324110 | Petroleum Refineries (including integrated) |
| 324120 | Asphalt Paving, Roofing, & Saturated Materials Mfg |
| 324190 | Other Petroleum & Coal Products Mfg |
| **Chemical Manufacturing** | |
| 325100 | Basic Chemical Mfg |
| 325200 | Resin, Synthetic Rubber, & Artificial & Synthetic Fibers, & Filaments Mfg |
| 325300 | Pesticide, Fertilizer, & Other Agricultural Chemical Mfg |
| 325410 | Pharmaceutical & Medicine Mfg |
| 325500 | Paint, Coating & Adhesive Mfg |
| 325600 | Soap, Cleaning Compound & Toilet Preparation Mfg |
| 325900 | Other Chemical Product & Preparation Mfg |
| **Plastics and Rubber Products Manufacturing** | |
| 326100 | Plastics Product Mfg |
| 326200 | Rubber Product Mfg |
| **Nonmetallic Mineral Product Manufacturing** | |
| 327100 | Clay Product & Refractory Mfg |
| 327210 | Glass & Glass Product Mfg |
| 327300 | Cement & Concrete Product Mfg |
| 327400 | Lime & Gypsum Product Mfg |
| 327900 | Other Nonmetallic Mineral Product Mfg |
| **Primary Metal Manufacturing** | |
| 331110 | Iron & Steel Mills & Ferroalloy Mfg |
| 331200 | Steel Product Mfg from Purchased Steel |
| 331310 | Alumina & Aluminum Production & Processing |
| 331400 | Nonferrous Metal (except Aluminum) Production & Processing |
| 331500 | Foundries |
| **Fabricated Metal Product Manufacturing** | |
| 332110 | Forging & Stamping |
| 332210 | Cutlery & Handtool Mfg |
| 332300 | Architectural & Structural Metals Mfg |
| 332400 | Boiler, Tank, & Shipping Container Mfg |
| 332510 | Hardware Mfg |
| 332610 | Spring & Wire Product Mfg |
| 332700 | Machine Shops; Turned Product; & Screw, Nut, & Bolt Mfg |
| 332810 | Coating, Engraving, Heat Treating, & Allied Activities |
| 332900 | Other Fabricated Metal Product Mfg |
| **Machinery Manufacturing** | |
| 333100 | Agriculture, Construction, & Mining Machinery Mfg |
| 333200 | Industrial Machinery Mfg |
| 333310 | Commercial & Service Industry Machinery Mfg |
| 333410 | Ventilation, Heating, Air-Conditioning, & Commercial Refrigeration Equipment Mfg |
| 333510 | Metalworking Machinery Mfg |
| 333610 | Engine, Turbine, & Power Transmission Equipment Mfg |
| 333900 | Other General Purpose Machinery Mfg |
| **Computer and Electronic Product Manufacturing** | |
| 334110 | Computer & Peripheral Equipment Mfg |
| 334200 | Communications Equipment Mfg |
| 334310 | Audio & Video Equipment Mfg |
| 334410 | Semiconductor & Other Electronic Component Mfg |
| 334500 | Navigational, Measuring, Electromedical, & Control Instruments Mfg |
| 334610 | Manufacturing & Reproducing Magnetic & Optical Media |
| **Electrical Equipment, Appliance, and Component Manufacturing** | |
| 335100 | Electric Lighting Equipment Mfg |
| 335200 | Household Appliance Mfg |
| 335310 | Electrical Equipment Mfg |
| 335900 | Other Electrical Equipment & Component Mfg |
| **Transportation Equipment Manufacturing** | |
| 336100 | Motor Vehicle Mfg |
| 336210 | Motor Vehicle Body & Trailer Mfg |
| 336300 | Motor Vehicle Parts Mfg |
| 336410 | Aerospace Product & Parts Mfg |
| 336510 | Railroad Rolling Stock Mfg |
| 336610 | Ship & Boat Building |
| 336990 | Other Transportation Equipment Mfg |
| **Furniture and Related Product Manufacturing** | |
| 337000 | Furniture & Related Product Manufacturing |
| **Miscellaneous Manufacturing** | |
| 339110 | Medical Equipment & Supplies Mfg |
| 339900 | Other Miscellaneous Mfg |

