O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN SANTOMENNO; KAREN POLEY; BARBARA POLEY, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY; TRANSAMERICA INVESTMENT MANAGEMENT, LLC; TRANSAMERICA ASSET MANAGEMENT INC., <br><br> Defendants. | Case No. CV 12-02782 DDP (MANx) <br><br> **ORDER DEFERRING DECISION ON CLASS CERTIFICATION AND REQUESTING CLARIFICATION FROM PARTIES** |

The Court has reviewed the parties' voluminous briefing papers on the Motion for Class Certification and heard lengthy oral arguments. Nonetheless, the Court finds that certain issues remain unclear. Therefore, the Court finds it appropriate to postpone a decision on the question of class certification in order to request that the parties clarify the legal issues at the heart of this lawsuit.

In a nutshell, Plaintiffs' primary allegation is that Defendant Transamerica Life Insurance Company ("TLIC") charges an

investment-level fee (the "investment management/administration" or "IM/Admin" fee) that is excessive for the services provided. This, they allege, is unlawful under the Employee Retirement Income Security Act ("ERISA"), which Plaintiffs say imposes a fiduciary duty on retirement plan service providers to "act solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) *defraying reasonable expenses of administering the plan*." 29 U.S.C. § 1104(a)(1) (emphasis added). Because a fiduciary may only charge fees to defray reasonable expenses, a fiduciary who charges something more than that violates ERISA.

TLIC's primary defense boils down to an argument that its individual fees cannot be considered in isolation; one must consider the total packages of fees that retirement plans paid, and whether those fees covered total reasonable expenses for all the services they received. This is because, although TLIC charges certain "plan-level" fees and certain "investment-level" fees, in reality, the fees collected at the investment level often go to pay for certain plan-level expenses.

Thus, for example, one of TLIC's exhibits is a sample disclosure form, sent to one of its plan customers, that provides a "reasonable good faith estimate of the cost to the Plan for the services provided to the Plan." (Defs.' Ex. Q at 616.) This disclosure form shows that the plan was billed $20,155 in "plan-level" fees. In addition, the form shows, TLIC retained 0.74% of plan assets as an "investment-level" fee. (Id.) After paying for investment-level expenses – "investment platform services" (0.08%)

2

and "advisor compensation" (0.30%) — the leftover 0.36% that TLIC retained was used to pay for plan-level "Record-Keeping and Administrative Costs."  (Id.)

Thus, the plan's total fees were $20,155 plus 0.74% of plan assets.  If that total amount is reasonable in comparison to total expenses, TLIC argues, then it has met its fiduciary duty.  Conversely, Plaintiffs argue that if TLIC is charging 0.74% at the investment level, but not providing 0.74% worth of services at the investment level, then TLIC is violating its fiduciary duty, *regardless* of whether the total fees charged are congruent with TLIC's total expenses.[1]

At this time, the Court reaches *no* conclusion as to the merits of either of these arguments.  But because Plaintiffs do not allege that the total fees the plans have paid to TLIC are unreasonable,[2] the theory of fiduciary duty under which they sue becomes unclear.  To put it another way, it is not clear what harm has been done to Plaintiffs or other putative class members.

One theory of breach of fiduciary duty might be that Defendants simply failed in their duty of truthfulness and honest dealing with their clients.  A fiduciary entity owes a duty of

---

[1] The Court is aware that this is a simplified model, and it is only presented by way of example.  Naturally, other issues may arise, such as whether 0.38% is a reasonable estimate of investment-level expenses, or whether there are other fees included in the total fee package that are not reflected on this disclosure form.  Moreover, there may be revenue-sharing that partially offsets the fees collected.  (See, e.g., Mot. Class Cert. at 4:7-16.)

[2] More precisely, Plaintiffs do not challenge "certain 'plan-level' fees, such as commissions, recordkeeping fees and a Contract Asset Charge."  (Mot. Class Cert. at 4:18-19.)  But this in effect precludes a challenge of the reasonableness of the total fee package.

rigorous truthfulness to its beneficiaries. "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard" of fiduciary duty. Pegram v. Herdrich, 530 U.S. 211, 225 (2000) (quoting Meinhard v. Salmon, 249 N.Y. 458, 464 (1928) (Cardozo, J.)). If TLIC charged, say, a $2 million "copying fee" to a separate account, investors would be presumably entitled to know whether TLIC had actually, reasonably incurred $2 million in photocopying expenses.

Thus, one way TLIC could have breached its fiduciary duty is by actual misrepresentation. Perhaps the idea is that by aligning the fee with the investment rather than the plan, TLIC gave a false impression that fee would only be used to cover plan expenses, or that plan expenses were less than they actually are. The trouble with proceeding to a class action on that theory is that it would seem to open up a Pandora's box of individualized inquiries.

