O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN SANTOMENNO; KAREN POLEY; BARBARA POLEY,<br><br>                Plaintiffs,<br><br>    v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY; TRANSAMERICA INVESTMENT MANAGEMENT, LLC; TRANSAMERICA ASSET MANAGEMENT INC.,<br><br>                Defendants.<br>_____ | Case No. CV 12-02782 DDP (MANx)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND CERTIFYING QUESTIONS FOR INTERLOCUTORY REVIEW UNDER 28 U.S.C. § 1292(b)**<br><br>[Dkt. No. 395] |

Presently before the Court is Defendants' Motion for Reconsideration. (Dkt. No. 395.) After hearing oral argument and considering the parties' submissions, the Court adopts the following Order.

**I.   BACKGROUND**

The facts of this case are well-known to the Court and the parties as recounted in the Court's Order Granting Class Certification. (Order, Dkt. No. 393.) After the Court certified two classes in this case, Defendants have filed this Motion for Reconsideration.

**II. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 60(b), a party may seek reconsideration of a final judgment or court order for any reason that justifies relief, including:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6).[1]

---

[1] In their Motion, Defendants raise the standards of FRCP 59(e) and 54(b), which are not applicable here because there is no judgment in this case. (See Mot. Reconsideration at 2.) The Court construed the Motion under FRCP 60(b)(6) in reaching the merits of the Motion.
A party can request a true interlocutory appeal from the Court of Appeals when a district court issues an order granting or denying class certification. Fed. R. Civ. P. 23(f). The party must file such a request for an appeal within fourteen days of the district court's Order. Id.
Further, the district court on its own motion or as requested can certify an interlocutory appeal to the Court of Appeals under 28 U.S.C. § 1292(b). This is appropriate where the district judge finds the civil order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Id. The district court states such a finding in the order and the Court of Appeals has the discretion to permit the appeal "if application is made to it within ten days after the entry of the order." Id.

Central District of California Local Rule 7-18 further explains that reasons to support a motion for reconsideration include:

> (a) a material difference in fact or law from that presented to the Court . . . that . . . could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18.  A motion for reconsideration may not, however, "in any manner repeat any oral or written argument made in support of or in opposition to the original motion."  Id.

**III. DISCUSSION**

Defendants raise four arguments in their Motion for Reconsideration:

(1) The Court committed clear error in ignoring Department of Labor ("DOL") regulations and binding case law holding that a prohibited transaction under 29 U.S.C. § 1106(b) only occurs when a fiduciary "uses the authority that makes it a fiduciary to cause the transaction at issue." (Mot. Reconsideration, Dkt. No. 395, at 1 (emphasis removed).)  As Defendants state, "the Court erred in concluding that TLIC engaged in [prohibited transactions] by honoring its clients' directions to place plan assets in pooled separate accounts and to withdraw agreed-upon annual fees."  (Id.)

(2) The court committed clear error in holding that, for purposes of class certification, the "reasonable

3

1  compensation" exemption in 29 U.S.C. § 1108(b)(8) does
2  not apply when a fiduciary withdraws such compensation
3  from assets placed in investment vehicles even where
4  independent plan fiduciaries agree to such an
5  arrangement. (Id.)  Further, Defendants claim that the
6  Court "neglected ample record evidence that no pooled
7  investment vehicle in the industry levies its fees in any
8  other fashion." (Id.)

10 (3) The Court committed clear error and manifestly failed to
11     consider material facts that show that the determination
12     of profits that TLIC gained from each plan is plan-
13     specific.  Thus, individual issues predominate in
14     determining damages, which cuts against class
15     certification because Plaintiffs seek disgorgement of
16     profits as a remedy for the prohibited transaction
17     classes. (Id.)

