O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JACLYN SANTOMENNO; KAREN POLEY; BARBARA POLEY, | ) ) | Case No. CV 12-02782 DDP (MANx) |
| Plaintiffs, | ) ) ) | **ORDER DENYING PLAINTIFFS' MOTION TO CORRECT TLIC EXCESSIVE FEE CLASS DEFINITION** |
| v. | ) ) | [Dkt. No. 391] |
| TRANSAMERICA LIFE INSURANCE COMPANY; TRANSAMERICA INVESTMENT MANAGEMENT, LLC; TRANSAMERICA ASSET MANAGEMENT INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

        Presently before the Court is Plaintiffs' Motion to Correct
TLIC Excessive Fee Class Definition.  (Dkt. No. 391.)  After
hearing oral argument and considering the parties' submissions, the
Court adopts the following Order.

I.    **BACKGROUND**

        The facts of this case are well-known to the parties and the
Court.  The Court adopts in full the background section of the
previous class certification order.  (Dkt. No. 393.)  This Order
addresses the last class Plaintiffs seek to certify, the TLIC
Excessive Fee class.  At the previous class certification motion

hearing, Plaintiffs withdrew their proposed definition of this particular class because of an error counsel had found with the definition.  (Mot. Correct Definition of Class ("Mot.") at 1.)  The Court ordered counsel to confer regarding correcting the definition, but because they were unable to agree on a procedure for doing so, Plaintiffs filed this Motion.  (Id.)

**II.   LEGAL STANDARD**

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th Cir. 2012); Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992).  In determining whether to certify a class, a court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233 (9th Cir. 1996).  Rule 23(a) sets forth four prerequisites for class certification:

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508.  These four requirements are often referred to as the numerosity,

1 commonality, typicality, and adequacy requirements.  <u>See</u> <u>General</u>
2 <u>Tel. Co. v. Falcon</u>, 457 U.S. 147, 156 (1982).

3     In determining the propriety of a class action, the question
4 is not whether the plaintiff has stated a cause of action or will
5 prevail on the merits, but rather whether the requirements of Rule
6 23 are met.  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178
7 (1974).  The court, therefore, considers the merits of the
8 underlying claim to the extent that the merits overlap with the
9 Rule 23(a) requirements, but does not conduct a "mini-trial" or
10 determine at this stage whether the plaintiff could actually
11 prevail.  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981, 983
12 n.8 (9th Cir. 2011); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131
13 S. Ct. 2541, 2551-52 (2011).

14     Rule 23(b) defines different types of classes.  <u>Leyva v.</u>
15 <u>Medline Indus. Inc.</u>, 716 F.3d 510, 512 (9th Cir. 2012).  Relevant
16 here, Rule 23(b)(3) requires that "questions of law or fact common
17 to class members predominate over individual questions . . . and
18 that a class action is superior to other available methods for
19 fairly and efficiently adjudicating the controversy."  Fed. R.
20 Civ. P. 23(b)(3).

21 **III. DISCUSSION**

22     Plaintiffs propose a corrected class definition for its TLIC
23 Excessive Fee Class:

24     All retirement plans serviced by TLIC at any time between
    2009 to the present pursuant to TLIC's GAC Forms that
25     satisfy all of the following four criteria:

26         (a)  the plan contracted with TLIC on or after
            January 1, 2008;
27
28         (b)  the plan had assets invested in any TLIC Ret Opt
            Separate Account investment choice;

1

2

          (c)   the plan did not have an asset bridge which TLIC was responsible to pay; and

3

          (d)   at some time between January 1, 2009 and the present,

4

5

6

7

8

               (i)   the sum of the plan's Contract Asset Charge ("CAC"), plus fees collected under the Service Agreement, plus the investment-level IM/Admin fees which TLIC collected from the Ret Opt Separate Account investment choices aggregated over the term of the TLIC Group Annuity Contract, **was greater than**

9

10

11

12

13

              (ii)  the sum of the commissions TLIC paid to the plan's advisor/broker, plus the fees TLIC paid to the plan's Third Party Administrator ("TPA"), if any, plus the amount of any fees TLIC **both collected and** waived under the Service Agreement, plus the Investment Platform Service Fee, aggregated over the term of TLIC's Group Annuity Contract with the plan.

14

(Mot. at 1-2 (paragraphing added).)  According to Plaintiffs, this

15

corrected class definition only changed the previous definition by

16

adding "both collected and" (underlined and bolded above).  (Id.

17

at 2.)  Thus, Plaintiffs claim that all previous arguments in the

18

second class certification motion's papers still apply and are

19

incorporated into this motion.  (Id. at 1-3.)

20

      The essential mathematical formula for determining whether a

21

plan falls into the class definition is "the difference between

22

(i) the total fees TLIC collected from the plan and (ii) the

23

reasonable fees for the services provided to the plan," aggregated

24

over the time the plan contracted with TLIC.  (Id. at 1.)

