FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACLYN SANTOMENNO; KAREN POLEY; BARBARA POLEY, individually and on behalf of Employee Retirement Income Security Act of 1974, etc.; as an investor in the Lommis Sayles Investment Grade Bond Ret. Opt. and the First American Mid Cap Growth Opportunities Inv. Opt., etc.; as an investor of Vanguard Target Ret., *Plaintiffs-Appellees*, v. TRANSAMERICA LIFE INSURANCE COMPANY; TRANSAMERICA INVESTMENT MANAGEMENT, LLC; TRANSAMERICA ASSET MANAGEMENT, INC., *Defendants-Appellants.* | No. 16-56418  D.C. No. 2:12-cv-02782-DDP-MAN  OPINION |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted November 17, 2017
Pasadena, California

| 2 | SANTOMENNO V. TRANSAMERICA LIC |
|---|---|

Filed February 23, 2018

Before: Jacqueline H. Nguyen and Andrew D. Hurwitz, Circuit Judges, and Richard Seeborg,[*] District Judge.

Opinion by Judge Hurwitz

**SUMMARY**[**]

**Employee Retirement Income Security Act**

The panel (1) reversed the district court's order denying defendants' motion to dismiss an ERISA case alleging breach of fiduciary duties in connection with a retirement plan, and (2) vacated the district court's subsequent class certification orders.

The district court held that a plan service provider breached its fiduciary duties to plan beneficiaries first when negotiating with an employer about providing services to the plan and later when withdrawing predetermined fees from plan funds.

An employer that forms an ERISA plan is a statutory fiduciary, and a plan service provider becomes a functional fiduciary under certain circumstances.

---

[*] The Honorable Richard Seeborg, United States District Judge for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Joining other circuits, the panel held that a plan administrator is not an ERISA fiduciary when negotiating its compensation with a prospective customer. As to alleged breaches after the defendant became a plan service provider, the panel held that the defendant was not a fiduciary with respect to its receipt of revenue sharing payments from investment managers because the payments were fully disclosed before the provider agreements were signed and did not come from plan assets. Agreeing with other circuits, the panel held that defendant also was not a fiduciary with respect to its withdrawal of preset fees from plan funds. The panel concluded that when a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a contract with the fiduciary-employer, collection of fees out of plan funds in strict adherence to that contractual term is not a breach of the provider's fiduciary duty.

The panel remanded with instructions to the district court to dismiss the complaint.

## COUNSEL

Brian D. Boyle (argued), Shannon Barrett, and Anton Metlitsky, O'Melveny & Myers LLP, Washington, D.C.; Catalina J. Vergara and Christopher B. Craig, O'Melveny & Myers LLP, Los Angeles, California; for Defendants-Appellants.

Arnold C. Lakind (argued) and Stephen Skillman, Szaferman Lakind Blumstein & Blader P.C., Lawrenceville, New Jersey; Lynn Lincoln Sarko, Derek W. Loeser, Michael D. Woerner, and Gretchen S. Obrist, Keller Rohrback LLP, Seattle, Washington; for Plaintiffs-Appellees.

Eric S. Mattson and Daniel R. Thies, Sidley Austin LLP, Chicago, Illinois; Lisa Tate, Vice President, Litigation & Associate General Counsel, American Council of Life Insurers, Washington, D.C.; Janet M. Jacobson, American Benefits Council, Washington, D.C.; Kate Comerford Todd and Janet Galeria, U.S. Chamber Litigation Center, Washington, D.C.; for Amici Curiae American Council of Life Insurers, American Benefits Council, and Chamber of Commerce of the United States of America.

Mary Ellen Signorille and William Alvarado Rivera, AARP Foundation Litigation, Washington, D.C., for Amici Curiae AARP and AARP Foundation.