### Wholesale Trade

| Code | |
|---|---|
| **Merchant Wholesalers, Durable Goods** | |
| 423100 | Motor Vehicle, & Motor Vehicle Parts & Supplies |
| 423200 | Furniture & Home Furnishings |
| 423300 | Lumber & Other Construction Materials |
| 423400 | Professional & Commercial Equipment & Supplies |
| 423500 | Metals & Minerals (except Petroleum) |
| 423600 | Electrical & Electronic Goods |
| 423700 | Hardware, Plumbing, & Heating Equipment & Supplies |
| 423800 | Machinery, Equipment, & Supplies |
| 423910 | Sporting & Recreational Goods & Supplies |
| 423920 | Toy, & Hobby Goods, & Supplies |
| 423930 | Recyclable Materials |
| 423940 | Jewelry, Watches, Precious Stones, & Precious Metals |
| 423990 | Other Miscellaneous Durable Goods |
| **Merchant Wholesalers, Nondurable Goods** | |
| 424100 | Paper & Paper Products |
| 424210 | Drugs & Druggists' Sundries |
| 424300 | Apparel, Piece Goods, & Notions |
| 424400 | Grocery & Related Products |
| 424500 | Farm Product Raw Materials |
| 424600 | Chemical & Allied Products |

Ex. AA
912

**Forms 5500, 5500-SF, and 5500-EZ Codes for Principal Business Activity (*continued*)**

*Code*

- 424700 Petroleum & Petroleum Products
- 424800 Beer, Wine, & Distilled Alcoholic Beverages
- 424910 Farm Supplies
- 424920 Books, Periodicals, & Newspapers
- 424930 Flower, Nursery Stock, & Florists' Supplies
- 424940 Tobacco & Tobacco Products
- 424950 Paint, Varnish, & Supplies
- 424990 Other Miscellaneous Nondurable Goods

**Wholesale Electronic Markets and Agents and Brokers**

- 425110 Business to Business Electronic Markets
- 425120 Wholesale Trade Agents & Brokers

### Retail Trade

**Motor Vehicle and Parts Dealers**

- 441110 New Car Dealers
- 441120 Used Car Dealers
- 441210 Recreational Vehicle Dealers
- 441221 Motorcycle Dealers
- 441222 Boat Dealers
- 441229 All Other Motor Vehicle Dealers
- 441300 Automotive Parts, Accessories, & Tire Stores

**Furniture and Home Furnishings Stores**

- 442110 Furniture Stores
- 442210 Floor Covering Stores
- 442291 Window Treatment Stores
- 442299 All Other Home Furnishings Stores

**Electronics and Appliance Stores**

- 443111 Household Appliance Stores
- 443112 Radio, Television, & Other Electronics Stores
- 443120 Computer & Software Stores
- 443130 Camera & Photographic Supplies Stores

**Building Material and Garden Equipment and Supplies Dealers**

- 444110 Home Centers
- 444120 Paint & Wallpaper Stores
- 444130 Hardware Stores
- 444190 Other Building Material Dealers
- 444200 Lawn & Garden Equipment & Supplies Stores

**Food and Beverage Stores**

- 445110 Supermarkets and Other Grocery (except Convenience) Stores
- 445120 Convenience Stores
- 445210 Meat Markets
- 445220 Fish & Seafood Markets
- 445230 Fruit & Vegetable Markets
- 445291 Baked Goods Stores
- 445292 Confectionery & Nut Stores
- 445299 All Other Specialty Food Stores
- 445310 Beer, Wine, & Liquor Stores

**Health and Personal Care Stores**

- 446110 Pharmacies & Drug Stores
- 446120 Cosmetics, Beauty Supplies, & Perfume Stores
- 446130 Optical Goods Stores
- 446190 Other Health & Personal Care Stores

**Gasoline Stations**

- 447100 Gasoline Stations (including convenience stores with gas)