Unlike the term "copying," "investment management" and "administration" seem to be vague terms, susceptible to a number of reasonable interpretations. Do they, for example, include a contribution to TLIC's general overhead? Could they include subsidies of other expenses, including plan-level expenses? To determine whether such a use of the terms "investment management" and "administration" was a misrepresentation, the Court might well have to attempt to ascertain what plan administrators actually understood these terms to mean – an inquiry only complicated by the fact that Defendants have presented credible evidence that they

made disclosures to at least some plans explaining that the investment-level fees might be used to cover plan-level expenses.[3]

To avoid such individualized questions, it could also be argued that ERISA fiduciaries simply have a *per se* duty not to share expenses between the investment level and the plan level – either because other courts have already held that such a duty exists, because some regulation imposes such a duty, or for public policy reasons (perhaps because such expense-sharing is *inherently* confusing to consumers). Plaintiffs point to TLIC's filing of Form 5500 with the Department of Labor and suggest that TLIC was under penalty of perjury to accurately describe its fees as "investment advisory" expenses. (Reply at 13 & n.48; see also Opp'n at 22.) But this only shifts the question to what kinds of services are "investment advisory" expenses and whether some expenses from the plan level can be defrayed as expenses in that category. Moreover, even if TLIC was under a legal obligation to distinguish investment-level expenses from plan-level expenses on the Form 5500, it is not clear that that obligation translates to a *fiduciary* duty under ERISA. At least, Plaintiff has not yet cited any authority to that effect.[4]

---

[3] On the other hand, clear evidence that "investment management" and "administration" are precise terms of art in the industry would significantly lessen the need for such individualized inquiry.

[4] In a similar vein, Plaintiffs allege that TLIC reported to the IRS that the fee was an "investment advisory and management fee." (Mot. Class Cert. at 8 & n.4.) Although TLIC might be under an independent duty not to misrepresent the purpose of the fee to the IRS, this does not necessarily create a *fiduciary* duty under ERISA.

Finally, it might be that Plaintiffs' theory is that *even taking into account* the expense-sharing between the investment level and the plan level, TLIC's investment-level expense accounting is unreasonable.  To return to our example above, it might be alleged that the 0.08% allocated to "investment platform services" and the 0.30% allocated to "advisor compensation" are unreasonable and unnecessary.  If this is Plaintiff's theory, individualized inquiries into what plan administrators knew would, again, not be necessary,[5] which would tend to streamline the litigation to focus on common questions.  However, if this theory is the one Plaintiffs are advancing, it is not entirely clear from a general allegation that "the IM/Admin fees TLIC charges . . . are excessive," (Mot. Class Cert. at 5:7-8.), nor from the more specific allegation that "while TLIC charges 75 bps for its investment services, others would charge . . . between 1 and 4 bps." (Id. at 6:19-20.)

Finally, as a factual matter, it is not clear to the Court at this point what the ratio of the IM/Admin fee to other fees is.  Is the IM/Admin fee the predominant portion of the total fee package?  Are the other, plan-level fees insignificant?  If the plan-level fees are minute, then the "total fees" and the "investment-level fees" collapse into more-or-less the same thing, and Defendants'

---

[5]There might (or might not) still be individualized inquiries necessary as to the expenses incurred in administering each investment.  The Court cannot tell, at this point, whether the investment-level expenses charged by TLIC would be fairly uniform, or whether they would vary widely from investment to investment.  But even if the expenses do vary, the Court would likely not be required to hear from each plan administrator individually, which makes it less likely that individualized inquiries would predominate over common questions.

6

argument about the need to consider the reasonableness of the total fee package would seem to melt away. On the other hand, if the IM/Admin fee is typically only, say, 50% of total fees charged, then the total package of fees may matter much more in determining whether TLIC has met its alleged fiduciary duty to only charge fees "defraying reasonable expenses."

For purposes of this order seeking clarification, then, the Court assumes that TLIC was a fiduciary under ERISA, that the basic prerequisites of a class action are satisfied, and that certification, if appropriate at all, is likely appropriate under Rule 23(b)(3). The Court therefore requests additional briefing on the primary theory under which it will be argued that TLIC has breached its fiduciary duty as to fees. This will assist the Court in determining whether common questions are likely to predominate over individual questions, and whether this class action is superior to other available methods of adjudicating the controversy. Given the complexity of the issues and the truly titanic volume of the submissions so far, the Court also welcomes the parties' correction of any omissions or misunderstandings in the above analysis.

The Court therefore orders the following: Plaintiffs shall file an additional briefing, not longer than 15 pages, addressing the above analysis or otherwise stating its primary theory of breach of fiduciary duty, given the issue of apparent expense-sharing between the investment level and the plan level. The briefing may also address, if useful, the question of what proportion of overall fees the IM/Admin fee comprises. Declarations, exhibits, and other matter accompanying the

memorandum *shall not exceed 150 pages*. This additional briefing shall be filed not later than 14 days from the date of this order. Not later than 21 days after the date of this order, Defendants shall file a brief in response, limited to the same issues and the same page restriction.

Further guidance:

- Plaintiffs should spell out, step-by-step, in logical sequence, what their primary theory of liability is, and upon what assumptions, legal and factual, it is based. Defendants should do the same, but from the defense perspective.
- The Court's sense is that this matter turns on the resolution of a limited number of questions. Tell the Court what you think they are. Be blunt. Be concise.

The Motion for Class Certification remains under submission. The Court emphasizes that it makes no holdings or findings of any kind in this order. The SCHEDULING CONFERENCE set for January 29, 2015 is VACATED.

IT IS SO ORDERED.


Dated: January 16, 2015

DEAN D. PREGERSON
United States District Judge