19 (4) The Court committed clear error and manifestly failed to
20     consider material facts in certifying the TIM and TAM
21     classes because the Court did not consider the
22     predominance requirement or the facts in the record that
23     any fees — whether charged by TLIC or TIM and TAM — are
24     charged as a total, bundled product offering and thus are
25     subject to individualized defenses. (Id. at 1-2.)  When
26     examined as a total fee, "there is overwhelming evidence
27     in the record establishing that such defenses are

4

dependent on plan-specific proof" and thus fail the predominance analysis. (Id.)

### 1. Court's Holding that 29 U.S.C. § 1106 Forbids TLIC from Directly Withdrawing its Fees from Plan Assets

The Court's prior Order held that the Prohibited Transaction classes were certifiable because 29 U.S.C. § 1106(b), as applied in the Ninth Circuit cases Patelco and Barboza, forbids a fiduciary from taking the fiduciary's fee from the assets over which it exercises its fiduciary duties — even where an independent fiduciary accepts or contracts to allow such a taking. (Order, Dkt. No. 393, at 23-34.) The Court noted that causation did not appear to be a requirement in the § 1106(b) part of the statute, in contrast to § 1106(a) that explicitly states a causation requirement. (Id. at 24-25.) The Ninth Circuit in Barboza also did not discuss causation in its analysis of a fiduciary administrator's practice of taking agreed-upon fees directly from the plan assets it was administering. Barboza v. Cal. Ass'n of Prof'l Firefighters, 799 F.3d 1257, 1269-70 (9th Cir. 2015).

Defendants argue that the Court failed to address 29 C.F.R. § 2550.408b-2(e)(2) in its Order and that this regulation shows that causation is required for a § 1106(b)(1) prohibited transaction:

> **(2) Transactions not described in section 406(b)(1).** A fiduciary does not engage in an act described in section 406(b)(1) of the Act if the fiduciary does not use any of the authority, control or responsibility which makes such person a fiduciary to cause a plan to pay additional fees for a service furnished by such fiduciary or to pay a fee for a service furnished by a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary.
> This may occur, for example, when one fiduciary is retained on behalf of a plan by a second fiduciary to provide a service for an additional fee.
> However, because the authority, control or responsibility which makes a person a fiduciary may be

5

> exercised "in effect" as well as in form, mere approval of the transaction by a second fiduciary does not mean that the first fiduciary has not used any of the authority, control or responsibility which makes such person a fiduciary to cause the plan to pay the first fiduciary an additional fee for a service. See paragraph (f) of this section.

29 C.F.R. § 2550.408b-2(e)(2) (paragraphing added). Paragraph (f) provides examples of prohibited and acceptable transactions.

Defendants also cite Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1100-01 (9th Cir. 2004) in support, quoting the Ninth Circuit quoting Lockheed Corp. v. Spink, 517 U.S. 882, 888 (1996): "Lockheed specifically states that to establish liability under § 1106, a party must prove that 'a fiduciary caused the plan to engage in the allegedly unlawful transaction.'" The Ninth Circuit in Wright then held that the party at issue in that case was not a fiduciary, which defeated the prohibited transaction claim. Wright, 360 F.3d at 1101. In Lockheed, the Court was only analyzing § 1106(a), which was also the primary focus in Wright.

Defendants also cite Acosta v. Pacific Enterprises, 950 F.2d 611, 621 (9th Cir. 1991), which did address a § 1106(b)(1) claim. There, the Ninth Circuit held that the plaintiff had not alleged sufficient facts at summary judgment to support a claim that the defendant had committed a prohibited transaction. Id. The holding that Defendants here focus on is:

> All fiduciaries have the inherent power that would enable them to deal with the assets of ERISA plans for their own benefit or account. However, we know of no rule that permits a plaintiff to bootstrap a claim for the actual commission of a wrong merely by alleging that the defendant has the power to commit it. In order to state a claim for self-dealing under ERISA, [Plaintiff] Acosta must demonstrate that [Defendant] Pacific Enterprises actually used its power to deal with the assets of the plan for its own benefit or account.