25

According to Plaintiffs, "[i]f a positive number results from the

26

formula, a plan is included in the 'TLIC Excessive Fee Class'

27

because TLIC's 'total fee' — taking into account any 'subsidy' of

28

plan-level costs with separate-account-level (i.e., investment

level) fees — is excessive." (<u>Id.</u>)  The changed language effects Plaintiffs' mathematical calculation for whether there is an excessive fee charged for a particular plan because it now credits for service fees that TLIC both waived and collected, whereas the previous calculation only credited TLIC for waived fees.

**A.  Rule 23(a) Requirements**

**1.  Numerosity**

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Although there is no minimum number of class members below which numerosity cannot be satisfied per se, the Supreme Court has held that a class of fifteen was too small. <u>General Tel. Co. v. EEOC</u>, 446 U.S. 318, 330 (1980).  In addition, courts have held that a class of forty or more members will generally satisfy the numerosity requirement. <u>See EEOC v. Kovacevich "5" Farms</u>, No. CV-F-06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007); <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1988).  In general, "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913-14 (9th Cir. 1964).

Here, Plaintiffs argue that "at least" 479 plans in addition to Plaintiff Gain Capital Group LLC 401(k) Plan are members of this class, thus satisfying numerosity. (Mot. at 4 (citing Kra Decl., Dkt. No. 391-2, ¶¶ 22, 24-27).)  Plaintiffs' expert Dr. Kra based this number on an analysis of Defendants' expert Dr. Strombom's opinions and data. (<u>Id.</u>)  Defendants do not raise any issues as to Plaintiffs' calculation. (<u>See generally</u> Opp'n, Dkt.

No. 398; Opp'n to Second Class Cert. Mot., Dkt. No. 370.)
Therefore, the Court finds that numerosity is satisfied.

### 2. Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  However, "[t]he requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir.2011) (internal quotation marks and brackets omitted).  However, merely showing that there are common questions of fact is not enough; the questions must be ones that will "generate common answers apt to drive the resolution of the litigation." Dukes, 131 S. Ct. at 2551 (internal quotation omitted).

As the Court stated in the last Class Certification Order, in the ERISA context, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).  A person may also be a fiduciary if the person "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii).  "In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000).

The Court previously determined that TLIC's fiduciary status is a question common to the first proposed class definition. (Order, Dkt. No. 354, at 8-15.)   There, the Court analyzed fiduciary duty as to Plaintiffs' charge of excessive fees as well as to other actions by TLIC, such as not investing in lowest-cost share classes and other fee collection actions.  (Id.) Additionally, the Court held that there were common questions as to separate account and investment-level fees, although the Court acknowledged that commonality may be defeated by an examination of the total fees.  (Id. 15-18 & n.4.)   Further, the Court noted that Defendants raised a defense based on the total fees being reasonable, particularly for individual plans, but the Court held these arguments were "more properly addressed in the predominance analysis under Rule 23(b)(3)."  (Id. at 18.)

The question of TLIC's fiduciary status underlies all three of Plaintiffs' classes.  (See Second Mot. Certify Class, Dkt. No. 358, at 15-16.)   For the TLIC Excessive Fee class here, Plaintiffs allege that the common issues to the class are whether TLIC is a fiduciary and whether the IM/Admin fees are excessive under 29 U.S.C. § 1104 (a)(1)(A), (a)(1)(A)(ii), and (a)(1)(B).  (Second Mot. Certify Class, Dkt. No. 358, at 16.)   The IM/Admin fees do not vary by plan, and the class is now limited to unsubsidized plans or plans that pay an excessive fee even after accounting for the subsidy.  (Id.)   This means, Plaintiffs argue, that there are no individualized issues.  (Id.)

As noted in the previous Order, Defendants did not contest commonality in their Opposition to the Second Class Certification other than to preserve their previous objections and arguments.

1  (Opp'n to Second Class Cert., Dkt. No. 370, at 10 n.8; Opp'n to

2  First Class Cert., Dkt. No. 300, at 9-26.)  Defendants did this

3  based on the Court's first Class Certification Order that instead

4  evaluated Defendants' objections and arguments under the

5  predominance factor.  (See Opp'n to Second Class Cert, Dkt. No.

6  370 at 10 n.8.)

7       The Court holds that common questions of fact and law exist

8  among the TLIC Excessive Fee Class.  Underlying this class, as

9  with the other two certified classes, is the issue of whether TLIC

10 acted as a fiduciary with respect to the fees.  Further, the class

11 addresses the common question of whether the plans paid excessive

12 fees by using a standard formula to determine each plan's

13 aggregate fees compared to TLIC's aggregate expenses as reflected

14 by the sum of certain fees.  This formula is common to the class

15 and would resolve the same question of law.  Defendants' arguments

16 are analyzed, as before, in the following predominance analysis.