**OPINION**

HURWITZ, Circuit Judge:

The Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. 93-406, 88 Stat. 829 (codified at 29 U.S.C. § 1001 *et seq.*), imposes fiduciary duties on various parties in connection with retirement plans. This case turns on when and under what circumstances those duties attach. The district court found that a provider breached its fiduciary duties to plan beneficiaries first when negotiating with an employer about providing services to the plan and later when withdrawing predetermined fees from plan funds. The court accordingly denied defendants' motion to dismiss and certified three plaintiff classes. We disagree and reverse.

## I. Background

### A. TLIC's Relationship with 401(k) Plans

The plaintiffs are members of employer-supported, defined-contribution 401(k) plans governed by ERISA. 29 U.S.C. § 1002(34). Because the daily administration of the plans often requires particularized expertise, employers commonly contract with third-party administrators to operate the plans.

Plaintiffs' employers contracted with Transamerica Life Insurance Company ("TLIC") to manage and operate their retirement plans. Each employer entered into an Application and Agreement for Services ("Services Agreement") and a Group Annuity Contract ("GAC") with TLIC. From a list of potential investment options provided by TLIC in the GAC, the employers selected those offered to employees. The list of potential investments includes several advised and managed by TLIC affiliates, Transamerica Asset Management ("TAM") and Transamerica Investment Management ("TIM"). Many of the investments offered in the GAC have multiple share classes, and TLIC did not always offer the lowest-priced share class. If an employer selects a "model line-up" of investment options, TLIC warrants that the bundle satisfies ERISA's "[p]rudent man standard." *See* 29 U.S.C. § 1104(a)(1).

After an employer chooses an investment bundle, TLIC structures each selected investment option (typically a mutual fund) as a separate account. The contributions of all plan members choosing the option are pooled in the separate account. Pooling "substantially reduces the mutual funds' administrative, marketing, and service costs" because the fund effectively has only one investor—the separate account. *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d

905, 909 (7th Cir. 2013). Under the Service Agreement, TLIC tracks the investments of individual employees, among other administrative tasks.

TLIC's compensation is set in the GAC as a fixed percentage of the assets in each separate account. The GAC contains a specific schedule of fees for each separate account. TLIC collects its fees on a daily basis by withdrawing them from the separate accounts.

The managers of the investment vehicles underlying the pooled accounts also charge fees. And, TLIC receives fees separately from these investment managers. *See id.* at 909 (describing this practice). TLIC fully disclosed these arrangements.

## B. Procedural Background

The complaint alleged that TLIC violated ERISA by (1) charging fees on the separate accounts in addition to those charged by the managers of the underlying investments; (2) charging an "Investment Management Charge" on the separate accounts; (3) receiving revenue sharing payments from managers of the underlying investments; (4) "failing to invest in the lowest priced share class of the mutual funds that underlie the separate account investment options that invest in mutual funds"; and (5) "negotiating the traditional lower fees that are associated with these investment options but retaining them rather than passing the savings along to Plaintiffs." The complaint also

alleged that TIM and TAM "knowingly participat[ed]" in TLIC's statutory violations.[1]

TLIC moved to dismiss, asserting that it did not violate ERISA because it was "not a fiduciary with respect to the terms of its own compensation."[2] The district court denied the motion, and subsequently certified three classes: (1) a "TLIC Prohibited Transaction Class," which claimed "that TLIC's practice of taking the IM/Admin fee from plan assets is [ ] a prohibited transaction" under 29 U.S.C. § 1106(b)(1); (2) a "TIM and TAM Prohibited Transactions" class, which claimed "that TLIC committed a prohibited transaction when it acted on behalf of or represented TIM and TAM, whose interests were adverse to the plans," in violation of 29 U.S.C. § 1106(b)(2); and (3) a "TIM and TAM Excessive Fees" class, which claimed "that TLIC breached three duties under 29 U.S.C. § 1104(a)(1)" by allowing TIM and TAM to charge fees higher than those charged to non-401(k) clients.