**Clothing and Clothing Accessories Stores**

- 448110 Men's Clothing Stores
- 448120 Women's Clothing Stores
- 448130 Children's & Infants' Clothing

*Code*

- 448140 Family Clothing Stores
- 448150 Clothing Accessories Stores
- 448190 Other Clothing Stores
- 448210 Shoe Stores
- 448310 Jewelry Stores
- 448320 Luggage & Leather Goods Stores

**Sporting Goods, Hobby, Book, and Music Stores**

- 451110 Sporting Goods Stores
- 451120 Hobby, Toy, & Game Stores
- 451130 Sewing, Needlework, & Piece Goods Stores
- 451140 Musical Instrument & Supplies Stores
- 451211 Book Stores
- 451212 News Dealers & Newsstands
- 451220 Prerecorded Tape, Compact Disc, & Record Stores

**General Merchandise Stores**

- 452110 Department Stores
- 452900 Other General Merchandise Stores

**Miscellaneous Store Retailers**

- 453110 Florists
- 453210 Office Supplies & Stationery Stores
- 453220 Gift, Novelty, & Souvenir Stores
- 453310 Used Merchandise Stores
- 453910 Pet & Pet Supplies Stores
- 453920 Art Dealers
- 453930 Manufactured (Mobile) Home Dealers
- 453990 All Other Miscellaneous Store Retailers (including tobacco, candle, & trophy shops)

**Nonstore Retailers**

- 454110 Electronic Shopping & Mail-Order Houses
- 454210 Vending Machine Operators
- 454311 Heating Oil Dealers
- 454312 Liquefied Petroleum Gas (bottled gas) Dealers
- 454319 Other Fuel Dealers
- 454390 Other Direct Selling Establishments (including door-to-door retailing, frozen food plan providers, party plan merchandisers, & coffee-break service providers)

### Transportation and Warehousing

**Air, Rail, and Water Transportation**

- 481000 Air Transportation
- 482110 Rail Transportation
- 483000 Water Transportation

**Truck Transportation**

- 484110 General Freight Trucking, Local
- 484120 General Freight Trucking, Long-distance
- 484200 Specialized Freight Trucking

**Transit and Ground Passenger Transportation**

- 485110 Urban Transit Systems
- 485210 Interurban & Rural Bus Transportation
- 485310 Taxi Service
- 485320 Limousine Service
- 485410 School & Employee Bus Transportation
- 485510 Charter Bus Industry
- 485990 Other Transit & Ground Passenger Transportation

**Pipeline Transportation**

- 486000 Pipeline Transportation

**Scenic & Sightseeing Transportation**

- 487000 Scenic & Sightseeing Transportation

*Code*

**Support Activities for Transportation**

- 488100 Support Activities for Air Transportation
- 488210 Support Activities for Rail Transportation
- 488300 Support Activities for Water Transportation
- 488410 Motor Vehicle Towing
- 488490 Other Support Activities for Road Transportation
- 488510 Freight Transportation Arrangement
- 488990 Other Support Activities for Transportation

**Couriers and Messengers**

- 492110 Couriers
- 492210 Local Messengers & Local Delivery

**Warehousing and Storage**

- 493100 Warehousing & Storage (except lessors of miniwarehouses & self-storage units)

### Information

**Publishing Industries (except Internet)**

- 511110 Newspaper Publishers
- 511120 Periodical Publishers
- 511130 Book Publishers
- 511140 Directory & Mailing List Publishers
- 511190 Other Publishers
- 511210 Software Publishers

**Motion Picture and Sound Recording Industries**

- 512100 Motion Picture & Video Industries (except video rental)
- 512200 Sound Recording Industries

**Broadcasting (except Internet)**

- 515100 Radio & Television Broadcasting
- 515210 Cable & Other Subscription Programming

**Telecommunications**

- 517000 Telecommunications (including paging, cellular, satellite, cable & other program distribution, resellers, other telecommunications, & internet service providers)

**Data Processing Services**

- 518210 Data Processing, Hosting, & Related Services

**Other Information Services**

- 519100 Other Information Services (including news syndicates, libraries, internet publishing & broadcasting)