6

Id. The plaintiff in Acosta had argued that the defendant's "inherent power to use the participant-shareholder list to its benefit" was the self-dealing transaction "because such a power 'has a continuing deterrent effect on anyone considering whether to oppose management in corporate elections.'" Id. The facts in Acosta did not involve the question of whether a fiduciary paying itself fees from the assets over which it exercises its fiduciary control is a self-dealing transaction.

This case does not involve § 1106(a), which is why the Court did not find Wright or Lockheed to provide the answer regarding causation in its prior analysis. However, the Court did not consider the regulation or Acosta in its Order. Considering them now, the Court finds that as alleged in the Complaint and argued in the certification briefing, TLIC used the "authority, control [and] responsibility" over plan assets that makes it a fiduciary "to cause [the] plan[s] to pay additional fees for a service furnished by such fiduciary," namely, the allegedly excessive fees charged for TLIC's services as well as the allegedly excessive fees charged by TIM and TAM for their services through TLIC. Further, TLIC used the "authority, control [and] responsibility" that made it a fiduciary to pay itself out of the plan assets over which it exercises that authority, control, and responsibility, which is a per se prohibited transaction.

Defendants also argue that beyond the causation issue, the Court committed clear error in its understanding of § 1106(b) transactions. Defendants argue this in a footnote, stating:

> This Court's broad reading of Patelco . . . and Barboza . . . could only be accurate if those decisions were intended to abrogate the existing regulations and case law on §

7

406(b) transactions, but nothing in either decision suggests such a radical result.

(Mot. Reconsideration at 4 n.1 (citations omitted).) The Court would welcome an analysis of Patelco and Barboza as well as an indication of what case law on § 406(b) transactions the Court's reading abrogates, but Defendants' briefing does not explain that argument and therefore the Court does not find clear error in its analysis of the cases.[2]

Lastly, the Court did examine the Department of Labor advisory opinions raised by Defendants in their Motion but did not find any of them warrant a change to the above analysis or the analysis in the second class certification order. See DOL Adv. Op. No. 2003-09A, 2003 WL 21514170 (June 25, 2003); DOL Adv. Op. No. 99-03A, 1999 WL 64919 (Jan. 25, 1999); DOL Adv. Op. No. 97-15A, 1997 WL 277980 (May 22, 1997). The Court also took into consideration the parties' supplemental briefing as to Judge Hatter's recent decision in Perez v. City National Corp., —F. Supp. 3d— , 2016 WL 1397872 (C.D. Cal. Apr. 5, 2016).

Essentially, the Court cannot see where its previous analysis committed clear error. Section 1106(b)(1) prohibits self-dealing, or dealing with the assets of the fund in the fiduciary's own interest. 29 U.S.C. § 1106(b)(1) ("A fiduciary with respect to a plan shall not — (1) deal with the assets of the plan in his own interest or for his own account[.]"). Plaintiffs argue, based on Ninth Circuit precedent in Barboza and Patelco, that Defendant

---

[2] See also John L. Utz, Trusts, Unfunded Plans, and Self-Doubt: *Barboza v. California Ass'n of Prof'l Firefighters*, 24 No. 1 ERISA Litig. Rep. NL 2 (Feb. 2016) (discussing the holding in and potential impacts of the Ninth Circuit's Barboza case).

8

TLIC, as a fiduciary, dealt with assets of the plans in TLIC's own interest by paying TLIC's fees out of the assets of the plans over which TLIC was exercising its fiduciary control — even if those fees were reasonable compensation for services rendered to the plans.[3] The Court understands Defendants' argument to be that TLIC paying itself is not dealing with the plans' assets in its own self-interest. That is, by taking the money TLIC alleges it is properly owed from the plan assets, Defendants claim that that action — the taking of money from the funds — is not an action that deals with the plans' assets in TLIC's interest.

But the Court cannot understand the argument that getting paid is not in one's interest. Paying oneself from the plans' assets is dealing with those assets for one's own interest. That is the point — to benefit from providing the services for which you are charging. It is acceptable for a fiduciary to be paid for such services and a fiduciary can contract in advance to set its fees. However, those fees have to be continually monitored for reasonableness and the fiduciary cannot pay itself directly.