17 Therefore, commonality is satisfied.

18            **3.  Typicality**

19      Typicality is satisfied if "the claims or defenses of the

20 representative parties are typical of the claims or defenses of

21 the class."  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit explains

22 the typicality requirement as revolving around a broad-based

23 inquiry to ensure the interests of the class are the same as the

24 interests of the named plaintiff:

25       The purpose of the typicality requirement is to assure that
         the interest of the named representative aligns with the
26       interests of the class.  Typicality refers to the nature
         of the claim or defense of the class representative, and
27       not to the specific facts from which it arose or the relief
         sought. The test of typicality is whether other members
28       have the same or similar injury, whether the action is

1   based on conduct which is not unique to the named
2   plaintiffs, and whether other class members have been
    injured by the same course of conduct.

3   Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)

4   (internal quotation marks and citations omitted).

5       The Court's first Order Denying Class Certification found

6   typicality satisfied because the named Plaintiffs were not subject

7   to the individual defenses Defendants raised, such as TLIC's post-

8   2011 fee disclosures and that fees varied by plan size. (Order,

9   Dkt. No. 354, at 22-23.)

10      In the second class certification motion, Plaintiffs argued

11  that one of the Plaintiff plans, the Gain Capital 401(k) Plan in

12  which Plaintiff Santomenno participated, "was charged an IM/Admin

13  Fee that exceeded the amount needed to subsidize plan-level

14  expenses and needed to pay the .08% Investment Platform Service

15  Fee." (Second Mot. Class Cert., Dkt. No. 358, at 17.) Thus,

16  Plaintiffs argued that the Gain plan fell into the TLIC Excessive

17  Fee Class and was a typical member of the class. (Id.) Now,

18  Plaintiffs continue to argue that the Gain Capital Plan is a

19  member and typical of the TLIC Excessive Fee Class. (Mot. at 3

20  (citing Kra Decl. ¶ 20).)

21      In the Second Class Certification Motion, Defendants

22  responded that Plaintiffs' new theories of the case failed

23  typicality. For the Excessive Fee class, Defendants noted that

24  Gain Capital joined TLIC after 2008, but Defendants claimed that

25  "Gain's contract files indicate that the sponsor negotiated an

26  asset bridge for one of the two plans, likely also excluding the

27  combined plan from class membership." (Opp'n to Second Class

28  Cert., Dkt. No. 370, at 23.)

9

1    Further, Defendants argued that both Plaintiff plans, Gain
2   Capital and QualCare, only paid reasonable overall fees: TLIC's
3   expenses exceeded the revenue for the Gain plan and both Plaintiff
4   plans "sought competitive bids for their services and selected
5   TLIC because it offered the lowest price," including after both
6   plans left TLIC.  (Id. (citing Dkt. No. 305, Ex. C at 66:16-67:17;
7   Vergara Decl., Ex. D at 19-21; Dkt. No. 305, Ex. I at 142:10-17;
8   Ex. S at 647; Ex. J ¶ 63; Ex. K ¶ 71).)  Thus, Defendants argued,
9   Plaintiffs' plans and the named Plaintiffs never paid
10  unreasonable, excessive fees, barring them from representing such
11  classes.  (Id. at 23.)

12    Plaintiffs replied that the Gain Plan involved two different
13  plans, and that named Plaintiff Santomenno participated in the
14  named Plaintiff Gain Capital plan that lacked an asset bridge.
15  (Reply ISO Second Mot. Class Cert., Dkt. No. 373, at 16-17.)
16  Plaintiffs acknowledge that the other Gain Capital plan included a
17  provision for an asset bridge, but Plaintiffs claimed that TLIC
18  never paid the asset bridge (and so cannot recoup it through fees)
19  because the plan participants paid the previous 401(k) provider's
20  termination fees.  (Id. (citing Obrist Decl. Ex. A, TRAN-19401,-
21  50; Vergara Decl. Ex. E at 36; Obrist Decl. Ex. C, Gain-648; Ex.
22  D, Gain-602).)  This remained true after the two Gain Capital
23  plans merged because there was no asset bridge in the merged
24  plan's contract.  (Obrist Decl. Ex. E TRAN-17691 (Jan. 7, 2009
25  amendment), Ex. F TRAN-29880 (May 21, 2010 amendment).)

26    No new arguments were made in the Motion to Correct Class
27  Definition or Opposition regarding typicality.  (See generally
28  Mot., Dkt. No. 391; Opp'n, Dkt. No. 398.)