The district court certified its Rule 23 orders and the order denying the motion to dismiss for immediate appeal under 28 U.S.C. § 1292(b), and we accepted the appeal. We review orders granting or denying a motion to dismiss under Rule 12(b)(6) de novo, *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005), and the class certification order for abuse of discretion, *Pulaski &*

---

[1] The complaint also asserted other claims that were dismissed and are not at issue in this appeal.

[2] Defendants attached exhibits to their motion to dismiss. Plaintiffs likewise attached exhibits to their opposition to the motion. The complaint refers to all documents discussed in this opinion, which were incorporated in the complaint by reference. *See* Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

8     SANTOMENNO V. TRANSAMERICA LIC

*Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015).

## II. Discussion

### A. Statutory Framework

"ERISA is . . . a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (internal quotation marks omitted). It seeks "to ensure that employees will not be left empty-handed" by imposing fiduciary duties on those responsible for management of retirement plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

An employer that forms an ERISA plan is a statutory fiduciary. *See* 29 U.S.C. § 1102(a). But, a party not named in the plan also becomes a fiduciary if

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Such non-named fiduciaries are sometimes referred to as "functional" fiduciaries, and plan service providers, such as TLIC, can under the named

circumstances become functional fiduciaries. *See, e.g.*, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419–22 (9th Cir. 1997); *Parker v. Bain*, 68 F.3d 1131, 1139–40 (9th Cir. 1995).

Whether named or functional, an ERISA fiduciary has a "duty of care with respect to management of existing [ ] funds, along with liability for a breach of that duty." *Lockheed Corp.*, 517 U.S. at 887. The fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries." 29 U.S.C § 1104(a)(1). The fiduciary also must conduct business on behalf of the plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Accordingly, the fiduciary cannot "deal with the assets of the plan in his own interest or for his own account" or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(1), (3).

### B. Alleged Pre-Administration Breaches

Plaintiffs alleged that TLIC violated its fiduciary duties by (1) charging administrative and investment fees on the separate accounts; (2) receiving revenue sharing payments from investment managers and "negotiating the traditional lower fees that are associated with [TLIC's] investment options but retaining them rather than passing the savings along to Plaintiffs"; and (3) "failing to invest in the lowest priced share class of the mutual funds that underlie the

separate account investment options." Because TLIC fully disclosed the fee arrangements and proposed investments in its negotiations with the employers, all of whom agreed to these matters before TLIC became a plan administrator, the issue is whether TLIC was a functional fiduciary during those negotiations.

Considering virtually identical claims to those raised here, three of our sister Circuits have held that a plan administrator is not an ERISA fiduciary when negotiating its compensation with a prospective customer. *See McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016); *Santomenno ex. Rel John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293–95, 297 (3d Cir. 2014); *Hecker v. Deere & Co.*, 556 F.3d 575, 583–84 (7th Cir. 2009). We agree.

Under two of the prongs of the functional fiduciary definition, 29 U.S.C. §§ 1002(21)(A)(i) and (iii), "[o]nly discretionary acts of plan . . . management trigger fiduciary duties." *Santomenno*, 768 F.3d at 293 (second alteration in original) (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 421–22 (3d Cir. 2013)). A service provider is plainly not involved in plan management when negotiating its prospective fees or compiling a list of proposed investment options. Rather, at that stage "discretionary control over plan management lies . . . with the trustee, who decides whether to agree to the service provider's terms." *Santomenno*, 768 F.3d at 293; *accord McCaffree Fin. Corp.*, 811 F.3d at 1003 ("Because Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree, Principal could not have breached any such duty merely by charging the fees described in the contract that resulted from that bargaining process."); *Hecker*, 556 F.3d at 583 ("[A] service provider does not act as a

fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms."). And, § 1002(A)(21)(ii) is similarly inapplicable, as TLIC was not rendering investment advice while negotiating to become the plan administrator.