### Finance and Insurance

**Depository Credit Intermediation**

- 522110 Commercial Banking
- 522120 Savings Institutions
- 522130 Credit Unions
- 522190 Other Depository Credit Intermediation

**Nondepository Credit Intermediation**

- 522210 Credit Card Issuing
- 522220 Sales Financing
- 522291 Consumer Lending
- 522292 Real Estate Credit (including mortgage bankers & originators)
- 522293 International Trade Financing
- 522294 Secondary Market Financing
- 522298 All Other Nondepository Credit Intermediation

**Activities Related to Credit Intermediation**

- 522300 Activities Related to Credit Intermediation (including loan brokers, check clearing, & money transmitting)

*Code*

**Securities, Commodity Contracts, and Other Financial Investments and Related Activities**

- 523110 Investment Banking & Securities Dealing
- 523120 Securities Brokerage
- 523130 Commodity Contracts Dealing
- 523140 Commodity Contracts Brokerage
- 523210 Securities & Commodity Exchanges
- 523900 Other Financial Investment Activities (including portfolio management & investment advice)

**Insurance Carriers and Related Activities**

- 524140 Direct Life, Health, & Medical Insurance & Reinsurance Carriers
- 524150 Direct Insurance & Reinsurance (except Life, Health & Medical) Carriers
- 524210 Insurance Agencies & Brokerages
- 524290 Other Insurance Related Activities (including third-party administration of insurance and pension funds)

**Funds, Trusts, and Other Financial Vehicles**

- 525100 Insurance & Employee Benefit Funds
- 525910 Open-End Investment Funds (Form 1120-RIC)
- 525920 Trusts, Estates, & Agency Accounts
- 525990 Other Financial Vehicles (including mortgage REITs & closed-end investment funds)

"Offices of Bank Holding Companies" and "Offices of Other Holding Companies" are located under **Management of Companies (Holding Companies).**

### Real Estate and Rental and Leasing

**Real Estate**

- 531110 Lessors of Residential Buildings & Dwellings (including equity REITs)
- 531114 Cooperative Housing (including equity REITs)
- 531120 Lessors of Nonresidential Buildings (except Miniwarehouses) (including equity REITs)
- 531130 Lessors of Miniwarehouses & Self-Storage Units (including equity REITs)
- 531190 Lessors of Other Real Estate Property (including equity REITs)
- 531210 Offices of Real Estate Agents & Brokers
- 531310 Real Estate Property Managers
- 531320 Offices of Real Estate Appraisers
- 531390 Other Activities Related to Real Estate

**Rental and Leasing Services**

- 532100 Automotive Equipment Rental & Leasing
- 532210 Consumer Electronics & Appliances Rental
- 532220 Formal Wear & Costume Rental
- 532230 Video Tape & Disc Rental

**Forms 5500, 5500-SF, and 5500-EZ Codes for Principal Business Activity (*continued*)**

*Code*

532290 Other Consumer Goods Rental
532310 General Rental Centers
532400 Commercial & Industrial Machinery & Equipment Rental & Leasing

**Lessors of Nonfinancial Intangible Assets (except copyrighted works)**

533110 Lessors of Nonfinancial Intangible Assets (except copyrighted works)

**Professional, Scientific, and Technical Services**

**Legal Services**

541110 Offices of Lawyers
541190 Other Legal Services

**Accounting, Tax Preparation, Bookkeeping, and Payroll Services**

541211 Offices of Certified Public Accountants
541213 Tax Preparation Services
541214 Payroll Services
541219 Other Accounting Services

**Architectural, Engineering, and Related Services**

541310 Architectural Services
541320 Landscape Architecture Services
541330 Engineering Services
541340 Drafting Services
541350 Building Inspection Services
541360 Geophysical Surveying & Mapping Services
541370 Surveying & Mapping (except Geophysical) Services
541380 Testing Laboratories

**Specialized Design Services**

541400 Specialized Design Services (including interior, industrial, graphic, & fashion design)

**Computer System Design and Related Services**

541511 Custom Computer Programming Services
541512 Computer Systems Design Services
541513 Computer Facilities Management Services
541519 Other Computer Related Services