The logic of these requirements — that compensation be reasonable and not be taken directly out of plan assets by a fiduciary — can be illustrated as follows. The context is the management of a retirement plan for a business, which contains the retirement savings of the employees. A plan fiduciary, A, may hire another fiduciary, B, to administer the plan. A and B may agree at the start of that relationship that the second fiduciary, B, can

---

[3] Of course, Plaintiffs do not concede that the fees were reasonable, as argued they argue TLIC's fees are excessive in their Motion to Correct TLIC Excessive Fee Class Definition. (See Dkt. No. 391.)

take $100 out of the fund per month for payment of B's reasonable compensation for the services B is performing. B has essentially exclusive control over the fund and is the holder of the fund's assets. And every month, B takes the $100 out of the fund's assets by simply withdrawing $100 from the fund and moving it to another account — B's own account. Without the requirement that the fiduciary not pay itself directly, what is to ensure that only $100 is withdrawn each time?

The nub of the issue for the Court is that the fiduciary, because it is a fiduciary, has elevated duties, and that means that getting paid appears to require additional burdens than exist in ordinary commercial transactions. But because this is a controlling issue of law and one where there is substantial ground for difference of opinion, as shown by the vigorous briefing in this case, the Court does certify its decision under 28 U.S.C. § 1292(b), incorporating the discussion and briefing from the Court's Order Granting Class Certification. (Dkt. No. 393.)

### 2. Court's Holding that the Exception in 29 U.S.C. § 1108(b)(8) Does Not Apply in This Case

Defendants argue that the Court erred by failing to realize that 29 U.S.C. § 1108(b)(8) does apply to this case and allow TLIC to collect its fees from the plan assets that it holds. (Mot. Reconsideration at 8-11.) Defendants state the issue as:

> The Court correctly recognized in its order certifying the PT classes that ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8), may exempt regulated insurers from PT liability in connection with client investments in pooled separate accounts when they receive no more than reasonable compensation and either the plan permits such investments or the investment are approved by a fiduciary independent of the insurer. Nevertheless, the Court erred when it held that payment of fees out of plan assets as compensation for the aforementioned permissible conduct was itself a

10

> separate PT that is not sheltered by the exemption. (Dkt. 393 at 28.)  Such a holding — that § 408(b)(8) permits 'reasonable compensation,' while prohibiting a party from collecting that compensation, is clear error.

(<u>Id.</u> at 8-9.)  Thus, Defendants understand this exemption as not only permitting "reasonable compensation" for the transaction with the fund, but also allowing the fiduciary to collect that reasonable compensation by taking the reasonable compensation out the plan assets that the fiduciary holds.  (<u>See</u> <u>id.</u> at 9.)

The Court first corrects a misunderstanding Defendants have of the Court's prior Order.  The Court did not hold that a fiduciary can receive reasonable compensation but not collect that compensation.  Instead, the Court held that a fiduciary can receive reasonable compensation but cannot pay itself that reasonable compensation out of the plan assets over which the fiduciary exercises its fiduciary control — whether for the type of transaction referenced in § 1108(b)(8) or for some other activity for which a fiduciary is entitled to reasonable compensation.  (Order, Dkt. No. 393, at 27-34.)

The Court starts with the language of the statute:

> **(b) Enumeration of transactions exempted from section 1106 prohibitions**
>
> The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:
>
> > (8) Any transaction between a plan and (i) a common or collective trust fund or pooled investment fund maintained by a party in interest which is a bank or trust company supervised by a State or Federal agency or (ii) a pooled investment fund of an insurance company qualified to do business in a State, if -
> >
> > > (A) the transaction is a sale or purchase of an interest in the fund,

11

>              (B)   the bank, trust company, or insurance
>                    company receives not more than reasonable
>                    compensation, and
>
>              (C)   such transaction is expressly permitted by
>                    the instrument under which the plan is
>                    maintained, or by a fiduciary (other than
>                    the bank, trust company, or insurance
>                    company or an affiliate thereof) who has
>                    authority to manage and control the assets
>                    of the plan.