1    The Court holds that this class satisfies the typicality

2    requirement based on the Gain Capital plan without an asset

3    bridge.  Other members of the class have similar injuries based on

4    excessive fees and the alleged conduct of TLIC is not unique to

5    Plaintiffs.

6              **4. Adequacy**

7    Adequacy of representation is satisfied if "the

8    representative parties will fairly and adequately protect the

9    interests of the class." Fed. R. Civ. P. 23(a)(4).  Inasmuch as

10   it is conceptually distinct from commonality and typicality, this

11   prerequisite is primarily concerned with "the competency of class

12   counsel and conflicts of interest." <u>Gen. Tel. Co. of Southwest v.</u>

13   <u>Falcon</u>, 457 U.S. 147, 158 n. 13 (1982).  Thus, "courts must

14   resolve two questions: (1) do the named plaintiffs and their

15   counsel have any conflicts of interest with other class members

16   and (2) will the named plaintiffs and their counsel prosecute the

17   action vigorously on behalf of the class?"  <u>Ellis</u>, 657 F.3d at

18   985.

19   The Court previously found adequacy of representation

20   satisfied because there are no standing issues for the named

21   Plaintiffs and no conflicts of interest based on other class

22   members not belonging to the same plans.  (Order, Dkt. No. 354, at

23   24-25 & n.7.)  Plaintiffs did not add anything new to this

24   analysis in the second class certification motion.  (Second Mot.

25   Class Cert., Dkt. No. 358, at 17-18.)  Defendants also added

26   nothing new beyond arguments articulated above for typicality.

27   Defendants maintained through both class certification oppositions

28   that there is a lack of standing and that none of the named

Plaintiffs or Plans fit into the excessive fee class described. (Opp'n, Dkt. No. 370, at 22-23 & n.16.)

As before, the Court holds that the Plaintiffs and their counsel are adequate for class certification purposes. Plaintiffs Gain Capital and Santomenno are members of the TLIC Excessive Fee class as defined and therefore adequacy is satisfied here.

**B. Rule 23(b) Requirements**

A class action may be certified under Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

According to the Federal Rules of Civil Procedure, courts consider the following factors in making these determinations:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members,"
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(A)-(D).

**1.   Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "Even if Rule 23(a)'s commonality requirement may be

satisfied by [a] shared experience, the predominance criterion is far more demanding." _Id._ at 623-24.  Predominance cannot be satisfied if there is a much "greater number" of "significant questions peculiar to the several categories of class members, and to individuals within each category." _Id._ at 624.  However, Rule 23(b)(3) predominance "requires a showing that _questions_ common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013).

The Court's first Order denied class certification based on Plaintiffs' failure to satisfy the predominance requirement. (Order, Dkt. No. 354, at 27-35.)  The Court first noted that due to the potential size of the class ("300,00 participants in about 7,400 plans"), "individual inquiries potentially loom large" because "_any_ difference in facts or legal posture among plans is potentially multiplied a thousandfold."  (_Id._ at 27-28.) Defendants argued, and the Court agreed, that the problem with Plaintiffs' prior class definition was that it gave rise to individualized defenses that overwhelmed the common questions. (_Id._ at 28-29.)

The Court explained that "if Plaintiffs wish to assert a claim under TLIC's fiduciary duty to defray only reasonable expenses, they must do so by considering TLIC's fees as a whole compared to TLIC's total reasonable expenses in providing its services." (_Id._ at 30-31.)  One of the Court's concerns was that the individual IM/Admin fee that Plaintiffs were alleging was excessive could be subsidizing the plan-level expenses that Plaintiffs did not contest.  (See _id._ at 31.)  This concern led

1  the Court find that "fees charged to individual plans must be

2  compared to the expense of providing services to those plans" and

3  that "[t]hese individualized inquiries would be significantly more

4  complex than Plaintiffs' proposed inquiry into a single fee whose

5  reasonableness (Plaintiffs argue) could be straightforwardly

6  determined as to all plans equally." (Id.)

7      Then, Plaintiffs moved the Court for full or partial class

8  certification with three separately-defined classes. (Second Mot.

9  Class Cert, Dkt. No. 358.) After Plaintiffs withdrew the

10 Excessive Fee Class at the hearing, the Court certified the two

11 other classes. (Order, Dkt. No. 393; Mot. at 391.) Now, the

12 Court addresses the corrected Excessive Fee Class in this Motion.

13      In the Second Class Certification motion, Plaintiff

14 explained the TLIC Excessive Fee class as "limited to those plans

15 in which plan-level fees were adequate to defray plan-level costs

16 over the life of the plan or, for those plans in which plan-level

17 fees were insufficient, the IM/Admin Fees sufficiently subsidized

18 any shortfall and the remaining IM/Admin fee exceeded the

19 Investment Platform Service Fee." (Second Mot. Class Cert., Dkt.

20 No. 358, at 25.) The class brought claims under 29 U.S.C. §

21 1104(a)(1)(A) (general duty of loyalty); (a)(1)(A)(ii) (duty to

22 defray only "reasonable expenses of administering the plan"); and

23 (a)(1)(B) (general duty of prudence), alleging that TLIC was a

24 fiduciary and charged excessive fees to the class, thus breaching

25 its fiduciary duties. (Second Mot. Class Cert., Dkt. No. 358, at

26 25.)