The Supreme Court has stressed that the central inquiry is whether the party was acting as an ERISA fiduciary "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). When negotiating with the employers, TLIC plainly did not exercise discretionary control over the plan, possess authority over its assets, render investment advice, nor have any discretionary authority in the administration of the plan. The district court believed that failing to assign a fiduciary duty to a service provider during negotiations with employers would allow the provider to "negotiate for a fee of 99% of each separate account and still be considered to be fulfilling its fiduciary duty of managing the separate account." But, as the Third Circuit correctly noted, "any plan sponsor who agreed to a 99% fee arrangement would *itself* be liable for breaching its fiduciary duty." *Santomenno*, 768 F.3d at 295 n.6. The employer has the express duty under § 1104(a)(1)(A)(ii) of "defraying reasonable expenses of administering the plan," and, absent some sort of conduct not alleged in plaintiffs' complaint, claims that fully disclosed fee arrangements are unreasonable lie against the employer, not the service provider. *Santomenno*, 768 F.3d at 295 & n.6.[3]

---

[3] The district court also found that the negotiations between TLIC and the employers were not arm's length because the real parties in interest—the plan beneficiaries—"are absent and vulnerable." But,

Indeed, any other outcome would lead to absurd results. If service providers were fiduciaries while negotiating fees, they would have to promise that its fees were no higher than those of any competitor, rather than negotiate at arm's length with an employer. And, an employer who knowingly agreed to a fee structure could nonetheless later sue to lower it, invoking the administrator's fiduciary obligation. We agree with the Third Circuit that "a service provider owes no fiduciary duty with respect to the negotiation of its fee compensation" because "[n]othing prevented the trustees from rejecting [the provider's] product and selecting another service provider; the choice was theirs." *Id.* at 295 (internal quotation marks omitted); *see also F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) (holding that although a service provider may "become an ERISA fiduciary at some point after entering into the [c]ontracts, it plainly held no such status prior to the execution of the [c]ontracts").[4]

For the same reason, TLIC did not have a fiduciary duty to provide plan beneficiaries with the option to invest in the lowest priced share class of each of the mutual funds that

---

fiduciary duties attach to the employer precisely because the plan beneficiaries are absent from the negotiation.

[4] Plaintiffs cite provisions in the GAC providing that the "Investment Management Charge may be withdrawn daily" and reserving "the right to change the Investment Management Charge or the Administrative Charge upon advance written notice to the Contractholder of at least 30 days." But, TLIC could not withdraw funds or alter its fees until negotiations were successfully completed. And, it makes no difference to the plaintiffs whether the fees are withdrawn on a daily basis or otherwise; the fees accrue daily in any event. Moreover, plaintiffs have not alleged that TLIC ever changed its fees; indeed, if it did, the employer is free under the GAC to find another provider.

SANTOMENNO V. TRANSAMERICA LIC　　13

underlie the separate investment options. *See Leimkuehler*, 713 F.3d at 912 ("[S]tanding alone, the act of selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers does not transform a provider of annuities into a functional fiduciary . . . ."). And, Plaintiffs' contention that the revenue sharing payments violate TLIC's fiduciary duty fails for the same reason—they were fully disclosed and agreed to by the fiduciary-employer before any fiduciary status attached. *See id.* at 911–12 (quoting *Hecker*, 556 F.3d at 583) (noting that the employer has "the final say on which investment options will be included").[5]

## C. Alleged Breaches after TLIC Became a Plan Service Provider

Plaintiffs also allege that TLIC engaged in prohibited self-dealing after becoming a plan administrator by (1) receiving revenue sharing payments from investment managers; and (2) withdrawing its fees from the separate accounts. Because the district court found that TLIC breached fiduciary duties before the relevant agreements were signed, it did not fully explore these allegations.