**Other Professional, Scientific, and Technical Services**

541600 Management, Scientific, & Technical Consulting Services
541700 Scientific Research & Development Services
541800 Advertising & Related Services
541910 Marketing Research & Public Opinion Polling
541920 Photographic Services
541930 Translation & Interpretation Services
541940 Veterinary Services
541990 All Other Professional, Scientific, & Technical Services

**Management of Companies (Holding Companies)**

551111 Offices of Bank Holding Companies
551112 Offices of Other Holding Companies

*Code*

**Administrative and Support and Waste Management and Remediation Services**

**Administration and Support Services**

561110 Office Administrative Services
561210 Facilities Support Services
561300 Employment Services
561410 Document Preparation Services
561420 Telephone Call Centers
561430 Business Service Centers (including private mail centers & copy shops)
561440 Collection Agencies
561450 Credit Bureaus
561490 Other Business Support Services (including repossession services, court reporting, & stenotype services)
561500 Travel Arrangement & Reservation Services
561600 Investigation & Security Services
561710 Exterminating & Pest Control Services
561720 Janitorial Services
561730 Landscaping Services
561740 Carpet & Upholstery Cleaning Services
561790 Other Services to Buildings & Dwellings
561900 Other Support Services (including packaging & labeling services, & convention & trade show organizers)

**Waste Management and Remediation Services**

562000 Waste Management and Remediation Services

**Educational Services**

611000 Educational Services (including Schools, Colleges, & Universities)

**Health Care and Social Assistance**

**Offices of Physicians and Dentists**

621111 Offices of Physicians (except Mental Health Specialists)
621112 Offices of Physicians, Mental Health Specialists
621210 Offices of Dentists

**Offices of Other Health Practitioners**

621310 Offices of Chiropractors
621320 Offices of Optometrists
621330 Offices of Mental Health Practitioners (except Physicians)
621340 Offices of Physical, Occupational & Speech Therapists, & Audiologists
621391 Offices of Podiatrists
621399 Offices of all Other Miscellaneous Health Practitioners

**Outpatient Care Centers**

621410 Family Planning Centers
621420 Outpatient Mental Health & Substance Abuse Centers
621491 HMO Medical Centers
621492 Kidney Dialysis Centers
621493 Freestanding Ambulatory Surgical & Emergency Centers
621498 All Other Outpatient Care Centers

*Code*

**Medical and Diagnostic Laboratories**

621510 Medical & Diagnostic Laboratories

**Home Health Care Services**

621610 Home Health Care Services

**Other Ambulatory Health Care Services**

621900 Other Ambulatory Health Care Services (including ambulance services & blood & organ banks)

**Hospitals**

622000 Hospitals

**Nursing and Residential Care Facilities**

623000 Nursing & Residential Care Facilities

**Social Assistance**

624100 Individual & Family Services
624200 Community Food & Housing, & Emergency & Other Relief Services
624310 Vocational Rehabilitation Services
624410 Child Day Care Services

**Arts, Entertainment, and Recreation**

**Performing Arts, Spectator Sports, and Related Industries**

711100 Performing Arts Companies
711210 Spectator Sports (including sports clubs & racetracks)
711300 Promoters of Performing Arts, Sports, & Similar Events
711410 Agents & Managers for Artists, Athletes, Entertainers, & Other Public Figures
711510 Independent Artists, Writers, & Performers

**Museums, Historical Sites, and Similar Institutions**

712100 Museums, Historical Sites, & Similar Institutions

**Amusements, Gambling, and Recreation Industries**

713100 Amusement Parks & Arcades
713200 Gambling Industries
713900 Other Amusement & Recreation Industries (including golf courses, skiing facilities, marinas, fitness centers, & bowling centers)

**Accommodation and Food Services**

**Accommodation**

721110 Hotels (except Casino Hotels) & Motels
721120 Casino Hotels
721191 Bed & Breakfast Inns
721199 All other Traveler Accommodation
721210 RV (Recreational Vehicle) Parks & Recreational Camps
721310 Rooming & Boarding Houses