29 U.S.C. § 1108(b)(8).

The main problem here is that the issue of the prohibited transaction alleged by Plaintiffs and analyzed by the Court in the second class certification Order is *not* a "transaction" that fits under § 1108(b)(8)(A): "a sale or purchase of an interest in the fund." Neither Plaintiffs nor the Court state that Defendants cannot make such a transaction. That is not the question before the Court. Instead, the question is whether TLIC can pay itself even reasonable compensation from the plan assets over which it is exercising its fiduciary duties no matter what reason for that reasonable compensation — i.e., no matter what transaction that incurs a fee by TLIC or what service TLIC provides for which it is entitled to reasonable compensation as a fiduciary. Put simply, it's not that you can't do it, it's **how** you do it that's at issue here.

Thus, Defendants do not provide an argument on how this statutory exemption — which is not about fees or how fees are properly collected — applies here so as to make the Court's decision clearly erroneous as a matter of law in holding that a fiduciary cannot pay itself from plan assets over which it is exercising that control that makes it a fiduciary. This is what the Court held in the previous Order:

12

1    Defendants explain that this exemption "expressly allows
2    regulated insurers to invest client assets in pooled
3    separate accounts like TLIC's separate accounts here —
4    even in circumstances involving alleged self-dealing —
5    where the insurer receives no more than reasonable
6    compensation, and either the plan document permits such
7    investments or the investment is approved by fiduciary
8    independent of the insurer."  (Dkt. No. 385, Def. Supp.
9    Brief, at 1.)

10       Perhaps this reading of the exemption is correct,
11   but it seems that Defendants are missing Plaintiffs'
12   allegation, which is not that TLIC invested client assets
13   in pooled separate accounts, but rather that TLIC paid
14   its fees — which TLIC had the discretion to change at
15   thirty days notice — out of the plan assets that TLIC was
16   holding.  Thus, it is not clear to the Court how the
17   (b)(8) exemption, assuming it applies to § 1106(b) based
18   on the plain reading of § 1108 described above, clears
19   Defendants from the prohibited transaction at issue in
20   this case.

21       Subsection (b)(8) appears concerned with exempting
22   transactions that are "a sale or purchase in the fund"
23   for which "the bank, trust company, or insurance company
24   receives not more than reasonable compensation," and if
25   "such transaction is expressly permitted by the
26   instrument under which the plain is maintained, or by a
27   fiduciary (other than the bank, trust company, or
28   insurance company or an affiliate thereof) who has

1       authority to manage and control the assets of the plan."
2       Id. § 1108(b)(8)(A)-(C).  The transaction Plaintiffs
3       challenge is not "a sale or purchase in the fund," but
4       instead the act of TLIC taking its own fees out of the
5       plan assets over which TLIC exercises fiduciary
6       management.  Therefore, the Court finds § 1108(b)(8) does
7       not apply to the prohibited transaction Plaintiffs are
8       alleging in this case, even if it can in theory apply to
9       other prohibited transactions under § 1106(b).
10 (Order, Dkt. No. 393, at 28-29.)
11      At no point do Defendants explain how their cited legislative
12 history or DOL advisory opinions require a different holding or
13 understanding in this case than that discussed in the Court's
14 Order.
15      First, the Court has examined the cited Committee Report that
16 Defendants argue stands for the proposition that "otherwise
17 prohibited transactions were permissible so long as 'no more than
18 reasonable compensation may be **paid by the plan** in the purchase (or
19 sale) and no more than reasonable compensation may be **paid by the**
20 **plan** for investment management by the pooled fund.'"  (Mot.
21 Reconsideration at 9 (citing H.R. Rep. No. 93-1280, pt. 1, at 316
22 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5096 (emphasis
23 added)).)  Defendants' argument is that the emphasized language
24 means not just "paid by the plan," but "paid by the plan by the
25 fiduciary taking the reasonable compensation out of the plan's
26 assets over which it exercises fiduciary control."  Defendants
27 state as much in their Motion.  (Id. at 9-10.)  However, the Court
28 does not understand the legislative history to say that a fiduciary