27      These claims are predominated by common questions of law and

28 fact, Plaintiffs claimed, because "TLIC's status as a fiduciary

1   and TLIC's statutory liability all implicate common questions, and

2   the class definition eliminates all individualized inquiries."

3   (Id.)  Plaintiffs argued that any defense argument that there are

4   individualized inquiries based on the reasonableness of the

5   IM/Admin fees at the time the fees were authorized by each GAC is

6   foreclosed by a fiduciary's "continuing duty to monitor its fees"

7   based on Supreme Court precedent.  (Id. at 26 (citing Tibble v.

8   Edison Int'l, 135 S. Ct. 1823, 1828 (2015).)  Lastly, Plaintiffs

9   defended the class against any charge that the need to assess

10  damages would undermine predominance.  (Id. at 26-27.)  Plaintiffs

11  explained the measure of damages for this class as the "difference

12  between any excess IM/Admin Fee that remains after any

13  subsidization."  (Id. at 26.)  This calculation can be done with

14  "a common method that is a mechanical process."  (Id. (citing Dec.

15  RL, Ex. 16, pp. 40-44; Ex. 22, pp. 19-24, 30-36).)

16      Plaintiffs' proposed corrected class definition maintains the

17  same commonalities as Plaintiffs set forth previously.  (See

18  generally Mot., Dkt. No. 391.)  As before, Plaintiffs do not

19  challenge the Service Agreement fees as unreasonable.  (Id. at 2.)

20  The corrected class definition fixes the mathematical formula for

21  class member determination by accounting for the total service

22  fees — waived and collected.  (Id.)

23      Otherwise, the calculation remains that for the plans that

24  fit the first parts of the definition ((a), (b), and (c)), that if

25  the sum of the plan's (i) CAC, collected Service Agreement fees,

26  and investment-level IM/Admin fees are greater than the sum of

27  (ii) commissions TLIC paid to the plan's advisor/broker, fees paid

28  to any third party administrators, collected or waived Service

1   Agreement fees, and the Investment Platform Service Fee, then

2   those plans were charged an excessive fee. (Id.) That is, if the

3   sum of the first set is greater than the second set, both of which

4   are aggregated over the plan's GAC with TLIC, then the plan fits

5   into the excessive fee class. (See, e.g., Kra Decl. ¶¶ 18-22,

6   Dkt. No. 391-2 (using this formula to calculate Plaintiff Gain

7   Plan's membership in the Excessive Fee class).) Plaintiffs claim

8   that TLIC keeps records of both collected and waived fees; thus,

9   the information Plaintiffs are correcting is also not subject to

10  individualized defenses and is known to Defendants. (Id. at 3

11  (citing Kaese Decl., Ex. A, Dkt. No. 391-3).)

12      Defendants' initial issue with the TLIC excessive fee class

13  was that the benchmark against which Plaintiffs seek to measure

14  the reasonableness of the fees — the standard fee schedule under

15  the Services Agreement — is unsupported as to its appropriateness

16  as a benchmark, and it suffers from the same individualized proof

17  that caused the first class definition to fail. (Opp'n to Second

18  Class Cert., Dkt. No. 370, at 14-15.) According to Defendant,

19  Plaintiffs are challenging "just that percentage of collected

20  IM/Admin charges that was not absolutely necessary to pay

21  compensation to third party providers, to defray the estimated

22  costs of investment platform services, and to cover the nominal

23  fees described in the Services Agreement." (Id. at 15.) This

24  proposed class definition gives rise to individualized inquiries

25  because "these sums varied considerably across plans, and between

26  participants in the same plan." (Id.)

27      Defendants claim that plans negotiated separately with TLIC

28  for CAC charges, "often producing a schedule that changed by year

16

and by asset level." (Id. (citing Dkt. 305, Ex. J ¶¶ 35-37, Ex. 1.)  Fees collected under the Services Agreements also varied. (Id.)  Further, "the proportion of a plan's investment-level fees paid via IM/Admin charges on Ret Opt funds varied not only by plan, but by participant, according to each plan's choice of options for its investment lineup and each plan participant's allocations across that lineup." (Id.)  All of this leads to, Defendants argue, a wide array of different fees that precludes class certification.  (Id. at 16.)

Defendants' expert "found huge variations in annual plan/participant-level fees across plans, whether expressed as a percentage of each plan's overall assets or as a per-participant sum," and "whether any of these fee levels was reasonable in light of the relevant benchmarks" would require individualized inquiries.  (Id.)  Defendants provided the Court with one sample excessive fee calculation, and claimed that other plans paid different amounts than that one example.  (Id.)  Defendants also claimed that participant-level data is not in the discovery record generally, but that there is information for Plaintiff Gain Plan, and that data shows that the Gain Plan would qualify for membership in the class (absent Defendants' allegation that the plan received an asset bridge) but that "nearly 40% of its participants would not have paid allegedly excessive fees to TLIC by plaintiffs' measure."  (Id. at 16-17 (citing Vergara Decl., Ex. F at Ex. 4).)