The first contention is easily dismissed. TLIC is not a fiduciary with respect to the revenue sharing payments,

---

[5] Plaintiffs argue that TLIC was a fiduciary when selecting the investment options because it retains the right to delete or substitute the funds the employer has selected for the Plan. But, there can be no breach of that duty absent deletion or substitution, which can only occur after the service provider is hired. *Leimkuehler*, 713 F.3d at 914. And, plaintiffs do not allege that TLIC ever exercised its discretion. Indeed, TLIC can only alter investment options upon six months' notice, and the GAC allows the employer opportunity to terminate the contract if displeased with any change.

because they were fully disclosed before the provider agreements were signed and do not come from plan assets. *See Leimkuehler*, 713 F.3d at 913–14.

The second contention requires more analysis. Plaintiffs argue that TLIC was a fiduciary because it "exercises any authority or control respecting management or disposition of" the pooled accounts. 29 U.S.C. § 1002(21)(A)(i); *see IT Corp.*, 107 F.3d at 1421 (internal quotation marks omitted) ("'Any' control over disposition of plan money makes the person who has the control a fiduciary."). As a fiduciary, plaintiffs argue, TLIC "dealt with the assets of the plan in [its] own interest" when withdrawing fees, and thus violated 29 U.S.C. § 1106(b)(1). Plaintiffs rely heavily on *Barboza v. California Association of Professional Firefighters*, which held that a plan fiduciary engaged in prohibited self-dealing by withdrawing expenses and compensation from plan assets pursuant to its agreement with the employer-fiduciary. 799 F.3d 1257, 1270 n.5 (9th Cir. 2015).

But, in *Barboza* the parties did not dispute that the service provider was an ERISA fiduciary and the panel so assumed without deciding. *Id.* at 1269. Thus, the critical, but narrow, question is whether TLIC was acting as a fiduciary when withdrawing precise, preset fees from the pooled accounts. We have never directly confronted that issue, but the Third Circuit has, finding the provider is not exercising fiduciary duties under precisely these facts. *Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013). In *Danza*, the plaintiffs argued that Fidelity, the plan administrator, violated 29 U.S.C. § 1106(b) by "causing the plan to disburse $1,200 of plan assets to itself as compensation." *Id.* The Third Circuit found no statutory violation because the plan administrator acted as "a fiduciary only for purposes of administering the plan, not for purposes

of negotiating or collecting its compensation." *Id.* Thus, the court held that "[a] service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain." *Id.* The Sixth Circuit has reached an identical conclusion, finding no breach of fiduciary duty when a service provider simply withdraws "routine contractual fees" from ERISA plan accounts. *McLemore v. Regions Bank*, 682 F.3d 414, 424 (6th Cir. 2012).[6]

We agree. Notwithstanding the broad language of § 1002(21)(A)(i), we suggested in *IT Corp.* that a depository of plan assets, whose ability to withdraw funds was governed by contract, might not be acting in a fiduciary capacity in all respects while holding plan assets. 107 F.3d at 1421–22. We later held that a depository was not a fiduciary because it performed "only ministerial services or administrative functions within a framework of policies, rules, and

---

[6] *See also Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) ("Given that this scheme was the very deal for which Carpenters bargained at arms' length, Caremark owed no fiduciary duty in this regard."); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003) ("[W]here parties enter into a contract terms at arm's length and where the term confers on one party the unilateral right to retain funds as compensation for services rendered with respect to an ERISA plan, that party's adherence to the term does not give rise to ERISA fiduciary status unless the term authorizes the party to exercise discretion with respect to that right."); *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 737 (7th Cir. 1986) ("[I]f a specific [contract] term . . . is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty."); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983) (holding a plan service provider "was not a fiduciary under ERISA with respect to . . . its compensation as a provider of Plan benefits"). Although these cases arguably sweep more broadly than our holding today, they support our conclusion that no breach of fiduciary duty occurred in TLIC's withdrawal of preset fees.