**Food Services and Drinking Places**

722110 Full-Service Restaurants
722210 Limited-Service Eating Places
722300 Special Food Services (including food service contractors & caterers)
722410 Drinking Places (Alcoholic Beverages)

*Code*

**Other Services**

**Repair and Maintenance**

811110 Automotive Mechanical, & Electrical Repair & Maintenance
811120 Automotive Body, Paint, Interior, & Glass Repair
811190 Other Automotive Repair & Maintenance (including oil change & lubrication shops & car washes)
811210 Electronic & Precision Equipment Repair & Maintenance
811310 Commercial & Industrial Machinery & Equipment (except Automotive & Electronic) Repair & Maintenance
811410 Home & Garden Equipment & Appliance Repair & Maintenance
811420 Reupholstery & Furniture Repair
811430 Footwear & Leather Goods Repair
811490 Other Personal & Household Goods Repair & Maintenance

**Personal and Laundry Services**

812111 Barber Shops
812112 Beauty Salons
812113 Nail Salons
812190 Other Personal Care Services (including diet & weight reducing centers)
812210 Funeral Homes & Funeral Services
812220 Cemeteries & Crematories
812310 Coin-Operated Laundries & Drycleaners
812320 Drycleaning & Laundry Services (except Coin-Operated)
812330 Linen & Uniform Supply
812910 Pet Care (except Veterinary) Services
812920 Photofinishing
812930 Parking Lots & Garages
812990 All Other Personal Services

**Religious, Grantmaking, Civic, Professional, and Similar Organizations**

813000 Religious, Grantmaking, Civic, Professional, & Similar Organizations (including condominium and homeowners associations)
813930 Labor Unions and Similar Labor Organizations

921000 Governmental Instrumentality or Agency

Ex. AA
914

# ERISA COMPLIANCE QUICK CHECKLIST

Compliance with the Employee Retirement Income Security Act (ERISA) begins with knowing the rules. Plan administrators and other plan officials can use this checklist as a quick diagnostic tool for assessing a plan's compliance with certain important ERISA rules; it is not a complete description of all ERISA's rules and it is not a substitute for a comprehensive compliance review. Use of this checklist is voluntary, and it is not be filed with your Form 5500.

**If you answer "No" to any of the questions below, you should review your plan's operations because you may not be in full compliance with ERISA's requirements.**

1. Have you provided plan participants with a summary plan description, summaries of any material modifications of the plan, and annual summary financial reports or annual pension funding reports?
2. Do you maintain copies of plan documents at the principal office of the plan administrator for examination by participants and beneficiaries?
3. Do you respond to written participant inquires for copies of plan documents and information within 30 days?
4. Does your plan include written procedures for making benefit claims and appealing denied claims, and are you complying with those procedures?
5. Is your plan covered by fidelity bonds protecting the plan against losses due to fraud or dishonesty by persons who handle plan funds or other property?
6. Are the plan's investments diversified so as to minimize the risk of large losses?
7. If the plan permits participants to select the investments in their plan accounts, has the plan provided them with enough information to make informed decisions?
8. Has a plan official determined that the investments are prudent and solely in the interest of the plan's participants and beneficiaries, and evaluated the risks associated with plan investments before making the investments?
9. Did the employer or other plan sponsor send participant contributions to the plan on a timely basis?
10. Did the plan pay participant benefits on time and in the correct amounts?
11. Did the plan give participants and beneficiaries 30 days advance notice before imposing a "blackout period" of at least three consecutive business days during which participants or beneficiaries of a 401(k) or other individual account pension plan were unable to change their plan investments, obtain loans from the plan, or obtain distributions from the plan?

**If you answer "Yes" to any of the questions below, you should review your plan's operations because you may not be in full compliance with ERISA's requirements.**

1. Has the plan engaged in any financial transactions with persons related to the plan or any plan official? (For example, has the plan made a loan to or participated in an investment with the employer?)
2. Has the plan official used the assets of the plan for his/her own interest?
3. Have plan assets been used to pay expenses that were not authorized in the plan document, were not necessary to the proper administration of the plan, or were more than reasonable in amount?