14

can take its reasonable compensation directly out of the plan's assets even if the fiduciary can be paid by the plan. That is, the Court does not understand Defendants' argument that "[i]f Congress did not intend for 'reasonable compensation' to be paid from plan assets under the exemption, the Committee Report's inclusion of the phrase 'paid by the plan' would be superfluous." How is that the case? How would saying that a fiduciary can be paid reasonable compensation by the beneficiary (the plan) be the same as saying that the fiduciary can pay itself reasonable compensation for the services it provides to the beneficiary out of the beneficiary's assets over which the fiduciary exercises its control?

Second, Defendants cite several DOL advisory opinions. (Mot. Reconsideration at 10-11 (citing DOL Adv. Op. No. 2005-09A, 2005 WL 1208696 (May 11, 2005); DOL Adv. Op. No. 82-22A, 1982 WL 21206 (May 12, 1982).) The Court did not find that any of these opinions state anything controversial — the Court agrees that reasonable compensation may be paid by the plan, the question is **how** the plan pays those fees. This latter question is not addressed in the DOL advisory opinions.

The Court also looked at cases explaining or applying this exemption, of which it found few. See, e.g., Adedipe v. U.S. Bank N.A., 62 F. Supp. 3d 879 (D. Minn. 2014); Krueger v. Am. Fin. Inc., No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825 (D. Minn. Nov. 20, 2012); Martin v. Nat'l Bank of Alaska, 828 F. Supp. 1427 (D. Alaska 1992). The court in Krueger explained what the § 1108(b)(8) exemption is for:

> In support of their argument, Defendants cite ERISA § 408(b)(8), codified at 29 U.S.C. § 1108(b)(8), which

> permits plans under certain circumstances to invest in affiliated funds.
>
> Specifically, ERISA § 408(b)(8) exempts a plan's purchase or sale of an interest in a common or collective trust fund maintained by a regulated bank or trust company or a pooled investment fund of an insurance company maintained by a party in interest if the transaction is expressly permitted by the plan's governing documents and the bank, trust company, or insurance company receives no more than reasonable compensation.
>
> ERISA § 408(b)(8) was enacted to allow "banks, trust companies and insurance companies" to continue their "common practice" of investing their plans' assets in their own pooled investment funds. See H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5096; see also U.S. Dep't of Labor Adv. Op. 82-022 A, 1982 ERISA LEXIS 47 (May 12, 1982) (§ 408(b)(8) exempts fees charged for managing investments in pooled separate accounts and collective trusts).
>
> As the Department of Labor has recognized, it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor." Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724 (Mar. 13, 1991).

Krueger, No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825, at *14 (paragraphing added). Thus, the House Report clarifies that § 1108(b)(8) is meant to permit the transaction that is investing plan assets in a fiduciary's own pooled investment fund, which otherwise would be a prohibited transaction. This type of transaction is not at issue in this case.

Defendants have not provided persuasive support for its position that this exemption is applicable in this case, although it is conceivable that the answer is as Defendants argue and a fiduciary can, in fact, pay itself directly out of plan assets without violating the self-dealing prohibition in 29 U.S.C. § 1104(b)(1). Thus, the Court also certifies this issue for appeal under 29 U.S.C. § 1292(b) as a controlling question of law.

16

### 3. Court's Holding that Individualized Damages Do Not Prevent Class Certification in This Case

Defendants argue the Court committed clear error in failing to consider the individualized evidence that would be necessary to determine the profits to disgorge from the alleged prohibited transactions. (Mot. Reconsideration at 11-12.) According to Defendants, "[t]he question whether TLIC, TI[M], or TA[M] retained any profits from the alleged prohibited transactions is decidedly a plan-specific inquiry." (Id. at 12.) Defendants state that the answer would require looking at every single plan over time and determining when TLIC would earn a profit over servicing the plan as a whole and how much that profit is, after considering the plan-specific costs incurred by TLIC. (Id. at 12.)