Further, Defendants claimed that the costs TLIC incurred in providing plan- and participant-level services were significant and varied widely across plans.  (Id. at 17-20.)  According to

1  Defendants, some plan-level costs pass through to third parties,

2  but TLIC also bears internal expenses — and contrary to

3  Plaintiffs' argument, the fees in the Services Agreements do not

4  cover TLIC's internal costs for any plan.  (Id. at 18 (citing Dkt.

5  358 at 13:24-25; Dkt. 305, Ex. J ¶ 20; Vergara Decl., Ex. F at Ex.

6  4; Dkt. 305, Ex. C at 66:16-67:17; Vergara Decl., Ex. D at 19-

7  21).)  Without revealing confidential information, the Court notes

8  that Defendants provided specific examples of the wide variation

9  of internal costs borne by TLIC in different size plans, and

10 Defendants claim that Plaintiffs still fail to take into account

11 TLIC's internal servicing costs.  (Id. at 19-20 & n.14 (citing

12 Rico Decl., Ex. A; Vergara Decl., Ex. F at 2b).)

13      Lastly, Defendants argued that they have the right to use

14 individualized proof in defense of any particular class member's

15 fee — that Defendants would do by showing "the reasonableness of

16 the total fees that each plan paid for the total package of

17 services delivered." (Id. at 20.)  As Defendants argued before,

18 "the use of investment fees to pay for plan services is a common

19 industry practice, blessed by the [Department of Labor]." (Id. at

20 20-21.)  Further, Defendants argue that they would introduce

21 evidence to defend its fees such as "market benchmarks for plans

22 sharing the same characteristics, . . . competitive bids that the

23 plan received from other providers before retaining TLIC's

24 services, or . . . other proof that is unique to each plan

25 relationship," such as the individual bidding or negotiations that

26 a particular plan undertook with TLIC.  (Id.)

27      In response to the present Motion to correct the class

28 definition, Defendants have argued that even the corrected class

definition and its formula fail to take into account the total fees collected based on TLIC's bundled services: "no plan was able to purchase TLIC's administrative services without also purchasing investments under a GAC." (Opp'n, Dkt. No. 398, at 2-3.) Defendants argue that they "would have a due process right to argue against plaintiffs' misguided effort to sever a package deal into hypothetical components, and to defend each plan's total fee as reasonable based on evidence that is specific to each plan." (<u>Id.</u> at 3.) This individualized evidence includes the bidding process for each plan, a comparison of the cumulative fees to the cumulative costs for TLIC during the relevant time period, and industry fee benchmarks for plans similar to the plan at issue. (<u>Id.</u> at 3-4.) Thus, Defendants state that the formula may not give rise to the same predominance issues as before, but the liability phase of a class proceeding would result in many mini-trials on each plan, thereby defeating predominance. (<u>Id.</u> at 4.)

In reply, Plaintiffs explain the corrected class definition is challenging the total fee: "The revenue side of Plaintiffs' class definition captures all revenues (TLIC's total fees) and the expense side captures all reasonable costs." (Reply, Dkt. No. 399, at 6.) Plaintiffs also argue that there has been no discovery or evidence or expert report that contests its determination that the Service Agreement fees are a measure of reasonable costs. (<u>Id.</u>) Plaintiffs claim that their calculation takes into account "all of TLIC's permissible costs," meaning that TLIC may argue that additional costs are involved in the plans, but that Plaintiffs do not agree that those costs can be charged to fiduciary beneficiaries like the plans. (<u>Id.</u> at 7-8.)

1   According to Plaintiffs, "TLIC may only use plan assets for

2   providing benefits to participants and to defray reasonable

3   expenses of 'administering the plan.'" (Id. (quoting 29 U.S.C. §

4   1104(a)(1)(A)(i) and (ii)).)  Plaintiffs cite an Department of

5   Labor advisory opinion about what constitutes "plan administration

6   expenses": "direct expenses properly and actually incurred in the

7   performance of a fiduciary's duties to the plan." (Id. at 8

8   (quoting DOL Adv. Op. 97-03A (Jan. 23, 1997)).)  Therefore,

9   Plaintiffs maintain that predominance is met here.

10       In the Court's previous Order, the Court held that

11  Plaintiffs' excessive fee allegations were not predominated by

12  common questions, and faced logical problems.  The Court said:

13          Plaintiffs argue in their supplemental brief that they
         are challenging the total fee package, in addition to
14       challenging the IM/Admin Fee, because the size of the
         IM/Admin Fee makes the total fee package unreasonable.
15       (Pls.' Suppl. Brief at 6-7.)  This is unconvincing; it
         simply assumes the premise Plaintiffs want to prove: that
16       the fees must be considered separately, rather than as a
         total package, without considering cost-sharing or
17       subsidization between categories of fees.  If Plaintiffs
         do not consider the plan level fees excessive for plan-
18       level expenses, (Pls.' Suppl. Brief at 7), perhaps that is
         only because they are being subsidized by the investment-
19       level fees.
             All of this leads to the conclusion that fees charged
20       to individual plans must be compared to the expense of
         providing services to those plans.  These individualized
21       inquiries would be significantly more complex than
         Plaintiff's proposed inquiry into a single fee whose
22       reasonableness (Plaintiffs argue) could be
         straightforwardly determined as to all plans equally.
23           Because Plaintiffs have not briefed the Court on how
         such a plan-by-plan inquiry into total expenses and fees
24       could be conducted, even after the Court requested
         supplemental briefing, the Court cannot determine that the
25       common questions identified above would necessarily
         predominate.
26
    (Order, dkt. no. 354, at 31.)
27

28

                                 20

1    Here, Plaintiffs have now addressed some of the logical

2    issues the Court raised with the previous excessive fee class

3    definition.  Plaintiffs' formula accounts for total fees and total

4    expenses, albeit perhaps not all the expenses Defendants would

5    seek to include.  Plaintiffs' standard formula for defining

6    membership in the class also provides the formula for calculating

7    the damages — the amount of fees paid by a plan that Plaintiffs

8    argue is excessive because it is greater than the amount of

9    expenses Defendants incurred (that Plaintiffs claim are the only

10   expenses appropriate to charge to the class).  This means that

11   there are individual damages calculations required for the

12   proposed class.  Individualized damages calculations do not defeat

13   class certification as a matter of law.  See, e.g., Leyva v.

14   Medline Indus. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013).

15   However, individualized damages calculations that require

16   individualized analysis as to parts of the equation and that are

17   subject to individualized defenses do raise class certification

18   problems.

19   Here, even if Plaintiffs' standard formula captures the total

20   fees and expenses (which Defendants do not agree it does), the

21   formula entails many individualized determinations that even a

22   standard formula cannot resolve the class certification problems.

23   For example, each plan has different contract negotiation history

24   with TLIC that results in different fees and expenses being

25   plugged into the formula — which is not necessarily a problem —

26   but this also raises individual issues as to the reasonableness of

27   those fees as to each plan.  As Defendants argued, there are

28   different service agreement fees, separate and often changing

1  CACs, and changes in the IM/Admin fees per plan based on the

2  participants' choices.  And all this analysis is multiplied by

3  each plan that is calculated to fit the excessive fee class.

4       Further, there are individualized defenses that increase the

5  complexity of this analysis.  Defendants will introduce evidence

6  of the competitive bidding process as to each plan that engaged in

7  one, which is relevant to both the reasonableness of the total

8  fees TLIC charged as well as to the reasonableness of any

9  particular fee.  This evidence would demonstrate that perhaps a

10  plan chose TLIC over a different provider based on the plan's

11  determination that the total fees and total services offered to it

12  by TLIC was the best deal for that plan; such evidence would

13  necessarily vary from plan to plan.

14       Additionally, Defendants would introduce evidence of the

15  costs in incurred as to each plan, which also varies from plan to

16  plan based on the size, number of plan participants, services

17  chosen by the plan, length of time with TLIC, amount of assets,

18  and other considerations — and Defendants claim these costs are

19  not adequately captured by the service agreement fees.  This

20  evidence would effect the analysis and calculation of the total

21  fees versus the total services and expenses for those services.

22  Lastly, Defendants would seek to introduce evidence of industry

23  benchmarks to show that the total fees charged for the total

24  services provided are within industry norms as set by a

25  competitive market.

26       The Court holds that these considerations demonstrate how

27  common issues of fact do not predominate over the individualized

28  issues required to demonstrate whether a plan paid fees that were

1   reasonable or excessive.  Thus, if used at all, Plaintiffs'

2   formula would need to be used by each plan on an individual basis.

3   An individual analysis would allow the Court to properly consider

4   Defendants' proposed defenses and arguments as to the

5   reasonableness of its fees based on the services provided, as well

6   as Plaintiffs' contention that for certain plans, this analysis

7   demonstrates that the plan paid too much.  Therefore, predominance

8   is not satisfied.  But the Court notes that the merits question as

9   to the reasonableness of the fees is not addressed in making this

10  determination, and the fees TLIC charges certain plans could be

11  excessive after undertaking the above analysis.

12              **2.   Superiority**

13       Rule 23(b)(3) also requires a class action to be "superior to

14  other available methods for fairly and efficiently adjudicating

15  the controversy." Fed. R. Civ. P. 23(b)(3).  The Rule further

16  provides four factors the Court must consider in Rule 23(b)(3)(A)

17  through (D):

18       (A)  the  class  members'  interests  in  individually
              controlling the prosecution or defense of separate
19            actions;

20       (B)  the extent and nature of any litigation concerning
              the controversy already begun by or against class
21            members;

22       (C)  the desirability or undesirability of concentrating
              the litigation of the claims in the particular forum;
23            and

24       (D)  the likely difficulties in managing a class action.