16  SANTOMENNO V. TRANSAMERICA LIC

procedures established by others." *Ariz. State Carpenters Pension Tr. Fund v. Citibank (Ariz.)*, 125 F.3d 715, 721–22 (9th Cir. 1997). Similarly, at least with respect to withdrawing its formula-driven fee from the pooled accounts, TLIC's actions were purely ministerial. *See McLemore,* 682 F.3d at 424 (noting that plaintiffs did not allege "that Regions did anything other than collect contractually owed fees").

The Supreme Court has instructed us to focus on the "threshold question" of whether a party "was performing a fiduciary function when taking the action subject to complaint." *Pegram*, 530 U.S. at 226 (parentheses omitted). And, as we noted in *Parker*, "ERISA's definition of 'fiduciary' is functional rather than formal." 68 F.3d at 1139. Here, the challenged action is the withdrawal of predetermined fees, not TLIC's management of the pooled accounts. We agree with the Sixth Circuit that "[s]uch transactions amount to 'control respecting management or disposition of [plan] assets,' in only the hollowest sense of 'control.'" *McLemore*, 682 F.3d at 424 (second alteration in original) (quoting 29 U.S.C. § 1002(21)(A)).[7] We therefore hold that TLIC's actions do not give rise to fiduciary liability under ERISA.

Our conclusion is buttressed by general trust law principles, which inform ERISA interpretation. *See Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). "The strict prohibitions against transactions by trustees involving conflicts between their fiduciary duties and personal

---

[7] *See also* 29 C.F.R. § 2509.75-8 (Department of Labor regulation noting that a service provider is not a fiduciary when it operates "within a framework of policies, interpretations, rules, practices and procedures made by other persons").

SANTOMENNO V. TRANSAMERICA LIC 17

interests do not apply to the trustee's taking of reasonable compensation for services rendered as trustee." Restatement (Third) of Trusts § 78, cmt. c(4). Similarly, the Uniform Trust Code excludes the "payment of reasonable compensation to the trustee" from the trustee's duty of loyalty. Unif. Trust Code § 802(h)(2) (Unif. Law Comm'n 2000); *see also* John H. Langbein, *Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?*, 114 Yale L. J. 929, 939–41 (2005) (recognizing trustee compensation as an exception to the sole interest rule); *Equitable Tr. Co. v. Gallagher*, 102 A.2d 538, 545 (Del. 1954) ("A trustee is permitted to acquire from his beneficiary a conveyance or release of interests in the corpus of the trust, provided that the beneficiary is *sui juris* . . . .").

Our holding today is narrow. We simply conclude that when a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a contract with the fiduciary-employer, collection of fees out of plan funds in strict adherence to that contractual term is not a breach of the provider's fiduciary duty.[8] If plaintiffs had alleged that TLIC withdrew more than it was entitled to, or if TLIC's fee were based on self-reported hours worked, or even if TLIC's withdrawals involved expenses, this might well be a different case. *Cf. IT Corp.*, 107 F.3d at 1417–18 (finding that a service provider who "had checkwriting authority" to "pay all claims which it has determined to be

---

[8] Plaintiffs assert that TLIC's ability to change its fees creates discretion and, thus, fiduciary status. But plaintiffs did not allege that TLIC ever changed its fees. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001) ([A] person . . . has [fiduciary] status only to the extent that he has or exercises the described authority or responsibility.") (second and third alterations in original) (internal quotation marks omitted) (quoting *F.H. Krear & Co.*, 810 at 1259).

payable under the agreement" was an ERISA fiduciary). But, the complaint in this case makes no such claims, and therefore does not state a claim upon which relief can be granted.[9]

### III. Conclusion

The district court's order denying TLIC's motion to dismiss is **REVERSED**, and we remand with instructions to the district court to dismiss the complaint. Because the district court should have dismissed the complaint, it is unnecessary for us to address its subsequent class certification orders, which we **VACATE**.

---

[9] Plaintiffs' claims that TAM and TIM knowingly participated in a breach of fiduciary duty necessarily also fail.