**If you need help answering these questions or want additional guidance about ERISA requirements, a plan official should contact the U.S. Department of Labor Employee Benefits Security Administration office in your region or consult with the plan's legal counsel or professional employee benefit advisor.**

**Index**

80-120 Participant Rule ............... 7
103-12 Investment Entity
(103-12 IE) .............................. 10

**A**
About the From 5500 ................... 1
Additional Employer Information for Multiemployer Defined Benefit Pension Plans ........... 54
Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans .......... 55
Amended Return/Report............... 6
Amendments ............................. 53

**C**
Change in Plan Year..................... 6
Changes to Note.......................... 1
Combination unfunded/insured Welfare plan ............................. 3
Common/Collective Trust............ 10

**D**
Delinquent Filer Voluntary Compliance (DFVC) Program ...... 5
Direct Filing Entity (DFE) – Who Must File.................................... 4
Direct Filing Entity (DFE) – Filing Requirements........................... 9
Distributions ............................... 52

**E**
EFAST2 Processing System......... 1
Electronic Filing Requirement....... 5
ESOP Information....................... 54
Extension of Time to File.............. 4

**F**
Final Return/Report:
Mergers/Consolidations............. 6
Pension and Welfare Plans That Terminated Without Distributing All Assets ............................. 6
Welfare Plans Still Liable to Pay Benefits................................. 6
Form 5500 Schedules.................. 7
Fully insured welfare benefit plan ........................................... 3
Funding Information .................... 53

**G**
General Schedules ....................... 7
Group Insurance Arrangement (GIA)....................................... 11

**H**
How to get assistance....................2

**I**
Information Concerning Insurance Contract Coverage, Fees, and Commissions...........................21
Instructions for Schedule A: Who Must File..........................21
Instructions for Schedule C: Who Must File..........................24
Instructions for Schedule D: Who Must File..........................29
Instructions for Schedule G: Who Must File..........................31
Instructions for Schedule H: Who Must File..........................33
Instructions for Schedule I: Who Must File..........................43
Instructions for Schedule MB: Statement by Enrolled Actuary ................................51
Who Must File..........................51
Instructions for Schedule R: Who Must File..........................52
Instructions for Schedule SB: Statement by Enrolled Actuary ................................57
Who Must File..........................57
Investment and Annuity Contract Information.................22

**L**
Limited Pension Plan Reporting ....8
List of Plan Characteristic Codes. 19
Loans or Fixed Income Obligations in Default or Classified As Uncollectible.......................31

**M**
Master Trust Investment Account (MTIA).............................9

**N**
Nonexempt Transactions.......31, 47
Notice to Terminated Accountant or Enrolled Actuary..................28

**O**
On-Line Assistance.....................2

**P**
Party-In-Interest ...................31, 47
Penalties:
Administrative ..........................6
Other.........................................7
Pension Benefit Plan - Who Must File ..................................2
Pension Benefit Plan Filing Requirements ...........................8
Pension Schedules........................7
Plan Sponsor..............................15
Pooled Separate Account (PSA) . 10
Provision of Information...............23

**R**
Reportable Transaction ...............41

**S**
Schedule of Reportable Transactions ...........................41
Service Provider Information .......24
Service Providers Who Fail or Refuse To Provide Information...............................27
Short Plan Year Rule ....................7
Signature and Date .......................6
Small Plan Financial Information...............................43
Special rule for certain participant-directed transactions ............................41
Statement by Enrolled Actuary............................... 51,57

**T**
Telephone Assistance ..................2
Termination Information on Accountants and Enrolled Actuaries.................................27

**U**
Unfunded welfare benefit plan.......3

**W**
Welfare Benefit Contract Information..............................23
Welfare Benefit Plan – Who Must File....................................3
Welfare benefit Plan Filing Requirements ...........................9
What To File..................................7
When To File:
DFEs other than GIAs................4
Extensions ...............................4
Plans and GIAs..........................4
Short Years...............................4
Who Must File ...............................2

Ex. AA
916