However, merely disgorging profits is not the standard. The statute says:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter **shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate**, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a) (emphasis added). Thus, profits are just one part of the analysis. Any loss to the plan from the breach of duty would require an accounting by Defendants to Plaintiffs of the fees charged, the facts necessary to determine the reasonableness of those fees, and evidence that the fees actually removed from the plans' assets were what was agreed upon and were reasonable. And

17

the Court would have discretion to impose other equitable or remedial relief as is appropriate for the class.

But all that this analysis would require is for Defendants to account for the losses and profits related to the plans. That is, this is essentially a class definition and damages calculation that requires formulaic analysis, which does not destroy predominance. Therefore, the prohibited transaction classes are not predominated by individualized issues through the need to calculate damages. However, to the extent that further litigation demonstrates that there is no formulaic analysis to determine damages for the Prohibited Transaction classes, then Defendants may seek to decertify the classes on that basis.

### 4. Court's Holding Regarding Predominance of the TIM and TAM Classes

Defendants argue that the Court failed to address the predominance factor of the TIM and TAM classes. (Mot. Reconsideration at 12-13; Reply at 9-11.) However, the Court did address predominance as to both TIM and TAM subclasses. See Order, Dkt. No. 393, at 34-38 (analyzing predominance in the subheadings "(A) TIM and TAM Prohibited Transactions" and "(B) TIM and TAM Excessive Fees," both of which were under the subheading "ii. TIM and TAM Class," under the subheading "a. Predominance," after the Court analyzed predominance for "i. TLIC Prohibited Transaction Class").

Further, Defendants did not extensively brief these issues in the second class certification motion. Defendants relegated analysis of the TIM and TAM excessive fee class to footnote 18, where Defendants stated that this class is just an excessive fee

class "by another label." (Opp'n to Second Mot. Class Cert., Dkt. No. 370, at 24 n.18.) It is not clear that Defendants engaged with the TIM and TAM Prohibited Transaction subclass separately at all, but if the same analysis and arguments as Defendants made for the TLIC Prohibited Transaction class were to apply to the TIM and TAM Prohibited Transaction subclass, then the Court would still find that the class met predominance for the reasons stated in its Order. Therefore, the Court did not provide extensive analysis of the predominance factor of the TIM and TAM classes in the second class certification order, but the Court did determine that predominance was satisfied. The Court declines to reconsider that decision.

**IV. CONCLUSION**

For all the reasons discussed above, the Court DENIES Defendants' Motion for Reconsideration.

This case has potential industry-wide implications and the cost to the parties of proceeding further without guidance from the court of appeals will be substantial. Therefore, the Court certifies controlling questions of law for appellate review.[4]

First, the Court certifies the fundamental question of whether Defendant TLIC can be considered a fiduciary at all under the law, as the Court held in a Motion to Dismiss Order. (Order, Dkt. No. 137.) The question of whether TLIC could be a fiduciary is fundamental to all other questions in the case, as no classes would

---

[4] The Court discussed at the last hearing the issue of interlocutory review. The Court did not find further briefing on this issue necessary. The Court did not consider Defendants' Motion to Certify Questions for Interlocutory Review in certifying these questions. (See Dkt. No. 407.) The Court hereby VACATES the hearing date for that Motion.

19

be certified and no legal dispute over prohibited transactions would arise if there were no fiduciary duty owed by Defendants. Thus, the Court certifies for interlocutory appeal the legal issue of fiduciary status, as well as the certification of and the specific questions regarding the prohibited transaction classes discussed above. (See Order, Dkt. No. 137 (Motion to Dismiss); Order, Dkt. No. 354 (First Class Certification); Order, Dkt. No. 373 (Second Class Certification).

IT IS SO ORDERED.

Dated: May 13, 2016

DEAN D. PREGERSON
United States District Judge