25       Here, because the Court holds that predominance is not met,

26  the Court need not determine whether a class action is superior.

27  The individualized issues discussed above make a class action not

28  superior in this instance because of the need to have hundreds of

1    mini-trials on the individual issues each plan raises.  Otherwise,

2    a class action would have been superior to individual suits,

3    particularly because the costs of bringing an action likely exceed

4    the potential individual damages awards for certain plans, as this

5    Court mentioned in its previous Orders.  (Order, Dkt. No. 393, at

6    38-39; Order, Dkt. No. 354, at 35.)

7        **C.  Ascertainability**

8        Although not strictly a part of the requirements of Rule 23,

9    courts have held that a threshold requirement for class

10   certification is that the class, as defined, "must be adequately

11   defined and clearly ascertainable before a class action may

12   proceed."  Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal.

13   2011) (quoting Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679-80

14   (S.D. Cal. 1999)).  The class definition should be "precise,

15   objective and presently ascertainable" such that "it is

16   administratively feasible to determine whether a particular person

17   is a class member."  Id. (quotation marks and citations omitted).

18       However, the Manual for Complex Litigation indicates that the

19   concerns that motivate the ascertainability inquiry are less

20   pressing in an action under Rule 23(b)(1) or 23(b)(2) as compared

21   to a Rule 23(b)(3) action: "[b]ecause individual class members

22   must receive the best notice practicable and have an opportunity

23   to opt out, and because individual damage claims are likely, Rule

24   23(b)(3) actions require a class definition that will permit

25   identification of individual class members, while Rule 23(b)(1) or

26   (b)(2) actions may not."  Federal Judicial Center, Manual for

27   Complex Litigation, Fourth, § 21.222 (2004).

28

24

1    Defendants argue this corrected class definition is still not
2    ascertainable.  According to Defendants, "[a]n unimaginably
3    complex series of calculations based on each plan's constantly
4    shifting balances in a distinct (and frequently changing) menu of
5    investment accounts would be required" to ascertain the class.
6    (Opp'n, Dkt. No. 398, at 1.)  Further, Defendants argue, "[t]he
7    daily investment menu and balance information required to perform
8    these calculations has not even been produced" in class discovery.
9    (Id.)  Defendants also claim that the issue with determining plans
10   with an asset bridge discussed in the second certification
11   motion's briefing is one that would result in thousands of
12   individualized inquiries that would likely require more than just
13   an examination of the footer of the GAC, as demonstrated by
14   Plaintiffs' arguments about one of the Gain plans.  (Id.)

15   Plaintiffs respond that the use of a formula to determine
16   class membership is far from an "unimaginably complex series of
17   calculations," as demonstrated by the experts Strombom and Kra
18   doing so for the Gain plan.  (Reply, Dkt. No. 399, at 3.)
19   Further, it is not a bar to class certification that electronic or
20   paper records would have to be reviewed, such as for determining
21   the asset bridge situation of each plan.  (Id. at 3-4 (citing
22   Cummings v. Starbucks Corp., No. CV 12-06345-MWF (FFMx), 2014 WL
23   1379119, at *16 (C.D. Cal. Mar. 24, 2014) (finding class
24   ascertainable based on objective criteria even if it may require a
25   manual examination of personnel files).)

26   Here, the Court need not determine whether the proposed class
27   is ascertainable because the Court has found that predominance is
28   not satisfied.  To the extent that ascertainability is reviewed as

25

1    to this proposed class, the Court would find that the use of a

2    standard formula to determine the class is an objective criterion

3    by which membership in the class is determined.  But as discussed

4    in the predominance analysis, determining the otherwise "objective

5    criteria" that would go into each calculation raises many

6    individualized issues as to the costs of a plan, the fees charged

7    to a plan, the services provided to a plan, the reasonableness of

8    those fees in relation to those services, taking into account the

9    competitive bidding process and market, and other similar

10    questions.  Therefore, because of these individualized issues, the

11    class cannot be certified even if it is ascertainable.

**IV.   CONCLUSION**

13      For all the reasons discussed above, the Court DENIES

14    Plaintiffs' Motion to Correct Definition of the TLIC Excessive Fee

15    Class.[1]

17    IT IS SO ORDERED.

19    Dated: May 13, 2016

20                              DEAN D. PREGERSON
                                      United States District Judge

---

[1]    The Court recognizes that this decision may raise questions about the TIM and TAM Excessive Fee subclass certification.  The prior briefing on the TIM and TAM class was limited.  Therefore, the Court is unable to fully address the applicability of the Order in this case to the TIM and TAM Excessive Fee subclass.